**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COUNTY OF COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 1:14-cv-02280 |
| ) | |
| BANK OF AMERICA CORPORATION, ) | HONORABLE ELAINE E. BUCKLO |
| BANK OF AMERICA, N.A., COUNTRYWIDE ) | |
| FINANCIAL CORPORATION, ) | |
| COUNTRYWIDE HOME LOANS, INC., ) | |
| COUNTRYWIDE BANK, FSB, ) | |
| COUNTRYWIDE WAREHOUSE LENDING, ) | |
| LLC, BAC HOME LOANS SERVICING, LP, ) | |
| MERRILL LYNCH & CO., INC., MERRILL ) | |
| LYNCH MORTGAGE CAPITAL INC., AND ) | |
| MERRILL LYNCH MORTGAGE LENDING, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

JAMES D. MONTGOMERY, SR.
JAMES D. MONTGOMERY, JR.
MICHELLE M. MONTGOMERY
JOHN K. KENNEDY
DANIEL A. DAILEY

*Special Assistant State's Attorneys*

**JAMES D. MONTGOMERY &
ASSOCIATES LTD.**
One North LaSalle Suite 2450
Chicago, IL 60602
Phone: (312) 977-0200
Fax: (312) 977- 0209
ddailey@jdmlaw.com

JAMES M. EVANGELISTA
(admitted *pro hac vice*)
JEFFREY R. HARRIS
(admitted *pro hac vice*)
DARREN W. PENN
(admitted *pro hac vice*)
DAVID J. WORLEY
(admitted *pro hac vice*)

*Special Assistant State's Attorneys*

**HARRIS PENN LOWRY LLP**
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404) 961-7650
Fax: (404)961-7651
jim@hpllegal.com

Table of Contents

Table of Authorities ............................................................................................................ iii

Introduction ........................................................................................................................ 1

Facts ................................................................................................................................... 1

Argument ............................................................................................................................ 2

   A. The Complaint is Timely .......................................................................................... 2

     1. The Statute Of Limitations Has Not Begun To Run, Nor Has It Expired Under

       the Plain Language of 42 U.S.C. §3613(a)(1)(A) ............................................... 2

     2. The Common Law "Continuing Violation Doctrine" Is Essentially Irrelevant ................. 6

     3. BOA's Argument Under the "Continuing Violation" Theory is Meritless ...................... 6

   B. Cook County Has Standing To Pursue Its FHA Claim ...................................... 13

     1. Plaintiff Adequately Pled Article III Standing – Which Is All That Is Required ............. 13

     2. Defendants' Article III Standing Analysis Is Flawed And Misleading .......................... 17

     3. *Lexmark* Supports Plaintiff's Standing ........................................................... 21

   C. The Complaint States A Valid FHA Claim ........................................................ 24

     1. The FHA Indisputably Permits Claims Alleging Disparate Impact .................................. 24

     2. The Complaint States An FHA Claim Based On Disparate Impact .................................. 25

     3. The Complaint States An FHA Claim Based On Intentional Targeting Or Disparate

       Treatment ........................................................................................................ 28

   D. The Complaint Adequately Alleges That Bank of America is Liable for All Named

       Defendants ....................................................................................................... 29

Conclusion ....................................................................................................................... 30

Table of Authorities

**Cases**

*Atunnise v. Mukasey,* 523 F.3d 830 (7th Cir. 2008) ....................................................................... 3

*Barkley v. Olympia Mortgage Co.*, 2007 WL 2437810 *11-15 (E.D.N.Y. Aug. 22, 2007)......... 28

*Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438 (2002)............................................................. 3, 7

*Barrett v. H & R Block, Inc.,* 652 F.Supp.2d 104 (D. Mass. 2009) ............................................. 10

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)............................................................. 24, 27

*Brooks v. Ross,* 578 F.3d 574 (7th Cir. 2009)........................................................................... 24, 27

*City of Birmingham v. Citigroup, Inc., et al.,* No. 2:09-CV-00467-KOB, 2009 WL 8652915
    (N.D. Ala. Aug. 19, 2009)....................................................................................... 17, 18, 19,

*City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.,* 982 F.2d 1086 (7th Cir. 1992)...... 17

*City of Los Angeles v. Bank of America Corp. et al.,* No. 2:13-CV-9046,
    2014 WL 2770083 (C.D. Cal. June 12, 2014) ............................... 1, 5, 7, 12, 17, 22, 24, 27, 29

*City of Los Angeles v. CitiGroup Inc., et al.,* No. 2:13-CV-9009,
    2014 WL 2571558 (C.D. Cal. June 9, 2014) .................... 1, 6, 7, 12, 16, 17, 20, 24, 27, 29, 30

*City of Los Angeles v. Wells Fargo, et al.,* No. 2:13-CV-9007,
    2014 WL 2206368 (C.D. Cal. May 28, 2014) ............. 1, 6, 7, 12, 16, 17, 20, 22, 24, 27, 29, 30

*City of Miami v. Bank of America Corp.*, 2014 WL 3362348,
    (S.D. Fla. July 8, 2014) ........................................................................................... 5, 14, 15, 21

*City of Miami v. Citigroup, Inc.*, 2014 WL _____, (S.D. Fla. July 9, 2014).................. 5, 14, 15, 21

*City of Miami v. Wells Fargo & Co.*, 2014 WL _____, (S.D. Fla. July 9, 2014)........... 5, 14, 15, 21

*City of Memphis v. Wells Fargo Bank, N.A.*, 2011 WL 1706756
    (W.D. Tenn. 2011) ................................................................................................ 18, 19, 27, 29

*DT Apt. Grp., LP v. CWCapital, LLC*, 2012 WL 6693192 (N.D. Tex. 2012).............................. 23

*Darensburg v. Metro. Trans. Com'n*, 611 F.Supp.2d 994 (N.D. Cal. 2009)................................. 11

*Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F.Supp. 2d 987 (N.D. Ill. 2013).... 25, 27, 28, 29

*DeKalb Cty., et al. v. HSBC N. Am. Holdings, Inc., et al.,* No. 1:12-CV-03640-SCJ,
    2103 WL 7874104 (N.D. Ga. Sept. 25, 2013) ........................... 1, 7, 12, 17, 19, 20, 24, 27, 29

*Doe v. R.R. Donnelly & Sons Co.*, 42 F.3d 439 (7th Cir. 1994) .................................... 11

*Engel v. Buchan,* 710 F.3d 698 (7th Cir. 2013) ............................................................... 24

*Equal Rights Ctr. v. Camden Prop. Trust*, 2008 WL 8922896 (D. Md. Sept. 22, 2008) ............. 10

*Equal Rights Ctr. v. Equity Res.,* 788 F. Supp. 2d 707 (D. Md. 2011) ......................................... 22

*Equal Rights Ctr. v. Post Prop's, Inc.,* 633 F.3d 1136 (D.C. Cir. 2011) ..................................... 22

*Erickson v. Pardus,* 551 U.S. 89 (2007) ............................................................................ 24

*Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529 (7th Cir. 2011) ............................................ 4

*Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.,* 210 F. App'x 469
    (6th Cir. 2006) .................................................................................................. 5, 10

*Garner v. DII Indus., LLC,* 2010 WL 456801 (W.D.N.Y. Feb. 4, 2010) ...................................... 8

*Ghartey v. St John's Queens Hosp.,* 869 F.2d 160 (2d Cir.1989) ........................................... 8

*Gilty v. Village of Oak Park*, 919 F 2d. 1247 (7th Cir. 1990) ...................................... 28

*Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91 (1978) ......................... 13, 17, 18, 21, 22

*Gordon v. National Youth Work Alliance,* 675 F.2d 356 (D.C.Cir.1982) ................................... 8

*Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564 (1982) ............................................... 3, 7

*Groesch v. City of Springfield*, 635 F.3d 1020 (7th Cir. 2011)..................................... 11

*Hammond v. Sys. Transp., Inc.,* 11-CV-1295, 2012 WL 3234865 (C.D. Ill. Aug. 6, 2012) .......... 9

*Hargraves v. Capital City Mortgage Corp.,* 140 F. Supp. 2d 7 (D.D.C. 2000), on
    reconsideration in part, 147 F. Supp. 2d 1 (D.D.C. 2001) ............................................ 1, 13, 29

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) ................. 3, 4, 5, 7, 12, 13, 15, 17, 21, 22

*Hoffman v. Option One Mortg. Corp.,* 589 F. Supp. 2d 1099 (N.D. Ill. 2008) ..................... 24, 25

*Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553 (N.D. Ill. 1998)......................... 4

*Hous. Opp. Proj. for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.,* 2012 WL 4193969
    (S.D. Fla., Sept. 19, 2012).................................................................................. 22

*HUD v. Blackwell,* 908 F.2d 864 (11th Cir. 1990) ............................................................. 15, 21

*International Brotherhood of Teamsters v. United States,* 431 U.S. 324 (1977) ........................ 29

*Iqbal v. Twombly,* 556 U.S. 662 (2009) ........................................................ 24

*Jafri v. Chandler LLC,* 970 F. Supp. 2d 852 (N.D. Ill. 2013) ........................... 4

*Jones v. Citibank, Fed. Sav. Bank,* 844 F. Supp. 437 (N.D. Ill. 1994) ............ 8

*Kimbrew v. Fremont Reorg. Corp.,* 2008 WL 5975083 (C.D. Cal. Nov. 14, 2008) ................. 12

*Laufman v. Oakley Bldg. & Loan Co.,* 408 F. Supp. 489 (S.D. Ohio 1976) .............................. 24

*Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618 (2007) ................................. 11

*Levy v. Trent Motel Assoc., L.P.,* 2011 WL 3903647 (E.D. Pa. Aug. 26, 2011) ......................... 22

*Lewis v. Xerox Corp.,* 1998 WL 160893 (N.D. Ill. Mar. 31, 1998) ............................... 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377 (2014) .................. 21, 22

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ........................................... 14, 17

*Martinez v. Freedom Mortgage Team, Inc.,* 527 F. Supp. 2d 827 (N.D. Ill. 2007) ..................... 28

*Maya v. Centex Corp.,* 658 F.3d 1060 (9th Cir. 2011) ............................................. 20

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 631 F. Supp. 2d 702
    (D. Md. 2009) ........................................................................ 18, 19

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 677 F. Supp. 2d 847
    (D. Md. 2010) ........................................................................ 17, 19

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 2011 WL 1557759
    (D. Md. Apr. 22, 2011) ................................................................... 18

*Mazzocchi v. Windsor Owners Corp.,* 2012 WL 3288240 (S.D.N.Y. Aug. 6, 2012) ................. 22

*Metro. Housing Dev. Corp. v. Vill. of Arlington Heights,* 558 F.2d 1283 (7th Cir. 1977) ..... 26, 27

*Mikula v. Allegheny Cty.,* 583 F.3d 181 (3rd Cir. 2009) ......................................... 11

*Miller v. Countrywide Bank,* N.A., 571 F. Supp. 2d 251 (D. Mass. 2008) ............................. 8, 10

*Moseke v. Miller & Smith, Inc.,* 202 F. Supp. 2d 492 (E.D. Va. 2002) ............................... 8

*Moskowitz v. Trustees of Purdue Univ.,* 5 F.3d 279 (7th Cir. 1993) ................................. 7, 9

*Nasser v. City of Homewood,* 671 F.2d 432 (11th Cir. 1982) ....................................... 22

*Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.,* 542 F. Supp. 2d 1054
    (N.D.Cal.2008) ........................................................................ 10

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ........................................ 12

*New West L.P. v. City of Joliet,* 491 F.3d 717 (7th Cir. 2007) ...................................... 17

*Nikolich v. Vill. of Arlington Heights,* 870 F.Supp.2d 556 (N.D. Ill. 2012) ................................ 28

*Options Ctr. for Indep. Liv. v. G&V Dev. Co.,* 229 F.R.D. 149 (C.D. Ill. 2005).................... 15, 21

*Patriotic Veterans, Inc. v. Indiana,* 736 F.3d 1041 (7th Cir. 2013)............................................. 3, 7

*Ramirez v. GreenPoint Mortg. Funding, Inc.,* 633 F. Supp. 2d 922 (N.D. Cal. 2008)................. 10

*Samaritan Inns, Inc. v. Dist. Of Columbia,* 114 F.3d 1227 (D.C. Cir. 1997)............................... 15

*Shanoff v. State of Ill. Dep't of Human Servs.*, 258 F.3d 696 (7th Cir. 2001) ........................... 7, 9

*Simovits v. Chanticleer Condo. Ass'n.,* 933 F. Supp. 1394 (N.D. Ill. 1996).................................. 5

*Smith v. City of Jackson,* 544 U.S. 228 (2005) ...................................................................... 25, 27

*Soto v. City of West Chicago*, 2010 WL 4810612 (N.D. Ill. Nov. 19, 2010) ................................ 7

*South-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868
    (7th Cir. 1991).......................................................................................................................... 28

*Sports Bar, Inc. v. Vill. of Downers Grove, Ill.*, 129 F.R.D. 161 (N.D. Ill. 1989)......................... 8

*Taylor v. Accredited Home Lenders, Inc.,* 580 F. Supp. 2d 1062 (S.D. Cal. 2008) ..................... 10

*Thompson v. N. Am. Stainless, L.P.,* 131 S.Ct. 863 (2011) .................................................. 21, 22

*Tingley v. Beazer Homes Corp.,* No. 3:07-CV-176, 2008 WL 1902108
    (W.D.N.C. Apr. 25, 2008)......................................................................................................... 18

*Trafficante v. Metropolitan Life Ins. Co.et.al.,* 409 U.S. 205 (1972) ...................................... 21, 22

*Tyus v. Urban Search Mgmt.,* 102 F.3d 256 (7th Cir. 1997) .................................................. 13, 17

*United States v. N. Trust Co.,* 372 F.3d 886 (7th Cir. 2004) .................................................... 2, 7

*U.S. v. Valistrieri,* 981 F.2d 916 (7th Cir. 1992) ........................................................................ 23

*Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252 (1977)........................ 15, 17

*Village of Bellwood v. Dwivedi,* 895 F.2d 1521 (7th Cir. 1990)............................................. 17, 28

*Wallace v. Chicago Hous. Auth.,* 321 F. Supp. 2d 968 (N.D. Ill. 2004)...................................... 3, 4

*Walton v. Wells Fargo Bank, N.A.,* 2013 WL 3177888 (D. Md. June 21, 2013) ........................... 8

*Warth v. Seldin,* 422 U.S. 490 (1975) ......................................................................... 14

*Watkins v. Chicago Hous. Auth.*, 527 Fed. App'x 504 (7th Cir. 2013) ......................................... 11

*Whitley v. Taylor Bean & Whitacker Mortgage Corp.,* 607 F. Supp. 2d 885 (N.D. Ill. 2009)..... 28

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899 (7th Cir. 2004)..................................... 2

*Zamudio v. HSBC N. Am. Holdings, Inc.,* 2008 WL 517138 (N.D. Ill. 2008)........................ 25, 27

**Statutes**

42 U.S.C. §2000 ...................................................................................................... 11

42 U.S.C. §3602 ........................................................................................... 11, 15, 19, 23

42 U.S.C. §3604................................................................................................... 9, 23, 27

42 U.S.C. §3605....................................................................................................... 9, 23

42 U.S.C. §3606............................................................................................................ 23

42 U.S.C. §3613................................................................. 2, 3, 4, 5, 6, 7, 8, 11, 15, 19, 21, 23, 28

42 U.S.C. §3614............................................................................................................ 25

42 U.S.C. §3617............................................................................................................ 23

**Other Authorities**

*HUD and Treasury Joint Report on "Curbing Predatory Home Mortgage Lending"*,
    54 Consumer Fin. L.Q. Rep. 218 (2000)......................................................................... 1

*24 C.F.R. § 100.500* ................................................................................................... 24

5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1277 (3d ed. 2014) ......... 8

**Rules**

Fed. R. Civ. P. 8................................................................................................... 24, 30

Fed. R. Civ. P. 12(b) ........................................................................................... 2, 8, 28

Fed. R. Civ. P. 12(d) .............................................................................................. 8, 9

Fed. R. Civ. P. 56(d) ................................................................................................. 9

## INTRODUCTION

Plaintiff respectfully requests this Honorable Court to deny the Bank of America Defendants' ("BOA's") motion to dismiss. Each of BOA's legal arguments is without merit--contrary to the applicable federal statutes, relevant case law and the actual allegations of the Complaint. Thus, to make its arguments, BOA must misdirect the Court with selective mischaracterizations of the Complaint, reliance on distinguishable or even superseded precedent, and evasive legal analysis. This Court can make quick work of flatly denying BOA's motion as it parallels similar motions to dismiss denied in very recent decisions by the Central District of California and the Northern District of Georgia brought on the same grounds BOA asserts here.[1]

## FACTS

An overview of the theory of this case is provided in the Introduction to Cook County's highly particularized Complaint that goes far beyond the minimum pleading requirements necessary to establish its Fair Housing Act ("FHA") claim. *See* Cmplt., ¶¶1-13. In short, the Complaint details the multifaceted elements of BOA's intentional, discriminatory housing practice of a nationwide "equity stripping" scheme,[2] which it conducted through: (1) a continuing pattern and practice of predatory and discriminatory mortgage lending (including

---

[1] *City of Los Angeles v. Bank of America Corp., et al.*, No. 2:13-cv-9046, 2014 WL 2770083 (C.D. Cal., June 12, 2014); *City of Los Angeles v. CitiGroup Inc., et al.*, No. 2:13-cv-9009, 2014 WL 2571558 (C.D. Cal., June 9, 2014); *City of Los Angeles v. Wells Fargo, et al.*, No. 2:13-cv-9007, 2014 WL 2206368 (C.D. Cal., May 28, 2014); *DeKalb Cty., et al. v. HSBC N. Am. Holdings, Inc., et al.*, No. 1:12-CV-03640-SCJ, 2013 WL 7874104 (N.D. Ga., Sept. 25, 2013). Copies of these decisions are attached as Exhibits A - D, respectively, to the Declaration of Daniel A. Dailey ("Dailey Decl.") submitted herewith.

[2] Equity stripping is an abusive form of "asset based lending" that violates the FHA if it is conducted on a discriminatory basis. *See HUD and Treasury Joint Report on "Curbing Predatory Home Mortgage Lending"*, 54 Consumer Fin. L.Q. Rep. 218, 227 (2000). *See also, e.g., Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 20-21 (D.D.C. 2000), *on reconsideration in part*, 147 F. Supp. 2d 1 (D.D.C. 2001) (denying summary judgment for defendant on FHA equity stripping claim "including exorbitant interest rates [and] lending based on the value of the asset securing the loan rather than a borrower's ability to repay ('equity-stripping,' in other words issuing a loan 'designed to fail' and profiting by acquiring the property through default, rather than by receiving loan payments), repeated foreclosures, and loan servicing procedures in which excessive fees are charged").

through "reverse redlining," "steering," and targeting of FHA protected borrowers for high cost or subprime mortgage loans that Defendants knew were likely to fail); (2) the continued and interrelated servicing of those mortgage loans; and (3) BOA's other activities integral to the scheme, including sales of mortgage securitizations, concealment of its actions and the ultimate foreclosures on defaulted loans.  The Complaint also alleges that BOA's scheme did not end, but will continue into the future through ongoing mortgage servicing and foreclosure activities until the last act in the scheme occurs – the payoff, or the default and foreclosure, of every predatory and discriminatory mortgage loan BOA originates, funds and/or services as part of its scheme.

## ARGUMENT

### A.  The Complaint Is Timely

#### 1.  The Statute of Limitations Has Not Begun To Run, Nor Has It Expired Under The Plain Language of 42 U.S.C. §3613(a)(1)(A)

BOA's motion to dismiss on statute of limitations grounds must fail because BOA does not, and cannot, reasonably challenge the timeliness of the County's Complaint under the plain language of the FHA. Thus, it does not, and cannot, meet its initial burden of establishing that it is entitled to this affirmative defense. *See United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004) (defendants have the initial burden of showing that the allegations in the Complaint entitle them to the affirmative defense of statute of limitations).[3]

The FHA provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than *2 years after* the occurrence or *the termination of an alleged discriminatory housing practice* . . . *whichever occurs last*."

---

[3] *See also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)").

42 U.S.C. §3613(a)(1)(A) (emphasis added).[4] This plain language is entirely dispositive here because the Court's "task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, [its] language must ordinarily be regarded as conclusive," even if the resulting effect on the defendants is "hard or unexpected." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570, 575 (1982).[5] Here, there are no other relevant conditions or exceptions stated in the plain language of the FHA's statute of limitations and, of course, none may be added by the courts or the parties. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1047 (7th Cir. 2013) ("[C]ourts [must] presume that the legislature says in a statute what it means and means in a statute what it says....").[6]

This Court need only apply the language of §3613(a)(1)(A) to the specific allegations in the Complaint to conclude the Complaint was timely filed. Cook County alleges that BOA's ongoing discriminatory housing practices of nationwide equity stripping schemes have not terminated; that BOA's interrelated predatory and discriminatory mortgage lending, loan servicing and foreclosure activities are ongoing; and that BOA's equity stripping scheme will continue into the future until the last predatory and discriminatory mortgage loan made is repaid and closed, or is foreclosed upon. *See, e.g.*, Cmplt., ¶¶ 3, 12, 368-401, 407, 425-29, 441-42, 444, 446-47. Because the Complaint alleges an ongoing discriminatory housing practice that has not

---

[4] 42 U.S.C. §3613(a)(1)(A) was amended by Congress in the "Fair Housing Amendments Act of 1988," six years after *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982), to extend the limitations period to two years and to codify *Havens'* holding that the FHA's limitations period would not begin to run on a continuing discriminatory housing practice until the later of the occurrence or the termination of the practice. *See, e.g., Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968, 972-73 (N.D. Ill. 2004) (Castillo, J.).

[5] Statutory construction begins with the plain meaning of the language of the statute itself. *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002). "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* at 450.

[6] *See also Atunnise v. Mukasey*, 523 F.3d 830, 836 (7th Cir. 2008) (noting "the canon that plain and unambiguous statutes must be applied as written").

yet terminated, the two-year limitations period will not begin to run until that practice actually concludes --i.e., when the last predatory and discriminatory mortgage loan is either repaid or is defaulted on and foreclosed.[7] Plaintiff's FHA claim is therefore timely under the plain language of 42 U.S.C. §3613(a)(1)(A).

