2014 WL 2770083
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

CITY OF LOS ANGELES
v.
BANK OF AMERICA CORPORATION, et al.

No. CV 13–9046 PA (AGRx). | Signed June 12, 2014.

**Attorneys and Law Firms**

Clifton W. Albright, Albright Yee and Schmit LLP, Michael Nelson Feuer, Los Angeles City Attorney's Office, Los Angeles, CA, Elaine T. Byszewski, Lee M. Gordon, Hagens Berman Sobol Shapiro LLP, Pasadena, CA, Howard S. Liberson, Joel Keith Liberson, Trial and Appellate Resources PC, El Segundo, CA, Robert S. Peck, Washington, DC, for City of Los Angeles.

Laura Alexandra Stoll, Steven A. Ellis, Goodwin Procter LLP, Los Angeles, CA, James W. McGarry, Goodwin Procter LLP, Boston, MA, Thomas M. Hefferon, Goodwin Procter LLP, Washington, DC, for Bank of America Corporation, et al.

**Opinion**

**Proceedings: IN CHAMBERS—COURT ORDER**

PERCY ANDERSON, District Judge.

**\*1** Paul Songco, Deputy Clerk.

Before the Court is a Motion to Dismiss filed by defendants Bank of America Corporation, Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, and Countrywide Bank FSB ("Defendants") (Docket No. 27). Plaintiff City of Los Angeles ("Plaintiff") has filed an Opposition. The parties also filed supplemental briefing. Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7–15, the Court finds this matter is appropriate for decision without oral argument.

**I.** *Factual & Procedural Background*
This suit is brought pursuant to the Fair Housing Act of 1968 ("FHA"), as amended, 42 U.S.C. §§ 3601, et seq., to seek redress for injuries allegedly caused by Defendants' pattern or practice of illegal and discriminatory mortgage lending. Specifically, Plaintiff seeks injunctive relief and damages for financial injuries due to foreclosures on Defendants' loans in minority neighborhoods and to minority borrowers that are the result of Defendants' discriminatory lending practices. (Compl.¶ 2.) Plaintiff alleges that beginning in 2004, Defendants began to flood historically under-served minority communities with high cost and other "predatory" loans, allegedly constituting "reverse redlining." (Compl.¶¶ 3–5, 11.) The Complaint refers to Defendants as "BoA/Countrywide," "BoA" or "the Bank."

Plaintiff alleges that Defendants engaged in both redlining and reverse redlining.[1] Plaintiff further alleges that Defendants' pattern and practice of reverse redlining has caused an excessive and disproportionately high number of foreclosures on the loans it has made in the minority neighborhoods of Los Angeles. (Compl.¶ 9.) According to the Complaint, Defendants' practice of traditional redlining has also caused an excessive and disproportionately high number of foreclosures in the minority neighborhoods. (Compl.¶ 10.) The Complaint alleges that Defendants have engaged in a continuous pattern and practice of mortgage discrimination in Los Angeles since 2004 by imposing different terms or conditions on a discriminatory basis. (Comp.¶ 3.)

[1] "BoA engaged in redlining, and continues to engage in said conduct, by refusing to extend mortgage credit to minority borrowers in Los Angeles on equal terms as offered to nonminority borrowers. BoA engaged in reverse redlining, and continues to engage in said conduct, by extending mortgage credit on predatory terms to minority borrowers in minority neighborhoods in Los Angeles on the basis of the race or ethnicity of its residents."(Compl.¶ 4.)

In addition, Plaintiff alleges that Defendants would have had comparable foreclosure rates in minority and white communities if they had properly and uniformly applied underwriting practices in both areas. (Compl.¶ 11.) The Complaint alleges that Defendants' practice of failing to underwrite minority borrowers' applications properly, and of putting these borrowers into loans which: (1) have more onerous terms than loans given to similarly situated white borrowers; and (2) the borrowers cannot afford, leads to foreclosures. (Compl.¶ 11.)

Plaintiff's 68–page Complaint includes data and statistical

analysis,[2] as well as statements from Confidential Witnesses[3] in support of its claims. Plaintiff alleges that Defendants have intentionally targeted predatory practices at African–American and Latino neighborhoods and residents. "The predatory practices include charging excessively high interest rates and fees that are not justified by borrowers' creditworthiness; providing teaser rate loans with bogus refinance opportunities; requiring large prepayment penalties while deliberately misleading borrowers about the penalties; refusing to refinance or modify predatory loans; and more ."(Compl.¶ 156.) Further, the Complaint alleges that the discretionary lending policies and practice of targeting of minorities, who received predatory loan terms regardless of creditworthiness, have caused and continue to cause foreclosures in Los Angeles. (Compl.¶ 161.)

[2] For example, a regression analysis that controls for credit history and other factors demonstrates that an African–American BoA borrower was 1.522 times more likely to receive a predatory loan than a white borrower, and a Latino borrower was 1.325 times more likely to receive such a loan. (Compl.¶ 13.)

