# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| COUNTY OF COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA CORPORATION, | ) | Case No. 14-cv-2280 |
| BANK OF AMERICA, N.A., | ) | |
| COUNTRYWIDE FINANCIAL | ) | Judge Elaine E. Bucklo |
| CORPORATION, | ) | |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| COUNTRYWIDE BANK, FSB, | ) | |
| COUNTRYWIDE WAREHOUSE LENDING, | ) | |
| LLC, BAC HOME LOANS SERVICING, LP, | ) | |
| MERRILL LYNCH & CO., INC., MERRILL | ) | |
| LYNCH MORTGAGE CAPITAL INC., and | ) | |
| MERRILL LYNCH MORTGAGE LENDING, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

# DEFENDANTS' REPLY BRIEF IN SUPPORT OF ITS
# MOTION TO DISMISS COMPLAINT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      THE SUIT IS TIME-BARRED. ...................................................................................2

    A.      The Opposition Does Not Identify a Timely FHA Violation. ................................2

    B.      Even If The County Had a Timely Claim, The Continuing Violation
        Doctrine is Unavailable To Revive Other Untimely Claims. ..................................5

II.     THE COUNTY DOES NOT HAVE ARTICLE III STANDING. .....................................8

    A.      The County Has Not Pled an Injury in Fact. ............................................................8

    B.      The County's Claim Lacks Traceability. .................................................................9

III.    THE COUNTY DOES NOT HAVE STATUTORY STANDING. ..................................12

IV.     THE COUNTY'S DISPARATE TREATMENT CLAIM IS DEFECTIVE. ....................14

V.      THE COUNTY CANNOT AND HAS NOT ADEQUATELY PLED A
       DISPARATE IMPACT CLAIM. ....................................................................................15

# TABLE OF AUTHORITIES

Cases                                                                        PAGE(S)

*Beley v. City of Chicago*,
    2013 WL 3270668 (N.D. Ill. June 27, 2013) ...........................................................9

*Bridewell v. Eberle*,
    730 F.3d 672 (7th Cir. 2013) .........................................................................5

*City of Birmingham v. Citigroup, Inc.*,
    2009 WL 8652915 (N.D. Ala. Aug. 19, 2009) .......................................................11

*City of Los Angeles v. Bank of America Corp.*,
    2014 WL 2770083 (C.D. Cal. June 12, 2014) ..............................................10, 11

*City of Memphis v. Wells Fargo Bank, N.A.*,
    2011 WL 1706756 (W.D. Tenn. May 4, 2011) ..............................................8, 10

*City of Miami v. Bank of America Corp.*,
    2014 WL 3362348 (S.D. Fla. July 9, 2014)................................................. *passim*

*Cohen v. Am. Sec. Ins. Co.*,
    735 F.3d 601 (7th Cir. 2013) .........................................................................7

*Estate of Davis v. Wells Fargo Bank*,
    633 F.3d 529 (7th Cir. 2011) .........................................................................2

*Gilty v. Vill. of Oak Park*,
    919 F.2d 1247 (7th Cir. 1990) ......................................................................15

*Gladstone Realtors v. Vill. of Bellwood*,
    441 U.S. 91 (1979).............................................................................10, 11, 12

*Gomolka v. Quotesmith.com*,
    2005 WL 2614850 (N.D. Ill. Oct. 7, 2005).........................................................14

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)...................................................................................7

*Krieman v. Crystal Lake Apartments Ltd. P'ship*,
    2006 WL 1519320 (N.D. Ill. May 31, 2006) ........................................................6

*Kyles v. J.K. Guardian Sec. Serv., Inc.*,
    222 F.3d 289 (7th Cir. 2000) ......................................................................12

*Ledbetter v. Goodyear Tire & Rubber Co.*,
550 U.S. 618 (2007).................................................................................................5

*Lexmark Int'l Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014)...........................................................................................12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).................................................................................................9

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*
677 F. Supp. 2d 847 (D. Md. 2010)...................................................................8, 11

*Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.*,
2011 WL 1557759 (D. Md. Apr. 22, 2011).........................................................10

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
558 F.2d 1283 (7th Cir. 1977) ..............................................................................13

*Nasser v. City of Homewood*,
671 F.2d 432 (11th Cir. 1982) ..............................................................................12

*Samantar v. Yousuf*,
560 U.S. 305 (2010).................................................................................................6

*Simon v. Eastern Kentucky Welfare Rights Org.*,
426 U.S. 26 (1976)...................................................................................................8

*Smith v. City of Jackson*,
544 U.S. 228 (2005)...............................................................................................15

