2014 WL 6453808
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

CITY OF LOS ANGELES, Plaintiff,
v.
JPMORGAN CHASE & CO.; Jpmorgan Chase Bank, N.A.; Chase Manhattan Bank USA, N.A., Defendants.

No. 2:14–cv–04168–ODW (RZx). | Signed Nov. 14, 2014.

ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [43]

OTIS D. WRIGHT, II, District Judge.

## I. INTRODUCTION

**\*1** Before the Court is Defendants JPMorgan Chase & Co.; JPMorgan Chase Bank, N.A; and Chase Manhattan Bank USA, N.A's (collectively, "Chase") Motion to Dismiss Plaintiff's First Amended Complaint. (ECF No. 43.) This action is one of four cases brought by Plaintiff the City of Los Angeles ("the City") against large lending institutions. The City is seeking damages under the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19, for lost property-tax revenue and increased municipal services stemming from foreclosures that are allegedly the result of discriminatory lending practices. The present Motion largely mirrors similar motions to dismiss brought in related cases. The Court finds no reason to deviate from the rulings in the related cases. Accordingly, for the reasons discussed below, the Court **DENIES** Defendants' Motion to Dismiss.[1] (ECF No. 43.)

## II. FACTUAL BACKGROUND

The City filed suit against Chase on May 30, 2014, asserting two claims for (1) violating the FHA, and (2) common-law restitution. (ECF No. 1.) This action is one of four related cases brought by the City against large lending institutions, alleging identical claims. (*City of L.A. v. Wells Fargo,* No. 2:13–cv–9007–ODW(RZx); *City of L.A. v. Citigroup Inc.,* No. 2:13–cv–9009–ODW(RZx); *City of L.A. v. Bank of Am. Corp.,* No. 2:13–cv–9046–PA(AGRx).)

Chase moved to dismiss the original Complaint, and the Court granted the motion on August 5, 2014, finding that Chase is not liable for the conduct of the now-defunct Washington Mutual under the Federal Institutional Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821. (ECF No. 40.) The City was given leave to amend to excise the allegations relating to Washington Mutual, and the First Amended Complaint ("FAC") was filed on August 26, 2014. (ECF No. 41.)

In the FAC, the City alleges that Chase has engaged in discriminatory lending practices that have resulted in a disparate number of foreclosures in minority areas of Los Angeles. (*See* FAC ¶¶ 2–3.) Specifically, the City alleges that Defendants have engaged in "redlining" and "reverse redlining." (*Id.* ¶ 4.) Redlining is the practice of denying credit to particular neighborhoods based on race. (*Id.* ¶ 4 n. 2.) Reverse redlining is the practice of flooding a minority neighborhood with exploitative loan products. (*Id.* ¶ 4 n. 3.) The lengthy FAC includes a regression analysis based on Chase loans issued in Los Angeles. (*See id.* ¶¶ 90–95.) The City alleges numerous statistics based on this regression analysis. One example is that from 2004 to 2011, an African–American borrower was 2.783 times more likely to receive a "predatory loan" as a white borrower with similar underwriting and borrower characteristics. (*Id.* ¶ 91.) Also in the FAC are confidential witness statements from former employees of Chase who describe how minority borrowers were treated differently than white borrowers in the loan process. (*See id.* ¶¶ 58–82.)

**\*2** Based on publically available loan data, the City alleges that it has identified 947 discriminatory loans issued by Chase in Los Angeles that resulted in the start of foreclosure proceedings. (*Id.* ¶ 134.) The City expects that number to rise during the course of discovery. (*Id.* ¶ 134 n. 42.) According to the City, the discriminatory loans issued by Chase were more likely to result in foreclosure, which in turn diminished the City's tax base and led to blight. (*Id.* ¶¶ 119–33.) The City is seeking to recover lost property-tax revenue as well as expenses incurred for increased municipal services as a result of these foreclosures. (*Id.*)

Chase filed the present Motion to Dismiss the FAC on September 12, 2014. (ECF No. 43.) The Motion is similar, if not identical, to motions to dismiss that have already been denied in the three related cases. (*Wells Fargo,* No. 2:13–cv–9007–ODW(RZx), ECF No. 37; *Citigroup,* No. 2:13–cv–9009–ODW(RZx), ECF No. 47; *Bank of Am.,* No. 2:13–cv–9046–PA(AGRx), ECF No. 50.) Chase's Motion is now before the Court for decision.

