**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COUNTY OF COOK, ILLINOIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14-cv-2280 |
| | ) | |
| BANK OF AMERICA ET AL., | ) | Judge Elaine E. Bucklo |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO STAY PROCEEDINGS PENDING DECISION OF**
**UNITED STATES SUPREME COURT**

Defendants' Motion to Stay is fundamentally flawed, and it appears to be a tactical ploy to delay this Court's ruling on Defendants' pending Motion to Dismiss while Defendants are currently mediating a similar Fair Housing Act ("FHA") lawsuit against them in Los Angeles.[1]

Cook County respectfully requests that this Honorable Court deny Defendants' motion because a stay would not dispose of the County's claims, simplify the discovery or significantly streamline a trial. The Supreme Court's future decision as to whether *disparate impact* is a viable theory of liability under the Fair Housing Act ("FHA") is not dispositive of Plaintiff's single FHA claim that is primarily focused on the *intentional*

---

[1] This Court may take judicial notice of the docket entries and orders of the court in *City of Los Angeles v. Bank of America Corp. et al.,* No. 2:13-CV-9046, 2014 WL 2770083 (C.D. Cal.). The docket reflects that the court contemporaneously denied Bank of America's request for a certificate of immediate appeal on the denial of its motion to dismiss, ordered all discovery to be completed within 10 months, set a trial date of August 18, 2015, and ordered a mediator to be selected within 14 days in connection with the parties simultaneous agreement to privately mediate the case. *See* Doc. Nos. 63-66.

*nature and disparate treatment* of Defendants' discriminatory housing practices. The discovery to prove the intentional discrimination allegations subsumes both disparate treatment and disparate impact theories. Thus, for purposes of discovery, it does not matter that disparate impact may or may not be a viable theory as a basis for an FHA claim, Cook County will still require the same detail and amount of discovery discussed at length below. Instead of simplifying discovery or streamlining trial, granting a motion to stay would actually delay these proceedings unnecessarily and provide a clear tactical advantage to Defendants, all while Plaintiff's injuries continue to mount with each new foreclosure that Defendants caused.

## ARGUMENT

Defendants premise their Motion for a Stay on a mischaracterization of the actual charging allegations of the Complaint, arguing that "Plaintiff Cook County's *central contention* is that Defendants' lending practices in the middle of the last decade and thereafter allegedly *had an adverse effect* on minority communities." Memorandum of Law In Support of Defendants' Motion To Stay Proceedings [Doc. 44] (hereafter, "BAC Brief") at 3 (emphasis added); *see also* BAC Brief at 4 ("The Plaintiff's only cause of action is heavily reliant on allegations of disparate impact on minority borrowers. . . . There really is no doubt that allegations of disparate impact are at the heart of Plaintiff's complaint."). This is not an accurate representation of Plaintiff's Complaint.

Cook County's core contention is that Defendants *intentionally discriminated against or disparately treated minorities* in the origination, servicing, and foreclosure of residential home mortgage loans and that their discriminatory housing practice of equity stripping has harmed Cook County. *See, e.g.,* Complaint ¶¶ 4-7, 9, 13, 55-56, 59, 84-108,

111-182, 190-194, 196, 200-206, 209, 216, 218, 225-226, 233, 235, 245-247, 249, 256, 264, 267-268, 277, 287-290, 293, 297-299, 301-306, 312, 325, 379, 382-383, 296-397, 399, 436, 438, 441, 443-444. Indeed, Plaintiff's extensive allegations about Defendants' interrelated discriminatory policies, practices and procedures underlying their discriminatory housing practice of equity stripping focus on the intentional nature of Defendants' conduct; Plaintiff consequently seeks punitive damages for that conduct. *See id.* Even a cursory reading of the County's Complaint reveals that the County is not relying solely, or even primarily, on a disparate impact theory in support of its single cause of action under the FHA.[2] *Id.*

The issue presently before the Supreme Court in *Texas Dept. of Hous. and Cmty. Affairs v. The Inclusive Comm. Proj., Inc.*, __ S. Ct. __, 2014 WL 4916193 (Oct. 2, 2014), solely concerns the viability of a disparate impact theory as the basis for an FHA claim. As such, the Supreme Court's decision will not "directly affect the claims or outcome of the district court action," as was the situation in *Walker v. Monsanto Co. Pension Plan,* 472 F. Supp. 2d 1053, 1054-55 (S.D. Ill. 2006). Nor would the Supreme Court's decision substantially "simplify the issues in question and streamline the trial." *In re Groupon Deriv. Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (Lefkow, J).

