# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| COUNTY OF COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA CORPORATION, | ) | Case No. 14-cv-2280 |
| BANK OF AMERICA, N.A., | ) | |
| COUNTRYWIDE FINANCIAL | ) | Judge Elaine E. Bucklo |
| CORPORATION, | ) | |
| COUNTRYWIDE HOME LOANS, INC., | ) | |
| COUNTRYWIDE BANK, FSB, | ) | |
| COUNTRYWIDE WAREHOUSE LENDING, | ) | |
| LLC, BAC HOME LOANS SERVICING, LP, | ) | |
| MERRILL LYNCH & CO., INC., MERRILL | ) | |
| LYNCH MORTGAGE CAPITAL INC., and | ) | |
| MERRILL LYNCH MORTGAGE LENDING, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO CERTIFY THE MARCH 19, 2015 ORDER FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................2

I. THIS COURT'S ORDER PRESENTS THREE CONTROLLING QUESTIONS OF LAW. ...................................................................................................................4

II. THERE IS SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION ON ALL THREE CONTROLLING QUESTIONS OF LAW....................................................7

    A.    There is Substantial Ground for a Difference of Opinion on Whether the Zone-of-Interests Test Applies in the FHA Context.................................................8

    B.    There is Substantial Ground for a Difference of Opinion on Whether Loan Servicing Can Extend the Life of a Time-Barred FHA Claim Under the Continuing Violation Doctrine. ............................................................................9

    C.    There is Substantial Ground for a Difference of Opinion on Whether a Plaintiff Must Address Multiple Intervening Causes to Establish Traceability. ........................................................................................................11

III. THE THREE CONTROLLING QUESTIONS OF LAW MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS CASE.................................12

CONCLUSION...................................................................................................................13

## TABLE OF AUTHORITIES

CASES:                                                                      Page

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
    219 F.3d 674 (7th Cir. 2000) ............................................................2, 4

*APCC Servs., Inc. v. Sprint Commc'ns Co.*,
    297 F. Supp. 2d 90 (D.D.C. 2003) ......................................................6

*Bennett v. Spear*,
    520 U.S. 154 (1997)..........................................................................7

*Bilello v. JPMorgan Chase Retirement Plan*,
    603 F. Supp. 2d 590 (S.D.N.Y. 2009).................................................4

*City of Birmingham v. Citigroup, Inc.*,
    No. CV-09-BE-467-S, 2009 WL 8652915 (N.D. Ala. Aug. 19, 2009) ...................................11

*City of Los Angeles v. Wells Fargo*,
    22 F. Supp. 3d 1047 (C.D. Cal. 2014) ..................................................12

*City of Miami v. Bank of Am. Corp.*,
    No. 13-24506-CIV, 2014 WL 3362348 (S.D. Fla. July 9, 2014), *appeal
    docketed*, No. 14-14543 (11th Cir. Oct. 8, 2014) ......................................1, 5, 9, 13

*Couch v. Telescope*,
    611 F.3d 629 (9th Cir. 2010) ............................................................7

*Dahlstrom v. Sun-Times Media, LLC*,
    39 F. Supp. 3d 998 (N.D. Ill. 2014) ..............................................2-3, 13

*Del. State Coll. v. Ricks*,
    449 U.S. 250 (1980)..........................................................................6

*DT Apartment Grp., LP v. CWCapital, LLC*,
    No. 3:12-CV-0437-D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012)....................................8

*EEOC v. UPS, Inc.*,
    No. 09 C 5291, 2013 WL 2628795 (N.D. Ill. June 11, 2013) ................................12

*Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*,
    18 F. Supp. 2d 464 (D.N.J. 1998) ......................................................12

*Equal Rights Ctr. v. Equity Residential*,
    798 F. Supp. 2d 707 (D. Md. 2011) ....................................................9

*Freeman v. Madison Metro. Sch. Dist.*,
231 F.3d 374 (7th Cir. 2000) ................................................6

*Fulani v. Brady*,
935 F.2d 1324 (D.C. Cir. 1991) ...........................................11

