**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| COUNTY OF COOK,  )<br>  )<br>   Plaintiff,  )<br>  )<br>v.  )<br>  )<br>  )<br>BANK OF AMERICA CORPORATION,  )<br>BANK OF AMERCIA, N.A., COUNTRYWIDE  )<br>FINANCIAL CORPORATION,  )<br>COUNTRYWIDE HOME LOANS, INC.,  )<br>COUNTRYWIDE BANK, FSB,  )<br>COUNTRYWIDE WAREHOUSE LENDING,  )<br>LLC, BAC HOME LOANS SERVICING, LP,  )<br>MERRILL LYNCH & CO., INC., MERRILL  )<br>LYNCH MORTGAGE CAPITAL INC., AND  )<br>MERRILL LYNCH MORTGAGE LENDING,  )<br>INC.,  )<br>  )<br>   Defendants.  )<br>  ) | CIVIL ACTION NO.:  1:14-cv-2280<br><br>**<u>AGREED ORDER REGARDING<br>PRODUCTION OF DOCUEMNTS<br>AND ELECTRONICALLY STORED<br>INFORMATION</u>** |

Plaintiff County of Cook ("Plaintiff") and Defendants Bank of America Corporation ("BAC"); Bank of America, N.A. ("BANA") for itself and as successor by merger to Countrywide Bank, FSB ("CWB") and BAC Home Loans Servicing, LP ("BACHLS") (BAC and BANA are collectively "the Bank of America Defendants"); Countrywide Financial Corporation ("CFC"); Countrywide Home Loans, Inc. ("CHL"); Countrywide Warehouse Lending, LLC ("CWL") (CFC, CHL and CWL are collectively the "Countrywide Defendants"); Merrill Lynch & Co., Inc. ("Merrill"); Merrill Lynch Mortgage Capital Inc. ("MLMCI"); and Merrill Lynch Mortgage Lending, Inc. ("MLML") ("Merrill, MLMCI and MLML are collectively the "Merrill Defendants") (collectively, "Defendants"), have agreed to the terms of this Protocol for Producing Documents and Electronically Stored Information (the "ESI Protocol"); accordingly, it is ORDERED:

## I. Production of Documents Originating as Paper

1. **TIFFs**. Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

2. **Unitizing Documents**. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container. The back cover of the container should be produced immediately after the last document in the container. The parties will undertake reasonable efforts to, or have their vendors, logically unitize documents in accordance with the requirements of this paragraph, however, to the extent the paper documents are already stored in electronic formats at the time of collection, the parties shall not have to comply with this provision. The parties agree to meet and confer to address situations in which a party believes that documents have not been properly unitized. This provision shall not apply to loan files.

3. **Parent-Child Relationships**. The parties shall undertake reasonable efforts to preserve parent-child relationships within a document family (the association between an attachment and its parent document). The child-document(s) should be consecutively produced immediately after the parent-document. The parties shall undertake reasonable efforts to produce each document with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and

"EndAttach" fields listing the production number for the first and last page in the document family. To the extent the paper documents are already stored in electronic formats at the time of collection, the parties shall not have to comply with this provision. The parties agree to meet and confer to address situations in which a party believes that parent-child relationships have not been adequately preserved.

4. **OCR**. The producing party shall provide OCR files for all documents originating as paper. To the extent that documents have been run through optical character recognition ("OCR") software, the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions. This provision shall not apply to loan files.

5. **Unique IDs**. Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation, except the parties may choose to use different prefixes for different categories of responsive documents, such as loan files or depositions, and will identify any new prefixes in the cover letter.

6. **Data Load Files**. Documents should be provided with an Opticon Cross-Reference File and Opticon load file for images, but also may include a Concordance data load file using standard Concordance delimiters:

      a. Field Separator: ASCII character 20 ("¶");

      b. Quote: ASCII character 254 ("þ"); and

      c. New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files should be provided in a "Data" folder.

    7. **Metadata**. Appendix 1 sets forth the minimum metadata fields that must be produced to the extent that metadata exists for a particular document. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data except for those fields marked with an "X" in the "Must Be Populated" column of Appendix 1.

    **II.**    **Production of ESI**

    8. **TIFFs**. Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

    9. **Extracted Text Files**. The full text of native files should be extracted directly from the native file (not from the OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the document should undergo OCR after the text has been redacted in order to remove the redacted text.

