```
1                    IN THE UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF ILLINOIS
2                             EASTERN DIVISION

3    COUNTY OF COOK,                 )
                       Plaintiff,    )
4               vs.                  )    Docket No. 14 CV 2280
     BANK OF AMERICA CORPORATION,    )
5    BANK OF AMERICA, N.A.,          )
     COUNTRYWIDE FINANCIAL           )
6    CORPORATION, COUNTRYWIDE        )    Chicago, Illinois
     HOME LOANS, INC.,               )    September 11, 2015
7    COUNTRYWIDE BANK, FSB,          )    9:41 AM
     COUNTRYWIDE WAREHOUSING         )
8    LENDING, LLC, BAC HOME LOANS    )
     SERVICING, LP, MERRILL LYNCH    )
9    & CO., INC., MERRILL LYNCH      )
     MORTGAGE CAPITAL INC., AND      )
10   MERRILL LYNCH MORTGAGE          )
     LENDING, INC.,                  )
11                     Defendants.   )

12                    TRANSCRIPT OF PROCEEDINGS - Motion
13              BEFORE THE HONORABLE ELAINE E. BUCKLO

14   APPEARANCES:

15   For the Plaintiff:        JAMES D. MONTGOMERY AND
                               ASSOCIATES, LTD
16                             BY:  MR. DANIEL A. DAILEY
                               One North LaSalle Street, Suite 2450
17                             Chicago, Illinois  60602

18                             HARRIS PENN LOWRY, LLP
                               BY:  MR. JAMES M. EVANGELISTA
19                             400 Colony Square, Suite 900
                               1201 Peachtree St., NE
20                             Atlanta, GA 30361

21
     Court Reporter:          SANDRA M. TENNIS, CSR, RMR, FCRR
22                            Official Court Reporter
                              219 S. Dearborn Street, Suite 2260
23                            Chicago, Illinois  60604
                              (312) 554-8244
24                            sandra_tennis@ilnd.uscourts.gov

25
```

1    APPEARANCES: (Continued.)

2    For the Defendant:          GOODWIN & PROCTOR LLP
                                 BY:  MR. THOMAS M. HEFFERON
3                                     MS. SABRINA ROSE-SMITH
                                 901 New York Avenue, NW
4                                Washington, DC  20001

5                                WINSTON & STRAWN, LLP
                                 BY: MR. RYAN M. DUNIGAN
6                                35 West Wacker Drive
                                 Chicago, IL 60601

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    THE CLERK:  14 C 2280, County of Cook versus Bank

2    of America, et al, status and motion.

3    MR. DAILEY:  Good morning, your Honor.  Daniel

4    Dailey on behalf of Cook County.

5    MR. EVANGELISTA:  Jim Evangelista on behalf of Cook

6    County.

7    MR. DUNIGAN:  Ryan Dunigan on behalf of the

8    defendants.

9    MS. ROSE-SMITH:  Sabrina Rose-Smith on behalf of

10   the defendants.

11   MR. HEFFERON:  And Thomas Hefferon for the

12   defendants.

13   THE COURT:  Okay.  Tell me what the status is.  I

14   don't think I'm probably going to deal with your motion to

15   compel, unless you tell me it's really easy.  I don't usually

16   do those.  And I got into town at midnight last night and I

17   had not seen that you had anything up.  So tell me the

18   status, though.

19   MR. DAILEY:  The status we have, Cook County and

20   Bank of America have engaged in extensive written discovery

21   as of to date.  Production of documents are still ongoing.

22   We've submitted joint motions for confidentiality order and

23   for the ESI stipulation, but --

24   THE COURT:  I hope they were entered.

25   MR. DAILEY:  No, ma'am.

1       THE COURT:  When did you do that?

2           MS. ROSE-SMITH:  It was September 1st, your Honor.

3           MR. DAILEY:  Yes, ma'am.

4       THE COURT:  Did you notice them for today?  I mean,

5   we don't see a motion if you don't notice it.  We don't even

6   know it exists.

7           MR. DAILEY:  Well, that was, actually, just

8   submitted to the joint proposed order e-mail.

9       THE COURT:  That doesn't make any -- I don't -- I

10  actually don't even have access to the joint proposed order

11  e-mail.  You have to notice something.  I mean, if they're

12  agreed, fine, we'll enter them.

13          MR. DAILEY:  Okay.

14      THE COURT:  But we've got to find them in the first

15  place.  Okay.

16          MR. HEFFERON:  We can certainly notice them up,

17  your Honor, if it's easier.

18      THE COURT:  You don't -- as long as they're on the

19  docket, fine.  Let me just see if I can find them.  Well, now

20  that we know about it, if they're in the joint proposed

21  order -- Jackie, can you find them?