This result is not only required under the plain language of the FHA, but also under long-standing and binding legal precedent confirming that allegations of a continuing discriminatory housing practice are timely if the practice had not terminated or if the complaint was filed within the limitations period. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380-81 (1982) ("[W]here a plaintiff . . . challenges not just one incident of conduct violative of the [FHA], but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice."); *Jafri v. Chandler LLC*, 970 F. Supp. 2d 852, 864-65 (N.D. Ill. 2013) (Feinerman, G.) ("limitations defense fail[ed] at the pleading stage" where face of complaint does not establish that the discriminatory housing practice terminated at least two years before plaintiff filed suit); *Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968, 973 (N.D. Ill. 2004) (permitting FHA claims based on disparate impact, segregation, and racial steering, that occurred prior to two-year limitations period because such practices were part of a continuing pattern and practice of discrimination) (Castillo, J.); *Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 564 (N.D. Ill. 1998) (Bucklo, J.)

---

[7] The only case that BOA relies on to argue that "[a] cause of action under the FHA for making discriminatory loans begins to run from the date of the loan closing" is *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 532 (7th Cir. 2001). BOA Memo at 5. *Davis*, however, does not address the type of discriminatory housing practice alleged here by Cook County, but instead involved isolated incidents of predatory lending. *See id.* BOA's authority is therefore entirely distinguishable because BOA's alleged discriminatory housing practice of equity stripping continues by its very nature, extracting value and perpetuating the scheme at each step in the life of the loan, e.g.: at origination (improper costs are imposed); upon each monthly payment (borrower pays an inflated interest rate); upon payment of a pre-payment penalty when attempting to refinance or payoff; following default (the servicer imposes additional costs); and upon foreclosure when the home is taken away.

(where plaintiffs in FHA case challenge "an unlawful practice that continues into the limitations period[,] . . .the claim is timely if it is filed within two years of the last asserted occurrence of that practice.") (*citing Havens*, 455 U.S. at 381); *Simovits v. Chanticleer Condo. Ass'n*, 933 F. Supp. 1394, 1404 (N.D. Ill. 1996) (Keys, A.) (denying laches defense and finding FHA complaint was timely because it was filed within two years of the last asserted occurrence of the alleged continuing discriminatory housing practice).[8]

Indeed, three other federal courts have reached exactly the same conclusion in recent decisions in similar FHA predatory mortgage lending cases brought by the City of Los Angeles.[9] *See City of Los Angeles v. Bank of America Corp., et al*, No. 2:13-cv-9046, 2014 WL 2770083 (C.D. Cal., June 12, 2014) (rejecting statute of limitations defense on City of Los Angeles' FHA

---

[8] *See also Fair Hous. Council, Inc. v. Vill. of Olde St. Andrews, Inc.*, 210 F. App'x 469, 479-80 (6th Cir. 2006) (the FHA's two-year limitations period in §3613(a)(1)(A) does not begin to run until the alleged continuing discriminatory housing practice terminates).

[9] The discriminatory housing practices alleged in the Los Angeles FHA cases focus solely on defendants' mortgage lending activities; thus the continued making of mortgage loans on a discriminatory basis is the triggering event for the statute of limitations analysis in those cases. In contrast, BOA's broad equity stripping scheme constitutes the discriminatory housing practice alleged in Cook County's Complaint that, by its very nature, is ongoing and continues into the future as it must be implemented through BOA's mortgage loan servicing and foreclosure activities. Thus, Cook County's allegations of an equity stripping scheme conclusively distinguish this case from both the Los Angeles cases and from very recent decisions dismissing FHA claims brought by the City of Miami that were identical to the Los Angeles cases and were against the very same lenders sued by Los Angeles. *See City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348, (S.D. Fla. July 8, 2014) (Dimitrouleas, J.); *City of Miami v. Wells Fargo & Co.*, No. 13-24508-CIV, 2014 WL ____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (adopting and incorporating the order in Bank of America decision); *City of Miami v. Citigroup, Inc.*, No. 13-24510-CIV, 2014 WL ____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (same). A copy of each of these orders is attached as Exhibits E to G in the Dailey Decl. Because these decisions were issued so recently (July 9) and BOA did not address them in its motion to dismiss, Plaintiff is reserving the right to request a sur-reply to the extent necessary to respond to any BOA discussion of these cases in its reply brief on this motion. In short, however, the court in the *Miami* cases, relying on Eleventh Circuit precedent, dismissed them on lack of standing grounds, *see City of Miami v. Bank of America* at 5-8, but also found that they were susceptible to the FHA's statute of limitations because Miami did not adequately allege any continuing discriminatory lending activity on which its claim of a discriminatory housing practice was solely based. *See id.* at 1-3, 11. Cook County's equity stripping scheme is inherently continuing and therefore the recent *Miami* rulings are distinguishable.

claim alleging discriminatory and predatory mortgage lending scheme where lending scheme was alleged to be continuing up to time of complaint); *City of Los Angeles v. CitiGroup Inc., et al*, No. 2:13-cv-9009, 2014 WL 2571558 (C.D. Cal., June 9, 2014) (same); *City of Los Angeles v. Wells Fargo*, et al, No. 2:13-cv-9007, 2014 WL 2206368 (C.D. Cal., May 28, 2014) (same).  In sum, BOA's statute of limitations defense must be denied as a matter of law because it cannot meet its initial burden to demonstrate entitlement to the defense given Plaintiff's allegations that BOA's discriminatory housing practices are continuing in nature.

### 2.  The Common Law "Continuing Violation Doctrine" Is Essentially Irrelevant

It is only upon the Court's initial determination that the Complaint is untimely under the plain language of 42 U.S.C. §3613(a)(1)(A), that the common law continuing violation doctrine (or other equitable principles, such as equitable tolling) would become relevant to extend an already expired limitations period. Thus, BOA's entire argument at section I.B. of its Memo simply is not relevant because, as shown above, the Complaint was timely filed under §3613(a)(1)(A), which explicitly contemplates the continuing nature of Plaintiff's allegations here. Should this Court conclude that an analysis of the common law "continuing violation doctrine" is even relevant, the County addresses each of Defendant's contentions below.

### 3.  BOA's Argument Under the "Continuing Violation" Theory is Meritless

BOA's analysis is inherently misleading and apparently designed to evade any direct application of 42 U.S.C. §3613(a)(1)(A) to the actual allegations in the Complaint. Thus, BOA incorrectly conflates the equitable, common law "continuing violation doctrine" with continuing discriminatory housing practice theories, relies on distinguishable case law, and ignores the continuing nature of the alleged equity stripping scheme at the heart of the Complaint. In fact, BOA repeatedly mischaracterizes the Complaint as not alleging any discriminatory acts within

two years and as "conced[ing]" that the alleged discriminatory conduct "ceased" by 2008. *See* BOA Memo at 1, 3-4, 5-6, 9-11.[10] Using this house of cards, and therefore lacking any credible demonstration that the limitations period has actually begun to run, let alone run out, BOA attempts to shift the burden onto Cook County, *see Northern Trust Co.*, 372 F.3d at 888, by arguing that the County is not entitled to rely on a continuing violation theory to extend the limitations period.[11]

First, relying on entirely distinguishable non-FHA cases, BOA essentially argues that the FHA's statute of limitations incorporates a discovery rule (or "reasonableness standard") and that the Complaint is time barred because the County knew of its claims more than two years before it filed suit. *See* BOA Memo at 6-9.[12] However, 42 U.S.C. §3613(a)(1)(A) clearly does not

---

[10] BOA's gross mischaracterization of the Complaint is belied by the numerous allegations of the continuing nature of BOA's equity stripping scheme, which is the discriminatory housing practice at issue. *See, e.g.*, Cmplt., ¶¶ 3, 12, 368-401, 407, 425-29, 441-42, 444, 446-47.

[11] This same briefing strategy was first employed by defendant HSBC in its motion to dismiss the *DeKalb* case. HSBC attempted to confuse equitable elements of the common law "continuing violation doctrine" with the plain language of §3613(a)(1)(A) as applied to the allegations in the complaint, thereby focusing on whether plaintiff was entitled to extend the FHA's limitations period without ever determining that the complaint was untimely in the first instance. *See DeKalb,* 2013 WL 7874104 at *9-12. The *DeKalb* plaintiffs recently filed a motion for partial summary judgment on this issue, which remains pending. Prior to that motion, however, the *DeKalb* court's merging of equitable elements into the statutory analysis apparently encouraged BOA and the other defendant groups in the Los Angeles cases to use the same briefing tactic in their own motions to dismiss. This led the parties in those cases, and each of the *Los Angeles* court's decisions rejecting the statute of limitations defenses, to focus on the "continuing violation" concept discussed in *Havens* without a direct application of the plain language of §3613(a)(1)(A) to the actual charging allegations. *See Bank of America Corp.,* 2014 WL 2770083 at *9-10; *CitiGroup Inc.,* 2014 WL 2571558 at *8-10; *Wells Fargo*, 2014 WL 2206368 at *9-10. The briefs in the *DeKalb* and *Los Angeles* cases are in the public record of which this Court may take judicial notice.

[12] Because the present case necessarily involves a pattern and practice of discriminatory lending, the cases BOA cites to support its contention that the County was on notice (even if "notice" is relevant) are factually distinguishable. *See Shanoff v. State of Ill. Dep't of Human Servs.*, 258 F.3d 696, 703 (7th Cir. 2001) (involving case brought by individual plaintiff under Title VII for hostile work environment not alleging a broad pattern or practice of acts); *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993) (involving ADEA claim brought by individual plaintiff alleging one isolated incident but not a pattern of discriminatory conduct); *Soto v. City of West Chicago*, 2010 WL 4810612, at *6 (N.D. Ill. Nov. 19, 2010) (Conlon, S.) (involving FHA claim that did not involve the same repeated injury but separate and distinct injuries so that there was no pattern of conduct).

impose a discovery rule on Plaintiff, and it cannot be added into the FHA by the parties or the Court. *See, e.g., Barnhart,* 534 U.S. at 450; *Griffin,* 458 U.S. at 575; *Patriotic Veterans,* 736 F.3d at 1047, 1052-53. Indeed, federal courts have explicitly held that the discovery rule does not apply to FHA claims based on the plain language of §3613(a)(1)(A). *See, e.g., Walton v. Wells Fargo Bank, N.A.*, CIV.A. AW-13-428, 2013 WL 3177888 (D. Md. June 21, 2013) ("The discovery rule . . . does not apply to the unambiguous language of the FHA's statute of limitations provision").[13]

Second, BOA's fact intensive argument about Cook County's purported knowledge of its FHA claim against these particular Defendants, *see* BOA Memo at 6-9, is entirely inappropriate in the context of a motion to dismiss on statute of limitations grounds because the issue must be analyzed under Rule 12(b)(6), not Rule 12(b)(1). *See, e.g., Ghartey v. St. John's Queens Hosp.,* 869 F.2d 160, 162 (2d Cir.1989); *Sports Bar, Inc. v. Vill. of Downers Grove, Ill.*, 129 F.R.D. 161, 162 (N.D. Ill. 1989) (Aspen, M.) (*citing Ghartey*).[14] None of the materials BOA submits evidences that the County had actual notice that each of the BOA defendants engaged in the predatory and discriminatory housing practices on a county-wide basis in violation of the FHA as alleged in the Complaint. Cook County objects to the inclusion of such materials at this stage of

---

[13] *See also Miller v. Countrywide Bank*, N.A., 571 F. Supp. 2d 251, 263 (D. Mass. 2008) (noting that the FHA does not incorporate "a discovery rule" in the limitations provision); *Moseke v. Miller & Smith, Inc.,* 202 F. Supp. 2d 492, 509-10 (E.D. Va. 2002) (rejecting application of "discovery rule" under FHA and dismissing design and construction FHA claim as time barred because last alleged act was found to have occurred more than two years prior to lawsuit); *but see Jones v. Citibank, Fed. Sav. Bank*, 844 F. Supp. 437, 440 (N.D. Ill. 1994) (Alesia, J.) (applying discovery rule in factually distinguishable context of a single occurrence mortgage discrimination FHA claim, and sustaining plaintiff's claim under discovery rule until plaintiff ***actually learned*** that defendant had denied such loan; time period at issue was approximately two weeks.).