[3] The Complaint provides statements from nine Confidential witnesses: three who worked for BoA, four who worked for Countrywide, one who was a loan officer for Countrywide and Bank of America, and one who worked on a project for the U.S. Office of the Comptroller of the Currency. (Compl.¶¶ 91–100.) For example, Confidential Witness 4 witnessed BoA pressuring salespeople to reach out to depressed minority neighborhoods in the City of Los Angeles and pushing loan refinancing and other loan products on minority applicants; she recalls targeting minority groups with subprime loans. (Compl.¶ 95.)

**\*2** The Complaint additionally alleges that minority borrowers would have continued to make payments on the mortgage and remained in possession of the premises if Defendants had not improperly steered the borrower into a subprime loan, and that steering borrowers in this manner causes foreclosures and vacancies. (Compl.¶ 166.) Plaintiff further alleges that the discriminatory practices and resulting foreclosures in the minority neighborhoods have inflicted significant, direct, and continuing financial harm to the City. (Compl.¶ 17.) Plaintiff seeks damages based on reduced property tax revenues based on: (a) the decreased value of the vacant properties themselves; and (b) the decreased value of properties surrounding the vacant properties. In addition, Plaintiff seeks damages based on the cost of municipal services that have been and will be required to remedy the blight and unsafe and dangerous conditions which exist at vacant properties that foreclosed as a result of Defendants' discriminatory lending practices. (Compl.¶ 19.)

Defendants now move to dismiss the Complaint on the grounds that (1) Plaintiff lacks standing; (2) Plaintiff's FHA claim is barred by the statute of limitations; and (3) the Complaint fails to state a claim upon which relief can be granted. Plaintiff has filed an Opposition. The parties have also submitted supplemental briefs on the "zone of interests" issue. For the reasons set forth below, the Court denies Defendants' Motion to Dismiss.

## II. *Legal Standards*

**A. Standing**
Article III of the United States Constitution requires that a litigant have standing to invoke the power of a federal court. Because Article III's standing requirements limit subject matter jurisdiction, a lawsuit is properly challenged by a rule 12(b)(1) motion to dismiss. *See Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir.2010).

The Supreme Court has held that to have standing under the Constitution, a party must show she has suffered an " 'injury in fact,' " that there is a "causal connection between the injury" and the defendant's complained-of conduct, and that it is likely " 'that the injury will be redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136–37, 119 L.Ed.2d 351 (1992). To demonstrate an "injury in fact," a plaintiff must establish an "invasion of a legally protected interest which is (a) concrete and particularized [citations] and (b) 'actual or imminent, not "conjectural" or 'hypothetical.' " *Lujan,* 504 U.S. at 560. To meet this test, the "line of causation" between the alleged conduct and injury must not be "too attenuated," and "the prospect of obtaining relief from the injury" must not be "too speculative." *Allen v. Wright,* 468 U.S. 737, 752, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Maya v. Centex Corp.,* 658 F.3d 1060, 1070 (9th Cir.2011).

The party invoking federal jurisdiction bears the burden of establishing these elements. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the

litigation. *See Lujan v. National Wildlife Federation,* 497 U.S. 871, 883–889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 114–15, 99 S.Ct. 1601, and n. 31, 60 L.Ed.2d 66 (1979).

**\*3** At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum [e] that general allegations embrace those specific facts that are necessary to support the claim."*National Wildlife Federation,* 497 U.S. at 889. In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but must "set forth" by affidavit or other evidence "specific facts," Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true. At the final stage, those facts must be "supported adequately by the evidence adduced at trial."*Gladstone,* 441 U.S. at 115, n. 31; *Lujan,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351.

Rule 12(b) (1) jurisdictional attacks can be either facial or factual. In a facial attack, the allegations are presumed true and the "challenger asserts that the[y] are insufficient on their face to invoke federal jurisdiction."*Safe Air For Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir.2004)."By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."*Id.* Courts should refrain from resolving factual issues where "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits."*Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983); *see also Safe Air,* 373 F.3d at 1039; *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement,* 524 F.3d 1090, 1094 (9th Cir.2008) ("As a general rule, when the question of jurisdiction and the merits of the action are intertwined, dismissal for lack of subject matter jurisdiction is improper.") For the purpose of ruling on a motion to dismiss for want of standing, the trial court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. *Maya,* 635 F.3d at 1068.

**B. Failure to State a Claim**
Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice."Fed.R.Civ.P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6).*See, e.g., Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 248–49 (9th Cir.1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

**\*4** However, in *Twombly,* the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery."*Twombly,* 550 U.S. at 561, 127 S.Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]."*Id.* at 556, 127 S.Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level."*Id.* at 555, 127 S.Ct. at 1965 (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); *Daniel v. Cnty. of Santa Barbara,* 288 F.3d 375, 380 (9th Cir.2002) (" 'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.' ") (quoting *Burgert v. Lokelani Bernice Pauahi Bishop Trust,* 200 F.3d 661, 663 (9th Cir.2000)))."[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."*Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964–65 (internal quotations omitted). In construing the *Twombly* standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."*Ashcroft v. Iqbal,* 556 U.S. 679, 664 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).[4]

[4] Defendants submitted a Request for Judicial Notice ("RJN") in support of their Motion to Dismiss. When considering 12(b)(6) motions, courts are generally limited to considering materials within the pleading.*Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.1996)). The court may, however, take judicial notice of official records and reports without converting a 12(b)(6) motion into a Rule 56 motion for summary judgment. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986). Plaintiffs do not oppose Defendants' RJN, and the documents contained in the request are public records and reports. Therefore, the Court will take judicial notice of those documents in Defendants' RJN.