*Soto v. City of West Chicago*,
2010 WL 4810612 (N.D. Ill. Nov. 19, 2010) ........................................................6

*South-Suburban Hous. Ctr. v. Greater South-Suburban Bd. of Realtors*,
935 F.2d 868 (7th Cir. 1991) ................................................................................14

*Telesca v. Vill. of Kings Creek Condo. Ass'n*,
390 F. App'x 887 (11th Cir. 2010) .........................................................................6

*Thompson v. North American Stainless, LP*,
131 S. Ct. 863 (2011).......................................................................................12, 13

*Walters v. Edgar*,
163 F.3d 430 (7th Cir. 1998) ..................................................................................9

*Walton v. Wells Fargo Bank, N.A.*,
2013 WL 3177888 (D. Md. June 21, 2013).............................................................6

*Wards Cove Packing Co. v. Atonio,*
   490 U.S. 642 (1989).................................................................................................15

## **STATUTES**

42 U.S.C. § 3601 ...........................................................................................................1

42 U.S.C. § 3604...........................................................................................................3

42 U.S.C. § 3605 ..........................................................................................................3

42 U.S.C. § 3613(a)(1)(A) .....................................................................................1, 2, 5

2B Sutherland Statutory Construction (7th ed. 2008) § 50:2…………………………………6

Cook County's Opposition to Defendants' Motion to Dismiss ("Opposition") provides no persuasive reasons why this suit should not be dismissed. Time and again in response to the arguments Defendants presented, the County slashes back with rhetoric and hyperbole – both about the alleged underlying conduct and about the Defendants' brief. The Opposition tries to make up with fury what it lacks in substance, but stripped of these distractions the County has no defense to the grounds for dismissal that Defendants presented.

In its Motion to Dismiss ("Motion"), Defendants showed that the County's claim under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), is untimely because the alleged discriminatory lending by Defendants ceased in 2008 or earlier, yet the County waited over five years after that before bringing suit. In response, the Opposition does not dispute that Defendants did not engage in any alleged discriminatory lending within the FHA's two-year limitations period. Instead, the County attempts to save its claim by pronouncing its lawsuit is about an "equity stripping scheme" that, it contends, starts with the loan and continues through servicing activities and ultimately foreclosure if the loan ever defaults. As a practical matter, this position cannot be correct because the statute would not begin to run for 30 years, the length of the typical mortgage loan. And it is not correct as a matter of law. The only conduct the County alleges was discriminatory was the Defendants' conduct in making the loans; the servicing and foreclosure of the loans are not alleged to have been conducted in a discriminatory manner. Thus, "the termination of an alleged discriminatory housing practice," 42 U.S.C. § 3613(a)(1)(A), occurred in 2008 and the suit is barred. And, even if it had adequately alleged discriminatory lending within the statutory period, the County still could not defeat the limitations bar because, as the County does not really contest, it has been on notice of its purported claim for years.

The County's Complaint also should be dismissed because Defendants' Motion demonstrated that the County has failed to meet its burden of showing Article III standing and to show statutory standing under the FHA. In response, the Opposition complains that its burden on these issues is "minimal" or not "demanding," yet when it ultimately addresses each point on the merits it fails to allege a concrete injury or explain how the Complaint plausibly shows a causal link between the loans allegedly originated by Defendants and the County's losses given the numerous speculative leaps and third-party factors that break the liability chain. The fact that the County cannot identify even a single specific property where Defendants made a loan which resulted in lower tax revenue or increased expenses because of that loan – rather than because of something else – demonstrates the implausibility of its claim.

For these failures and the other grounds raised in the Motion and discussed below, the Court should dismiss the Complaint with prejudice.

## I. THE SUIT IS TIME-BARRED.

### A. THE OPPOSITION DOES NOT IDENTIFY A TIMELY FHA VIOLATION.

In its Motion, Defendants showed that the County's claim is untimely because it was filed in 2014, but is based on discriminatory lending conduct that admittedly ceased in 2008. Mot. at 5-6, citing *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 532 (7th Cir. 2011) (limitations period for a discriminatory loan runs from date of loan closing).[1] In response to this damning fact, the County fails to point to a single instance of alleged discriminatory loan origination that occurred within the two years prior to filing suit. Under a straightforward application of the limitations statute, the suit is barred. 42 U.S.C. § 3613(a)(1)(A) (action must

---

[1] The County's attempt to distinguish *Estate of Davis* (Opp. at 4 n.7) because it involved a single alleged instance of predatory lending is unconvincing. If the County were correct that the statute of limitations does not begin to run until a loan is closed or foreclosed upon, then the plaintiff's claim in *Davis* relating to the loan's origination would have been timely. *See Estate of Davis,* 633 F.3d at 532.

be filed "not later than 2 years after the occurrence or termination of the alleged discriminatory housing practice").