### III. LEGAL STANDARD

**A. Rule 12(b)(1)**
Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint for lack of subject-matter jurisdiction. The Article III case or controversy requirement limits a federal court's subject-matter jurisdiction, which includes the requirement that plaintiffs have standing to bring their claims. *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1121–22 (9th Cir.2010). When a motion to dismiss attacks subject-matter jurisdiction under Rule 12(b)(1) on the face of the complaint, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See,* 557 F.3d 1066, 1073 (9th Cir.2009). Moreover, the standards set forth in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) apply in equal force to Article III standing when it is being challenged on the face of the complaint. *See Perez v. Nidek Co.,* 711 F.3d 1109, 1113 (9th Cir.2013); *Terenkian v. Republic of Iraq,* 694 F .3d 1122, 1131 (9th Cir.2012). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U .S. at 570).

**B. Rule 12(b)(6)**
Under Rule 12(b)(6), a court may dismiss a complaint for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)-a short and plain statement of the claim. *Porter v. Jones,* 319 F.3d 483, 494 (9th Cir.2003). The factual "allegations must be enough to raise a right to relief above the speculative level" and a claim for relief must be "plausible on its face." *Twombly,* 550 U.S. at 555, 570.

**\*3** The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint ... as true and ... in the light most favorable" to the plaintiff. *Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir.2001). But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001).

### IV. DISCUSSION

Chase moves to dismiss the FAC for lack of statutory standing, failure to adequately allege causation, expiration of the statute of limitations, and overall failure to state a claim. All of Chase's grounds for dismissal are familiar to the Court, having ruled on similar motions in the related cases. While Chase has raised some new arguments, the Court once again finds the City's allegations sufficient to survive the pleadings stage of this litigation.[2]

**A. Causation**
The Court turns first to the issue of causation. Chase argues that the City's FHA claim should be dismissed because the City has failed to adequately allege that its harm-lost property-tax revenue and increased municipal services-was caused by Chase's discriminatory lending practices. (Mot.18:3–22:17.) The thrust of Chase's causation argument is that the connection between the allegedly discriminatory lending practices and the City's alleged harm is too attenuated, requiring a series of speculative inferences. (*Id.*) This argument is nearly identical to those made in the related cases where this Court found that the City had adequately alleged causation for the purposes of Article III standing as well as proximate causation. *See Wells Fargo,* No. 13–cv–9007–ODW(RZx), ECF No. 37; *Citigroup,* No. 13–cv–9009–ODW(RZx), ECF No. 47.

While Chase does not explicitly refer to Article III standing in its Motion, its causation arguments invoke principles of Article III standing. A requirement for constitutional standing is that plaintiffs "establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated.' " *Maya v. Centex*

*Corp.,* 658 F.3d 1060, 1070 (9th Cir.2011) (citing *Allen v. Wright,* 468 U.S. 737, 758 (1984)). But a causal chain "does not fail simply because it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausible.' " *Id.* (quoting *Nat'l Audubon Soc'y, Inc. v. Davis,* 307 F.3d 835, 849 (9th Cir.2002)).

In addition, to survive the instant Motion to Dismiss, the City must also have adequately alleged proximate causation. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377, 1390 (Mar. 25, 2014). A "damages action under the FHA sounds basically in tort-the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach."*Garcia v. Brockway,* 526 F.3d 456, 464 (9th Cir.2008) (en banc). Accordingly, the City must allege that Chase's "wrongful conduct was a substantial factor in bringing about the harm in question."*Pac. Shores Props., LLC v. City of Newport Beach,* 730 F.3d 1142, 1167–68 (9th Cir.2013).