This is because the key questions on Plaintiff's single FHA claim -- regardless of whether Plaintiff advances a discriminatory treatment theory or a disparate impact theory based on policies that Defendants will argue are facially neutral -- are whether Defendants' discriminatory housing practice of equity stripping violated the FHA and

---

[2] Defendants repeatedly acknowledge that Plaintiff alleges a single FHA cause of action. *See* BAC Brief at 1 ("Plaintiff's sole cause of action"), 4 ("Plaintiff's only cause of action").

whether Defendants acted intentionally or knowingly such that punitive damages should be awarded. Plaintiff's potential inability to rely on an alternative disparate impact theory, if the Supreme Court precludes it, simply will not eliminate Plaintiff's single FHA claim, will not materially affect the outcome of Plaintiff's case (unless Plaintiff cannot prove Defendants' disparate treatment), and will not eliminate Plaintiff's effort at trial to prove Defendants' knowledge or intent.  With or without a disparate impact theory, Defendants must still try to prove the lack of disparate treatment by their policies and practices and, to avoid the possibility of punitive damages, must demonstrate their lack of knowledge and intent.  Thus, a stay here would not materially change or "reduce the burden of litigation on the parties and on the court[.]" *In re Groupon Deriv. Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (Lefkow, J.).

Assuming the Court rejects Defendants' pending Motion to Dismiss, Plaintiff must prove its single FHA claim at trial and will seek to prove Defendants' knowledge and intent regardless of whether Plaintiff pursues a disparate impact theory at trial.[3] Given the nature of Defendants' alleged discriminatory housing practice of equity stripping, the parties' discovery relating to Defendants' liability for disparate treatment under the FHA, and the discovery relating to Defendants' knowledge and intent, subsumes the discovery necessary to prove liability under a disparate impact theory. Regardless of the theory advanced, discovery and trial evidence will involve Defendants' mortgage loan and servicing records, Defendants' emails, and Defendants' corporate

---

[3]As such, Plaintiff disagrees with Defendants' generalization that Plaintiff's intentional discrimination claim presents a "markedly different, and in many ways simpler, case for discovery and trial than a case involving a disparate impact claim." BAC Brief at 4.

policies and other records relating to the facts of Defendants' discriminatory actions, policies and practices as alleged in the Complaint.

Among other things, Cook County will require discovery of Defendants' mortgage Loan Application Registry [LAR] data and mortgage loan servicing data of at least all of the mortgage loans Defendants' made within Cook County during the relevant time frame. Defendants' LAR and mortgage servicing data will have the necessary information pertaining to each discriminatory and predatory, or higher cost, non-prime mortgage loan and foreclosure at issue including: property addresses, borrower minority status, specific loan terms, underwriting information, payment history, and loan default or foreclosure status. This discovery is required regardless of whether Plaintiff is prosecuting its FHA claim on the basis of disparate treatment or disparate impact. The LAR and servicing data will provide evidence regarding disparate treatment and the intentional nature of Defendants' illegal scheme. Empirical analysis of that very same data will provide evidence regarding disparate impact.

Such data also will be used at trial to prove at least some of the damages to the County -- under either theory of the case -- by evidencing the direct linkage of specific discriminatory loans to specific property address to specific costs and injuries to the County. Defendants maintain all of this data electronically, and the burden in accessing and producing this data is exactly the same regardless of how the County demonstrates liability under its FHA claim.

A stay will "unduly prejudice or tactically disadvantage" Cook County. *Groupon*, 882 F. Supp. 2d at 1045. Here, Defendants' asserted grounds for a stay are premised solely on a Supreme Court decision that would not be dispositive of the case and only

5

could affect an alternative theory of liability on Plaintiff's single FHA claim. Granting the stay would cause Plaintiff's FHA claim to languish unnecessarily since Plaintiff's allegations support a viable disparate treatment basis to assert FHA liability. Courts in this district have found undue prejudice or tactical disadvantage in analogous situations. *See, e.g., R.R. Donnelly & Sons co. v. Xerox Corp.*, No. 12-cv-6198 (Coleman, J.) (N.D. Ill. Dec. 16, 2013), 2013WL6645472 at *3 (denying stay in patent infringement case where parties were awaiting PTO review of only 2 of 6 patents at issue).

To the extent Defendants' claim that a stay would not "unduly prejudice" or "tactically disadvantage" Plaintiff, *see* BAC Brief at 6, they are wrong. With every passing day Defendants are continuing the alleged intentional and discriminatory equity stripping scheme, including through continued discriminatory servicing and foreclosures on the discriminatory and predatory mortgage loans also at issue in this case. Each day of delay adds to the continuing harm incurred by Plaintiff and the communities and neighborhoods it embodies. Even if a stay here only delayed the case for four or five months, that delay would result in substantial additional alleged damages to the County, its communities, and its neighborhoods. [4]

Conversely, Defendants' own delayed timing in bringing this Motion to Stay, and Defendants' argument that the delay only would be for "a few months," undermines Defendants' stated basis for a stay. First, given the overlapping nature of the critical electronic discovery of Defendants' LAR and mortgage loan servicing data, and the