*Grand Rapids Plastics v. Lakian*,
188 F.3d 401 (6th Cir. 1999) ...............................................10

*Hernandez v. Sutter W. Capital*,
No. C 09-03658 CRB, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010)...................10

*Johnson v. Burken*,
930 F.2d 1202 (7th Cir. 1991) ..............................................4

*Jorman v. Veterans Admin.*,
830 F.2d 1420 (7th Cir. 1987) ..............................................6

*Kaiser Aluminium & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
677 F.2d 1045 (5th Cir. 1982) .............................................10

*Kimbrew v. Fremont Reorganization Corp.*,
No. CV 08-03277 AG, 2008 WL 5975083 (C.D. Cal. Nov. 17, 2008) ................10

*Levy v. Trent Motel Assocs., LP*,
No. 11-776, 2011 WL 3803647 (E.D. Pa. Aug. 26, 2011) ......................8

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014).................................................2, 3, 8

*Lyons v. First Am. Title Ins. Co.*,
No. C 09-4156 PJH, 2009 WL 5195866 (N.D. Cal. Dec. 22, 2009) ...............10

*MainStreet Org. of Realtors v. Calumet City*,
505 F.3d 742 (7th Cir. 2007) ..............................................5

*Mayor and City Council of Baltimore v. Wells Fargo Bank, N.A.*,
No. JFM-08-62, 2011 WL 1557759 (D. Md. Apr. 22, 2011) ................11,

*McConnell v. FEC*,
540 U.S. 93 (2003).......................................................6

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) .........................................5, 12

*Neal v. Honeywell Inc.*,
33 F.3d 860 (7th Cir. 1994) ..............................................5

iii

*Pollack v. U.S. DOJ*,
  577 F.3d 736 (7th Cir. 2009) ...............................................................................6

*Pozzie v. U.S. Dep't of Hous. & Urban Dev.*,
  48 F.3d 1026 (7th Cir. 1995) ..............................................................................11

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ................................................................................7

*Sanner v. Bd. of Trade of City of Chi.*,
  62 F.3d 918 (7th Cir. 1995) ..................................................................................6

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
  642 F.3d 560 (7th Cir. 2011) .................................................................................5

*Sokagon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
  86 F.3d 656 (7th Cir. 1996) ..............................................................................4, 5

*Stenger Indus., Inc. v. Int'l Ins. Co.*,
  74 B.R. 1017 (N.D. Ga. 1987) ............................................................................12

*Sterk v. Redbox Automated Retail, LLC*,
  672 F.3d 535 (7th Cir. 2012) ..........................................................................12, 13

*In re Text Messaging Antitrust Litig.*,
  630 F.3d 622 (7th Cir. 2010) .......................................................................8, 9, 13

*Thompson v. North Am. Stainless, LP*,
  562 U.S. 170 (2011) .....................................................................................2, 3, 8

*Thrasher-Lyon v. CCS Commercial, LLC*,
  No. 11 C 04473, 2012 WL 5389722 (N.D. Ill. Nov. 2, 2012) .................................9

*Trafficante v. Metro. Life Ins. Co.*,
  409 U.S. 205 (1972) ..............................................................................................3

*Union Cnty. v. Piper Jaffray & Co.*,
  525 F.3d 643 (8th Cir. 2008) ................................................................................9

*In re Uranium Antitrust Litig.*,
  617 F.2d 1248 (7th Cir. 1980) ..............................................................................2

*Warth v. Seldin*,
  422 U.S. 490 (1975) ............................................................................................11

*Williams v. Sims*,
  390 F.3d 958 (7th Cir. 2004) .................................................................................5

*Woodworth v. Bank of Am., N.A.*,
   No. 09-3058-CL, 2011 WL 1540358 (D. Or. Mar. 23, 2011) ............................................ 9-10

**STATUTES:**

28 U.S.C. § 1292(b) ..................................................................................................................2, 7

**OTHER AUTHORITIES:**

S. Rep. No. 85-2434, 85th Cong., 2d Sess. (1958) .........................................................................5