    10. **Unique IDs**. Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (e.g., ABC-000001), taking into consideration the estimated number of pages to be

produced. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation, except the parties may choose to use different prefixes for different categories of responsive documents, such as loan files or depositions, and will identify any new prefixes in the cover letter.

11. **Parent-Child Relationships**. The relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

12. **Native Format**. All spreadsheets, documents with "macros" and electronic information containing audio or visual components, or any documents that cannot be properly viewed using an image because their functionality is lost, will be produced in native format, in lieu of TIFF images. A producing party may produce any other types of documents in native format, in lieu of or in addition to TIFF format, if it chooses to do so and will agree to consider any specific requests for additional production in native where the receiving party can show good cause for the native production request. Documents produced in native format should be produced and linked to the database by the metadata field "NativeLink." **Presentation files** may be processed to TIFF format showing comments, hidden slides, speakers' notes and similar data or may be produced in native format. The native file will be named as the first Bates number of

5

the respective document. The corresponding load file shall include native file link information for each native file that is produced.

13. **Where native files are produced in lieu of TIFF images**, each native file will be assigned a unique Bates number. The producing party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in native format. The placeholder will be branded with the production number in the lower right hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded somewhere on the page. The producing party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder. The producing party shall provide a "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all extracted text and applicable metadata fields set forth in Paragraph 22.

14. **To the extent that the information in a native file must be redacted**, the producing party may produce TIFF images with burned in redactions in lieu of a native file and TIFF placeholder image. If providing a TIFF image of a document makes it unusable, the producing party will redact and produce the native file. If redacting TIFF images and to the extent that any of the following can be automated, the producing party, or its ediscovery vendor, should make reasonable efforts to: (1) reveal hidden rows, columns or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths so that numbers do not appear as "########"; (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced as they exist on the page within the spreadsheet; and (7) process spreadsheets so that they print across then down. If good cause exists, requesting party may ask the producing party to manually undertake the foregoing for certain documents

identified by Bates number by the requesting party to the extent the document was originally produced with concealed information. The producing party shall not unreasonably deny such a request.

15. **Request for Native Files**. If the receiving party requests that the producing party produce in native format documents not covered by Paragraph 12 ("the Requested Documents"), the producing party will agree to meet and confer in good faith with the requesting party within seven (7) days regarding a native production. In the event that the producing party agrees at the meet and confer session to produce the Requested Documents in native format, the producing party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all extracted text and applicable metadata fields set forth in Paragraph 22. In the event that the producing party declines at the meet and confer session to produce the Requested Documents in native format, the good faith meet and confer obligations pursuant to paragraph 41 shall be deemed satisfied.

16. **Tracked Changes and Comments**. To the extent that a document contains tracked changes or comments, and its image is produced, the document should be imaged showing tracked changes and comments in the final version, unless the document has previously been processed and it would be unduly burdensome to comply with this provision

17. **Password Protected Files**. The producing party shall produce passwords for any password-protected files to the extent the passwords are reasonably available.

18. **Embedded Documents.** If reasonably possible, embedded ESI documents whether produced in native or TIFF (e.g. a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records and related back to the respective top level parent document (e.g., standalone file, email message, etc.) via the

7

BegAttach and EndAttach fields referenced in Appendix 1. Related documents will be produced within a continuous Bates range. Nothing in this paragraph will require a party to extract or produce information from an embedded or attached internet link.

19. **Data Load Files**. Documents should be provided with an Opticon Cross-Reference File and Opticon load file for images, but also may include a Concordance data load file using standard Concordance delimiters:

    a. Field Separator: ASCII character 20 ("¶");
    b. Quote: ASCII character 254 ("þ"); and
    c. New Line: ASCII character 174 ("®").

Concordance-compatible image and data load files should be provided in a "Data" folder. Parties have the option to exchange sample load files. If this exchange occurs, the receiving party will have 14 days to respond with load file change requests. Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

20. **Metadata**. Appendix 1 sets forth the minimum metadata fields that must be produced in a metadata file to the extent that metadata exists for a particular document subject to the limitations discussed below. To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data. The parties are not obligated to populate manually any metadata fields except those fields marked with an "X" in the "Must Be Populated" field in Appendix 1, provided that the metadata exists, is reasonably accessible or available, and would not be unduly burdensome to collect.