22          THE CLERK:  Yes, I'm looking.

23      THE COURT:  All right.  We'll enter them.  But for

24  the future, really, one, I don't have access to it and nobody

25  looks at anything that isn't noticed, so.  Okay.  Take care

1     of that part.

2                MR. DAILEY:  Okay.

3                THE COURT:  Your written discovery is going on.

4     You said it's going okay, except for whatever this is in this

5     motion to compel.

6                MR. DAILEY:  Right.  So --

7                THE COURT:  Which I did see while I was sitting in

8     an airport last night and thought, oh, no.

9                MR. DAILEY:  Well, the -- one of the production of

10    documents, that's going -- at this point, it's going okay.

11    But in the motion to compel of the most critical issues is

12    the time period.  And that's going to determine the amount of

13    production of those documents.  And so that's why that

14    becomes, among the most critical issue, the most critical for

15    written discovery purposes and what is produced.

16                THE COURT:  What's the disagreement?

17                MS. ROSE-SMITH:  Sure, your Honor.  The concern is

18    that the plaintiffs have asked for discovery on all of their

19    requests from 2000 to going forward.  And the problem with

20    that is the time period is substantial, in the first

21    instance.  And we've talked to them about the burden that

22    will be involved in producing all of the things that they've

23    asked for, many of which are overbroad and were not narrowed

24    during the meet-and-confer.

25                We talked about the burden that will be involved in

1    producing that for all of the different defendant entities

2    because, in addition to the lengthy time period, the

3    definitions of what entities were involved include defendants

4    and non-defendants.  And so that's another concern.

5            The reason that we proposed the time period that we

6    did, however, we didn't just say, which was January 1st,

7    2009, forward.  So what we did was we didn't limit it as --

8    as we had tried to do when we asked for discovery phasing

9    earlier to the statute of limitations period.  We said we

10   will go three years beyond that, and we will give you an

11   opportunity to have discovery on any of these things.  We

12   didn't limit the types of things we would give; and,

13   therefore, you would have an opportunity to prove whether or

14   not there were any discriminatory acts that continued from

15   before the limitations period, into the limitations period.

16           And the -- and the defendant -- and the plaintiffs,

17   sorry, even though they admit and your Honor -- and your

18   Honor already ruled that the acts, at least as alleged in the

19   complaint really began in 2004, they wouldn't even limit it

20   to 2004.  They went all the way back to 2000.  And that

21   matters for every request.  So I asked originally that we

22   talk about whether or not we could agree on a time period for

23   specific requests.  And that was not something they were

24   willing to agree to either.  So we're just at an impasse

25   about how much discovery over such a broad period is going to

1    actually happen.

2         MR. EVANGELISTA: Your Honor, if I can respond.  The

3    date that the defendants selected of January 1, 2009, forward

4    would essentially eliminate all discovery relating to

5    Countrywide, relating to Merrill Lynch and relating to all of

6    Bank of America's own acts that are really at kind of the

7    focus of this litigation.

8         What we have alleged is an ongoing equity stripping

9    scheme.  One component of it had to deal with subprime

10   lending and then the current continuation of the bad acts

11   relating to the subprime lending and then currently and the

12   servicing related to those loans and then the foreclosures

13   related to those loans that have occurred.

14        By starting in January, 2009, much of the subject

15   predatory lending had really subsided by that point in time.

16   But for purposes of the case, all of the -- all of the bad

17   acts, all of the corporate knowledge and issues here

18   occurred -- or a lot of those issues occurred in that time

19   period, from early 2000, up until 2009, when the financial

20   collapse basically started happening.

21        So by starting the discovery in early 2009, they're

22   essentially preventing us from getting any of the liability

23   information relating to the underlying bad loans that were

24   made.  So -- and it's not just subprime loans, it's -- there

25   were prime loans, there were conforming loans.  There were

1   all kinds of loans that were going on.  All kinds of lending

2   activity where minority borrowers ultimately were

3   discriminated against.  And so by starting the discovery

4   period, you know, in 2009, it just has -- you know, would

5   basically gut the entire liability of the case.

6            MS. ROSE-SMITH:  Your Honor, if I may, it's not --

7   we did not say that we would limit discovery solely to Bank

8   of America.  If there is discovery that involves other

9   defendants and that is dated after January 1st, 2009, we're

10  not going to decline to produce it on the basis that it's not

11  Bank of America.  That's not a disagreement that we're

12  having.  So that's the first thing.