[14] *See also Garner v. DII Indus., LLC,* 08-CV-6191-CJS, 2010 WL 456801 (W.D.N.Y. Feb. 4, 2010); *Gordon v. National Youth Work Alliance,* 675 F.2d 356, 360 (D.C. Cir.1982); 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1277, at 335–37 (3d ed. 2014).

the litigation until it has had an opportunity to conduct its own discovery to prove the continuing nature of Defendants' scheme since the FHA does not impose a discovery rule.[15]

Third, BOA incredibly argues that its discriminatory conduct is not alleged to be continuing and that the County "acknowledges" or "concedes" that such conduct is limited to Defendants' loan origination activities. *See* BOA Memo at 9-12. This argument is patently frivolous as it misrepresents the Complaint by artificially limiting the alleged discriminatory housing practices to only mortgage loan origination activities and only on a reverse redlining basis. *See id*. As repeated throughout this brief, and as repeatedly alleged in the Complaint, the discriminatory housing practices at issue are Defendants' intentional equity stripping schemes that are conducted and continue to be conducted through a variety of interrelated mortgage lending and mortgage loan servicing and foreclosure policies and practices. *See, e.g.*, Cmplt., ¶¶ 3, 12-13, 115, 195, 198, 208, 212-13, 217, 220-23, 340-363, 368-401, 407, 425-29, 441-42, 444, 446-47. The Complaint alleges that all of this activity was part and parcel of the scheme that has violated, and continues to violate, 42 U.S.C. §§ 3604 and 3605 by: (i) making housing unavailable on the basis of race; (ii) providing different terms, conditions and privileges on the basis of race in connection with real-estate related transactions and the sale of housing; and (3)

---

[15] To the extent such materials are not excluded by the Court, Rule 12(d) requires that BOA's motion be "treated as one for summary judgment under Rule 56." Fed.R.Civ.P.12(d); *see also, e.g., Hammond v. Sys. Transp., Inc.*, 11-CV-1295, 2012 WL 3234865 (C.D. Ill. Aug. 6, 2012). Thus, if the Court chooses to consider these materials, Plaintiff respectfully requests pursuant to Federal Rules 12(d) and 56(d) either that: (1) BOA's motion to dismiss be converted to a motion for summary judgment and be denied on its face or (2) that Plaintiff "be given a reasonable opportunity to present all the material that is pertinent to the motion" following an opportunity for discovery because Defendants are in possession of the full mortgage loan level and loan servicing information that would definitively establish that each of the BOA Defendants' equity stripping schemes is continuing to this very day. See Cmplt., ¶¶ 93-100, 313, 353, 340-63, 432-33.In fact, the cases BOA cites support this conclusion. For example, both *Shanoff v. State of Ill. Department of Human Services*, 258 F.3d 696, 703 (7th Cir. 2001) and *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993) were decided not on motions to dismiss but on motions for summary judgment.

expressing a preference based on race. *See, e.g.*, Cmplt., ¶¶ 3-9, 11-12, 368, 377, 384, 394, 402, 435-47. Thus, BOA necessarily downplays Plaintiff's extensive allegations: (1) of BOA's continuing mortgage loan servicing and foreclosure policies and practices (*see, e.g.,* Complaint ¶¶368-401) – i.e. the "Servicing Policies" – that "further increased the number of . . . mortgage delinquencies, defaults and ultimately home vacancies and foreclosures," *id.* at ¶377; and (2) that the last component of BOA's equity stripping scheme is the foreclosure itself (*see, e.g.,* Complaint ¶¶ 13, 417, 439, 447).

BOA also ignores the continuing and renewed discriminatory effect of each payment on each loan (and each loan refinance) it made using its Discriminatory Pricing Policies, which the Complaint never concedes has ended but instead alleges will continue.[16]

Here, like plaintiffs in *Barrett*, *Ramirez*, *Miller* and *Taylor*, the County alleges separate and

---

[16] *See, e.g.*, Cmplt., ¶¶ 208, 213, 217, 220-221, 368. To the extent the Complaint alleges at paragraph 368 that "[w]hile **most** of Defendants predatory, high cost and subprime mortgage origination practices at issue **subsided** after the Financial Crisis . . .," (emphasis added), such allegation does not constitute a concession or an acknowledgment that **all** of Defendants' predatory and discriminatory loan origination practices have ever ended, nor does the Complaint make any such affirmative allegation. To the contrary, the Complaint explicitly alleges at paragraph 221 that "Defendants' discretionary pricing policies, and the accompanying impact on minority borrowers . . . occurred every day that loans were extended, renewed or continued during the relevant period." Indeed the County's position is supported by numerous cases, *See Barrett v. H & R Block, Inc.,* 652 F.Supp. 104, 110-11 (D. Mass. 2009) (continuing violations doctrine preserved FHA disparate impact claims against mortgage lender based on "Discretionary Pricing Policy" used in initial loans and subsequent loan refinances); *Ramirez v. GreenPoint Mortg. Funding, Inc.,* 633 F. Supp. 2d 922, 929-30 (N.D. Cal. 2008) (same); *Miller v. Countrywide Bank, N.A.*, 571 F.Supp. 2d 251, 261-63 (D. Mass. 2008) (same; explaining that continued payments on loan made under discriminatory pricing plan "unrelated to creditworthiness" creates continuing effects on which the plaintiff "continue[d] to experience."); *Taylor v. Accredited Home Lenders, Inc*., 580 F.Supp. 2d 1062, 1065 (S.D. Cal. 2008) (continuing violations doctrine applied where defendants' discriminatory mortgage pricing policy inflated each payment constituting "another violation visited upon [p]laintiff."). *See also, e.g., Fair Housing Council, Inc. v. Village of Olde St. Andrews,* 210 Fed. Appx. 469, 479 (6th Cir. 2006) (continuing violation theory applied to ongoing practice of designing and constructing housing units and limitations period tolled "until the sale of the last unit in that development"); *Nat'l Fair Housing Alliance v. A.G. Spanos Constr., Inc.,* 542 F.Supp. 2d 1054, 1060-62 (N.D.Cal.2008) (same; "That more than one incident of steering occurred only demonstrates a *pattern* of such violations, not that each incident, standing on its own, is not a violation of the FHA.") (emphasis in original); *Equal Rights Ctr. v. Camden Prop. Trust,* CIV. PJM07-2357, 2008 WL 8922896 at *8-10 (D. Md. Sept. 22, 2008) (same).

continuing predatory and discriminatory practices and policies, including BOA's loan servicing and foreclosure practices. The last act of BOA's equity stripping scheme is the foreclosure itself and the two-year limitations period will not even begin to run—even under a continuing violations theory -- until the last predatory and discriminatory mortgage loan originated or purchased by BOA in Plaintiff's communities is repaid or defaults and is foreclosed upon.

Furthermore, the discriminatory housing practices that the County alleges, which continue to this day, distinguish this case from the cases BOA cites. *See, e.g., Doe v. R.R. Donnelly & Sons Co.*, 42 F.3d 439, 446 (7th Cir. 1994) (involving sexual harassment claim where the last alleged act occurred more than three years prior to the plaintiff's filing a charge with the EEOC); *Watkins v. Chicago Hous. Auth.*, 527 Fed. App'x 504, 506 (7th Cir. 2013) (involving Complaint that contained no factual content of an injury that accrued within the limitations period); *Lewis v. Xerox Corp.*, 1998 WL 160893 at *6 (N.D. Ill. Mar. 31, 1998) (Williams, J.) (no continuing violation for Title VII claim where conduct complained of pertained to earlier time periods and involved different time periods and different employees).[17]

Finally, BOA's argument that "the continuing violation doctrine is not available here," BOA Memo at 12-13, is meritless under the broad language of the FHA[18] and the numerous

---

[17] Indeed, the futility of BOA's argument is highlighted by its reliance on a case that has been expressly superseded by statute, *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 625, 28 (2007), for the proposition that "for limitations purposes, a court must look to when the alleged discriminatory practice occurred, and not to when the effects of the practice are felt." BOA Memo at 11. No fewer than 100 courts throughout the country have recognized that Congress abrogated the Court's holding there by passing the Lilly Ledbetter Fair Pay Act of 2009, which amended Title VII, 42 U.S.C. § 2000e-5(e) to bring just such claims within the statute. *See, e.g., Groesch v. City of Springfield*, 635 F.3d 1020, 1023-1026 (7th Cir. 2011) (recognizing that holding of *Ledbetter* was superseded by statute); *Mikula v. Allegheny Cty.*, 583 F.3d 181, 184 (3rd Cir. 2009) (same); *Darensburg v. Metro. Trans. Com'n*, 611 F.Supp.2d 994, 1041 n.4 (N.D. Cal. 2009) (same, and explaining that *Ledbetter* "undermin[ed] long-established principles of American law and [was] 'at odds with robust application of the civil rights law that Congress intended'").

[18] The FHA defines an "aggrieved person" as "any person who claims to have been injured by a

cases interpreting it, particularly the Supreme Court in *Havens*. *See* 455 U.S. at 380-81 (recognizing that "a plaintiff" may bring an action under the FHA for "not just one incident of conduct violative of the Act, but [for] an unlawful practice that continues into the limitation period," and ***warning lower courts*** that a "wooden" application of a statute of limitations that "ignores the continuing nature of the alleged violation" would only "undermine[] the broad remedial intent of Congress embodied in the Act").[19] Indeed, other courts have recently allowed individual governmental plaintiffs to proceed on pattern and practice claims, including against BOA. *See, e.g., Bank of America Corp.*, 2014 WL 2770083; *Citigroup Inc.*, 2014 WL 2571558; *Wells Fargo & Co.*, 2014 WL 2206368; *DeKalb Cty.*, 2013 WL 7874104.

The County is not seeking redress for discrete acts but for patterns of discriminatory housing practices that continue to this day. This Court should consider the nature of the County's claim, which is necessarily premised upon repeated conduct and not isolated incidents of discriminatory acts. *See, e.g. Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002) (recognizing that it is important to look at the nature of the claim and stating that "[h]ostile environment claims are different from discrete acts. Their very nature involves repeated

---

discriminatory housing practice; or believes that such person will be injured by a discriminatory housing practice that is ***about to occur***." 42 U.S.C. §3602(i) (emphasis added). Congress broadly defined a "discriminatory housing practice" as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C. §3602(f). Plaintiff affirmatively alleges that it is an "aggrieved person" under the FHA. Cmplt., ¶16. As an aggrieved person, Cook County is explicitly authorized to seek a broad range of remedies including actual and punitive damages, attorneys' fees and injunctive relief, including for injuries from BOA's discriminatory housing practices that have occurred or are "about to occur." 42 U.S.C. §3613(a) & (c).