### III. *Analysis*

#### A. Standing

**1. Article III Standing**

Defendants argue that Plaintiff failed to plead an injury in fact and that Plaintiff cannot show an injury fairly traceable to Defendants' conduct.[5] Defendants first argue that the injury alleged is not concrete and particularized. Defendants assert that the primary claimed injury is that values of properties nearby foreclosed homes have decreased, leading to a direct reduction in municipal revenue that otherwise would have been collected, which is pure speculation based on Plaintiff's tax scheme. Defendants further assert that the City Services theory of injury is equally deficient in setting out a non-speculative injury. The Opposition argues that Plaintiff has alleged two different types of damages that are concrete and particularized and that Plaintiff has satisfied the requirements of Article III standing.

[5] Defendants did not argue in their Motion to Dismiss that a favorable decision would not redress Plaintiff's injuries. Therefore, the Court only addresses the first two elements of constitutional standing.

**\*5** As to the injury in fact requirement, Plaintiff alleges decreased property tax revenues and increased city services. Specifically, the City experienced decreased tax revenues due to reduced property values and had to increase spending on police and fire protection and other services to secure foreclosed homes that are abandoned. The four other district courts to look at this specific issue have found injury in fact based on these financial injuries. *See City of Birmingham v. CitiGroup, Inc.,* No. 09–BE–467–S, 2009 WL 8652915 (N.D.Ala. Aug.19, 2009); *Mayor and City of Baltimore v. Wells Fargo Bank, N.A.,* 677 F.Supp.2d 847 (D.Md.2010); *Mayor and City of Baltimore v. Wells Fargo Bank, N.A.,* No. CIV JFM–08–62, 2011 WL 1557759 (D.Md. Apr.22, 2011); *City of Memphis v. Wells Fargo Bank, N.A.,* No. 09–2857–STA, 2011 WL 1706756 (W.D.Tenn. May 4, 2011); and *Dekalb Cnty., v. HSBC N. Am. Holdings, Inc.,* No. 1:12–CV–03640–JCJ, 2013 WL 7874104 (N.D.Ga. Sept.25, 2013). Those courts agreed that under the Supreme Court's decision in *Gladstone,* decreases in property tax revenues and/or increases in municipal services due to vacancies constitute injury in fact.

In *Gladstone,* the Supreme Court held that economic injury to the village as a consequence of alleged violations of the Fair Housing Act satisfied Article III. 441 U.S. at 92. "A significant reduction in property values directly injures a municipality by diminishing its tax base, thus threatening its ability to bear the costs of local government and to provide services." *Id.* at 110–11.Here, Plaintiff alleges reduced property values and decreased tax revenues due to Defendants' alleged violations of the FHA. Therefore, the Court finds that Plaintiff has satisfied the injury in fact element of standing at this stage of the proceedings.

As to the traceability or causation element of standing, Defendants raise several arguments as to why Plaintiff lacks standing. While Defendants are correct that many circumstances may cause foreclosures, including changes in borrowers' ability to repay due to personal life events, the conduct of intervening third parties, and the effect of general economic factors, the allegations of the Complaint limit Plaintiff's claim in this case to only those damages arising from foreclosures caused by Defendants' discriminatory loans. The Court acknowledges that only certain discriminatory loans are at issue because not all discriminatory loans result in foreclosure, not all foreclosures are caused by discriminatory lending practices, and not all foreclosures result in vacant properties. Despite the problems that Plaintiff may ultimately face in proving each link in the causal chain, at this stage Plaintiff has pled factual allegations of injury resulting from the Defendants' conduct.

In *City of Birmingham,* the court found no standing based on lack of traceability or that the causation was too speculative due to the other factors involved, such as the local and national economy, job loss, health problems, and changes in the housing market. 2009 WL 8652915 at \*5. In *City of Baltimore,* the court granted a motion to dismiss with leave to amend, and ultimately found that the city had standing based on the third amended complaint.

2011 WL 1557759 at *5. In *City of Memphis,* the court found that the city plausibly alleged a causal connection between their injuries and the conduct of Defendants and the limited damages alleged were fairly traceable to defendants' illegal conduct. 2011 WL 1706756 at *9.[6] Finally, in *Dekalb County,* the court found that the complaint satisfied the fairly traceable component of standing "in that the government and industry findings, as well as the empirical data contained in the Complaint raise the pleadings above the speculative level."2013 WL 7874104 at *7.

[6]  The court in *City of Memphis* distinguished the allegations in that case from the allegations in *City of Birmingham,* finding that, "Plaintiffs contend that Defendants have targeted individual property owners with specific lending practices (reverse-redlining), resulting in specific effects (foreclosures and vacancies) at specific properties, which in turn created specific costs (services and tax revenue) for local government. *Id.*

**\*6** The Supreme Court has found organizational standing under the FHA, *Havens Realty Corp., et al. v. Sylvia Coleman,* 455 U.S. 363, 379, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982), and has held that a nonprofit development corporation had standing to assert that a denial of rezoning was racially discriminatory and violated the FHA. *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Here, the Complaint contains allegations that Defendants' acts caused the homes to lose value beyond those losses caused by general economic conditions. For example, Plaintiff alleges that "[i]f these unaffordable refinance and home equity loans had not been made, the subject properties would not have become vacant."(Compl.¶ 167.)