Applying this reasoning, the District Court for the Southern District of Miami recently dismissed on limitations grounds a similar FHA "reverse redlining" lawsuit brought by the City of Miami against many of these same Defendants. *City of Miami v. Bank of America Corp.*, 2014 WL 3362348, *6 (S.D. Fla. July 9, 2014). The court there found that because of the city's failure to identify any "specific loans . . . alleged to have closed in the two years" prior to filing suit, the FHA limitations rule barred the claim. *Id.*

Recognizing that, the County tries to redefine the conduct at issue, asserting that their suit is not about the discriminatory loans but instead about a grand "equity stripping scheme":

> [Defendants'] alleged discriminatory housing practice of equity stripping continues by its very nature, extracting value and perpetrating the scheme at each step in the life of the loan, e.g.: at origination (improper costs are imposed); upon each monthly payment (borrower pays an inflated interest rate); upon payment of a prepayment penalty. . .; following default (the servicer imposes additional costs); and upon foreclosure when the home is taken away.

Opp. at 4 n.7; *see also, id.* at 9-10. The argument does not defeat the limitations bar because the only "discriminatory housing practice[s]" in the cause of action alleged in the Complaint concerns predatory lending, *i.e.* the making of mortgage loans: "Defendants' unlawful actions described above constitute a pattern or practice of *discriminatory lending* and a continuing violation of federal law." Compl. ¶ 442 (emphasis added); ¶ 445 ("Defendants' acts, policies and practices constitute *reverse redlining* and violate the [FHA] . . . 42 U.S.C. §§ 3604 and 3605") (emphasis added); ¶¶ 436-45 (pleading FHA cause of action based solely on purported

discriminatory mortgage lending);[2] *see also* Opp. at 26 n.36 (policies purporting to form the basis of disparate impact claim exclusively pertain to mortgage lending). There is no allegation that the aspects of the supposed "equity stripping scheme" other than lending – the collection of monthly payments or penalties, the servicing of the default, or the foreclosure – were conducted in a discriminatory manner. While the Complaint does recite (untrue) allegations concerning poor servicing and foreclosure practices (¶¶ 368-401), these would affect each loan serviced or subject to foreclosure; nowhere does the Complaint allege that Defendants' servicing or foreclosure practices either treated or affected FHA protected consumers differently. Moreover, even if servicing and foreclosure within the limitations period had been alleged as discriminatory housing practices, the conduct cannot save any cause of action with respect to allegedly discriminatory lending that terminated in 2008. *City of Miami*, 2014 WL 3362348, at *6 (dismissing FHA claim as time-barred where the complaint "merely allege[d] a generalized policy of discrimination" and failed to plead that "each type of alleged discriminatory practice continued into the limitations period.").[3]

The County's related argument that continued payment on an alleged predatory loan originated years outside the limitations period is nonetheless actionable because it is a "continued and renewed discriminatory *effect* . . ." also does not render its claim timely. Opp. at 10 (emphasis added). As the Supreme Court and the Seventh Circuit have repeatedly held, the

---

[2] In their Motion (at 10), Defendants pointed out that the County's FHA cause of action as plead is exclusively based on alleged discriminatory mortgage lending, and not any discriminatory servicing or foreclosure practices. The Opposition did not disagree, or even address this point.

[3] The Opposition's attempt (at 5 n.9) to distinguish this case from the *City of Miami* action is wholly unconvincing. As set forth above, the statute of limitations is not extended merely by calling a single alleged discriminatory practice (predatory lending) a "scheme" as an excuse to fold in conduct never alleged to be discriminatory. Moreover, the County's warning that it may request a sur-reply to further brief the *City of Miami* decision is completely unwarranted as the County has already addressed that decision at length in its Opposition. *See e.g.* Opp. at 5 n.9, 14 n.22, 15 n.23, 16 n.25, & 22 n.31. For this reason, Defendants would oppose any such request.

statute of limitations runs from the date the alleged discriminatory practice occurs, and not from when the effects of the practice are felt. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 625-28 (2007); *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); Mot. at 11. And the same would be true as to any aspect of loan servicing where all the Defendants did was administer the loan terms in the ordinary course.