**\*4** First, with respect to Article III, the Court finds that the City's causation allegations are sufficient. The City relies on a regression analysis in its lengthy FAC to support its claims and theory of causation. The regression analysis is based on publicly available loan data. (FAC ¶ 90.) Supporting the first "link" in the City's causal chain-Chase's discriminatory lending practices-are statistics such as from 2004 to 2011 an African–American borrower was 2.783 times more likely to receive a predatory loan from Chase as a white borrower with similar underwriting and borrower characteristics. (*Id.* ¶ 91.) As for the second "link"-discriminatory loans resulted in foreclosures-the City alleges, for example, that "a [Chase] loan in a predominantly African–American or Latino neighborhood is 5.174 times more likely to result in foreclosure as is a [Chase] loan in a predominantly white neighborhood."(*Id.* ¶ 98.) Also, a predatory loan made to a Latino borrower was 4.339 times as likely to result in foreclosure as a non-predatory loan to a white borrower. (*Id.* ¶ 108.) These foreclosures are then alleged to have caused a reduction in property values that diminished the tax base (*Id.* ¶¶ 113–28) and created an increased need for city services (*Id* . ¶¶ 129–33), which demonstrate the final links in the City's causal chain. *Cf. Gladstone Realtors v. Vill. of Bellwood,* 441 U.S. 91, 110–11 (1979) ("A significant reduction in property values directly injures a municipality by diminishing its tax base, thus threatening its ability to bear the costs of local government and provide services.").

In support of its causation arguments, Chase references several district-court decisions in similar cases across the country. (Mot.18–20.) The Court has analyzed these cases at length in ruling on the motions to dismiss in *Wells Fargo* and *Citigroup.*The Court refers to and incorporates that analysis here. *See Wells Fargo,* No. 13–cv–9007–ODW(RZx), ECF No. 37 at 7–9; *Citigroup,* No. 13–cv–9009–ODW(RZx), ECF No. 47 at 10–12.

Next, with respect to proximate cause, the Court also finds the City's allegations sufficient to meet the minimum pleading standards. The Ninth Circuit uses the following three-factor "remoteness" test to assess proximate causation:

> (1) whether there are more direct victims of the alleged wrongful conduct who can be counted on to vindicate the law as private attorneys general; whether it will be difficult to ascertain the amount of the plaintiff's damages attributable to defendant's wrongful conduct; and (3) whether the courts will have to adopt complicated rules apportioning damages to obviate the risk of multiple recoveries.

*Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris, Inc.,* 185 F.3d 957, 963 (9th Cir.1999).

Turning to the first factor of *Oregon Laborers,* the Court finds that while mortgagors would certainly be more direct victims of Chase's alleged conduct, the City's injuries are separate and distinct from the injuries of the mortgagors. Moreover, the City alleges in the FAC that its injuries-just like the injuries suffered by the mortgagors-were a direct and foreseeable result of predatory lending practices. (*See, e.g.,* FAC ¶¶ 43–45, 106–07.) Also, the City alleges in the FAC that Chase's contribution to the City's harm-lost property-tax revenue and increased municipal services-can be calculated through Hedonic regression analysis, which distinguishes Chase's conduct from other causes. (*See id.* ¶¶ 123–28.) This favors the City under the second factor of *Oregon Laborers.*Furthermore, the Court also finds no danger of multiple recoveries-the third factor of *Oregon Laborers.*This issue is not addressed in Chase's Motion, but since the City's harm is separate and distinct from the mortgagors, the Court sees no danger of multiple recoveries at this time.

**\*5** Since the Court's rulings on the motions to dismiss in *Wells Fargo* and *Citigroup,* a district court in the Southern District of Florida has reached the opposite

conclusion on proximate causation in similar actions brought by the City of Miami. *See City of Miami v. Bank of Am. Corp.,* No. 1:13–cv–24506–WPD, 2014 WL 3362348 (S.D.Fla. July 9, 2014). Chase relies heavily on the *City of Miami* decision in its Motion. But to the extent that this Court's findings are inconsistent with *City of Miami*-which applied Eleventh Circuit case law-this Court expressly disagrees with that decision.

Lastly, with respect to causation, the Court finds that a large portion of Chase's arguments delve too deeply into the merits of the case. *Pac. Shores,* 730 F.3d at 1168 ("Causation is an intensely factual question that should typically be resolved by a jury.") For example, Chase disputes the City's regression analysis and statistics, but these arguments are more appropriate for summary judgment or trial, with the benefit of expert opinion. Chase is free to challenge causation throughout this litigation, and the Court expects it, but the City is not required to actually prove its claims at the motion-to-dismiss stage.