---

[4] When and how the County determined to bring suit against these Defendants has already been fully briefed on Defendants' pending motion to dismiss. Defendants' present ill-timed attempt to reassert their thinly-veiled laches argument is of no moment here, where the Court must determine whether granting Defendants' requested stay would prejudice the County.

likely minimal six month discovery period necessary before any expert discovery, there is no legitimate discovery benefit Defendants could receive from a stay of just "a few months" as Defendants claim. During the period of fact discovery, the topics and scope of discovery, as well as the burden of parties relating to it, will not be significantly affected by whether or not Plaintiff can purse a disparate impact theory of FHA liability at trial. Indeed, even to the extent the Supreme Court's ruling in *Inclusive Communities* might eliminate Plaintiff's ability to rely on a disparate impact theory at trial, this won't impact fact discovery and won't materially impact these proceedings, at the earliest, until expert discovery could begin – likely six to eight months after the Court's ruling on the Motion to Dismiss.

Defendants' assertions that there is no "undue prejudice" or "tactical disadvantage" to Plaintiff, and no advantage to Defendants, *see* BAC Brief at 6, are belied by the circumstances here. The Petition for Certiorari in *Texas Dept. of Hous. And Cmty. Affairs v. The Inclusive Comm. Proj., Inc.* was filed on May 13, 2014, and was granted on October 2, 2014. Nothing has prevented Defendants from filing their Motion to Stay long before now. Curiously, however, Defendants filed this Motion to Stay on November 17, 2014, only three days after yet another unfavorable ruling on a motion to dismiss brought by another major banking defendant that was sued by the City of Los Angeles in an FHA action for discriminatory mortgage lending and foreclosure activities similar to conduct alleged by Plaintiff here.[5] *See City of Los Angeles v. JPMorgan Chase & Co.*, No. 2:14-CV-04168, 2014 WL 6453808, (Nov. 14, 2014, C.D.Cal.)

---

[5] In connection with its ruling on Defendants' pending Motion to Dismiss, this Court certainly may take judicial notice of the decision in *City of Los Angeles v. JPMorgan Chase & Co.*, No. 2:14-CV-04168, 2014 WL 6453808, (Nov. 14, 2014, C.D. Cal.).

(denying defendants' motion to dismiss FHA claim and flatly rejecting all of defendants' arguments regarding the statute of limitations; standing, including the *Lexmark* "statutory standing" and "zone of interests" arguments; and disparate impact, notwithstanding the court's recognition "that the Supreme Court has granted certiorari on the availability of a disparate-impact theory of liability under the FHA. *See Texas Dep't of Hous. & Cmty. Affairs v. The Inclusive Cmtys. Project, Inc.,*134 S.Ct. 46 (Oct. 2, 2014).").

As noted above, Defendants have brought this motion while they are simultaneously engaged in mediation in similar litigation with the City of Los Angeles and just days after another unfavorable ruling to Defendants' position in their Motion to Dismiss. It cannot be disputed that a stay would delay this Court's ruling on Defendants' pending Motion to Dismiss. This delay would benefit Defendants' legal position in the their mediation with Los Angeles, to the extent this court was otherwise inclined to deny Defendants' Motion to Dismiss, because Defendants would avoid another legal decision adverse to their position. These matters, combined with the fact that the Supreme Court's pending ruling in *Inclusive Communities* could not dispose of this case, reflects to Cook County that Defendants actual purpose in filing this Motion to Stay was precisely to obtain an improper tactical advantage here, and over plaintiff in the Los Angeles mediation.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Stay.


Dated: November 22, 2014

ANITA ALVAREZ,
STATE'S ATTORNEY FOR COOK COUNTY

By: /s/ Daniel A. Dailey
        Special Assistant State's Attorney

James D. Montgomery, Sr.
jmontgomery@jdmlaw.com
James D. Montgomery, Jr.
james2@jdmlaw.com
John K. Kennedy
jkennedy@jdmlaw.com
Daniel A. Dailey
ddailey@jdmlaw.com
JAMES D. MONTGOMERY AND
ASSOCIATES, LTD.
One North LaSalle Street
Suite 2450
Chicago, Illinois 60602
Phone: (312)977-0200
Fax: (312)977-0209

James M. Evangelista (admitted pro hac vice)
jim@hpllegal.com
Jeffrey R. Harris (admitted pro hac vice)
jeff@hpllegal.com
Darren W. Penn (admitted pro hac vice)
darren@hpllegal.com
David J. Worley (admitted pro hac vice)
david@hpllegal.com
HARRIS PENN LOWRY LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404)961-7650
Fax: (404)961-7651

*Special Assistant State's Attorneys*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I served the above and foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS PENDING DECISION OF UNITED STATES SUPREME COURT on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.

Dated:  November 22, 2014                    /s/ Daniel A. Dailey
                                             Daniel A. Dailey