Wright & Miller, Fed. Prac. & Proc. § 3930.................................................................................12

## INTRODUCTION

This is an appropriate case for application of the interlocutory appeal provisions of 28 U.S.C. § 1292(b). The Court's Order denying Defendants' motion to dismiss Cook County's Fair Housing Act ("FHA") claim, *see* Mem. Op. and Order, Dkt. No. 52 ("Order"), is the latest in a series of recent decisions rendered in cases brought by political subdivisions on a reverse-redlining theory. *See* Order at 5 n.1 (identifying cases). As the Court observed in its Order, the district courts involved have passed upon the same issues under similar circumstances, opining on standing, timeliness, and the adequacy of the pleadings. *See id.* at 5. But they have diverged on disposition and reasoning—even courts that agree about the result have reached their conclusions by different means. Recent decisions by the United States Supreme Court, uprooting settled law on matters like statutory standing, have only added to the confusion, leaving parties in clouded and conflicted legal terrain. And because many of these decisions deny motions to dismiss, the parties have little opportunity for obtaining meaningful appellate guidance before wading deep into expensive and lengthy discovery and other pretrial proceedings, such as significant expert work. Only one—a Rule 12(b)(6) dismissal in *City of Miami v. Bank of America Corp.*, No. 13-24506-CIV, 2014 WL 3362348 (S.D. Fla. July 9, 2014), *appeal docketed*, No. 14-14543 (11th Cir. Oct. 8, 2014)—has reached appellate review.

Given the number of courts that have decided similar cases, it is not surprising that the issues of standing (both constitutional and statutory) and timeliness are rife with conflicts between like authorities. Some of these issues are pure questions of law, clear answers to which may dispose of this case and thus obviate the need for burdensome discovery and pretrial proceedings. Given the breadth of the challenged practices in this case, the discovery burden alone is extraordinary. Defendants therefore respectfully request that this Court certify the

following three questions for appeal to the Seventh Circuit, pursuant to its authority under 28

U.S.C. § 1292(b):

1. Whether the Supreme Court's decisions in *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011), and *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), overrule "the *Trafficante* dictum" that aggrieved-person standing under the Fair Housing Act is coextensive with Article-III standing.

2. Whether a loan origination constitutes a "discrete act" for purposes of the Fair Housing Act, such that servicing of the loan constitutes a continuing effect of the issued loan, thus precluding application of the continuing violation doctrine.

3. Whether a plaintiff must address independent, intervening causes of its injuries in its pleading to establish traceability for Article-III standing.

Each of these questions satisfies § 1292(b)'s criteria: they are questions of law that are

controlling, contestable, and will expedite the resolution of this case. *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000). Interlocutory review of these questions will

ensure that the parties proceed with a clear understanding of the law—if the case proceeds at all.

## ARGUMENT

"Section 1292(b) . . . provides appellate courts with a flexible tool for interlocutory

review of complex and controlling questions of law. Interlocutory review is permitted to assure

orderly and efficient administration of complex cases." *In re Uranium Antitrust Litig.*, 617 F.2d

1248, 1263 (7th Cir. 1980). Under § 1292(b), certification of an order for interlocutory appeal is

appropriate where the order: (1) involves a controlling question of law; (2) for which there is a

substantial ground for difference of opinion; and (3) an immediate appeal from the order may

materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). In fact,

"when the statutory criteria are met, the District Court has a duty to allow the appeal."

*Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014) (citing

*Ahrenholz* , 219 F.3d at 677), *appeal filed sub nom. Gallagly v. Sun-Times Media, LLC*, No. 14-2295 (7th Cir.).

The Order presents three questions that deserve immediate interlocutory review. First, this Court held that the County had statutory standing because *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205 (1972), notes that the use of the phrase "aggrieved person" shows "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Id.* at 209 (citation and internal quotation marks omitted); *see also* Order at 11. Because the Supreme Court's recent decisions in *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011) and *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) require courts to conduct a zone-of-interests test on all statutory claims and thus cast doubt on *Trafficante*'s commentary that statutory standing is coextensive with Article III, this Court should certify the question of whether the FHA imposes a zone-of-interests test that demands more than what Article III requires.