21. **Deduplication**. Documents may be deduplicated at the family-group level provided that the producing party identifies the additional custodians in an Additional Custodian field. A party may also de-duplicate "near-duplicate" email threads as follows: In an email

8

thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message and provided that the software used to identify these "near-duplicate" threads is able to identify any substantive differences to the thread such as changes in recipients (e.g., side threads, subject line changes), selective deletion of previous thread content by sender, etc. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate."

### III.   Production of Databases and Other Structured Data

22.   If a database or other source of structured data contains responsive information, the parties should meet and confer to determine a mutually agreeable format for producing the database or other structured data. Before meeting and conferring, the producing party will provide the name of the database or structured data source to the receiving party.

### IV.   Production of Audio and Video Recordings

23.   If audio and/or video recordings are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the audio and/or video recording. Before meeting and conferring, the producing party will provide the following information about the responsive audio and/or video recordings to the receiving party. To the extent that the information listed below does not exist, is not reasonably accessible or available, or would be unduly burdensome to obtain, nothing in this ESI Protocol shall require any party to extract, capture, collect or provide such information.

- Date of the recording;
- Duration of the recording;
- Names of individuals who were recorded;
- Event being recorded;

- Whether the recording is digital or analog;
- Size in Megabytes (MB) of digital recordings;
- Whether minutes for the event being recorded were prepared; and
- Whether Certified Legal Transcription was prepared by a Certified Court Reporter.

### V. Production of Transcripts

24. If deposition or other transcripts are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the transcripts. Before meeting and conferring, the producing party will provide the following information about the responsive transcripts. To the extent that the information listed below does not exist, is not reasonably accessible or available, or would be unduly burdensome to obtain, nothing in this ESI Protocol shall require any party to extract, capture, collect or provide such information.

- Date of the deposition, trial, hearing or other event (each an "event");
- Duration of the event;
- Name of the individual(s) who was/were recorded;
- The forms in which the transcripts exist such as PDF, text file, livenote or etranscript format (.lef, .ptx, or .ptz); and
- List of exhibits associated with the transcript and/or event.

### VI. Processing of Third-Party Documents

25. A party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol as an attachment to the subpoena and request that the non-party produce documents in accordance with the specifications set forth herein.

26. The Issuing Party may request that the non-party simultaneously produce documents to the Issuing Party and all other parties. If the non-party produces documents only to the Issuing Party, to the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other parties within seven days.

27. Nothing in this ESI Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or non-parties to object to a subpoena.

**VII. Miscellaneous Provisions**

28. The following specifications govern the production of all documents regardless of source, unless otherwise noted in this ESI Protocol:

29. **Custodian or Originating Source**. The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (e.g., office, file room, archive, network storage, file share, back-up, hard drive, etc.) should be produced in such a fashion as to identify the department, group, entity, or facility. A producing party shall use a uniform description of a particular custodian across productions.

30. **Color**. Documents containing color need not be produced in color in the first instance. However, if good cause exists for the receiving party to request production of certain documents in color, the receiving party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The producing party shall not unreasonably deny such requests.

31. **Foreign Language**. Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

32. **Search Terms**. If a producing party intends to use search terms to (a) expand or limit the number of documents collected, (b) cull documents prior to reviewing documents for relevance and/or privilege, and/or (c) develop a "seed set" of documents for use in technology assisted review ("TAR"), the producing party shall first confer in good faith with the requesting party to determine the mutually agreeable search terms before using any search terms.

33. **TAR**. If a producing party intends to use TAR in connection with its identification, collection and production of relevant documents, the producing party shall confer in advance of production, in good faith with the requesting party to determine the mutually agreeable parameters for using TAR. In addition, in the event a seed set is used in that process, all documents that are reviewed as a function of the seed set, coded relevant, aside from privileged documents, will be produced to the requesting party, to ensure that the documents identified and selected for TAR will likely yield relevant, responsive information.

34. **Production Media**. The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via CD, DVD, flash drive, or hard drive if (a) the size of the production exceeds the size limitations applicable to the producing party's secure FTP or file share or (b) if the interest of preserving the confidentiality of the information produced outweighs the speed and efficiency of producing documents via secure FTP or secure file share. To the extent possible, physical media should be write protected before it is produced.