13           The second thing that I would add there is, the

14  reason that we're before you potentially on loans from 2004,

15  2001, is because they have alleged that, over the course of

16  the scheme, discriminatory servicing continued into the

17  limitations period.  And so what we have said is, if that is

18  the case, you will get discovery right away on what those

19  acts of servicing were and what elements of those you will

20  think is discriminatory.  And then, if that is the case, then

21  we can have a discussion about further discovery.

22           We have not said under no circumstance will I

23  produce anything before January 1st, 2009.  What I said is,

24  let's get started.  And if we have to start somewhere, rather

25  than dredge up everything for the past 15 years, why don't we

1   start with this.  And if you can show that there are acts of

2   servicing on loans -- on any loan, whether it originated in

3   2004 or 2009, or any other time in that -- in that period, we

4   will -- we will then sit down with you and talk about what

5   additional discovery would be appropriate.

6           That seems to me a reasonable starting place, given

7   the burden.  And given the fact that, because this -- because

8   there is so much in this period, it's a substantial expense

9   and a substantial burden for the plaintiffs -- or for the

10  defendants.

11          MR. EVANGELISTA:  And, your Honor, they -- I want

12  to -- from my understanding is what they said is they're

13  going to produce documents from Bank of America, NA, which is

14  the regulated bank entity.  The vast majority of the conduct

15  that occurred here occurred in the non-federally

16  bank-regulated entities.  So all of the subsidiaries, their

17  holding companies, all of -- you know, tremendous amounts of

18  that bad behavior happened in those other Bank of America

19  entities, not Bank of America, NA, necessary.  And we've also

20  sued Countrywide and Merrill Lynch that were their own

21  separate entities prior to 2000 -- became part of Bank of

22  America literally at the end of 2008, very beginning of 2009.

23          So there are three separate entities.  They had

24  three separate equity stripping schemes.  They ended up all

25  getting merged into Bank of America.  So you have three

1    groups of defendants here.  And, you know, so Countrywide

2    became part of Bank of America in mid 2008.  Merrill Lynch

3    in -- you know, at the very end of 2008.

4              MS. ROSE-SMITH:  Your Honor, that's --

5              MR. EVANGELISTA:  So it will eliminate all that

6    discovery.

7              MS. ROSE-SMITH:  That's a misapprehension, your

8    Honor.  There are, among the Countrywide and the Bank of

9    America entities, there are entities that were -- that did

10   fold into Bank of America.  In fact, the servicing for the

11   Countrywide loans that he is talking about, that will be

12   produced through Bank of America, NA just because of the

13   corporate structure.  It's not because I'm saying I will only

14   produce legacy Bank of America information, it's just

15   functionally that will come out of Bank of America because of

16   the way that that joining took place.  But for entities that

17   continue to exist on their own, if there is relevant

18   discovery, that discovery will get produced in that time

19   period.  We're not trying to limit it.

20             I think the discussion around this came up when the

21   parties were discussing the way to bates label.  And we said,

22   well, when -- pre-2009, if there is separate company entity

23   stuff, we will make sure that it's clear what company it came

24   from.  Post 2009, if it comes all from the bank, we will say

25   that it comes all from the bank.  But that wasn't a

1   disagreement over whether or not we would produce documents

2   from multiple entities.

3            THE COURT: Okay. So why don't we do it this way:

4   What if we agree that the defendants will produce everything

5   they've just said that they'll produce. You can get a

6   transcript. Order the transcript. You'll have it

7   tomorrow -- Monday. And then, if you get all of that,

8   because I -- I hear you people saying -- I'm not sure your

9   understanding is the same. I do understand that it's the

10   same about before that. So you get all that. And if it

11   includes everything that she says, which it sounds -- for

12   those years, I think, maybe, what you want on those years.

13   And then come back and tell me if that really turns out that

14   that -- because what they're saying is, well, if there is no

15   discrimination there, then there is not -- you know, what

16   would be the point of going beyond -- back before that.

17            MR. EVANGELISTA: If there is no discrimination?

18            THE COURT: In the limitation period, which is

19   whatever years they said.

20            MR. EVANGELISTA: Well --

21            MS. ROSE-SMITH: And three years -- three years

22   past it, too.

23            THE COURT: Three years before that.

24            MR. EVANGELISTA: So, your Honor, I think this is a

25   critical issue that needs to be briefed. I think this is

1  absolutely critical.

2          THE COURT:  Okay.  Brief it.  Fine.

3          MR. EVANGELISTA:  Thank you.

4          THE COURT:  I'll look at it.  It's going to delay

5  things.