[19] BOA's assertion that "only the Attorney General or a class of private plaintiffs can bring a 'pattern or practice' claim in any event", BOA Memo at 13, n. 16 is a gross mischaracterization of the law (and essentially a standing argument). In *Havens* the Supreme Court did not create any limitation on the kind of plaintiff who could bring such a claim and, in fact, expressly rejected the defendant's contention that only the Attorney General could bring a civil suit under the FHA to challenge a pattern or practice of unlawful conduct. 455 U.S. at 381, n.23.

conduct. . . . Such claims are based on the cumulative effect of individual acts").[20] *See also Havens*, 455 U.S. at 380-81. As in *Morgan*, the County's claims are plainly "based on the cumulative effect" of BOA's acts and therefore are timely under the continuing violations doctrine.

### B. Cook County Has Standing To Pursue Its FHA Claim

#### 1. Plaintiff Adequately Pled Article III Standing -- Which Is All That Is Required

Supreme Court precedent makes clear that standing under the FHA is very broad; it is limited only by the minimal constitutional requirements of Article III that a plaintiff "have suffered 'a distinct and palpable injury to himself' that is likely to be redressed if the requested relief is granted." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100, 110-11 (1978) (holding that a municipal government has Article III standing to pursue an FHA claim when it has alleged a loss in its tax base and revenue due to defendants' discriminatory housing practice); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376 (1982); *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 265 (7th Cir. 1997) (a plaintiff need not even prove a "tangible injury" to prevail on an FHA claim); *Hargraves v. Capital City Mortgage Corp.*, 147 F. Supp. 2d 1, 3 (D.D.C. 2001) ("'Prudential limits' on standing [under the FHA] do not apply, as the Act confers standing to the full extent permitted by Article III"). *Gladstone* resolves the standing issue because the Complaint here pleads the same types of injuries found by *Gladstone* to support a municipal government's FHA standing (in addition to many other injuries) and alleges that all of Plaintiff's injuries were caused by BOA's discriminatory housing practices.[21]

---

[20] *Kimbrew v. Fremont Reorg. Corp.*, 2008 WL 5975083 at *3-4 (C.D. Cal. Nov. 14, 2008) is distinguishable for this very reason because the plaintiff's claim there was not based on the cumulative effects of repeated conduct.

[21] Curiously, BOA's entire argument on standing in Section II A of their Memo fails to discuss the substance of the Supreme Court's controlling decision in *Gladstone,* resorting only to including

Should there be even a shred of doubt, the allegations of the Complaint go far beyond *Gladstone* and the three minimal pleading elements identified by the Supreme Court to establish constitutional standing: (1) an injury in fact—an invasion of a legally protected interest, which is both "concrete and particularized" and "actual or imminent"; (2) a "causal connection between the injury and the conduct complained of" – i.e. the injury must be "fairly traceable" to the challenged conduct; and (3) the alleged injuries will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff's hurdle to allege facts establishing standing is not high. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561. "For purposes of ruling on a motion to dismiss for want of standing, . . . the trial . . . court[] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Cook County has made concrete and particularized allegations regarding the numerous injuries in fact it has sustained directly resulting from BOA's broad equity stripping scheme. These include, without limitation: (1) economic harm (such as out-of-pocket costs, losses in property lien recording fee revenue, and a reduction in the County's tax base and tax revenues resulting from an underlying decline in property values that can ***be precisely determined through regression analysis***, Cmplt., ¶¶3, 5, 8-9, 408, 413-14, 419, 420, 422, 430, 433; [22] (2) non-

---

*Gladstone* in a string citation.

[22] In addition, the County was very careful to allege facts specific to each of the Defendants' activities and the resulting increase in foreclosure rates, particularly within high minority percentage rate population tracts within Cook County, *see, e.g.* Cmplt., ¶¶, 329-339, which also distinguishes this case from the Miami actions. *See City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348, (S.D. Fla. July 8, 2014) (Dimitrouleas, J.)(finding plaintiff did not adequately allege causation because it failed to allege statistics specific to the City of Miami); *City of Miami v. Wells Fargo & Co.*, No. 13-

economic injuries to the fabric of the County's communities and constituents (including deterioration its minority communities and blight) Cmplt., ¶¶9, 83, 351, 408, 434; [23] and (3) a frustration of the purposes and missions of the County's various departments and authorities, requiring reallocation of their human and financial resources to address the home vacancies and foreclosures that BOA's illegal actions have caused. Cmplt., ¶424. The County alleged the average total estimated damages from each foreclosure to range up to $34,000, and was careful to expressly limit damages to those that are actually caused by and traceable to Defendants and that will be precisely determined upon discovery. *See, e.g.,* Cmplt., ¶¶11, 412, 417-19, 423, 430-33.

Also included are allegations that the County faces **future harm** from the defaults and foreclosures resulting from BOA's continuing equity stripping scheme and seeks injunctive relief to prevent this future harm, Cmplt., ¶¶3, 115, 198, 213, 221, 356, 368, 384, 401, 407, 425, 428-29 & 445-47, which forms an independent basis for FHA standing. 42 U.S.C. §3602(i) & §3613(c).[24] Cook County also has alleged many specific facts supporting the unbroken causal

---

24508-CIV, 2014 WL _____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (adopting and incorporating the order in Bank of America decision); *City of Miami v. Citigroup, Inc.*, No. 13-24510-CIV, 2014 WL _____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (same).

[23] These allegations also distinguish this case from the Miami cases where the court found that the City of Miami's complaint, which alleged "merely economic injuries," did not suffice to confer standing on the City to bring its FHA claim. The County here has explicitly pled non-economic injuries that have numerous deleterious effects on communities, including white flight, which—by its very nature—deprives a community of integration. *See City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348, (S.D. Fla. July 8, 2014) (Dimitrouleas, J.); *City of Miami v. Wells Fargo & Co.*, No. 13-24508-CIV, 2014 WL _____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (adopting and incorporating the order in Bank of America decision); *City of Miami v. Citigroup, Inc.*, No. 13-24510-CIV, 2014 WL _____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (same).

[24] *See, e.g., Vill. Of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262-63 (1977) ("[i]t has long been clear that economic injury is not the only kind of injury that can support a plaintiff's standing" under the FHA); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (finding standing for organization that alleged non-monetary organizational harm to include impairment of ability to fulfill its purpose; *HUD v. Blackwell*, 908 F.2d 864, 872-73 (11th Cir. 1990); *Options Ctr. for Indep. Liv. v. G&V*

link between BOA's intentional discriminatory housing practice scheme of equity stripping and the foreseeable, if not intended, resulting loan defaults, home vacancies and foreclosures in Plaintiff's communities.[25] As discussed below, all of these allegations distinguish Cook County's Complaint from the complaints filed in the early *Birmingham* and *Baltimore* cases relied on by BOA. Finally, by not addressing the issue in its opening brief, BOA effectively concedes that a favorable outcome here (monetary damages and injunctive relief) will redress the County's

---

*Dev. Co.,* 229 F.R.D. 149, 152 (C.D. Ill. 2005); *Samaritan Inns, Inc. v. Dist. Of Columbia*, 114 F.3d 1227, 1233 (D.C. Cir. 1997).

[25] These allegations include: **(1)** The intentional nature of BOA's nationwide discriminatory housing practice of equity stripping, ***intentionally targeting*** minorities and ***knowingly*** making predatory mortgage loans to them that were ***destined to fail*** as a result of the loan terms themselves and the predatory way the loans were underwritten, *see, e.g.* Cmplt., ¶¶6-7, 84-103, 108, 111-12, 116-126, 130-35, 139-151, 174-181, 186, 289, 190-94, 312, 314, 325, 336, 338-39, 436, 438, 440 ; **(2)** BOA's top-down corporate driven policies and practices implementing its continuing scheme, supported by allegations of fact from numerous confidential witnesses, *see, e.g.* Cmplt., ¶¶6, 19, 26, 32, 139, 143, 147, 158, 161, 165, 168-69, 173, 178, 180, 290-299, 215-262, 264-309, 437; **(3)** The further continuation of BOA's scheme through additional loan making and the continued servicing of BOA's predatory and discriminatory mortgage loans until they did fail or until they will fail in the future, *see, e.g.* Cmplt., ¶¶368-401; **(4)** BOA's loan originations and wholesale loan purchases or funding of loans made by brokers in Plaintiff's communities, as reflected in the precise statistical, empirical and numerical loan data Plaintiff alleged, and the discriminatory impact of such lending in Plaintiff's communities, *see, e.g.* Cmplt., ¶¶ 326-339 **(5)** explicit causal allegations, supported by Congressional and industry findings, that the terms of the predatory loans themselves disparately affected minorities, particularly in Plaintiff's communities, *see, e.g.,* Cmplt., ¶¶ 39-63, 314-339; **(6)** BOA's efforts to actively conceal their scheme from federal regulators and Plaintiff, impeding Plaintiff's ability to provide the specific property address information Defendants claim is necessary at the pleading stage, including through BOA's creation and use of Mortgage Electronic Registration Systems (MERS), BOA's use of their complex bank holding company legal structure, and BOA's securitization activities, *see, e.g.* Cmplt., ¶¶13, 17-35, 64, 79, 105-108, 340-367; **(7)** BOA's own actions caused increased loan defaults, home vacancies and foreclosures on predatory and discriminatory loans they made in Plaintiff's communities, *see, e.g.* Cmplt., ¶¶4, 8,-9, 312-339; and **(8)** the U.S. liquidity and financial crisis in 2008, and the resulting economic decline thereafter, on which Defendants predominately rely to assert an intervening cause of the foreclosure crisis in an attempt to break the causal chain, was in fact caused by BOA's lending and securitization practices at issue here (in combination with the similar practices of certain other industry participants), *see, e.g.* Cmplt., ¶¶46-79. These detailed causation allegations further distinguish this action from *Miami* actions and eliminate any intervening causes that the court in the *Miami* cases believed might defeat proximate causation. *Compare Miami v. Bank of America Corp.*, with *Los Angeles v. CitiGroup Inc.,* 2014 WL 2571558 at *4-8 (finding that "many of the independent actions that Defendants contend defeat causation could plausibly be produced by or the result of Defendants' challenged conduct.") and *Los Angeles v. Wells Fargo*, 2014 WL 2206368 at *3-8 (same).

injuries; indeed, this element of standing is without reasonable dispute here.