Plaintiff argues its injuries are fairly traceable to Defendants' conduct where Plaintiff has performed statistical analyses establishing that loans with predatory terms issued to minorities were more likely to result in foreclosure. A regression analysis of loans issued by BoA/Countrywide in Los Angeles from 2004–2011, controlling for objective risk characteristics such as credit history, loan-to-value ratio, and the ratio of loan amount to income, demonstrates that a predatory loan is 2.382 times more likely to result in foreclosure than a nonpredatory loan. (Compl.¶ 168.)

Defendants respond that, despite what a regression analysis may show, if the individual circumstances of the borrowers or properties in question would have led to foreclosure despite the allegedly unfavorable terms of the loans or if Plaintiff cannot prove recoverable damages it allegedly suffered as the result of the vacancy of the properties, then Plaintiff cannot prevail in this law suit. Defendants are correct that Plaintiff will ultimately have to prove each link in the causal chain. However, at this stage of the proceedings, Plaintiff has sufficiently alleged factual support for each link.

Defendants also argue that the Ninth Circuit's decisions in Maya and *Kaing v. Pulte Homes, Inc.,* 2010 WL 625365, at *6 (N.D.Cal. Feb.18, 2010), *aff'd,*464 F. App'x 630, 631 (9th Cir.2011), support their position. While Maya and *Kaing* are instructive, these cases are factually distinct because the defendants in those actions were engaged in the business of building and selling homes, as well as financing the purchase of homes by its customers. Even if the decreased home value allegations in Maya are similar to the allegations here, the Ninth Circuit remanded that action to permit plaintiffs to amend in order to provide an expert report distinguishing the effect of defendants' actions from general economic influences. "Expert testimony can be used to explain the causal connection between defendants' actions and plaintiffs' injuries, even in the context of other market forces."Maya, 635 F.3d at 1073. Here, the Complaint contains detailed regression analysis, statistical evidence and statements from confidential witnesses. Further, the Complaint alleges that Plaintiff can do Hedonic regression analysis to control for other causes. At this stage, these allegations are sufficient to make the links in the causal chain plausible and not merely hypothetical.

**\*7** Additionally, Plaintiff does not appear to dispute that there were other factors that led to foreclosures or other factors that caused a decline in the City's revenue. The Complaint only seeks to recover for those financial injuries attributable to Defendants' alleged discriminatory lending practices. The Complaint alleges that a Hedonic regression analysis can control for other variables and calculate damages precisely. While social and economic factors affecting the value of real estate may have relevance to Plaintiff's damage claims, these factors do not break the fairly traceable causal chain between Defendants' lending practices and Plaintiff's narrow damages allegations. *See City of Baltimore,* 2011 WL 1557759 at *15.

Defendants properly brought their motion to dismiss for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1). Because the question of jurisdiction and the merits of this action are intertwined, the Court refrains from resolving factual issues. For instance, Defendants argue that the record shows property values and resulting tax revenues are not even uniformly affected

by nearby foreclosures because of the assessment scheme under Proposition 13. The Court did not consider Defendants' expert reports and declarations at the motion to dismiss stage, but did consider Defendants' RJN. Defendants are not foreclosed from raising their argument about the tax assessment scheme and Proposition 13 at a later stage in the litigation. However, for purposes of ruling on a motion to dismiss for want of standing, the Court must accept as true all material allegations of the complaint. *See* Maya, 635 F.3d at 1068.

Further, the Complaint alleges that Plaintiff has analyzed publically available loan data for 2,398 discriminatory loans issued by BoA in Los Angeles that resulted in foreclosure; regression analysis performed by the City's expert provides statistical evidence that BoA engaged in discriminatory lending practices. (Compl.¶ 151–53.) By focusing on these properties and others that meet the same criteria, Plaintiff has limited its damages in this suit. Plaintiff will only be able to recover specific damages suffered in regard to specific houses that became vacant because of discriminatory lending practices. Additionally, Plaintiff will need to quantify the damages resulting from decreased value in order to recover, but that isn't necessary to establish injury at the pleading stage. *See Maya,* 658 F.3d at 1071. Therefore, the Court finds that Plaintiff's Complaint satisfies the elements of constitutional standing.

### 2. "Zone of Interest" Standing

Defendants argue for the first time in their Reply that Plaintiff is not within the "zone of interests" protected by the FHA, based in part on the Supreme Court's recent decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* ––– U.S. ––––, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). The Court approved a stipulation allowing Plaintiff to file a one page opposition to this new argument and ordered the parties to submit supplemental briefing on the "zone of interests" issue.