The County's assertion that every repayment-related event prevents the running of the limitations period is absurd. If true, the FHA's two-year time bar would not start until as much as 30 years after loan closing. Congress would never have intended such a result. The County also entirely fails to address Defendants' authority (Mot. at 8 n.11) expressly rejecting its theory that mere continued payments on an alleged discriminatory loan restarts the statute of limitations or should be treated as "continuing" an alleged discriminatory lending practice. The Court should apply the limitations bar as written, and find that the claim for alleged discriminatory lending in 2008 (or earlier) expired before this lawsuit was filed.

### B. EVEN IF THE COUNTY HAD A TIMELY CLAIM, THE CONTINUING VIOLATION DOCTRINE IS UNAVAILABLE TO REVIVE OTHER UNTIMELY CLAIMS.

Even if the continuing violation doctrine might apply, the exception to the limitations period is not available to the County because it was on notice of its claim more than two years ago. The Seventh Circuit does not permit limitations extensions under a "continuing violation" theory where, as here, the plaintiff had notice of the violation prior to the limitations period but did not sue. Mot. at 6-13.

To evade this clear rule, the County first argues that the notice rule is inapplicable. It claims that the rule is a matter of "common law" only, and that Congress did not import such a restriction when it codified the continuing violation doctrine on the FHA. Opp. at 6-8. The County's unsupported distinction is properly rejected. It is a well-established canon of statutory

interpretation that where a "statute covers an issue previously governed by the common law, [the Court] interpret[s] the statute with the presumption that Congress intended to retain the substance of the common law." *Samantar v. Yousuf*, 560 U.S. 305, 320 n.13 (2010); *see also* 2B Sutherland Statutory Construction § 50:2 (7th ed. 2008). For this reason, when applying the continuing violation doctrine to a claim under the FHA, courts – including courts within this Circuit – have looked to common law concepts to define its reach. Several courts have relied on those common law principles to bar application of the doctrine where a plaintiff has been on reasonable notice of its claim outside the limitations period. *See e.g. Krieman v. Crystal Lake Apartments Ltd. P'ship*, 2006 WL 1519320, at *5 (N.D. Ill. May 31, 2006) (holding that continuing violation doctrine did not apply to FHA claim because Plaintiff was on notice of the alleged discrimination); *Soto v. City of West Chicago*, 2010 WL 4810612, at *5-*6 (N.D. Ill. Nov. 19, 2010) (rejecting application of the continuing violation doctrine to an FHA claim because plaintiff could have discovered the alleged injuries); *Telesca v. Vill. of Kings Creek Condo. Ass'n*, 390 F. App'x 887, 882 (11th Cir. 2010) ("The FHA's statute of limitations begins to run as soon as 'facts supportive of the cause of action are or should be apparent to a reasonably prudent person similarly situated.'").[4] Indeed, not one of the continuing violation cases the County relies upon distinguishes between a "common law" version of the doctrine and the doctrine codified in the FHA.[5]

---

[4] The County's additional assertion (Opp. at 7 n.12) that the cases cited by Defendants are distinguishable because they do not involve pattern and practice allegations is simply wrong. *See Soto*, 2010 WL 4810612 at *3, *6 (alleging defendants engaged in a pattern of discriminatory conduct). Besides this flaw, the distinction is irrelevant and the County does not provide any principled reason to hold otherwise.

[5] The County's argument that the "discovery rule" does not apply to FHA claims (Opp. at 7-8, 8 n.13) has no relevance here as it is an entirely separate rule from the continuing violations doctrine. The cases cited by the County confirm this. *See e.g. Walton v. Wells Fargo Bank, N.A.*, 2013 WL 3177888, *3-4 (D. Md. June 21, 2013) (separately analyzing the discovery rule and the continuing violation doctrine).

The County next argues, weakly, that if the notice rule applies that this Court should disregard the evidence that it was on ample notice of its claim, because the facts cannot be considered on a motion to dismiss. Opp. at 8. The contention is legally erroneous because the County does not contest that the documents submitted by Defendants are judicially noticeable – so this Court can properly consider them on a 12(b)(6) motion.[6] Mot. at n.7; *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 604 n.2 (7th Cir. 2013) ("[A] motion under Rule 12(b)(6) can be based . . . [on] information that is subject to proper judicial notice."). Notice is evident in any event from the Complaint itself, which exclusively relies on evidence publicly available more than two years before the County filed suit. *See* Mot. at 7. The County's knowledge means it deliberately slept on its rights, and so cannot seek to avail itself of the continuing violation exception.