For these reasons, the Court finds that the allegations in the FAC meet the minimum pleading standards for the purposes of causation under Article III as well as proximate causation under the FHA.

**B. Zone of Interests**
Chase argues that the City's FHA claim must also be dismissed because the City lacks statutory standing. Statutory standing looks at whether Congress intended to allow the City to recover for its alleged harm under the FHA. *See Lexmark,* 134 S.Ct. at 1388. It is "presume[d] that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.' " *Id.* (quoting *Allen,* 468 U.S. at 751). The zone-of-interests test for statutory standing is "not especially demanding" and the benefit of the doubt goes to the plaintiff. *Id.* at 1389 (internal quotations and citations omitted). "[T]he test 'forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that" Congress authorized the plaintiff to sue. *Id.* (quoting *Match–E–Be–Nash–She–Wish Band of Pottawatomi Indians v. Patchak,* 132 S.Ct. 2119, 2210 (2012)). Unlike Article III standing, statutory standing is an inquiry resolved under Rule 12(b) (6).*See Canyon Cnty. v. Syngenta Seeds, Inc.,* 519 F.3d 969, 974 n. 7 (9th Cir.2008); *Cetacean Comm. v. Bush,* 386 F.3d 1169, 1175 (9th Cir.2004).

Here, Chase relies on *Thompson v. North American Stainless, L.P.,* 131 S.Ct. 863 (2011) to argue that the City falls outside of the FHA's zone of interests. According to Chase, the FHA's purpose is only to provide redress to victims of housing discrimination and the City itself has not suffered discrimination. (Mot.4–6.) Chase's arguments are largely identical to the zone-of-interests arguments made by the defendants in the related cases, which this Court has already rejected. *See Wells Fargo,* No. 13–cv–9007–ODW(RZx), ECF No. 37.

**\*6** As in *Wells Fargo,* this Court relies on Supreme Court precedent holding that Congress intended standing under the FHA to be as broad as Article III standing. *See Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372 (1982) (finding that statutory standing under the FHA is coextensive with Article III standing); *Gladstone,* 441 U.S. at 110 (holding that a municipality has standing under the FHA); *Trafficante v. Metro Life Ins. Co.,* 409 U.S. 205, 209 (1972) (stating that the language of the FHA is "broad and inclusive" and that Congress intended to define standing as broadly as permitted by Article III). This result is consistent with *Lexmark,* which does not require statutory standing to be narrower than Article III standing. *See Lexmark,* 134 S.Ct. at 1387–89. Instead, the Supreme Court merely held that statutory standing is a separate inquiry that requires courts to consider congressional intent. *Id.* This Court finds that *Havens Realty, Gladstone,* and *Trafficante* considered congressional intent in holding that statutory standing under the FHA is coextensive with Article III standing.

While Chase emphasizes the recent Supreme Court decision in *Thompson,* the case involves Title VII and not Title VIII, which encompasses the FHA. Under the FHA, an "aggrieved person" is defined as "any person who claims to have been injured by a discriminatory housing practice; or believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). In *Thompson,* the Supreme Court interpreted the same "aggrieved person" language in the context of an employment-discrimination suit under Title VII to limit statutory standing by only allowing suit to be brought by employees. 131 S.Ct. at 870. Thus, Chase argues that *Thompson* alters the holdings in *Havens Realty, Gladstone,* and *Trafficante.*But the Supreme Court explicitly stated otherwise. *Thompson,* 131 S.Ct. at 869 ("[I]t is Title VII rather than Title VIII that is before us here...."). The Court in *Thompson* also found that the holding in *Gladstone* remained consistent with its analysis of the "zone of interests" limitation. *Id.* Therefore, the Court relies on *Havens Realty, Gladstone,* and *Trafficante* to find that the City's claims fall within the FHA's "zone of interests."