Next, the Order presents a controlling, dispositive question related to the FHA's statute of limitations. Despite that the allegedly discriminatory lending in this case "occurred outside the limitations period," this Court applied the continuing violation doctrine because "loan servicing [arising from the time-barred loan originations] . . . allegedly perpetuated the loan's discriminatory terms and conditions into the limitations period." *See* Order at 14. The Court's ruling is at odds with longstanding Supreme Court precedent, and it conflicts with other district court opinions on this very issue in the FHA context. This Court should therefore certify the question of whether loan servicing can extend the life of an FHA claim which is based on the discrete act of loan origination.

Finally, the Order raises a pivotal question of constitutional standing. This Court held that Cook County's injuries were traceable to Defendants' allegedly discriminatory lending practices. In so holding, it concluded that external conditions beyond Defendants' control that could have independently caused a borrower's foreclosure were irrelevant to the causation analysis. *See* Order at 9 (noting *Baltimore III*'s rejection of the external-conditions argument). The Court's ruling differs from the position taken by at least one district court, which has held that too many speculative inferences are necessary to link discriminatory acts like those alleged in this case to borrower foreclosures and thus the Article III traceability requirement fails. Because of this cognizable split in authority, this Court should certify the question of whether an injury is "traceable" to a defendant's alleged conduct when numerous other factors could also have been equally responsible for the injury.

## I. THIS COURT'S ORDER PRESENTS THREE CONTROLLING QUESTIONS OF LAW.

A question of law is "'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokagon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Put differently, the question presented must involve an "abstract issue of law" that is "quickly and cleanly" resolvable "without having to study the record." *Ahrenholz*, 219 F.3d at 677. The question must be "controlling" at the time this Court certifies a question to the court of appeals. *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

The Order presents three controlling questions of law. First, there is the question of statutory standing—whether the County must show that it satisfies the zone-of-interests test, even under the FHA. *See Bilello v. JPMorgan Chase Retirement Plan*, 603 F. Supp. 2d 590, 593 (S.D.N.Y. 2009). The question is controlling because the lack of such standing "bars [a] suit

4

from being adjudicated in a federal court." *See MainStreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 745 (7th Cir. 2007). The Court presumed the answer to the question was no, relying on dictum by the Supreme Court suggesting statutory standing was coextensive with Article III standing. But if the answer is yes, it may dispose of this case for the reasons set forth by Defendants in their motion to dismiss. *See* Mem. of Law in Support of Defs.' Mot. to Dismiss, Dkt. No. 29, at 25–26 (explaining that the County's economic interests fall outside the FHA's goals of prohibiting discriminatory conduct and promoting diverse and integrated neighborhoods); *see also City of Miami*, 2014 WL 3362348, at *4 ("The City's complaints of decreased tax revenue and increased municipal services are 'so marginally related to . . . the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit suit.'" (quoting *Thompson*, 131 S. Ct. at 870)). Because the Seventh Circuit's answer to this question "is quite likely to affect the further course of the litigation," the statutory standing issue is controlling. *See Sokagon Gaming Enter. Corp.*, 86 F.3d at 659.

The second controlling question is whether the continuing violation doctrine applies in this case to extend the limitations period of an otherwise time-barred claim. The Seventh Circuit generally utilizes § 1292(b) to answer purely legal questions concerning limitations at the pleadings stage.[1] Indeed, Congress enacted § 1292(b) partly to address statute-of-limitations questions, so that parties could obtain the answer to dispositive limitations questions that "might render unnecessary a lengthy trial." *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1257 (11th Cir. 2004); *see also* S. Rep. No. 85-2434, 85th Cong., 2d Sess. at 3 (1958) (explaining that § 1292(b) could be used "where a motion to dismiss based on a statute of limitations is denied"

---

[1] *See, e.g.*, *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560 (7th Cir. 2011); *Williams v. Sims*, 390 F.3d 958 (7th Cir. 2004); *Neal v. Honeywell Inc.*, 33 F.3d 860 (7th Cir. 1994).

and that interlocutory review of such issues would "sav[e] . . . the time of the District Court and considerable expenses on the part of litigants").