35. **Naming Convention for Production Media**. Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such

as .zip, .rar, etc. The compressed file should be named so as to indicate the producing party, the date of the production, and the sequence of the production (e.g., "[Insert Party Name] Production 000000001-001"). If the production is made using physical media, the media should be labeled to include (a) text referencing that it was produced in *Cook County v. Bank of America, et al*. NO.: 1:14-cv-2280 (N.D. Ill); (b) the Bates Number range of the materials contained on the media; (c) and the filename(s) of the compressed file(s) contained on the media such as the example included above.

36. **Replacement Productions**. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

37. **Inability to Produce Metadata**. If the producing party is unable to produce metadata for a particular field marked with an "X" in the "Must Be Populated" column of Appendix 1, it will provide an explanation of that inability if requested by the receiving party.

38. **Encrypted Data**. To the extent data is encrypted before it is produced, the producing party shall contemporaneously transmit the credentials necessary to decrypt the data.

39. **Non-Waiver**. Nothing in this ESI Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents.

40. **Confidentiality Order**. All productions are subject to the Confidentiality Order entered by the Court in this Action.

41. **Good Faith Resolution of Disputes**. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a producing party, notwithstanding their good faith efforts, cannot comply with any material aspect of this ESI Protocol or if compliance with such material aspect would be unreasonable, such party shall inform the requesting party in writing a reasonable time before the date of production as to why compliance with the ESI Protocol is impossible or unreasonable. No party may seek relief from the Court concerning compliance with the ESI Protocol unless it has conferred in good faith with the affected parties.

*So Ordered.*

Dated: September 11, 2015

_____
U.S. District Judge

| | |
|---|---|
| **WE SO MOVE** <br> **and agree to abide by the terms of this Order** | **WE SO MOVE** <br> **and agree to abide by the terms of this Order** |
| **Signed:** _____ | **Signed:** _____ |
| Sabrina M. Rose-Smith <br> *srosesmith@goodwinprocter.com* <br> Thomas M. Hefferon <br> *thefferon@goodwinprocter.com* <br> James W. McGarry <br> *jmcgarry@goodwinprocter.com* <br> Matthew S. Sheldon <br> *msheldon@goodwinprocter.com* <br> GOODWIN PROCTER LLP <br> 901 New York, Avenue, N. W. <br> Washington, DC 20001 <br> (212) 346-4000 <br><br> Joel Erik Connolly <br> *econnolly@winston.com* | Daniel A. Dailey <br> *ddailey@jdmlaw.com* <br> John K. Kennedy <br> *jkennedy@jdmlaw.com* <br> James D. Montgomery, Sr. <br> *james@jdmlaw.com* <br> James Douglas Montgomery, Jr. <br> *james2@jdmlaw.com* <br> Michelle M. Montgomery <br> *mmm@jdmlaw.com* <br> James D. Montgomery and Associates, Ltd. <br> One North LaSalle Street <br> Suite 2450 <br> Chicago, IL 60602 <br> (312) 977-0200 |

| | |
|---|---|
| Ryan Marc Dunigan<br>*rdunigan@winston.com*<br>WINSTON & STRAWN LLP<br>35 West Wacker Drive<br>Chicago, IL 60601-9703<br>Tel.: (312) 558-5600<br>Fax: (312) 558-5700<br><br>*Attorneys for Defendants Bank of America Corporation, Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB, Countrywide Warehouse Lending, LLC, BAC Home Loans Servicing, LP, Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital Inc., and Merrill Lynch Mortgage Lending, Inc.*<br><br>Dated: September 1, 2015 | James M. Evangelista<br>*jim@hpllegal.com*<br>Jeffrey Harris<br>*jeff@hpllegal.com*<br>Darren Penn<br>*darren@hpllegal.com*<br>David J. Worley<br>djw@eafirm.com<br>Harris Penn Lowry LLP<br>400 Colony Square, Suite 900<br>1201 Peachtree St., NE<br>Atlanta, GA 30361<br>(404) 961-7650 *Attorneys for Plaintiff, County of Cook, Illinois*<br><br><br><br><br><br>Dated: September 1, 2015 |