6          MR. EVANGELISTA:  But the way the statute of

7  limitations issue is impacted here -- first of all, the way

8  our complaint is alleged, the statute of limitations has

9  not --

10         THE COURT:  Okay.  Fine.

11         MR. EVANGELISTA:  -- begun to run.

12         THE COURT:  Frankly, if you would have told me you

13  wanted to brief it, why didn't you just say so?  I've got

14  other people waiting.

15         MR. EVANGELISTA:  Sure.

16         MS. ROSE-SMITH:  We are producing, your Honor.

17         THE COURT:  All right.  You filed a motion.  It was

18  a detailed motion.  I saw that.  I started going through it

19  to see what it was.  But if you were sitting in Washington

20  National Airport last night with 10,000 other people --

21         MS. ROSE-SMITH:  Oh, so were we.

22         MR. HEFFERON:  We were, your Honor.

23         THE COURT:  Huh?

24         MS. ROSE-SMITH:  So were we, waiting to get here.

25         MR. HEFFERON:  We both were at the airport

1  yesterday.

2           THE COURT:  I bet you weren't at the Southwest

3  terminal.

4           MS. ROSE-SMITH:  I was.

5           THE COURT:  Ah.

6           MS. ROSE-SMITH:  Which was a zoo.  And so, I'm

7  sorry, your Honor.  It was a mess.

8           THE COURT:  Plus, on top of it all, I have bug

9  bites all over me that came from someplace.  I got home at

10 midnight.  You must have gotten on one of the earlier

11 flights?

12          MS. ROSE-SMITH:  No.  I arrived around 11:00.  It

13 was unfortunate if you were there at the same time that I was

14 because it was awful.

15          But I was just going to add, your Honor, that it

16 will not delay --

17          THE COURT:  Well, we wouldn't have had the other

18 party, but I was going to say, we could have worked all this

19 out.  It was also very noisy on top of it.  There was no

20 restaurant or anything else.

21          MS. ROSE-SMITH:  It's not clear that we would have

22 been able to hear each other.

23          But I was just going to add, your Honor, that the

24 fact that there is a pending motion is not delaying our

25 discovery -- our productions as to the 2009 forward.

1      THE COURT:  Well, I suggest, okay, a reasonable

2   time.  You may not say anything more than you're just saying

3   here; but if you've got more, since he wants it briefed.

4   Really, since you've given me this motion in detail, it seems

5   like the appropriate thing would be, if they want to respond

6   in writing, and then you can reply.

7      MR. EVANGELISTA:  Okay.

8      THE COURT:  So if you want to do that in two weeks

9   and two weeks.

10      MR. EVANGELISTA:  Yeah, I was going to ask your

11   Honor for a short period.

12      THE COURT:  I don't care.

13      MR. EVANGELISTA:  Because we've got a December 31st

14   time deadline --

15      THE COURT:  I understand that.

16      MR. EVANGELISTA: -- on some other issues.

17      THE COURT:  I'm going to be gone for the last two

18   weeks in September.  So it's not going to get looked at then.

19   So figure it out.

20      MS. ROSE-SMITH:  Your Honor, it would be helpful to

21   have more time than two weeks just because we have burden

22   affidavits.

23      THE COURT:  You really need to do it in three weeks

24   because honestly, otherwise, I think I'll just be gone by the

25   time you finish briefing it.  I'll set a ruling date for a

1  week after that, probably, just to make sure I do it.  But

2  we'll set it for court.  You'll probably hear from me in

3  writing.  I'll do the best I can to figure it out.

4            MR. EVANGELISTA:  Thank you, your Honor.

5            MR. DAILEY:  Thank you.

6            MS. ROSE-SMITH:  Thank you, your Honor.

7            THE COURT:  Did you get that Jackie?  Three, three,

8  and one.

9            THE CLERK:  Three, Three, and one?  Okay.  10/2,

10  10/23, ruling, 10/30.

11            MR. EVANGELISTA:  Okay.

12            MR. DAILEY:  Thank you.

13            MS. ROSE-SMITH:  Okay.

14            THE COURT:  I need to split that because I actually

15  need to make that ruling before then.  So you wanted more

16  than two weeks.  I'll give you to October 1st for your

17  response and I'll give you to October 19th for a reply.  I'm

18  going to set the ruling for October 23rd because I will be

19  gone the next week.  Okay.  Thank you.

20            MR. DAILEY:  Thank you, your Honor.

21            MS. ROSE-SMITH:  Thank you, your Honor.

22        (Which were all the proceedings heard.)

23                      CERTIFICATE

24        I certify that the foregoing is a correct transcript

25  from the record of proceedings in the above-entitled matter.

1     */s/Sandra M. Tennis*             *September 14, 2015*

2

    Sandra M. Tennis                   Date

3     Official Court Reporter

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25