Binding precedents from both the Supreme Court and the Seventh Circuit instruct that the Complaint goes far beyond the minimal Article III requirements to establish standing through many allegations of concrete, particularized, and statutorily cognizable injuries in fact that are "fairly. . . trace[able] to the challenged action of the defendant." *See, e.g., Lujan*, 504 U.S. at 560-61; *Arlington Heights*, 429 U.S. at 261-62; *Gladstone*, 441 U.S. at 99, 120*; Havens*, 455 U.S. at 378-79; *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.* 982 F.2d 1086, 1095 (7th Cir. 1992); *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990); *New West L.P. v. City of Joliet*, 491 F.3d 717, 721 (7th Cir. 2007); *Tyus*, 201 F.3d at 265.  Indeed, four separate federal district courts recently faced with similar motions to dismiss, similar facts and the same legal issues now before this Court, found that the municipal-government plaintiffs may pursue their FHA claims under Article III standing as set forth in *Gladstone* and its progeny. *See Bank of America Corp.,* 2014 WL 2770083 at *4-8 (finding city government had both Art. III and statutory standing under the FHA to assert claim based on defendants' predatory and discriminatory mortgage lending practices); *CitiGroup Inc.,* 2014 WL 2571558 at *4-8 (same; also finding that "many of the independent actions that Defendants contend defeat causation could plausibly be produced by or the result of Defendants' challenged conduct."); *Wells Fargo*, 2014 WL 2206368 at *3-8 (same); *DeKalb*, 2013 WL 7874104 at *6-7 (finding county government plaintiffs had FHA standing to sue mortgage lender because they "alleged similar types of injuries" as in *Gladstone* and had satisfied the "fairly traceable[] component of standing in that the government and industry findings, as well as the empirical data contained in the Complaint raise the pleadings above the speculative level").

## 2. Defendants' Article III Standing Analysis is Flawed and Misleading

Defendants rely heavily on *City of Birmingham v. Citigroup, Inc.*, *et al.*, No. 2:09-CV-00467-KOB, 2009 WL 8652915 (N.D. Ala. Aug. 19, 2009) ("*Birmingham*"), and an interim decision in the *Baltimore* litigation, *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, 677 F. Supp. 2d 847 (D. Md. 2010) ("*Baltimore II*").[26]  BOA Memo at 14.  But those cases are distinguishable on their face because they lacked the particularized loss causation allegations in Plaintiff's Complaint here.  Indeed, the court in *Baltimore* subsequently held that the City of Baltimore had Article III standing because it amended its complaint to include several additional factual allegations -- like the intent and knowledge allegations already alleged in Cook County's Complaint here -- that provided "the missing causal link." *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, CIV. JFM-08-62, 2011 WL 1557759 at *3 (D. Md. Apr. 22, 2011) ("*Baltimore III*"). [27]  In reaching that conclusion, the court in *Baltimore III* expressly distinguished the *Birmingham* case and the *Tingley* decision it relied on because those "plaintiffs sought sweeping damages but presented only general and conclusory allegations of harm." *Id.* at *5, n.5. [28] *See also City of Memphis v. Wells Fargo Bank, N.A.*, 2011 WL 1706756 *5, *9 (W.D.

---

[26] BOA misleadingly abbreviates the name of this decision as "*Baltimore I.*"  *See* BOA Memo at 14. In fact, this was the second decision in the *Baltimore* litigation.  The prior decision, *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*, 631 F. Supp. 2d 702 (D. Md. 2009) (hereafter "*Baltimore I*") denied defendants' initial motion to dismiss and found that the City of Baltimore had standing under the FHA to pursue a claim against a mortgage lender for predatory loans that caused foreclosures and home vacancies.

[27]  A copy of *Baltimore III* is attached as Exhibit H to the Dailey Decl.

[28] *Birmingham*'s legal analysis was inherently flawed. The *Tingley* case on which *Birmingham* relied did not involve an FHA claim and did not even consider *Gladstone*.  *See Tingley v. Beazer Homes Corp.*, No. 3:07-CV-176, 2008 WL 1902108 (W.D.N.C. Apr. 25, 2008). Moreover, the court in *Birmingham* found *Tingley* to be "[t]he most factually analogous case the parties presented," *Birmingham,* 2009 WL 8652915 at *6, notwithstanding that the *Birmingham* court had been provided with a copy of the July 2, 2009 decision in *Baltimore I* (denying defendants' initial motion to dismiss and finding that Baltimore had standing under the FHA to pursue a claim that was identical to the claim asserted in *Birmingham*). A copy of *Baltimore I* is attached as Exhibit I to the Dailey Decl.  Curiously, BOA fails in its briefing even to cite to *Baltimore I* or *Baltimore III*, let alone point out that *Baltimore III* explicitly distinguished the *Birmingham* decision and the complaints filed in *Birmingham*, *Baltimore I*, *Baltimore II* and *Tingley*.

Tenn. 2011) (also distinguishing the *Birmingham* complaint, and the initial *Baltimore* complaint, in denying defendants' motion to dismiss).

BOA also erroneously argues that the Complaint does not adequately allege a "causal connection" between Plaintiff's injuries and BOA's conduct because the Complaint does not specify property addresses where loans were made and foreclosures have occurred. *See* BOA Memo at 23. But at this early stage of litigation, Cook County need not specify addresses of vacant or foreclosed properties as the Complaint's loss-causation allegations are more than adequate for a number of reasons. *See, e.g., DeKalb Cty.*, 2013 WL 7874104, at *21 (denying motion to dismiss and allowing plaintiff to amend complaint before trial and after discovery to include list of properties on which actual damages are being sought, but not limiting plaintiffs' relief to only damages from foreclosures or vacancies of such properties); *Baltimore I*, 631 F. Supp. 2d 702 (denying initial motion to dismiss and complaint did not identify specific property addresses).

*First*, Plaintiff's basis for standing under the FHA is not limited to just those injuries caused by BOA's discriminatory practices that have already occurred, but also arises from the additional future harm Plaintiff believes is about to occur as a result of the continuation of BOA's scheme, *see* 42 U.S.C. §3602(i) and §3613(c). The County could not possibly identify addresses of foreclosures or vacancies that did not occur before the Complaint was filed, but certainly will identify "future" properties at trial after an opportunity for discovery.

*Second*, unlike the *Birmingham*, *Baltimore II* and *Memphis* cases relied on by BOA, Cook County has further established the plausibility of its FHA claim with detailed allegations of confidential witness information and extensive allegations of BOA's deliberate intent and

19

knowledge in perpetrating its scheme. *See, e.g.,* Cmplt., ¶¶ 6-7, 19, 26, 32, 84-103, 108, 111-12, 116-126, 130-35, 139-151, 158, 161, 165, 168-69, 173-181, 186, 190-94, 215-262, 264-309, 312, 314, 325, 336, 338-39, 436-38, 440. These allegations, along with empirical data and industry and government findings alleged by the County, *see, e.g.,* Cmplt., ¶¶ 39-79, 314-339, are sufficient at the pleading stage to show that many of the so-called "intervening" causes Defendants identify in their brief were the direct result of Defendants' predatory and discriminatory equity stripping scheme. *See, e.g., City of Los Angeles v. Wells Fargo & Co.,* 2014 WL 2206368 at *4 (C.D. Cal. May 28, 2014) ("The Court finds that many of the independent actions that Defendants contend defeat causation are produced by or the result of Defendants' challenged conduct").

*Third*, unlike the *Birmingham*, *Baltimore*, *Memphis, Bank of America, Citigroup* and *Wells Fargo* cases, Cook County specifically alleges that BOA actively sought to conceal property address and specific loan information from its federal regulators and Plaintiff as part and parcel of its equity stripping scheme. Cmplt. ¶¶ 13, 17-35, 64, 79, 340-367.[29] Thus, Plaintiff has alleged that address information can only be obtained through discovery of the Defendants. *See*, e.g, Cmplt., ¶¶ 93-100, 313, 353, 340-63, 432-33.

---

[29] The County's argument regarding Mortgage Electronic Registration Systems ("MERS"), notwithstanding BOA's attempt to confuse the issue, BOA Memo at 14 & 30, n. 27, is that BOA actively sought to conceal its wrongdoing from the County. Indeed, Plaintiff has alleged that the information necessary to determine precise property addresses, the specific characteristics of BOA loans on those properties, the manner and extent those loans have been serviced, and the locations of resulting foreclosures is in BOA's possession or control because BOA is required to collect and maintain it for a variety of operational and legal reasons, *see, e.g.,* Cmplt., ¶¶ 86-101, 340-362 and that discovery of BOA and MERS will be necessary to get all this information. *See, e.g.,* Cmplt., ¶¶ 313, 353, 356, 363, 432-33. At a bare minimum, Plaintiff should be afforded the opportunity to conduct this discovery. *See, e.g., DeKalb Cty.*, 2013 WL 7874104, at *7; *Citigroup Inc.*, 2014 WL 2571558 at *7 (discussing *Maya v. Centex Corp,,* 658 F.3d 1060, 1072 (9th Cir. 2011) where court held it was error not to grant leave to amend where homeowners proffered expert report distinguishing effects of developer-defendants' actions from general economic influences).

*Fourth*, the Complaint expressly limits Plaintiff's damages to only those damages BOA actually caused through those loans BOA originated, funded or serviced (and which property addresses will be identified in discovery); the County does not seek from BOA all of its damages resulting from the entire foreclosure crisis as the original complaints in *Birmingham* and *Baltimore* did. *See, e.g.,* Cmplt. ¶¶11, 412, 417-19, 423, 430-31. **Finally**, imposing any requirement on Cook County at the pleading stage to identify specific property addresses goes far beyond *Gladstone* and its progeny and would conflict with the FHA's "broad and inclusive" language that must be given "generous construction," *Trafficante*, 409 U.S. at 209, 212, particularly Plaintiff's statutory right for relief from harm that is about to occur.[30]

### 3. *Lexmark* Supports Plaintiff's Standing

Contrary to BOA's position, nothing in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014), or *Thompson v. N. Am. Stainless, L.P.*, 131 S.Ct. 863 (2011), abrogated the Supreme Court's prior holdings in *Gladstone*, *Havens*, or *Trafficante*, requiring an aggrieved municipality to meet only the minimal Article III standing requirements to maintain an FHA claim. *Havens*, 455 U.S. at 372; *Gladstone*, 441 U.S. at 110; *Trafficante*, 409 U.S. at 209 (stating that the language of the FHA is "broad and inclusive and that Congress intended to define standing as broadly as permitted by Article III"). In fact, in two recent post-*Lexmark* decisions addressing this precise issue—including one decision denying a similar motion to dismiss by Bank of America--federal district courts for the Central District of California found

---

[30] The statutory language of the FHA reflects the wide discretion courts have under the FHA in fashioning any award of "actual and punitive damages," "injunctive relief," and/or "attorneys fees" to address any discriminatory housing practice a court determines "has occurred *or is about to occur*." 42 U.S.C. § 3613(c)(1) & (2) (emphasis added). Thus, the identification of specific property addresses cannot be necessary to establish traceability to satisfy Article III standing if courts have the authority to grant injunctive relief for a discriminatory housing practice that is "about to occur." *See, e.g., HUD v. Blackwell*, 908 F.2d 864, 872-73 (11th Cir. 1990); *Options Ctr. For Indep. Living v. G&V Dev. Co.*, 229 F.R.D. 149, 152 (C.D. Ill. 2005) (recognizing valid claims for non-economic injury).

wholly unpersuasive the same "zone of interest" argument made again by BOA here. [31] *See Bank of America Corp.*, 2014 WL 2770083 at \*8 ("based on current precedent, to establish standing to bring a claim under FHA, a plaintiff is only required to satisfy Article III"); *Wells Fargo*, 2014 WL 2206368 at \*7 ("Since the Court has already found that the city has adequately alleged Article III standing [for both economic and non-economic injury], the City's alleged injuries fall within the FHA's zone of interests"). [32]

Even if this Court could possibly find that Plaintiff's Article III standing alone is insufficient, *Lexmark* held that the zone-of-interests test is not "especially demanding," that it "forecloses suit **only** when a plaintiff's interests are **so marginally related to or inconsistent with the purposes implicit in the statute** that it cannot reasonably be assumed that" Congress

---

[31] The County recognizes that the District Court for the Southern District of Florida recently ruled in favor of Defendants' motions to dismiss in three separate FHA actions brought against lenders, including Bank of America, on the grounds that the City of Miami failed to establish prudential standing in those actions. *See City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348, (S.D. Fla. July 8, 2014) (Dimitrouleas, J.); *City of Miami v. Wells Fargo & Co.*, No. 13-24508-CIV, 2014 WL _____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (adopting and incorporating the order in Bank of America decision); *City of Miami v. Citigroup, Inc.*, No. 13-24510-CIV, 2014 WL _____, (S.D. Fla. July 9, 2014) (Dimitrouleas, J.) (same). The County respectfully submits that these cases were wrongly-decided in light of established Supreme Court precedent. *See Havens*, 455 U.S. at 372; *Gladstone*, 441 U.S. at 110; *Trafficante*, 409 U.S. at 209. Further, the court in the Miami actions expressly acknowledged that other courts have determined that Article III standing alone is sufficient in FHA actions, but explained that it was constrained by Eleventh Circuit's opinion in *Nasser v. City of Homewood*, 671 F.2d 432 (11th Cir. 1982), which plainly has no precedential value here.