**\*8** Defendants' argue that *Lexmark* and *Thompson v. N. Am. Stainless, LP,* ––– U.S. ––––, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011), alter the analysis to include a statutory standing requirement that the injury be within the "zone of interests" of the FHA. Defendants further argue that Plaintiff is not within the "zone of interests" protected by the FHA. In *Lexmark,* the Supreme Court held that under the Lanham Act federal courts are bound to examine whether a plaintiff's claim falls within the "zone of interests" Congress meant to protect through that law. 134 S.Ct. at 1388. The zone of interest test is a matter of statutory construction, and "the limitation always applies and is never negated, but ... our analysis of certain statutes will show that they protect a more-than-usually 'expan[sive]' range of interests."*Lexmark,* 134 S.Ct. at 1388–89; *Bennett v. Spear,* 520 U.S. 154, 164, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

The determination of whether Plaintiff has standing to sue under the FHA is guided by the Supreme Court's decision in *Gladstone,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66, which found that Congress intended standing under § 812 of the Act to extend to the full limits of Article III and that the courts accordingly lack authority to create prudential barriers to standing in suits brought under that section. *Id.,* at 103, n. 9. Accordingly, the requirement for standing to sue under § 812 is the Article III minima of injury in fact: that the plaintiff allege that as a result of the defendant's actions he has suffered "a distinct and palpable injury." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Havens,* 455 U.S. at 372;*see also Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (holding that FHA standing is defined as broadly as is permitted by Article III of the Constitution).

In *Thompson,* the Supreme Court acknowledged that *Bennett* and *Gladstone* reiterated that the term "person aggrieved" in Title VIII reaches as far as Article III permits, though noting that the holdings of those cases are compatible with the "zone of interests" limitation. 131 S.Ct. at 869. The Supreme Court went on to say, "it is Title VII rather than Title VIII that is before us here, and as to that we are surely not bound by the *Trafficante* dictum."*Id.* In the Title VIII(FHA) context, the Supreme Court has found that Congress made a decision to afford standing to all litigants within the Constitutional limits. *See Havens,* 455 U.S. at 372, 102 S.Ct. 1114, 71 L.Ed.2d 214; *Gladstone,* 441 U.S. at 103 n. 9, 99 S.Ct. 1601, 60 L.Ed.2d 66.

Thus, based on current precedent, to establish standing to bring a claim under FHA, a plaintiff is only required to satisfy Article III.[7]To the extent that Defendants argue that post-*Thompson* and post-*Lexmark,* a plaintiff needs to meet a separate "zone of interests" requirement in order to have standing to bring a FHA claim, the Supreme Court has not yet applied that requirement to the FHA. Although the Supreme Court may explicitly require a separate "zone of interests" statutory standing analysis under the FHA if presented with the issue in the future, this Court declines to do so here. Furthermore, even if the "zone of interests" limitation applied under the FHA, allegations that Defendants' discriminatory loan practices caused a reduction in property values directly injuring Plaintiff further the FHA's broad purpose of eliminating housing

**City of Los Angeles v. Bank of America Corp., Not Reported in F.Supp.2d (2014)**
2014 WL 2770083

discrimination. *See Trafficante,* 409 U.S. at 209 ("the language of the Act is broad and inclusive"); *Gladstone,* 441 U.S. at 103.

[7] In order to establish standing to bring an FHA claim and survive a motion to dismiss, plaintiff need only meet the minimal "core constitutional" standing requirements to present an Article III "case and controversy." *Trafficante,* 409 U.S. at 209.

**B. Statute of Limitations**
**\*9** "An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or termination of an alleged discriminatory housing practice ... to obtain appropriate relief with respect to such discriminatory housing practice...."). 42 U.S.C. § 3613(a)(1)(A). An FHA claim for discrimination begins to run from the date of loan closing. *Silva v. G.E. Money Bank,* 449 F. App'x 641, 644 (9th Cir.2011); *Davenport v. Litton Loan Servicing,* LP, 725 F.Supp.2d 862 (N.D.Cal.2010) (same as to reverse redlining claim).

Defendants argue that Plaintiff's FHA claim is time-barred. Defendants assert that Plaintiff limits its FHA cause of action to the consequences of alleged "reverse redlining" by Countrywide, i.e. targeting minority communities for high-priced loans, alleging that conduct ended in 2008, prior to BoA's acquisition and beyond the statutory two-year limitations period. Defendants further assert that to the extent the Complaint alleges Defendants have engaged in different discriminatory conduct, "traditional redlining," i.e. refusing to make loans, this different allegation does not toll limitations as to the prior conduct.

Plaintiff argues that it has alleged a violation within the 2 years preceding the filing of the Complaint. Specifically, the Complaint alleges that at least some of the discriminatory loans at issue originated in 2011. "A comparison of the time from origination to foreclosure of BoA/Countrywide's loans originated in Los Angeles from 2004 to 2011 shows a marked disparity with respect to the speed with which loans to African–Americans and Latinos and whites move into foreclosure."(Compl.¶ 162.) The Complaint was filed on December 6, 2013. "As alleged throughout the complaint, all references to the date range 2004–2011 are intended to include the time period up to and including December 31, 2011."(Compl. at 48, n. 28.)[8] Therefore, Plaintiff has alleged a violation of the FHA occurred within the statute of limitations period.

[8] One of the Confidential Witnesses looked at BoA loans from 2010–12. The Complaint alleges an audit firm found many lending irregularities. The audit allegedly showed that a high rate of African–American and Hispanic borrowers "were taken advantage of" by BoA. (Compl.¶ 12.)