Finally, the County asks this Court to gloss over these difficulties and find that it alleges a "pattern[] of discriminatory housing practices that continue to this day." Opp. at 12. The Court should reject this argument and instead be guided by the Supreme Court, which held that discrete incidents of housing discrimination that resulted in individualized harm is not subject to the continuing violation exception. *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982); *see* Mot. at 12-13. Moreover, the Opposition does not even point to anything that 'continues to this day' other than the effect of alleged discriminatory practices that ended in 2008 – the collection and enforcement of the loans. Opp. at 10 n.16 (asserting that the practices after 2008 continued when the loans were "extended, renewed or continued during the relevant period") (quoting Compl. ¶ 221). This is not a basis to apply the continuing violation doctrine. *See City of Miami*,

---

[6] The County's additional request (Opp. at 9 n.15) for discovery from Defendants on the issue of notice makes no sense as the County alone would hold relevant documents and information on the County's notice of its claim. To the extent this Court finds any discovery necessary, it should be limited to discovery on the threshold issue of the County's notice of its claim. *See DeKalb Cnty. v. HSBC N. Am. Holdings*, 1:12-cv-03640-SCJ, Scheduling Order (ECF. No. 38) at 2-3 (N.D. Ga. Jan. 27, 2014) (ordering limited initial discovery on statute of limitation issues, including plaintiff's notice of its claim).

2014 WL 3362348, at *6 n.3 (finding the City had not alleged a "uniform practice of continuing conduct—that is, a particular form of discrimination by a single actor—that was the type of 'discrete unlawful practice' that 'continued.'") (citation omitted). Defendants' limitations defense should be upheld, and the Complaint dismissed.

## II.     THE COUNTY DOES NOT HAVE ARTICLE III STANDING.

### A.     THE COUNTY HAS NOT PLED AN INJURY IN FACT.

Apart from the limitations bar, the Motion demonstrated that the County's injury theories fail to meet Article III standards because they are hopelessly vague and unsupported by any concrete factual details. Mot. at 13-14. The Opposition (at 14-16), content to rely on the same "unadorned speculation[s]" set forth in its Complaint, cures none of these deficiencies. *Simon v. Eastern Kentucky Welfare Rights Org*., 426 U.S. 26, 44 (1976). First, while the Opposition asserts that it has suffered "economic harm" (at 14), the County still does not point to a single government service it provided or economic loss it suffered in connection with an identified loan originated by Defendants. *See* Mot. at 14.[7] The Opposition's claimed theories of "non-economic" injuries are even more deficient, as the Complaint and Opposition rely on vague claims of injury to the "fabric" of the County's communities, undescribed "blight," and alleged frustration of the undefined missions of unspecified County departments and authorities. *See* Opp. at 15. Stretching, the County then goes further, with allegations of "future harm" that only underscore the speculative nature of its alleged injuries. *Id*. Unsupported allegations of future

---

[7] As explained in the Motion (at 14-15), in lawsuits involving similar claims, courts have required just such particularized allegations in order to survive a motion to dismiss. *E.g. Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.* ("*Baltimore 2010*"), 677 F. Supp. 2d 847, 850-51 (D. Md. 2010); *City of Memphis v. Wells Fargo Bank, N.A.*, 2011 WL 1706756, at *8 (W.D. Tenn. May 4, 2011). Contrary to the County's assertion (Opp. at 18 n.26) that Defendants somehow misrepresented the *Baltimore* action, Defendants accurately explained in its Motion that the case was only allowed to proceed on a third amended complaint after plaintiffs identified 190 specific properties that would not have been vacant but for the alleged discriminatory lending practices and specifically identified the increased municipal costs attributable to each identified property. Mot. at 23 n.22.

non-economic harm cannot support FHA standing any more than vague allegations of past harm can. *See Walters v. Edgar*, 163 F.3d 430, 434-35 (7th Cir. 1998) (to obtain prospective relief, a plaintiff must establish a non-trivial probabilistic harm of future injury); *Beley v. City of Chicago*, 2013 WL 3270668, at *4 (N.D. Ill. June 27, 2013).

Taken individually or together, these non-descript allegations are not the type of "concrete and particularized" injury required for constitutional standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The failing is particularly surprising and disturbing given that the primary harms the City sues about—decreased property values and increased expenses— are injuries the City ought to be able to identify from its own records. A lawyer's theories are no substitute for facts, and cannot establish Article III standing.