The *City of Miami* decision discussed above reached a different result on the zone-of-interest inquiry under the FHA as well. *See* No. 1:13–cv–24506–WPD, 2014 WL 3362348, at *3–4. But the Court is once again unpersuaded by *City of Miami,* which relied exclusively on Eleventh Circuit precedent in *Nasser v. City of Homewood,* 671 F.2d 432 (11th Cir.1982). The court in *City of Miami* acknowledged that *Nasser* was the basis for its divergence from the City's cases here. *See City of Miami,* 2014 WL 3362348, at *3–4 n. 2 ("Unlike the district court in *City of Los Angeles,* this Court is in the Eleventh Circuit so it is bound by the Eleventh Circuit's opinion [*Nasser* ].... If it turns out that the zone of interests for the purposes of standing under the FHA is as broad as Article III standing, this court's ruling may very well be different as to the zone of interests analysis...."). This Court is located in the Ninth Circuit and is in no way bound by Eleventh Circuit precedent. Instead, this Court relies on precedent from the highest legal authority-the Supreme Court-to find that the zone of interests under the FHA is as broad as Article III standing.[3]*See Trafficante,* 409 U.S. at 210 (discussing the FHA's legislative history and holding that "[w]hile members of minority groups were damaged the most from discrimination in housing practices, the proponents of the legislation emphasized that those who were not direct objects of discrimination had an interest in ensuring fair housing, as they too suffered").

***7** In its Reply, Chase also brings up the Ninth Circuit's recent decision in *El Dorado Estates v. City of Fillmore,* 765 F.3d 1118, 1122 (9th Cir. Sept. 2, 2014). Chase argues that the Ninth Circuit in *El Dorado* held "that statutory standing under the FHA is not coextensive with Article III standing."(Reply 2:11–14.) But this is a mischaracterization of the *El Dorado* decision. The Ninth Circuit never reached that question because it was not raised in the first instance at the district-court level.[4]*El Dorado,* 786 F.3d at 1122.

Since the Court finds that the City has Article III standing,[5] the Court finds that the City also has statutory standing under the FHA.

**C. Statute of Limitations**
Chase also argues that the City's FHA claim should be dismissed because it is barred by the statute of limitations. (Mot.22:20–23:14.) Under the FHA, claims must be filed "not later than 2 years after the occurrence or termination of an alleged discriminatory housing practice...."42 U.S.C. § 3613(a)(1) (A).

Pursuant to a tolling agreement between the parties, the two-year limitations period in this case runs from November 25, 2011, to November 25, 2013. (Mot. 23 n. 6.) According to Chase, the statute of limitations has run on the City's FHA claim because the City has failed to allege any specific predatory lending activity within this limitations period. (Mot.22:20–23:14.) But the City argues that the "continuing violations doctrine" applies because it has alleged an unbroken, eight-year pattern and practice of discrimination with respect to Chase's discriminatory lending. (Opp'n 14:18–17:6.)

The Court finds that the allegations in the FAC do not run afoul of the statute of limitations. Where a plaintiff challenges not merely a single incident of conduct that violates the FHA, but rather a pattern or practice of discrimination, the statute of limitations runs from the last asserted occurrence. *See Havens Realty,* 455 U.S. at 380–81. This is known as the "continuing violations doctrine." *Id.* at 380. Here, the City repeatedly alleges that Chase has engaged in an "unlawful pattern and practice" of mortgage discrimination and that Chase has "adapted to changing market conditions" while continuing to discriminate against minority borrowers in Los Angeles. (*See, e.g.,* FAC ¶¶ 3–4, 8–9, 136.) Moreover, at least one of the City's confidential witnesses, who alleges discriminatory conduct by Chase, worked at the bank from 2011 to 2012, which is within the limitations period. (*See id.* ¶ 60.)

Chase disputes the application of the continuing violations doctrine because the types of loans issued to minority borrowers changed over time. (Mot.23.) Chase stopped issuing subprime loans by the time the limitations period began to run, and new loans issued during the limitations period-such as FHA and VA loans-are not "inherently predatory" like the previous loans. (*Id.* (citing FAC ¶ 52 n. 22).) But the Court finds that while the exact type of loan issued to minority borrowers may have changed over time, the City alleges that the loans issued within the relevant time period remained high-risk and discriminatory. (*See, e.g.,* FAC ¶¶ 52 ("FHA and VA government loans are characterized as higher risk loans because they are typically more expensive for a borrower than conventional loans and include fees and costs not associated with conventional loans.").) The City's allegations of discrimination under the FHA relate to Chase's lending practices overall, not a specific type of loan issued. The Court finds the allegations sufficient to apply the continuing violations doctrine.[6]*See O'Loghlin v. Cnty. of Orange,* 229 F.3d 871, 875 ("[I]f a discriminatory act takes place within the limitations period and that act is related and similar to acts that took place outside the limitations period, all the related acts-including the earlier acts-are actionable as part of a

continuing violation.").