The limitations question is purely legal—whether loan servicing can preserve an otherwise untimely claim premised on loan origination activity. That question can be answered "quickly and cleanly," without wading into questions of fact—there is no dispute that only acts of loan servicing are alleged to have occurred within the limitations period. *See Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 381 (7th Cir. 2000) ("The continuing violation doctrine applies only if the plaintiff identifies acts of discrimination *that occurred within the limitations period* as well, rather than simply *the persisting effects of past discrimination*." (emphasis added)). If servicing is merely an "inevitable consequence" of an allegedly discriminatory loan issued outside of the limitations period, that legal conclusion will not only "affect the further course of [this] litigation," it will end it altogether. *See Del. State Coll. v. Ricks*, 449 U.S. 250, 257–58 (1980) (holding that "a delayed, but inevitable consequence" of a time-barred act is a continuing effect that cannot prolong the life of a claim under the continuing violation doctrine). The question is therefore controlling.

Finally, whether the County has Article III standing is a controlling question of law. *See APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 96 (D.D.C. 2003). Constitutional standing is a "bedrock" requirement, *McConnell v. FEC*, 540 U.S. 93, 225 (2003), and a plaintiff cannot proceed in federal court without it, *see Pollack v. U.S. DOJ*, 577 F.3d 736, 743 (7th Cir. 2009). "Traceability," or "links in the chain of causation," is an essential component of such standing, *Sanner v. Bd. of Trade of City of Chi.*, 62 F.3d 918, 923 (7th Cir. 1995), and must be based on palpable facts, not speculation and "remote possibilit[ies]," *Jorman v. Veterans Admin.*, 830 F.2d 1420, 1428 (7th Cir. 1987). A plaintiff cannot trace an injury back

6

to a defendant's alleged conduct when "the independent action of some third party not before the court" is responsible for the alleged injury. *Bennett v. Spear*, 520 U.S. 154, 167 (1997).

The parties do not dispute that intervening causes may have resulted in the defaults and foreclosures in question, independent of any action taken by Defendants. The County's position was that it alleged enough to mitigate the impact of any independent and intervening causes that might have been responsible for its injuries, and thus traceability was plausible. *See* Pl.'s Mem. of Law in Opposition to Defs.' Mot. to Dismiss, Dkt. No. 35, at 16 n.25. In its Order, the Court did not rest its ruling on whether the County alleged enough to mitigate the impact of intervening causes; it treated intervening causes as irrelevant so long as Defendants' conduct "plausibly contributed" to the County's economic injuries. *See* Order at 9. Whether and how intervening causes impact the traceability analysis is a pure question of law that can be answered without reference to the record. As a result, the traceability question is "controlling."

## II. THERE IS SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION ON ALL THREE CONTROLLING QUESTIONS OF LAW.

Certification is appropriate where "there is substantial ground for difference of opinion" on the issues identified. 28 U.S.C. § 1292(b). A substantial ground for difference of opinion "exists where 'the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Couch v. Telescope*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)); *see also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed."). When a recent Supreme Court decision unsettles the landscape of existing law, such decision also may create substantial ground for a difference

7

of opinion. *See In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 627–28 (7th Cir. 2010).

Each issue on which Defendants seek certification presents such a substantial ground for a

difference of opinion.

### A. THERE IS SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION ON WHETHER THE ZONE-OF-INTERESTS TEST APPLIES IN THE FHA CONTEXT.

There is substantial ground for a difference of opinion on the zone-of-interests question

because the Supreme Court's decisions in *Thompson* and *Lexmark* arguably narrow *Trafficante*'s

observation about statutory standing to its facts. Indeed, courts disagree on whether and how

*Thompson* affects *Trafficante*—that is reason enough for interlocutory review.