**Appendix 1**

**ESI Metadata and Coding Fields**

| Field | Description | Must Be Populated |
|---|---|---|
| BegBates | Beginning Bates number of the document | X |
| EndBates | Ending Bates number of the document | X |
| BegAttach | Beginning Bates number of the attached documents | X |
| EndAttach | Ending Bates number of the attached documents | X |
| Page Count | Total number of pages in the document | X |
| Attachment Count | Indicates the number of attachments to the parent document, for electronic documents | X |
| Custodian | Natural person, group, department, entity, etc. in whose possession the document was found | X |
| Additional Custodian | Other natural person(s), group(s), department(s), entity(ies), etc. in whose possession the document was found if duplicate versions of the document are not produced | X |
| File Size | Size in megabytes (MB) of the document if it was kept electronically | X |
| NativeLink | Relative file path to each native document in the production (This field will be produced with all native ESI). | |
| TextPath | The relative path to the corresponding OCR or extracted text file included with a production volume | X |
| Hash Value | MD5 or SHA-1 Hash value, unique document identifier for electronic documents | X |
| Confidential | "Confidential" to indicate that the document has been designated Confidential. "Highly Confidential" to indicate that the document has been designated Highly Confidential. Otherwise, this field should be null. | X |
| Redacted | Yes or No indication of whether the document at issue is redacted. | X |
| Author | Author field extracted from the metadata of the native file | |
| From | Email sender | |
| Agent ID | If the item was created by someone on behalf of the email account owner, ID of the agent who created/sent the item | |
| To | Person to whom an email is addressed | |
| CC | Recipient(s) of "carbon copies" of the email message | |
| BCC | Recipient(s) of "blind carbon copies" of the email message | |
| Subject | Subject field extracted from the metadata of the native file | |
| Date Sent | Date the email message was sent (produced in MM/DD/YYYY format) | |
| Date Received | Date the email message was received (produced in MM/DD/YYYY format) | |

2

| Field | Description | Must Be Populated |
|---|---|---|
| Importance | For emails, "High," "Low," or "Normal" (or equivalent if an email client other than Outlook was used) | |
| Sensitivity | For Outlook (or equivalent) emails, "Normal," "Private," "Personal," or "Confidential" | |
| Has Attachments | Indicates that an email has attachments | |
| File Type | Email, attachment, individual file, paper, etc. | |
| File Extension | File extension of document (.msg, .doc, .xls, etc.) | |
| File Name | Name of original file | |
| Original Path | The original file path for non-email ESI | |
| Title | Title of a non-email document (Microsoft Title field) | |
| Date Created | For non-emails (produced in MM/DD/YYYY format) | |
| Date Last Modified | For non-emails (produced in MM/DD/YYYY format) | |
| Date Last Accessed | For non-emails (produced in MM/DD/YYY format) | |
| Last Modified By | Person who last modified a document | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the foregoing AGREED ORDER REGARDING PRODUCTION OF DOCUEMNTS AND ELECTRONICALLY STORED INFORMATION on all parties by causing a true and correct copy to be delivered by email and deposited in the United States Mail, with adequate postage affixed and addressed to:

    United States Mail Service:    Daniel A. Dailey
*ddailey@jdmlaw.com*
JAMES D. MONTGOMERY AND
ASSOCIATES, LTD.
One North LaSalle Street
Suite 2450
Chicago, Illinois 60602
Phone: (312)977-0200
Fax: (312)977-0209

    James M. Evangelista (admitted *pro hac vice*)
*jim@hpllegal.com*
HARRIS PENN LOWRY LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404)961-7650
Fax: (404)961-7651

    Email Service:    James D. Montgomery, Sr.
*jmontgomery@jdmlaw.com*
James D. Montgomery, Jr.
*james2@jdmlaw.com*
John K. Kennedy
*jkennedy@jdmlaw.com*
Daniel A. Dailey
*ddailey@jdmlaw.com*
JAMES D. MONTGOMERY AND
ASSOCIATES, LTD.
One North LaSalle Street
Suite 2450
Chicago, Illinois 60602
Phone: (312)977-0200

Fax: (312)977-0209

James M. Evangelista (admitted *pro hac vice*)
*jim@hpllegal.com*
Jeffrey R. Harris (admitted *pro hac vice*)
*jeff@hpllegal.com*
Darren W. Penn (admitted *pro hac vice*)
*darren@hpllegal.com*
David J. Worley (admitted *pro hac vice*)
*david@hpllegal.com*
HARRIS PENN LOWRY LLP
400 Colony Square, Suite 900
1201 Peachtree Street, NE
Atlanta, GA 30361
Phone: (404)961-7650
Fax: (404)961-7651

*Special Assistant State's Attorneys*

Dated: September 1, 2015         /s/ Alicia Rubio