[32] BOA's reliance on *Thompson* is both misplaced and misleading. The Supreme Court there limited its holding to a Title VII employment discrimination suit, not a suit under Title VIII, such as an FHA claim. *Thompson*, 131 S.Ct. at 870. Indeed, BOA failed to apprise this Court of other decisions explicitly finding that *Thompson* does not preclude standing in FHA cases. *See, e.g., Equal Rights Ctr. v. Post Prop's, Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011); *Mazzocchi v. Windsor Owners Corp.*, 2012 WL 3288240 at \*6 (S.D.N.Y. Aug. 6, 2012); *Levy v. Trent Motel Assoc., L.P.*, 2011 WL 3903647 (E.D. Pa. Aug. 26, 2011); *Equal Rights Ctr. v. Equity Res.*, 788 F. Supp. 2d 707 (D. Md. 2011). Although the court in *Hous. Opp. for Excellence, Inc. v. Wedgewood Condo. Ass'n, Inc.*, 2012 WL 4193969 (S.D. Fla., Sept. 19, 2012), applied *Thompson* to individual FHA plaintiffs (and found that they had standing because "aggrieved persons" under the FHA encompasses "more than merely the persons who are the object of discriminatory housing practices . . . [if] they could show they had suffered an injury because of the discriminatory practice"), the court did not apply *Thompson* to an organization that brought suit under the FHA "because the case law makes clear that it has standing to file suit for [d]efendants's violations of the Federal Fair Housing Act." *Id.* at \*4-5 (citing *Havens*, 455 U.S. at 379).

authorized the plaintiff to sue, and that the benefit of any doubt must go to the plaintiff. 134 S.Ct. at 1389 (emphasis added). Thus, when applied here, the zone of interest test affirmatively supports Plaintiff's standing and lays bare BOA's assertion that Plaintiff falls within the FHA's zone of interest only where Plaintiff alleges loss of "racial integration." BOA Memo at 27.

Congress' establishment of a very broad zone of interest to fulfill the FHA's remedial purpose is clear from the operative provisions of the statute itself. The FHA defines an "aggrieved person" as "*any person* who *claims* to have been injured by *a discriminatory housing practice*; *or believes* that such person *will be injured* by a discriminatory housing practice *that is about to occur*." 42 U.S.C. §3602(i) (emphasis added). Congress broadly defined a "discriminatory housing practice" as "an act that is unlawful under section 3604, 3605, 3606, or 3617 of this title." 42 U.S.C. §3602(f). As an aggrieved person, Cook County is explicitly authorized to seek a broad range of remedies including actual and punitive damages, attorneys' fees and injunctive relief, including for injuries from BOA's discriminatory housing practices that have occurred or are "about to occur." 42 U.S.C. §3613(a) & (c).

Plaintiff also has alleged proximate causation sufficient to defeat BOA's standing argument. To show proximate causation for an FHA claim in the Seventh Circuit, a plaintiff need only show that its injury is the "direct result" of the defendant's alleged discriminatory practice. *See U.S. v. Valistrieri*, 981 F.2d 916, 933 (7th Cir. 1992)[33] Importantly, Plaintiff is not seeking to "assert claims under the guise of another's FHA rights." *See DT Apt. Grp., LP v. CWCapital, LLC*, 2012 WL 6693192 at *16 (N.D. Tex. 2012). The County's injuries are separate and distinct from the borrowers' injuries, not merely "collateral," and, as shown above in Sections B.1-B.2,

---

[33] *U.S. v. Valistrieri*, upholding award of damages for distress or mental anguish to plaintiff "testers," who never actually suffered a denial of integrated living, because their injuries were "direct result" of defendant's violation of the FHA. *Id.* at 933.

they flow directly in an unbroken chain of causation from BOA's discriminatory housing practices. Indeed, contrary to BOA's mischaracterization of the Complaint, Plaintiff explicitly alleges that BOA's scheme has had segregative and discriminatory effects, including blight in Cook County, establishing the causation element.[34]  Cmplt., ¶¶ 9, 83, 351, 408, 434.

BOA's entire standing argument, at best, lacks merit and therefore should be summarily dispensed with by this Court.

### C.  The Complaint  States A Valid FHA Claim

The County's Complaint fairly puts BOA on notice of its claim, which is all Federal Rule 8 requires.  *See, e.g., Bank of America.,* 2014 WL 2770083 at \*6-7; *Citigroup, Inc.*, 2014 WL 2571558 at \*8; *Wells Fargo*, 2014 WL 2206368 at \*4-5; *DeKalb Cty.,* 2013 WL 7874104 at \*7. Here, BOA's Rule 12(b)(6) motion attempts to challenge the sufficiency of the Complaint on the ground that the allegations do not establish a claim on which relief may be granted.  *See, e.g., Engel v. Buchan,* 710 F.3d 698, 709 (7th Cir. 2013). A plaintiff need not plead evidence, however, s*ee, e.g., Erickson v. Pardus*, 551 U.S. 89, 93 (2007), and "legal conclusions can provide the framework of a complaint so long as they are supported by factual allegations." *Engel*, 710 F.3d at 709 (quoting *Iqbal v. Twombly*, 556 U.S. 662, 679 (2009)). Thus, the County's Complaint should not be dismissed for failure to state a claim because it contains "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the complaint's allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  In ruling on a motion to dismiss, the Court must accept the Complaint's factual allegations as true.  *See,*

---

[34] Increased urban blight and decay, caused by the explosion of foreclosures and vacancies, is widely recognized as leading to "white flight," thereby in turn further segregating affected communities and neighborhoods. *See, e.g., Laufman v. Oakley Bldg. & Loan Co.*, 408 F. Supp. 489, 497 (S.D. Ohio 1976) (discussing problems of residential housing segregation, racial slum formation, redlining and the interplay of "white flight" including "barriers to occupancy" such as "higher mortgage interest rates").

*e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

### 1. The FHA Indisputably Permits Claims Alleging Disparate Impact

Cook County completely aligns with this Court's well-reasoned analysis in *Hoffman v. Option One Mortgage Corp.,* which concluded that "disparate impact claims are not precluded under…the FHA." 598 F. Supp. 2d. 1009 (2008) (Bucklo J.) (collecting cases). In *Hoffman*, this Court denied the defendants' motion to dismiss, reasoning that the FHA plaintiff proffered sufficient statistical analyses showing the defendants' credit pricing systems had a discriminatory impact. 589 F. Supp. 2d at 1011 (*citing Zamudio v. HSBC N. Am. Holdings Inc.,* No. 07 C 4315, WL 517138, at *2 (N.D.Ill. Feb. 20, 2008) (Darrah, J.)). Attempting to evade this precedent, BOA mis-analogizes to *Smith v. City of Jackson*, 544 U.S. 228 (2005), a case interpreting the Age Discrimination in Employment Act ("ADEA"). *See* BOA Memo. at 27. But the ADEA and the FHA address different evils and operate in different contexts; accordingly, whatever a plaintiff must prove in an ADEA claim, and whatever the appropriate defenses might be, Cook County's claim here must be analyzed under the FHA statute governing it.[35] As BOA admits, judges in this district have rightly adhered, post-*Smith*, to the Seventh Circuit's holding that claims based on disparate impact are actionable under the FHA. *See* BOA Memo. 27, n.25 (citing *Zamudio*, 2008 WL 517138; *Hoffman*, 589 F. Supp. 2d 1099). There should be no dispute that Cook County can proceed on a disparate-impact theory.

---

[35] The *Smith* court relied heavily on legislative history in interpreting the ADEA, *see, e.g.*, 544 U.S. at 232, 238, 240-41 (referencing the Wirtz Report). The history surrounding the FHA's passage is plainly different, and that alone distinguishes *Smith*. It also bears mention that the agency vested with rule-making authority for the FHA, *see* 42 U.S.C. §3614a, interprets the FHA to prohibit discriminatory effects, 24 C.F.R. § 100.500, and courts owe deference to that reasonable interpretation. *See, e.g., Smith,* 544 U.S. at 243 (Scalia, J., concurring) ("This is an absolutely classic case for deference to agency interpretation."). For these reasons, the textual links BOA attempts to draw, *see* BOA Memo. 27, are misplaced. Indeed, the court in *Zamudio*, concluded that *Smith* "does not reach so far as to prohibit disparate-impact claims under other statutes that do not contain the same language, nor does it set forth a new test for determining whether a statute supports disparate-impact claims." 2008 WL 517138, at *2.

### 2. The Complaint States An FHA Claim Based on Disparate Impact

The County states a valid claim based on disparate-impact because the County has identified a facially race-neutral practice that disproportionately visited adverse effects on racial minorities. *See, e.g., Smith*, 544 U.S. at 241-43; *Daveri Dev. Grp., LLC v. Vill. of Wheeling*, 934 F. Supp. 2d 987, 1002 (N.D. Ill. 2013) (Lee, J.). The Complaint here alleges a variety of such practices.[36] The Complaint further alleges (with the support of empirical data) that these policies were all part of the alleged equity stripping scheme and had a number of discriminatory effects including: (1) increased numbers of predatory loans being made to minorities (even adjusting for credit scores) Cmplt. ¶¶ 6-7, 45, 237-51; leading to (2) increased concentrations of loan defaults, vacancies and foreclosures in minority communities. Complt. ¶¶ 7-8, 318-323, 332-339, 359-361. Consequently, Defendants' argument that Cook County's disparate impact claim fails because it "has not identified any specific practice that has caused a disparate impact on minorities" is plainly groundless. To the extent Defendants also argue that Cook County's "statistics are deficient," BOA Memo 28, Plaintiff's statistical information is actually the publicly available empirical data of Defendants' own mortgage lending activity that Defendants themselves reported to the federal government pursuant to the Home Mortgage Disclosure Act ("HMDA"). Cmplt. ¶¶38, 39, 214, 210, 312. That data reveals the precise extent to which Defendants' predatory lending activities were focused on minorities, focused in minority communities and focused in high-foreclosure-rate- high-minority neighborhoods. Cmplt. ¶¶ 318-

---

[36] These include: (1) Defendants' equity stripping schemes of issuing mortgage loans based on the value of the real-estate asset collateralizing the loan and irrespective of the borrower's ability to repay; *see, e.g.,* Cmplt. ¶¶ 103; (2) steering credit worth borrowers to more costly loans (Complt. ¶¶ 55, 56, 85, 90, 103); (3) discretionary pricing policies under which Defendants encouraged their employees and agents to impose additional fees and costs on their borrowers (Complt. ¶¶ 6, 196, 209, 217, 219, 220-223, 297, 309, 405); and (4) Defendants' underwriting, appraisal and override policies that encouraged the issuance of loans to borrowers who might not be able to repay their loans (Complt. ¶¶ 6, 56, 58, 68, 184, 108-109, 112, 118-122, 126, 139, 143, 168, 173, 224-234, 237-263, 264- 276, 277-296, 297-311).