Furthermore, the Court also finds that Plaintiff has sufficiently alleged that the statute of limitations is met based on a continuing violations theory. Plaintiff alleges that Defendants have "engaged in a continuous pattern and practice of mortgage discrimination in Los Angeles since at least 2004 by imposing different terms or conditions on a discriminatory and legally prohibited basis. In order to maximize profits at the expense of the City of Los Angeles and minority borrowers, BoA adapted its unlawful discrimination to changing market conditions. This unlawful pattern and practice conduct is continuing through the present and has not terminated."(Comp.¶ 3.)

Defendants argue that *Havens* does not permit a "continuing violation" exception to be based on actions occurring within the limitation period that are separate and different than the conduct that is at issue in the complaint. However, in *Havens,* the Supreme Court found a continuing violation as to claims for an integrated neighborhood because the timely challenged conduct perpetuated the harm caused by the earlier, otherwise time-barred conduct. 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214. Congress codified the continuing violation doctrine articulated in *Havens* and amended the FHA "to include both the occurrence and the termination of an alleged discriminatory housing practice as events triggering the two-year statute of limitations."*Garcia v. Brockway,* 526 F.3d 456, 462 (9th Cir.2008) (en banc).

**\*10** Plaintiff argues that the continuing violation perpetrated by Defendants is the unbroken eight year pattern and practice of issuing a variety of predatory mortgage loans to African–American and Latino borrowers residing within the City of Los Angeles. The Complaint specifies that the types of predatory loans at issue include subprime loans, high cost loans, interest-only loans, balloon payment loans, loans with prepayment penalties, negative amortization loans, no documentation loans, and ARM loans with teaser rates. (Compl.¶ 143.)

The Complaint further alleges that "following several years of issuing abusive, subprime mortgage loans throughout the minority communities of Los Angeles,

commencing in or around 2007, BoA once again adapted to changing market conditions, while continuing its pattern and practice of issuing a variety of discriminatory loan products. Simultaneously, BoA also decided to curtail the issuance of mortgage credit to minority borrowers in Los Angeles. In other words, BoA not only refused to extend credit to minority borrowers when compared to white borrowers, but when the Bank did extend credit, it did so on predatory terms. This combination of reverse redlining and redlining represents a continuing and unbroken pattern and practice of mortgage lending discrimination in Los Angeles that still exists today."(Compl.¶ 8.)

Because the Complaint includes allegations that Defendants engaged in discriminatory lending within two years of the date Plaintiff filed the action, the Court finds that Plaintiff's FHA claim as alleged is not barred by the statute of limitations. The Complaint further alleges the continuation of the FHA violation into the present, providing sufficient allegations to support the continuing violation doctrine at this stage. The Court notes that statute of limitations is an affirmative defense, and this finding does not limit Defendants from raising this issue in a motion for summary judgment or at trial. However, for the purposes of this Motion, the Court accepts the allegations in the Complaint as true. Therefore, Defendants' Motion to Dismiss the FHA claim as time barred is denied.[9]

[9] In a footnote, Defendants further argue that the staleness of Plaintiff's claims is further demonstrated by the fact that Plaintiff has been considering whether to file FHA claims since at least 2011. Plaintiff argues that Defendants fail to provide citation to any authority which explains why this has legal relevance in the context of the continuing violations doctrine. At the very least, Plaintiff should be given an opportunity to make an evidentiary submission as to the date of its discovery of the basis of its claims. The Court reserves ruling on the statute of limitations issue on this ground until a later stage in the proceedings.

### C. Failure to State a Claim

#### 1. Fair Housing Act

Under the FHA, "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin."42 U.S.C. § 3605(a). The making or purchasing of loans or proving other financial assistance is included in the definition of a "residential real estate-related transaction." 42 U.S.C. § 3605(b)(1).

Defendants first argue that Plaintiff cannot pursue FHA violations under a disparate impact theory; and that even if it could, Plaintiff has failed to state a disparate impact claim in this case. In *Smith v. City of Jackson,* 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), the Supreme Court found that whether a federal statute allows for recovery based on disparate impact depends on its text, and specifically on whether "the text focuses on the effects of the action ... rather than the motivation for the action."*Id.* at 236.In a footnote in their Motion to Dismiss, Defendants acknowledge that the Ninth Circuit has recognized disparate impact FHA claims after *Smith,* but Defendants argue that those decisions are not persuasive here.[10]There are numerous decisions recognizing disparate impact claims under the FHA following the decision in *Smith* and declining to hold that *Smith* overturned Ninth Circuit precedent recognizing such disparate impact theories.[11] Accordingly, Plaintiff may pursue its discrimination claims under a theory of disparate impact.

[10] The FHA prohibits not just intentional discrimination "but also actions that have a discriminatory effect based on race (disparate-impact discrimination)."*Ojo v. Farmers Grp., Inc.,* 600 F.3d 1205, 1207 (9th Cir.2010); *see also Pfaff v. U.S. Dep't of Hous. & Urban Dev.,* 88 F.3d 739, 745–46 (9th Cir.1996).