## B. THE COUNTY'S CLAIM LACKS TRACEABILITY.

Even if any injury in fact had been adequately alleged, the Motion established that the County's injury theories are impermissibly based on a series of wild speculations giving rise to an implausible causal chain. Mot. at 15-24; *Lujan*, 504 U.S. at 560-61. In response, the County does not cogently explain how it could ever overcome the fatal flaws in its causation theory, prove what particular loans made by Defendants defaulted, or control for the undeniable role of third parties. Opp. at 19-21. Nor does it address the myriad of borrower-specific causes for default and foreclosure, the impact of a nationwide recession, or the role of numerous intervening third-party factors (including the County's own practice of issuing tax liens). *Id.* Instead, the County relegates most of its response to a dense 32-line footnote that merely repeats its Complaint's rhetoric and does nothing to *explain* why its allegations show a plausible connection between Defendants' alleged loans and the injury to the County. *Id.* at 16 n. 25.

In contrast, the County spends an inordinate portion of its Opposition making excuses for its failure to identify a single property where the County's harm is fairly traceable to Defendants' alleged lending practices. Opp. at 19-21. The implausibility of its arguments only underscores the constitutional deficiencies of its claim.

The County mostly complains that it cannot identify *all* of the properties, because Defendants have concealed their activities and because some of the harm at issue will arise in the future. Opp. at 19-20. But this is no excuse for failing to come up with a *single* address in the *entire* County where a loss occurred that is fairly traceable to *any* of the Defendants. *Contrast, e.g., City of Los Angeles v. Bank of America Corp.*, 2014 WL 2770083, at *7 (C.D. Cal. June 12, 2014) (listing properties); *City of Memphis*, 2011 WL 1706756 at *9 (same); *Mayor & City Council of Baltimore v. Wells Fargo Bank, N.A.,* 2011 WL 1557759, at *3 n.2 (D. Md. Apr. 22, 2011) (listing 190 specific properties). The County then assures the Court that it should not be concerned about the constitutional issues because the County has evidence of wrongdoing now (from confidential witnesses, who completely fail to address the intractable causation problems in the Complaint) and will have evidence about particular properties (from its expert) when the time comes. Opp. at 19-21. But to meet constitutional standards, the County needs plausible allegations now. If this non-explanation were sufficient to establish a plausible causal chain, then any injury theory, no matter how outlandish or remote, could avoid dismissal by the plaintiff simply claiming, without explanation, that it will explain away the role of intervening economic effects and third parties at a later date.

The County's reliance (Opp. at 13, 17) on *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) and its progeny to "resolve[] the standing issue," and to overcome the numerous causation issues its suit raises, is misplaced. There, the Supreme Court was faced with

allegations that racial steering by real estate brokers injured the village's and area residents' interests in integrated housing in a 12 by 13 block target area. *Gladstone*, 441 U.S. at 95. The Court emphasized that the plaintiffs' allegations concerned a "relatively compact neighborhood," and that the defendants' practices manipulated the housing market in that described area. *Id*. at 114-15. Thus, *Gladstone* not only involved a wholly different alleged discriminatory practice (steering minorities away from certain neighborhoods versus the allegation here of providing minorities with too many loans), but the loss-causation theory was straightforward, and a far cry from the County's attenuated theory here that it has suffered amorphous harm throughout all Cook County because of loan terms allegedly offered by both Defendants and many other lenders (including one sued in a separate action for the same harms).[8]

As detailed in the Motion (at 15-19), several courts handling broadly-stated lawsuits like this one have dismissed them precisely because of the incurable causation problems Defendants raised in their Motion. *See City of Birmingham v. Citigroup, Inc.*, 2009 WL 8652915, at *1 (N.D. Ala. Aug. 19, 2009); *Baltimore 2010*, 677 F. Supp. 2d at 849-52.[9] The Opposition's attempt (at 18) to distinguish these authorities as lacking the "particularized loss causation allegations in Plaintiff's Complaint" is just hollow rhetoric – the Complaint here does not contain particularized allegations and the County does not present the complaints in the other two cases to this Court.

---

[8] The additional cases cited by the County (Opp. at 17) are similarly inapposite because they all concern the distinct discriminatory practice of discouraging minority borrowers from living in certain locations.

[9] Defendants acknowledge that some other cases have come out differently, including a case filed by Los Angeles against some of these same defendants. *City of Los Angeles*, 2014 WL 2770083. Defendants believe those other cases were wrongly decided, and this Court can make up its own mind based on the extensive briefing here.

## III.    THE COUNTY DOES NOT HAVE STATUTORY STANDING.

Dismissal is also proper because the County's alleged injuries do not fall within the "zone of interest" that the FHA seeks to protect, and it has not plausibly alleged proximate cause.  Mot. at 24-27.  As demonstrated in the Motion, recent Supreme Court precedent clarifies that the zone of interest test "applies to all statutorily created causes of action," and bars a plaintiff's claim where its interests are "so marginally related to . . . the purposes implicit in the statute." *Lexmark Int'l Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1388-89 (2014).  In *City of Miami*, the court dismissed the city's FHA claim as outside the zone of interest Congress meant to protect in enacting the FHA.  2014 WL 3362348, at *3-4.