### D. Failure to State a Claim Under the FHA

**\*8** Chase uses up considerable space in its Motion arguing that the FHA claim should also be dismissed because the City has failed to properly allege a pattern or practice of discrimination. Chase argues that the City's allegations are insufficient to recover under a theory of disparate treatment and a disparate-impact theory of liability is not available under the FHA.

#### 1. Disparate Treatment

Discriminatory intent or motive is a necessary element of any disparate treatment claim under the FHA. *See Wood v. City of San Diego,* 678 F.3d 1075, 1081 (9th Cir.2012) (requiring allegations of discriminatory intent in a disparate treatment claim under Title VII); *Gamble v. City of Escondido,* 104 F.3d 300, 304–05 (9th Cir.1997) (holding that the elements of Title VII discrimination claims, including allegations of discriminatory treatment, are the same as the elements for FHA discrimination under Title VIII).

According to Chase, the FAC is devoid of allegations that Chase's discriminatory lending practices were intentional or racially motivated. (*See* Mot. 7–14.) But the Court finds no fault with the City's ample allegations in the FAC under a theory of disparate treatment. The FAC is rife with allegations that Chase targeted minority borrowers by offering unfair loan terms based on race or national origin. (*See, e.g.,* FAC ¶¶ 11, 66, 72, 74–76, 81.) Moreover, a discriminatory pattern can be probative of motive, and the FAC contains sufficient allegations of statistical patterns of discrimination. *See Lowe v. City of Monrovia,* 775 F.2d 998, 1008 (9th Cir.1985) (stating that statistical evidence may be probative of motive).

While Chase attacks the confidential witness statements, statistics,[7] and the predatory nature of the loans themselves, the Court finds that these arguments go to the weight of the evidence and not the sufficiency of the City's pleading. (*See id.* at 9:22–13:28.) The City will be put proof as this litigation progresses, but it is not required to prove its claims at this stage. Accordingly, the Court finds that the City's FHA claim under a theory of disparate treatment is sufficient at the motion-to-dismiss stage.

#### 2. Disparate Impact

Next, Chase argues that the Court should find that disparate impact is not a viable legal theory under the FHA. (Mot.14:26–17:27.) Chase also argues that the City has not alleged a facially neutral policy, as required for a disparate-impact theory of liability. (*Id.*)

As discussed in the orders denying motions to dismiss in *Wells Fargo* and *Citigroup,* the Court finds the plurality opinion in *Smith v. City of Jackson, Mississippi,* 544 U.S. 228 (2005), unpersuasive on the disparate-impact issue. The justices in *Smith* were squarely divided on the availability of a disparate-impact theory of liability. Moreover, the case involved an Age Discrimination in Employment Act claim under Title VII, as opposed to an FHA claim under Title VIII. The Ninth Circuit has also explicitly recognized disparate-impact claims under the FHA subsequent to the *Smith* decision along with other circuits. *Ojo v. Farmers Grp., Inc.,* 600 F.3d 1205, 1208 (9th Cir.2010); *see also Graoch Assoc. # 33, L.P. v. Louisville/Jefferson Cnty. Metro Human Relations Comm'n,* 508 F.3d 366, 392 (6th Cir.2007); *Reinhart v. Lincoln Cnty.,* 482 F.3d 1225, 1229 (10th Cir.2007).