Although this Court correctly observed that *Thompson* did not expressly overrule

*Trafficante*, the *Thompson* Court also narrowed *Trafficante*'s holding as to the coextensive

nature of statutory standing to apply only "insofar as tenants of the same housing unit that is

charged with discrimination are concerned." *See Thompson*, 562 U.S. at 176 (quoting

*Trafficante*, 409 U.S. at 209) (emphasis omitted). Several district courts have since recognized

*Thompson*'s restoration of the zone-of-interests test in the FHA context and its abandonment of

the notion that statutory standing is coextensive with Article-III standing. *See DT Apartment

Grp., LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at *15 (N.D. Tex. Dec.

26, 2012); *Levy v. Trent Motel Assocs., LP*, No. 11-776, 2011 WL 3803647, at *4 (E.D. Pa. Aug.

26, 2011) ("Thus, a person might technically be injured in an Article III sense, but will not have

standing to sue if his interests are unrelated to the statute's prohibitions." (citation and internal

quotation marks omitted)). The Supreme Court also has held since *Thompson* that the zone-of-

interests test "always applies and is never negated." *See Lexmark*, 134 S. Ct. at 1388. And

based on the zone-of-interests test, at least one district court has held the economic interests

claimed by a municipality, like the ones asserted here, do not fall within the Fair Housing Act's

ambit. *See City of Miami*, 2014 WL 3362348, at *4. The uncertainty created by *Thompson*'s

narrowing of *Trafficante* therefore constitutes a substantial ground for a difference of opinion.

*See In re Text Messaging Antitrust Litig.*, 630 F.3d at 627-28.

Indeed, conflicting decisions regarding whether the zone-of-interests test applies in FHA

cases post-*Thompson* further favors certification. At least one court has concluded *Thompson*

does not overrule *Trafficante*'s discussion about the coextensive nature of statutory standing

under the FHA. *See Equal Rights Ctr. v. Equity Residential*, 798 F. Supp. 2d 707, 718 n.4 (D.

Md. 2011). These conflicting views weigh in favor of certification. *See Union Cnty. v. Piper

Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) ("[I]dentification of 'a sufficient number of

conflicting and contradictory opinions' would provide substantial ground for disagreement."

(quoting *White v. Nix*, 43 F.3d 374, 378 (8th Cir. 1994))); *see also Thrasher-Lyon v. CCS

Commercial, LLC*, No. 11 C 04473, 2012 WL 5389722, at *2 (N.D. Ill. Nov. 2, 2012)

(explaining "a substantial ground for a difference of opinion" could mean "there is conflicting

authority on the issue").

> **B.** **THERE IS SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION ON WHETHER
> LOAN SERVICING CAN EXTEND THE LIFE OF A TIME-BARRED FHA CLAIM
> UNDER THE CONTINUING VIOLATION DOCTRINE.**

There is substantial ground for a difference of opinion as to whether loan servicing can

operate to trigger the continuing violation doctrine in a case otherwise premised on time-barred

claims related to loan origination. In fact, much of the existing case law favors Defendants'

position—that servicing is an "inevitable consequence" of loan origination and therefore a

continuing effect thereof, i.e., not a continuing violation extending the limitations period. At

least two district courts have concluded that a loan origination is a "discrete act" under the FHA;

thus, subsequent acts related to the loans cannot revive an otherwise out-of-time claim based on

the origination. *See Woodworth v. Bank of Am., N.A.*, No. 09-3058-CL, 2011 WL 1540358, at

*15 (D. Or. Mar. 23, 2011) (addressing claim that foreclosure was discriminatory, and finding that "to the extent that any loan violated the FHA or the ECOA, the violation was complete at the time that each loan was executed and the terms given effect."); *Kimbrew v. Fremont Reorganization Corp.*, No. CV 08-03277 AG, 2008 WL 5975083, at *3 (C.D. Cal. Nov. 17, 2008) (no continuing violation despite plaintiffs' refinancing of allegedly discriminatory loans).