323, 332-339, 359-361, 437-440. Defendants insist that Plaintiff must allege a statistical analysis showing minorities with good credit who received burdensome loans as compared with minorities with more credit risk who received burdensome loans. BOA Memo 28. But this is entirely unnecessary as a matter of law, *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290,[37] and is unnecessary in the context of Defendants' behavior alleged in this Complaint.[38]

Indeed, at the pleading stage, alleging reliable statistics is sufficient, and the Court must accept the Complaint's factual allegations as true. *See, e.g., Brooks*, 578 F.3d at 581. Therefore Cook County alleges "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting an FHA claim based on a disparate-impact theory. *Bell Atlantic Corp.*, 550 U.S. at 556.[39] Several courts have recognized as much based on factual allegations very similar

---

[37] The Seventh Circuit has clearly stated, "We… hold that at least under some circumstances a violation of section 3604(a) can be established by a showing of discriminatory effect without a showing of discriminatory intent… As overtly bigoted behavior has become more unfashionable, evidence of intent has become harder to find." *Metro. Housing Dev. Corp.*, 558 F.2d at 1290. Plaintiff alleges a substantial amount of direct evidence that ordinarily is not available to minorities. Discriminatory effect thus became a second means of proving discrimination but plaintiff may still show intent. Notwithstanding Plaintiff's options, the Complaint alleges both discriminatory effect and intent.

[38] Bank of America's "Vice President of Structured Products at Bank of America specifically told [CW] that he "didn't give a flying f*** about DTI [debt to income ratio]" and other credit characteristics of the loans being reviewed." Cmplt, ¶ 295. Insisting that Plaintiff allege an analysis of the differential credit scoring of minorities when Plaintiff has alleged that Bank of America completely refused to conduct any fair and proper credit analyses from the beginning and simply issued loans based on the borrowers' race and home equity is disingenuous. Moreover, Defendants actively concealed their lending activity, Cmplt. ¶¶340-363, don't publicly report HMDA loan level data that would be necessary to make that comparison even though they are required by law to collect and maintain it, *see* Cmplt. ¶¶ 93-100, 362, and this information is only obtainable in discovery, *see* Cmplt. ¶¶ 313, 353, 432-433.

[39] We note that the Seventh Circuit has identified four factors for courts to consider in assessing disparate-impact-theory claims. *See Metro. Housing Dev. Corp.*, 558 F.2d at 1290 ("(1) how strong is the plaintiff's showing of discriminatory effect; (2) is there some evidence of discriminatory intent, though not enough to satisfy the constitutional standard of *Washington v. Davis*; (3) what is the defendant's interest in taking the action complained of; and (4) does the plaintiff seek to compel the defendant to affirmatively provide housing for members of minority groups or merely to restrain the defendant from interfering with individual property owners who wish to provide such housing."). We have not addressed

to those alleged here. *See, e.g., Bank of America*, 2014 WL 2770083 at *10-11; *Citigroup*, 2014 WL 2571558 at *10-11; *Wells Fargo*, 2014 WL 2206368 at *10. *DeKalb Cty.*, 2013 WL 7874104 at *12-16; *City of Memphis*, 2011 WL 1706756 *11-15.

### 3. The Complaint States An FHA Claim Based on Intentional Targeting Or Disparate Treatment

That intentional discrimination claims may be brought under the FHA by any "aggrieved person," such as Plaintiff here is indisputable. 42 U.S.C. §3613; *Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885, 901 (N.D. Ill. 2009) (Castillo, R.); *Martinez v. Freedom Mortgage Team, Inc.*, 527 F. Supp. 2d 827, 834-35 (N.D. Ill. 2007) (Shadur, J). "Disparate treatment involves a showing of intentional discrimination, provable via either direct or circumstantial evidence." *Daveri*, 934 F.Supp. 2d at 997 (quoting *Nikolich v. Vill. of Arlington Heights*, 870 F.Supp.2d 556, 562 (N.D. Ill. 2012) (Shadur, J.)). Thus, at the pleading stage, Cook County need only allege specific conduct that "if proven at trial, could support an inference of intentional discrimination," enabling a fact finder to:

> determine that defendants had harbored ill will toward racial minorities, *or* that they had used race as a proxy, doing business exclusively with minorities out of the biased perception that those individuals would be especially vulnerable to fraud. The second conclusion, no less than the first, would support a judgment for plaintiffs.

*Barkley v. Olympia Mortgage Co.*, 04 CV 875 RJD/KAM, 2007 WL 2437810 *11-15 (E.D.N.Y. Aug. 22, 2007) (*collecting* and *citing* cases).[40]

---

these factors because they probe the sufficiency of the evidence, and cannot be applied at this stage of proceedings. *See, e.g., id.* (applying these factors after a trial on the merits); *Daveri*, 934 F.Supp.2d 987 (applying these factors after an evidentiary hearing).

[40] *See also Whitley,* 607 F. Supp. 2d at 901 (sustaining FHA claim of intentional discrimination on allegations mortgage borrowers received loans on less favorable terms); *Martinez,* 527 F.Supp.2d at 834-35 (sustaining FHA claim on allegations of targeting minority mortgage borrowers for higher-cost loans). BOA relies on *South-Suburban Hous. Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868 (7th Cir. 1991), to argue that Plaintiff's intentional discrimination claim must be dismissed under Rule 12(b)(6) in the absence of additional allegations that Defendants "purposefully" made predatory mortgage loans to

Contrary to BOA's spurious assertions, the Complaint contains extensive allegations that each of the BOA defendants had discriminatory intent when they targeted minority borrowers in Plaintiff's communities for predatory mortgage loans as part of their equity stripping schemes. *See, e.g,,* Cmplt. ¶¶ 6-8, 117-126, 130-131, 158 174-181, 190-194, 436. Indeed, the Complaint alleges that Countrywide's CEO "publicly touted Countrywide's intention to exploit minority mortgage lending markets to drive Countrywide's growth," *see* Cmplt. ¶¶ 117-125, and that Defendant Bank of America published documentation on how to do it using data mining techniques. *See* Cmplt. ¶¶180-181. Such explicit allegations, indeed admissions, of discriminatory intent are rare, particularly when Defendants' alleged actions also are supported by confidential witness allegations of Defendants' former employees. *See, e.g.,* Cmplt. ¶¶ 169, 178, 190-94, 205. And, although a plaintiff may choose direct or circumstantial evidence, *see Daveri*, 934 F.Supp. 2d at 997, the Complaint here also alleges empirical data further reflecting the intentional nature of Defendants' lending practices.[41] Complt. ¶¶ 318-323, 332-39.

The Complaint undoubtedly adequately pleads disparate treatment. *See, e.g., Bank of America*, 2014 WL 2770083 at *10-11; *Citigroup*, 2014 WL 2571558 at *10-11; *Wells Fargo*, 2014 WL 2206368 at *10. *DeKalb Cty.*, 2013 WL 7874104 at *12-16; *City of Memphis*, 2011 WL 1706756 *14-15, n. 56 (citing cases from courts nationwide supportive of this proposition).

---

minorities "'***because of***' those borrower's minority status"; i.e., because "Defendants' lending was motivated by racial animus." BOA Memo at 29 (emphasis in original). This reliance is completely misplaced since neither *South-Suburban* nor the *Village of Bellwood v. Dwivedi,* 895 F.2d 1521, 1529–30 (7th Cir.1990) on which *South-Suburban* relied, addressed pleading standards on a motion to dismiss. Both cases dealt with post-trial appeals of purported errors relating to findings of fact on the evidence, not the adequacy of the pleadings. The same goes for Defendants' reliance on *Gilty v. Village of Oak Park*, 919 F 2d. 1247, 1250 (7th Cir. 1990), *see* BOA Memo at 30.

[41] To the extent Defendants' challenge Plaintiff's empirical allegations, proof of discriminatory motive can be shown in some situations by the mere fact of difference in treatment. *See International Brotherhood of Teamsters,* 431 U.S. 324, 339 (1977) ("we have repeatedly approved the use of statistical proof, where it reached proportions comparable to those in this case").

**D. The Complaint Adequately Alleges That Bank Of America Is Liable For All Named Defendants**

Bank of America suggests that it should not be held responsible for the Countrywide and Merrill Lynch Defendants. *See* BOA Memo at 1, 3 n. 1. But Plaintiff has extensively alleged that Bank of America is liable as their successors in interest because Bank of America purchased those entities in whole pursuant to stock acquisitions, merged and reorganized them into Bank of America or its subsidiaries, and acknowledged its responsibility for Countrywide's and Merrill Lynch's prior malfeasance as a result of the acquisitions. Cmplt. ¶¶ 28, 448-476. Plaintiff also identified the various parent-subsidiary relationships among the Defendants, Cmplt. ¶¶ 17-35, and alleged that each of three Defendant groups operated as common enterprises and under common control, Cmplt. ¶¶26-27, 32-34. At this stage of the litigation, these allegations provide adequate notice of Cook County's claims to each of the named defendants under Federal Rule 8(a). *See Citigroup*, 2014 WL 2571558 at *13; *Wells Fargo*, 2014 WL 2206368 at *12.

## CONCLUSION

For all the foregoing reasons, BOA's motion to dismiss should be denied.

Dated: July 15, 2014

ANITA ALVAREZ,
STATE'S ATTORNEY FOR COOK COUNTY

By:     /s/ Daniel A. Dailey
        Special Assistant State's Attorney

        James D. Montgomery, Sr.
        jmontgomery@jdmlaw.com
        James D. Montgomery, Jr.
        james2@jdmlaw.com
        John K. Kennedy
        jkennedy@jdmlaw.com
        Daniel A. Dailey
        ddailey@jdmlaw.com

JAMES D. MONTGOMERY AND
ASSOCIATES, LTD.
One North LaSalle Street
Suite 2450
Chicago, Illinois 60602
Phone: (312)977-0200
Fax: (312)977-0209

James M. Evangelista (admitted *pro hac vice*)
jim@hpllegal.com
Jeffrey R. Harris (admitted *pro hac vice*)
jeff@hpllegal.com
Darren W. Penn (admitted *pro hac vice*)
darren@hpllegal.com
David J. Worley (admitted *pro hac vice*)
david@hpllegal.com
HARRIS PENN LOWRY LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA  30361
Phone: (404)961-7650
Fax: (404)961-7651

*Special Assistant State's Attorneys*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I served the above and foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.


Dated:  July 15, 2014                         /s/ Daniel A. Dailey
                                              Daniel A. Dailey