[11] See *Budnick v. Town of Carefree,* 518 F.3d 1109 (9th Cir.2008) (providing elements necessary to establish a prima facie case of disparate impact under the FHA); *NAACP v. Ameriquest Mortg. Co.,* 635 F.Supp.2d 1096, 1105 (C.D.Cal.2009); *Taylor v. Accredited Home Lenders, Inc.,* 580 F.Supp.2d 1062, 1067 (S.D.Cal.2008) (finding *Smith* has not overruled prior precedent recognizing the FHA permits disparate impact claims).

**\*11** Additionally, the Court finds that Plaintiff has sufficiently alleged a claim for disparate impact discrimination. Plaintiff has numerous factual allegations relying on both statistical data and statements of confidential witnesses. For example, the Complaint alleges, "[d]ata reported by the Bank, and available through public databases, shows that in 2004–2011, 14.7% of loans made by BoA/Countrywide to African–American and Latino customers in Los Angeles were high-cost, but only 4.2% of loans made to white customers in Los Angeles were high-cost. This data

demonstrates a pattern of statistically significant differences in the product placement for high cost loans between minority and white borrowers."(Compl.¶ 144.) The Complaint also alleges that Defendants targeted minority neighborhoods in Los Angeles for predatory loans and that the result of these lending practices was a materially greater number of foreclosures and vacancies at those specific properties.

Furthermore, the Complaint asserts that statistical data shows that a borrower in a predominantly minority census tract was 1.676 times more likely to receive a predatory loan as was a borrower with similar credit characteristics in a predominantly white neighborhood. (Compl.¶ 153.) A plaintiff is not required to make out a prima facie case at this stage of the proceedings; instead, a plaintiff must sufficiently plead a disparate impact claim. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246 (9th Cir.1997). Here, allegations based on regression analysis and confidential witness statements provide facts sufficient to allege a cause of action for disparate impact under the FHA. Construing all inferences in Plaintiff's favor, the Court finds Plaintiff has alleged Defendants' policy resulted in a disproportionately adverse impact on African Americans and Latinos in Los Angeles. Thus, Defendants' Motion to Dismiss on this ground is denied.

Next, Defendants argue that Plaintiff has failed to state a claim for intentional discrimination. Defendants assert that the Complaint fails to allege that reverse redlining or redlining was intentionally designed and implemented so as to disadvantage minority borrowers because of their minority status. "[A] plaintiff makes out a prima facie case of intentional discrimination under the FHA merely by showing that a protected group has been subjected to explicitly differential-i.e., discriminatory-treatment." *Pack v. Fort Wash. II,* 689 F.Supp.2d 1237, 1243 (E.D.Cal.2009). Intentional discrimination requires a party to allege that the lender treated borrowers differently because of their protected status. *See Gamble v. City of Escondido,* 104 F.3d 300, 305 (9th Cir.1997) ("Proof of discriminatory motive is crucial to a disparate treatment claim.").

Plaintiff argues that the Complaint includes factual allegations that Defendants targeted African–American and Latino borrowers for unfair loan terms on the basis of their race. The Complaint provides numerous allegations from confidential witnesses, including allegations that Defendants pressured loan salespeople to target minority groups and superiors told salespeople to target minorities. (Compl.¶¶ 12, 95, 102–107, 117, 135.) Based on the factual allegations in the Complaint, Plaintiff has plausibly stated a claim for intentional discrimination in violation of the FHA. Therefore, Defendants' Motion to Dismiss on this issue is denied.

**2. Restitution/Unjust Enrichment**
**\*12** Defendants argue that there is no independent cause of action for "restitution," and Plaintiff has no claim that would allow it to receive restitution as an equitable remedy. In its Opposition, Plaintiff argues that it properly states a claim for restitution where it has conferred a benefit on Defendants by paying for the externalities or costs of harm caused by Defendants' discriminatory mortgage lending. Plaintiff argues that the Ninth Circuit has acknowledged that there is a "claim for the equitable remedy of restitution" where defendants have money or property that belongs to the plaintiff. *Walker v. Geico Gen. Ins. Co.,* 558 F.3d 1025, 1027 (9th Cir.2009). Plaintiff further argues that it is asserting a claim for restitution based on unjust enrichment.

Restitution is a remedy, and there is no independent cause of action for "restitution." *Munoz v. MacMillan,* 195 Cal.App.4th 648, 661, 124 Cal.Rptr.3d 664 (2011); *Melchior v. New Line Productions, Inc.,* 106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347 (2003). California courts are split as to whether unjust enrichment is an independent cause of action.[12] However, the split in the authorities on the existence of a "cause of action" for "unjust enrichment" under California law appears to be founded on semantics, drawing a distinction between unjust enrichment, restitution, and quasi-contract, without a difference. *Nordberg v. Trilegiant Corp.,* 445 F.Supp.2d 1082, 1099–1100 (N.D.Cal.2006). The Supreme Court of California and California Courts of Appeal have recognized actions for relief under the equitable doctrine of unjust enrichment. *Ohno v. Yasuma,* 723 F.3d 984 (9th Cir.Cal.2013). Here, the second claim for relief is titled, "Common Law Claim For Restitution Based On California Law," and Plaintiff's Opposition argues that it has stated a claim for unjust enrichment.