Initially, the Opposition does not really dispute that the zone of interest test applies to its FHA claim, but instead appears to argue that the FHA's zone is coextensive with the outer Constitutional limits of Article III standing.  *See* Opp. at 21-22.  This argument once again overlooks *Thompson* and *Lexmark*, which provide that the zone of interests test "applies to all statutorily created causes of action," *Lexmark*, 134 S. Ct. at 1388, and that application of the test is more narrow than the outer boundaries of Article III.  *See Thompson v. North American Stainless, LP*, 131 S. Ct. 863, 869 (2011); *see also Nasser v. City of Homewood*, 671 F.2d 432, 437 (11th Cir. 1982) ("the decision in *Gladstone* may not be taken so far" as to "remove all prudential limitations  . . . so that any party injured in some manner could sue to enforce the rights directly protected by the Act").[10]

---

[10] The County's argument (Opp. at 22 n.32) that *Thompson* is not relevant here because it involved a Title VII, not Title VIII claim is unpersuasive.  The County ignores the logic that similar language should be construed the same – a rule the Seventh Circuit has applied to the term "aggrieved" in these two statutes. *See, e.g., Kyles v. J.K. Guardian Sec. Serv., Inc.*, 222 F.3d 289, 295 (7th Cir. 2000) ("Courts have recognized that … the provisions of [Title VII and Title VIII] are given like construction and application.") (citation omitted).  Moreover, *Thompson's* discussion of the cases relied upon by the County (*Trafficante* and *Gladstone*) acknowledges that despite the Court's broadly-stated rule that FHA

Next, the Opposition argues that even if the zone of interest test is narrower than Article III, the County's economic injuries still meet this test because it is "aggrieved" by a violation of the statute. Opp. at 22-23. But this argument completely ignores the reasoning in *Thompson*, which establishes that aggrievement must be judged with reference to those whose complaints fall within the statute's zone of interest. 131 S. Ct. at 869-70. As demonstrated in the Motion, the FHA was enacted to protect individuals from discriminatory conduct and to promote diverse and integrated neighborhoods. Mot. at 25-26; *see also Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1289 (7th Cir. 1977). "[C]omplaints of decreased tax revenue and increased municipal services are '[too] marginally related to . . . the purposes implicit in the statute'," to find that a municipality's action to recover such damages falls within the FHA's zone of interests. *City of Miami*, 2014 WL 3362348, at *4 (citation omitted). The County's alleged economic injuries similarly require dismissal.[11]

The County also has not met the second *Lexmark* test, that it adequately alleges that its injuries were proximately caused by a violation of the FHA. While the County admits that it must "show that its injury is the 'direct result' of the defendant's alleged discriminatory practice," Opp. at 23, its allegations do not come close to satisfying that standard. *See City of*

---

standing extends to the limits of Article III, in both cases the Court's holdings were actually "compatible with the 'zone of interest' limitation" announced in *Thompson*. 131 S. Ct. at 869.

[11] The Opposition's attempt (Opp. at 24) to characterize its claim as "explicitly" alleging "segregative and discriminatory effects," is completely frivolous. Indeed, the County's 477-paragraph Complaint does not once claim in any manner that Defendants' alleged conduct had any effect on racial housing patterns or integration issues. *See Thompson*, 131 S. Ct. at 870 (holding the "person aggrieved" standard requires a plaintiff to show that that he "falls within the 'zone of interests' sought to be *protected by the statutory provision whose violation forms the legal basis for his complaint.*'") (emphasis added). There are no allegations, for example, that the minority homeowners who were foreclosed upon moved out of the County or that the vacant homes foreclosed upon were not purchased by new minority homeowners. The County's fleeting and generalized allegation of "blight and decay" does not come anywhere close to alleging such a harm. The County also makes no attempt to causally connect its claimed monetary injuries to any such resulting housing pattern. The County's allegations of specific damages – purported loss of tax revenue and increase in municipal expenses – were allegedly caused, not because of any kind of segregation or lack of diversity, but as a result of specific loan terms.

13

*Miami*, 2014 WL 3362348, at *5 (dismissing FHA complaint on proximate cause grounds). As discussed *supra* Section II.B, the County makes no attempt to explain how it will control for intervening factors between the Defendants' loans and its own injuries, and indeed repeatedly admits the influence on that chain of "other industry participants" and national economic forces. *See* Opp. 13-21, 16 n.25. That it cannot even identify a single property that caused it harm only underscores the conclusion that the County has not adequately alleged that its injuries are the proximate cause of Defendants' lending practices.