**\*9** After this Motion was taken under submission, Chase filed a Notice of Supplemental Authority. (ECF No. 48.) In the Notice, Chase points out that the United States District Court for the District of Columbia very recently vacated a regulation from the Department of Housing and Urban Development that provided for disparate-impact liability under the FHA. *See Am. Ins. Assoc. v. U .S. Dep't of Hous. & Urban Dev.,* No. 1:13–cv–00966–RJL, 2014 WL 5802283 (D.D.C. Nov. 7, 2014). Moreover, the Court recognizes that the Supreme Court has granted certiorari on the availability of a disparate-impact theory of liability under the FHA. *See Texas Dep't of Hous. & Cmty. Affairs v. The Inslusive Cmtys. Project, Inc.,*134 S.Ct. 46 (Oct. 2, 2014). But neither of these cases dictates a different result on disparate impact here. This Court is bound by Ninth Circuit precedent on the availability of a disparate-impact theory of liability under the FHA. *See Ojo,* 500 F.3d at 1208. A district-court decision in another circuit does not alter the analysis. The Supreme Court's decision to take up the disparate-impact question in *Texas Department of Housing* also holds no sway over the FHA claim here, unless and until it holds that disparate-impact is not an available theory under the FHA.[8]

Chase also argues that a disparate-impact theory of liability requires the City to allege a facially neutral policy, which the City has failed to do in the FAC. *See Stockwell v. City & Cnty. of S.F.,* 749 F.3d 1107, 1114 (9th Cir. Apr. 24, 2014); *Johnson v. United Continental Holdings, Inc.,* No. C–12–2730 MMC, 2013 WL 1758760, at \*11 (N.D.Cal. Apr. 24, 2013). But the Court

finds that the City has alleged several facially neutral policies. For example, the City alleges that Chase targeted high-risk loans in neighborhoods with disproportionate minority populations and gave discretion to loan officers while incentivizing the issuance of high-risk loans. (FAC ¶¶ 4–9, 11, 86, 96, 99, 139.) The City also alleges that Chase abandoned meaningful underwriting review and failed to extend or maintain branch support in certain neighborhoods with disproportionate minority populations. (*Id.* ¶¶ 4, 8, 11, 18, 66–76, 98, 101, 105.) These alleged policies are sufficient at this stage of the litigation. *See NAACP v. Ameriquest Mortg. Co.,* 635 F.Supp.2d 1096, 1104 (C.D.Cal. Jan. 12, 2009) (finding that the marketing of subprime loans, deployment of financial incentives, and lack of meaningful review of loan applications were sufficient policies for a disparate-impact claim).

Overall, the Court finds that the City has adequately alleged its FHA claim under a disparate-impact theory.

**E. Restitution**
Turning to the City's second claim for restitution, Chase argues that the claim should be dismissed because the City has not conferred a benefit on Chase. (Mot.24:6–25:19.) Chase urges the Court to reject the "externalities" approach that it has taken in denying the motions to dismiss in *Wells Fargo* and *Citigroup.* (*Id.*) However, the Court finds no reason to diverge from its previous rulings on this issue.

**\*10** To seek restitution, the City must allege that Chase was unjustly enriched at the City's expense. *See McBride v. Boughton,* 123 Cal.App. 4th 379, 389 (2004).

> Under the law of restitution, an individual is required to make restitution if he or she is unjustly enriched at the expense of another. A person is enriched if the person receives a benefit at another's expense. However, the fact that one person benefits another is not, by itself, sufficient to require restitution. The person receiving the benefit is required to make restitution only if the circumstances are such that, as between the two individuals, it is *unjust* for the person to retain it.

*Id.* (internal citations and quotations omitted); *see also Durell v. Sharp Healthcare,* 183 Cal.App. 4th 1350, 1370 (2010) (quoting McBride).

Here, the City contends that the benefits it conferred upon Chase are the so-called "externalities"-the costs of harm caused by Chase's discriminatory lending that the City has had to shoulder. (Opp'n 17:19–19:8; FAC ¶¶ 129–33, 149.) "Unjust enrichment arises not only where an expenditure by one party adds to the property of another, but also where the expenditure saves the other from expense or loss."*White v. Smith & Wesson Corp.,* 97 F.Supp.2d 816, 829 (N.D.Ohio Mar. 14, 2000). This Court, in line with similar decisions from trial courts across the country, finds that the City has properly alleged a benefit to state a theory of recovery for restitution. *See id.*(allowing unjust-enrichment claim where city sued gun manufacturer for failing to incorporate safety devices into handguns and negligent marketing practices); *City of Boston v. Smith & Wesson Corp.,* No. 199902590, 2000 WL 1473568, at \*18 (Mass.Super.Ct. July 13, 2000) (sustaining unjust-enrichment claim at pleadings stage based on "externalities" that the city covered due to gun manufacturer's actions); *City of N.Y. v. Lead Indus. Ass'n, Inc.,* 190 A.D.2d 173, 177 (N.Y.App.Div., May 13, 1993) (allowing restitution claim for "reasonable costs of [lead] abatement" to survive motion to dismiss).