Other district courts also disagree with this Court that other acts of servicing, such as charging higher monthly mortgage payments or allegedly discriminatory fees and costs are discrete enough to serve as the basis of an FHA claim. At least one district court has held that, under the FHA, "the payments . . . made pursuant to . . . loans [are] effects of [the issuing of the loan], not new violations in their own right." *Hernandez v. Sutter W. Capital*, No. C 09-03658 CRB, 2010 WL 3385046, at *3 (N.D. Cal. Aug. 26, 2010). Other FHA cases support the conclusion that servicing is not a separate act. *See, e.g.*, *Lyons v. First Am. Title Ins. Co.*, No. C 09-4156 PJH, 2009 WL 5195866, at *4 (N.D. Cal. Dec. 22, 2009) ("The fact that plaintiffs continue to pay premiums, based on the single refinancing act, constitutes only a continuing effect . . . ."). And the notion that servicing constitutes a discriminatory act that prolongs the duration of an FHA claim lies in considerable tension with other continuing violation case law. In antitrust law, for instance, payments made under an allegedly anticompetitive contract are "only a manifestation of the previous agreement" and "therefore do not constitute 'a new and independent act,' as required to restart the statute of limitations." *Grand Rapids Plastics v. Lakian*, 188 F.3d 401, 406 (6th Cir. 1999) (citation omitted); *accord Kaiser Aluminium & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1053, 1056 (5th Cir. 1982). In short, reasonable jurists may differ on the application of the continuing violation doctrine in this case. Interlocutory review is therefore appropriate.

10

### C.    THERE IS SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION ON WHETHER A PLAINTIFF MUST ADDRESS MULTIPLE INTERVENING CAUSES TO ESTABLISH TRACEABILITY.

There is substantial ground for a difference of opinion as to whether a plaintiff must, in order to establish Article III's traceability requirement, explain how admitted external causes are not responsible for a particular foreclosure.  With every mortgage, there are "circumstances beyond the mortgagors' control" that may cause a foreclosure.  *Pozzie v. U.S. Dep't of Hous. & Urban Dev.*, 48 F.3d 1026, 1030 (7th Cir. 1995) (citing HUD Handbook No. 4330.2 REV-1, *Mortgage Assignment and Processing Secretary-Held Servicing*, 2-5, § 2-9(A)(2)(a) (Mar. 1991))).  The loans here are no different.

Under the Supreme Court's housing discrimination caselaw, a plaintiff must affirmatively address independent intervening factors in its allegations before it can establish traceability.  *See Warth v. Seldin*, 422 U.S. 490, 504 (1975); *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991) (explaining that *Warth* "made clear that an injury will not be 'fairly traceable' to the defendant's challenged conduct nor 'redressable' where the injury depends not only on that conduct, but on independent intervening or additional causal factors").  Citing the vast number of reasons why a borrower may default irrespective of the lender's actions, at least one district court has accordingly concluded that a municipal plaintiff has no standing in a similar case.  *See City of Birmingham v. Citigroup, Inc.*, No. CV-09-BE-467-S, 2009 WL 8652915, at *4 (N.D. Ala. Aug. 19, 2009).  Other district courts have ruled differently.  Some, including this Court, view independent causes as irrelevant—too insignificant or generalized on their own accord to impact the traceability analysis.  *See* Order at 9; *see also Mayor and City Council of Baltimore v. Wells Fargo Bank, N.A.*, No. JFM-08-62, 2011 WL 1557759, at *5 (D. Md. Apr. 22, 2011) ("[T]hese societal factors do not break the fairly traceable causal chain between Wells Fargo's lending practices and the City's narrowed damages.").  Others have presumed self-infliction—that the

11

intervening causes were an inevitable result of the challenged discriminatory conduct. *See, e.g.*, *City of Los Angeles v. Wells Fargo*, 22 F. Supp. 3d 1047, 1054 (C.D. Cal. 2014) ("The Court finds that many of the independent actions that Defendants contend defeat causation are produced by or the result of Defendants' challenged conduct.").