[12] *Compare, e.g., McBride v. Boughton,* 123 Cal.App.4th 379, 387, 20 Cal.Rptr.3d 115 (2004) ("unjust enrichment" is "not a cause of action ... or even a remedy, but rather a principle, underlying various legal doctrines ... synonymous with restitution.") (citing *Melchior v. New Line Prods., Inc.,* 106 Cal.App.4th 779, 793, 131 Cal.Rptr.2d 347 (2003)) with, *e.g. Hirsch v. Bank of Am.,* 107 Cal.App.4th 708, 721–22, 132 Cal.Rptr.2d 220 (2003) (plaintiffs stated "a valid cause of action for unjust enrichment based on" the defendants' unjust retention of fees at the expense of plaintiffs); *Lectrodryer v. SeoulBank,* 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000) (plaintiff "satisfied

the elements for a claim of unjust enrichment" when he alleged receipt of a benefit and unjust retention of the benefit at the expense of another).

The Complaint alleges, "[a]s a direct and proximate result of Defendants' predatory lending practices, Defendants have been enriched at Plaintiff's expense. Defendants have failed to remit those wrongfully obtained benefits or reimburse the City for their costs improperly caused by Defendants, and retention of the benefits by Defendants would be unjust without payment."(Compl.¶ 207.) Further, the Complaint alleges that "to its detriment the City has paid for the Defendants' externalities, or Defendants' costs of harm caused by its mortgage lending discrimination, in circumstances where Defendants are and have been aware of this obvious benefit and retention of such benefit would be unjust."(Compl.¶ 208.) Based on these allegations, Plaintiff has stated a claim that survives a motion to dismiss.[13]

[13] Similarly, the court in *White v. Smith & Wesson,* 97 F.Supp.2d 816 (N.D.Ohio 2000), recognized an unjust enrichment claim alleged by a city. "Plaintiffs allege that they have conferred a benefit upon Defendants, i.e., that the City has paid for what may be called the Defendants' externalities.... Plaintiffs further allege that Defendants are aware of this obvious benefit, and that retention of this benefit is unjust. Plaintiffs have stated a claim and thus, at this stage of the litigation, their claim survives."*Id.* at 829.

Although Plaintiff mislabels its second cause of action as one for restitution, the Court finds that Plaintiff's allegations are sufficient to state a claim under California law.[14]*See In re TFT–LCD (Flat Panel) Antitrust Litig.,* No. M 07–1827 SI, 2011 WL 4345435, at *3 (N.D.Cal. Sept.15, 2011). Even though the allegations survive at this stage, Defendants may argue and submit evidence at the summary judgment or trial stage that Plaintiff did not confer a benefit upon Defendants, that Defendants had no knowledge of such benefit, that retention of that benefit is not unjust, or that the benefit was conferred incidentally to the performance of the City's duties.[15]The Court notes once again that Plaintiff will ultimately need to prove all the elements of its claims.

[14] Under California law, there are several potential bases for a cause of action seeking restitution. *McBride,* 123 Cal.App.4th 379, 20 Cal.Rptr.3d 115. "[I]n any event, ... there is no particular form of pleading necessary to invoke the doctrine" of restitution.' " *Dunkin,* 82 Cal.App.4th at p. 198, fn. 15, 98 Cal.Rptr.2d 44; *Hernandez v. Lopez,* 180 Cal.App.4th 932, 103 Cal.Rptr.3d 376 (Cal.App.4th Dist.2009).

[15] See *Cal. Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.,* 94 Cal.App.4th 151, 174, 114 Cal.Rptr.2d 109 (2001) (prohibiting recovery for unjust enrichment or quasi-contract when the benefit is conferred "incidentally to the performance of [plaintiff's] own duty").

**Conclusion**

***13** Based on the foregoing, the Court finds that Plaintiff has standing at the pleading stage. Therefore, Defendants' Motion to Dismiss for lack of standing is denied. Since Plaintiff bears the burden of proof as to standing and must support each element with "the manner and degree of evidence required at the successive stages of the litigation,"*Lujan,* 504 U.S. at 561, the Court stresses that its holding on Plaintiff's standing at the pleading stage does not preclude Defendants from developing a factual record and revisiting the standing issue at a later stage of the case.

Further, Defendants' Motion to Dismiss based on the statute of limitations under the FHA is denied because Plaintiff has sufficiently alleged discriminatory loans originating through December 31, 2011, a pattern or practice of discriminatory lending that occurred from 2004 through 2011, and has also alleged continuing violations. While the face of the Complaint alleges continuing violations of the FHA and a broad practice of discriminatory lending, Defendants may raise the statute of limitations affirmative defense at a later stage of the proceedings once a factual record has been developed. Additionally, the Court finds that Plaintiff has adequately stated a claim under the FHA and stated a claim for unjust enrichment. Therefore Defendants' Motion to Dismiss for failure to state a claim is denied. Defendants shall file their Answer no later than June 27, 2014.

IT IS SO ORDERED.

**End of Document** © 2014 Thomson Reuters. No claim to original U.S. Government Works.

**City of Los Angeles v. Bank of America Corp., Not Reported in F.Supp.2d (2014)**

2014 WL 2770083

© 2014 Thomson Reuters. No claim to original U.S. Government Works.