## IV. THE COUNTY'S DISPARATE TREATMENT CLAIM IS DEFECTIVE.

As shown in the Motion (at 29), disparate treatment claims require the County to allege facts showing that Defendants intentionally discriminated against minority borrowers *because of* the borrower's minority status. *See South-Suburban Hous. Ctr. v. Greater South-Suburban Bd. of Realtors*, 935 F.2d 868, 883 (7th Cir. 1991). Not only does the Opposition fail to point to a single allegation in the Complaint evidencing racial animus, but the very paragraph the County cites as exemplary of its claim alleges only an intent to maximize profit, not to discriminate on the basis of race. Opp. at 29, citing Compl. ¶ 117 (alleging Defendants were motivated to "drive Countrywide's growth"); Mot. at 29.[12] That is not enough substance to even remotely justify a scurrilous allegation of racial discrimination against anyone.[13]

---

[12] While the Opposition makes much of the fact that the Complaint alleges Defendants marketed to minority home-buyers, marketing to one race or another concerning opportunities they might not otherwise know about does not itself constitute disparate treatment. *See South-Suburban*, 935 F.2d at 883-84.

[13] As shown in Defendants' Motion, the Seventh Circuit rejects the County's suggestion (Opp. at 29 n.41) that statistics alone are enough to make out a disparate treatment claim. *See* Mot. at 29. To the extent statistics are relevant to proving discriminatory intent at all, the County's purported statistics do not make the cut. *See, e.g.*, *Gomolka v. Quotesmith.com*, 2005 WL 2614850, at *3 (N.D. Ill. Oct. 7, 2005) (holding statistics are only probative circumstantial evidence where the comparison group is similarly qualified).

## V. THE COUNTY CANNOT AND HAS NOT ADEQUATELY PLED A DISPARATE IMPACT CLAIM.

As demonstrated in the Motion (at 27-28), the County's disparate impact claim is foreclosed by the Supreme Court's authority in *Smith v. City of Jackson*, 544 U.S. 228 (2005). The Opposition (at 25) does not offer any other way to interpret the text of the FHA in light of *City of Jackson*. But even assuming disparate impact claims were cognizable under the FHA, the County has failed to adequately state such a claim. Rather than "isolating and identifying the specific [] practices" allegedly responsible for any impact, *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 656 (1989), the County continues to rely on broad categories of alleged lending conduct, such as "steering credit worth[y] borrowers to more costly loans." Opp. at 26, 26 n.36. And, while the County alleges its statistical allegations are sufficient, it admits that its statistics fail to control for credit risk. *See* Opp. at 27. Given the myriad of other potential causes for any disparity, the County has failed to adequately plead its claim. *See Gilty v. Vill. of Oak Park*, 919 F.2d 1247, 1254 (7th Cir. 1990) ("[I]t is eligibility rate, not underrepresentation, that is telling."); *Wards,* 490 U.S. at 650-53 (statistics must compare the "qualified persons in the [relevant] market.").[14]

### CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Complaint be dismissed with prejudice and in its entirety.

---

[14] While the Opposition argues (at 30) that the Bank of America defendants are properly named as successors in interest to the Countywide and Merrill Lynch defendants, Defendants never moved to dismiss on this ground and that issue is not before this Court. *See* Mot. at 3 n.1. It is thus wholly inappropriate for the County to seek a ruling on complex successor liability issues that cannot be addressed in the space of this 15-page reply. The County's arguments on this issue are properly disregarded.

Dated: August 12, 2014

Respectfully Submitted,

By:    /s/ Thomas H. Hefferon

J. Erik Connolly
*EConnolly@winston.com*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel.: (312) 558-5600
Fax: (312) 558-5700

Thomas M. Hefferon
*THefferon@goodwinprocter.com*
James W. McGarry
*JMcGarry@goodwinprocter.com*
Matthew S. Sheldon
*MSheldon@goodwinprocter.com*
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
Fax: (202) 346-4444

*Attorneys for Defendants Bank of America Corporation, Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB, Countrywide Warehouse Lending, LLC, BAC Home Loans Servicing, LP, Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital Inc., and Merrill Lynch Mortgage Lending, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 12, 2014, I caused a true and correct copy of the foregoing

to be served upon counsel of record as of this date by electronic filing.


<u>/s/ Thomas M. Hefferon</u>
One of the attorneys for Defendants