**V. CONCLUSION**

For the reasons discussed above, the Court **DENIES** Chase's Motion to Dismiss. (ECF No. 43.) Chase shall answer the FAC within 14 days.

Chase is also **ORDERED** to meet and confer with the City and the parties in the related cases regarding discovery as well as pretrial and trial dates. The parties in the related cases before this Court have been ordered to meet and confer on **Monday, December 8, 2014.**The Court expects Chase to formally participate in that conference.[9]As previously ordered, the City shall file a written status report **no later than close of business Wednesday, December 10, 2014.**

**IT IS SO ORDERED.**

Footnotes

[1]   After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed.R.Civ.P. 78; L.R. 7–15.

[2]   Chase filed a Request for Judicial Notice ("RJN") in support of the instant Motion. (ECF No. 44.) The Court **DENIES** the RJN since it does not rely on any of the documents in its analysis. Notably, neither does Chase since there is no reference or citation to the RJN in the Motion.

[3]   This Court also notes that the Supreme Court's decision in *Thompson*-which expressly declined to limit the FHA's zones of interests-was decided decades after the Eleventh Circuit decision in *Nasser. See Thompson,* 134 S.Ct. at 1388–89.

[4]   In its Reply, Chase suggests that *El Dorado* at least warrants certification of the issue for interlocutory appeal. But the Court disagrees because there is no substantial ground for difference of opinion. *See* 28 U.S.C. § 1292(b). The Ninth Circuit never weighed in on statutory standing in *El Dorado,* and inconsistent out-of-circuit, out-of-district decisions do not create a substantial ground for difference of opinion. *See In re Thinkfilm, LLC,* No. 12–cv–9795–PSG, 2013 WL 654010, at *2 (C.D.Cal. Feb. 21, 2013); *Natural Res. Def. Council v. Cnty. of L.A.,* No. 08–cv–1467–AHM(PLAx), 2011 WL 318543, at *1 (C.D.Cal. Jan. 27, 2011).

[5]   The Court interprets Chase's Motion as disputing only causation for the purposes of Article III standing. But the Court finds the allegations in the FAC sufficient to establish injury and redressability as well.

[6]   Chase makes an additional argument with respect to loans issued by Bear Stearns. The City is seeking to hold Chase liable for loans issued by Bear Stearns at a time when Chase contends that Bear Stearns was a separate entity, and even a competitor. Chase argues that these loans should not be considered as part of the eight-year "unlawful pattern and practice" of mortgage discrimination for the purposes of the continuing violations doctrine. (Mot.23:15–24:5.) But Chase provides no evidentiary support with respect to successor liability, or lack thereof. This issue is more appropriate for an early summary-judgment motion.

[7]   Chase once again takes issue with the allegations surrounding the conduct of Bear Stearns. According to Chase, Bear Stearns operated independently during much of the relevant time period and any intentional discrimination on the part of Bear Stearns, while it operated independently from Chase, should not be imputed. (Mot. 11:23–12:12 n. 3.) But, as stated above with respect to the continuing violations doctrine, Chase offers no evidentiary support and the Court must accept the allegations in the City's FAC as true. Chase can, and perhaps should, raise the issue at the summary-judgment stage.

[8]   Chase suggests that *American Insurance* and *Texas Department of Housing* at least warrant interlocutory review. (Not. of Supp. Auth. 2:13–20.) But the Court disagrees because the City has sufficiently alleged a disparate-treatment claim under the FHA; thus, an appeal of the City's disparate-impact claim will not "materially advance the ultimate termination of the litigation." *See* 28 U.S.C. § 1292(b).

[9]   Up until this point, Chase has participated informally in joint scheduling conferences in the related cases before the Court.

**End of Document**                              © 2014 Thomson Reuters. No claim to original U.S. Government Works.