As is evident from the County's position and the Court's ruling on this subject, the decisions about how to treat multiple intervening causes in reverse-redlining cases can and do differ. Certification is therefore appropriate. *See Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 18 F. Supp. 2d 464, 466 (D.N.J. 1998) (certifying issue to Third Circuit because district court's decision conflicted with intermediate state-court decision); *Stenger Indus., Inc. v. Int'l Ins. Co.*, 74 B.R. 1017, 1020 (N.D. Ga. 1987) (certifying due to inconsistent decisions); *see also Union Cnty.*, 525 F.3d at 647 (noting that identification of "a sufficient number of conflicting and contradictory opinions" provides a substantial grounds for disagreement under § 1292(b)).

## III. THE THREE CONTROLLING QUESTIONS OF LAW MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS CASE.

The answer to each of the proposed questions to be certified will materially advance its ultimate termination. A proposed certified question need not dispose of the entire case in order to do so. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536-37 (7th Cir. 2012). So long as an immediate appeal will expedite, rather than protract, resolution of the case, the appeal may "materially advance" the case's "ultimate termination." *EEOC v. UPS, Inc.*, No. 09 C 5291, 2013 WL 2628795, at *2 (N.D. Ill. June 11, 2013) (citing *Sterk*, 672 F.3d at 536). If "resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation," it may "materially advance the ultimate termination of the litigation." *McFarlin*, 381 F.3d at 1259; *see also* Wright & Miller, Fed. Prac. & Proc. § 3930 ("If present appeal promises to advance the time for trial or to shorten the time required for trial, appeal is appropriate.").

An immediate appeal is appropriate because the Seventh Circuit's answers to any of the three controlling questions of law may dispose of this case. *See Dahlstrom*, 39 F. Supp. 3d at 1002 ("Resolution of this issue 'may materially advance the ultimate termination of the litigation' because it might end the case right away, thereby obviating the need for discovery, dispositive motions, and a possible trial."). The need for legal clarity is particularly pressing in complex cases like this one, where there is a risk that a party will be needlessly crushed by the immense burden of discovery, only to find out that it was right on a pure and dispositive question of law that could have been answered early on. *See In re Text Messaging Antitrust Litig.*, 630 F.3d at 625–26.

All three questions *may* end this case—and that is all that the statute requires. *See Sterk*, 672 F.3d at 536 ("But all that section 1292(b) requires as a precondition to an interlocutory appeal . . . is that an immediate appeal *may* materially advance the ultimate termination of the litigation." (emphasis in original)). Statutory standing could be dispositive if the Seventh Circuit holds the FHA requires a zone-of-interests analysis that demands more than what Article III requires, and if this Court subsequently concludes the County's purely economic interests do not fall within the Act's zone of interests. *See City of Miami*, 2014 WL 3362348, at *4. The limitations question *will* end this litigation if the court of appeals concludes loan servicing is a mere effect of loan origination, as many other courts have held. And the traceability question may end this case by clarifying the County's pleading burden, thus giving its complaint one more ground by which to fail.

## **CONCLUSION**

For the reasons stated above, Defendants respectfully request that this Court issue an order certifying its March 19, 2015 Order for immediate interlocutory appeal.

13

Dated: April 17, 2015

Respectfully Submitted,

By:    /s/ J. Erik Connolly

J. Erik Connolly
*EConnolly@winston.com*
Ryan M. Dunigan
*rdunigan@winston.com*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel.: (312) 558-5600
Fax: (312) 558-5700

Thomas M. Hefferon
*THefferon@goodwinprocter.com*
James W. McGarry
*JMcGarry@goodwinprocter.com*
Matthew S. Sheldon
*MSheldon@goodwinprocter.com*
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
Fax: (202) 346-4444

*Attorneys for Defendants Bank of America
Corporation, Bank of America, N.A., Countrywide
Financial Corporation, Countrywide Home Loans,
Inc., Countrywide Bank, FSB, Countrywide
Warehouse Lending, LLC, BAC Home Loans
Servicing, LP, Merrill Lynch & Co., Inc., Merrill
Lynch Mortgage Capital Inc., and Merrill Lynch
Mortgage Lending, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2015, I caused a true and correct copy of the foregoing

to be served upon counsel of record as of this date by electronic filing.

/s/ J. Erik Connolly
One of the attorneys for Defendants