# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| BANK OF AMERICA CORPORATION, ) | Case No. 14-cv-2280 |
| BANK OF AMERICA, N.A., ) | |
| COUNTRYWIDE FINANCIAL ) | Judge Elaine E. Bucklo |
| CORPORATION, COUNTRYWIDE HOME ) | |
| LOANS, INC., COUNTRYWIDE BANK, FSB, ) | |
| COUNTRYWIDE WAREHOUSE LENDING, ) | |
| LLC, BAC HOME LOANS SERVICING, LP, ) | |
| MERRILL LYNCH & CO., INC., MERRILL ) | |
| LYNCH MORTGAGE CAPITAL INC., and ) | |
| MERRILL LYNCH MORTGAGE LENDING, ) | |
| INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Plaintiff County of Cook's Motion to Compel ("Motion") (Dkt. No. 78) additional responses to its June 4, 2015 Requests for Production ("Requests" or "RFPs") should be denied because it seeks to impose a substantial and undue burden on Defendants[1] for discovery that is not relevant and, separately, because it seeks to overrule potential privilege claims before the potentially-privileged documents have even been identified.

I.     BACKGROUND ON THE RELEVANT DISCOVERY REQUESTS

The Requests mirror the County's 477-paragraph Complaint both in breadth and lack of specificity. They include **sixty-two** (**62**) demands for documents, with a total of **seventy-one** (**71**) additional subcategories, each directed at all ten (**10**) Defendants, and encompassing a fifteen (**15**) year time span, which the County self-defines as the "Relevant Period." RFPs at 4-11 (Mot. Ex. A). Despite the improper scope, Defendants timely responded to the Requests, offered to and are producing responsive documents and data reasonably related to this case, and offered to meet and confer on any remaining issues. Defendants' Responses and Objections to Plaintiff's First Request for Production ("Responses") (Mot. Ex. B).[2]

Though the County complains Defendants objected to "nearly all" of its Requests (Mot. at 2), Defendants, in fact, agreed to and are producing, among other documents, (i) fair lending policies and procedures; (ii) representative compensation policies for six categories of employees that originated, underwrote, processed and closed loans; (iii) representative mortgage broker agreements used by those Defendants that made the types of loans at issue in the Complaint; (iv)

---

[1] Defendants are three "Bank of America" named companies – Bank of America Corporation and Bank of America, N.A., and BAC Home Loans Servicing, L.P. ("Servicing") – four "Countrywide" named companies – Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB ("CWB"), and Countrywide Warehouse Lending, LLC ("CWL") – and three "Merrill Lynch" named companies – Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital Inc., and Merrill Lynch Mortgage Lending, Inc. Though not relevant to this Motion, there are not as many parties as this, as Servicing and CWB previously merged into Bank of America, N.A. and CWL no longer exists as an entity.

[2] Declaration of Sabrina Rose-Smith ("Rose-Smith Decl.") ¶¶ 4, 6.

1

documents reflecting Defendants' organizational structure and management; and (v) loan origination and servicing data fields, including an already-completed production of 37 loan origination data fields on more than 48,000 loans in Cook County. Defendants have already produced 2,532 documents (34,905 pages) to date, along with the over 1.7 million data points. Rose-Smith Decl. ¶¶ 4-5. These are precisely the kinds of documents that should be relevant to a fair lending case such as this, and the County does not contend otherwise.

Defendants then met and conferred with the County about its objections for more than eleven (11) hours. After clarifications and compromise, Defendants agreed to produce more documents and data. The meet and confer process is still underway, with more conferences to come once the County reviews the voluminous data and documents that Defendants already committed to produce. Rose-Smith Decl. ¶¶ 6-7.

## II. SUMMARY OF ARGUMENT

Although the Motion enumerates five separate arguments, only three issues here require the Court's attention.

First, three of the County's arguments relate to the parties' dispute regarding the relevant time period for discovery, with the County seeking discovery dating back more than 15 years for its claim which is subject to a two-year limitations period. Mot. at 3-7. During the parties' meet and confer, Defendants proposed a shorter six (6) year Relevant Period, ***beginning three years before the FHA limitations period***, which is reasonable, less burdensome, and consistent with this Court's ruling on the County's motion to dismiss. When the parties appeared before the Court on September 10, 2015, the Court's initial inclination (without briefing, to be clear) was that this offer to produce discovery back to 2009 would be sufficient, as it would give the County what it needed to show that any alleged misconduct continued into the limitations period (starting in 2012) so that the County could demonstrate a continuing violation, and thereby save

its time-barred claim. Significantly, Defendants stipulated that this offer does not foreclose further discovery upon a showing that it is relevant. For these and other reasons discussed below, the Court should sustain Defendants' time-period objections at this time, and adopt Defendants' definition of the Relevant Period as from January 1, 2009 forward.

Second, the County seeks irrelevant discovery about Defendants' "participation" in the Mortgage Electronic Registration Systems ("MERS") loan registry system. Mot. at 13-14. The MERS documents are irrelevant to the County's claims, as discussed below. Nevertheless, to prevent this issue from requiring the Court's attention, Defendants recently offered a compromise proposal, detailed below, which the County rejected out of hand. The Court should sustain Defendants' valid objections, or at most, adopt the Defendants' compromise proposal.

Third, the County asks this Court to overrule Defendants' protective objections, in response to Requests 37-39, on the basis of the "self-critical analysis" privilege. The County's attack on this recognized privilege is grossly premature because Defendants have not yet identified responsive documents and provided a privilege log. Rather than acknowledge the law and await the privilege log, the County asks this Court for a blanket privilege determination. The Court cannot and should not rule on any privilege claim in the abstract so the Motion should be denied in this respect.

### III.   ARGUMENT AND CITATION TO AUTHORITY

Rule 26 requires that the likely benefit of the discovery must outweigh the burden and expense, s*ee Lawrence E. Jaffee Pension Plan v. Household Int'l, Inc.*, No. 02 C 5893, 2006 WL 3445742, at *4 (N.D. Ill. Nov. 22, 2006), and new rules will soon explicitly limit the scope of discovery so that it is proportional in light of the needs of the case and the likely value of the discovery sought. Fed. R. Civ. P. 26(b)(1), *as amended*, effective Dec. 1, 2015. Discovery is not an open invitation for parties to inquire into any area of passing interest to the Plaintiff. *Wells

3

*Fargo Bank, N.A. v. RLJ Lodging Trust*, No. 13 C 758, 2015 WL 156778, at *2 (N.D. Ill. Jan. 12, 2015). Therefore, to prevail on a motion to compel under Rule 37, the County must show that the information sought is relevant, would lead to admissible evidence, is not unduly burdensome, and is appropriate for the needs of the case and the value of the information sought. *Id.*; *Sommerfield v. City of Chicago*, 2010 WL 780390, at *3 (N.D. Ill. Mar. 3, 2010); *Sirazi v. Panda Express, Inc.*, 2009 WL 4232693, at *3 (N.D. Ill. Nov. 24, 2009).

        **A.**       **The Court Should Adopt Defendants' Reasonable Temporal Limitation.**

Three issues raised in the County's Motion – the time limitation on document production and data production, and the alleged limitation on relevant entities – are based on Defendants' proper objections to the County's proposed 15-year discovery period.[3] The Court should not disturb Defendants' stated willingness to produce information stretching back to January 1, 2009, and so should deny the Motion's first three grounds for relief.

        ***1.***       ***The Motion's First Three Grounds Collapse Into a Single Issue: What is the Proper Temporal Scope of Discovery?***

The County's first three arguments in the Motion present different sides of the question of whether discovery at this time should be properly limited to events that occurred after January 1, 2009. This is how the County posits the first argument. Mot. at 3-7 ( "Defendants' Objection to the "Relevant Period"). The time period issue is also the only one that is raised by their third argument. Mot. at 9-11. ("Defendants' Refusal to Produce Loan Data Prior to January 1, 2009"). Defendants are producing and will produce the subject "loan data" for (a) all loans *made* on and after January 1, 2009 and (b) all loans *serviced* on and after January 1, 2009, regardless of when the loans were made, since January 1, 2000. This will enable the County to have data discovery

---

[3] After the Court's status hearing, Plaintiff offered an 11-year discovery period instead. Because this proposal still would impose a substantial and unreasonable burden on Defendants as explained herein, Defendants declined to accept the offer. Rose-Smith Decl. ¶ 9.

4

to attempt to show that continuing acts of discriminatory *lending* or of discriminatory *servicing* occurred within the two-year limitations period of 2012-2014.[4]

The County's second issue also raises the question of what is the "Relevant Period" for discovery. Mot. at 7-9 ( "Defendants' Entity Objection"). Here, the County complains that Defendants are denying discovery about the Countrywide and Merrill Lynch entities' conduct. *Id*. Not true. As explained in the meet and confers, and repeated at the discussion before the Court on September 10, Bank of America (specifically, Bank of America, N.A. ("BANA")), is the entity producing all of the discovery here because as of January 1, 2009, BANA's systems contain all the relevant data and documents. Daniel Decl. ¶ 7. The County is suspicious there is some hidden agenda, but there is none. Post-2009 documents from any Defendant will be produced to the extent called for and not objected to, regardless of which company's files contained it. Rose-Smith Decl. ¶ 10.[5]

### 2. *The Burden Of Production On Defendants Is Substantial if the Relevant Period Stretches Back to January 1, 2000.*

The burden imposed by the County's 15-year period is oppressive and, perhaps more importantly, unnecessary. The County will be able to determine everything it needs to know about whether any uniform mortgage lending or servicing "policy" continued into the limitations period (*i.e.* into 2012) by receiving discovery from 2009 forward. As Defendants explained in the meet and confer process, BANA's systems contain the loan servicing data for all of the loans still being serviced by *any* Defendant as of January 1, 2009 and data for loans originated since

---

[4] The County has a lengthy discussion in this section of its brief as to what types of loans are "at issue," what is a "subprime" or "high cost" loan, and the parties' positions on those questions. The discussion is confusing because the Motion seeks data about all loans, and Defendants' production includes data about all loans. The parties disagree about what makes a loan "discriminatory," but that issue is not yet before the Court.

[5] This is not to say that BANA (or any other entity) is legally liable for another's conduct.

5

that date. Daniel Decl. ¶ 7. That data is being produced (to the extent reasonably available and subject to an agreement as to which data "fields" need to be produced). Mot. Ex. B at 50-51. Likewise, any relevant pre-2009 policy still in effect from 2009-on also will be produced. *Id.*

Thus, the County is clearly incorrect when it argues (Mot. at 6-8) that Defendants are not going to provide post-2009 servicing data on loans originated by Defendants prior to 2009. Moreover, pre-2009 focused discovery is irrelevant because the County concedes that it does not allege discriminatory loan *origination* practices continued after January 1, 2009. *See* August 20, 2015 Ltr from S. Rose-Smith to D. Dailey and J. Evangelista at 1 (Mot. Exh. D); *see e.g.* Compl. ¶¶ 126, 318. Instead, it alleges that loans originated before 2009 are relevant because those loans were *serviced* in a discriminatory way into the limitations period. *See* Compl. ¶ 401. By receiving data on all loans still being serviced by any Defendant as of January 1, 2009, the County will be receiving everything it needs to prove its claim that some form of discriminatory servicing continued into the limitations period. *Id*.

By contrast, if discovery extended before 2009, the Defendants would have to search not only BANA's current databases and relevant custodians, but also at least three different legacy loan origination entities and multiple legacy data systems for each of those entities. *See* Daniel Decl. ¶¶ 8-9. Much of the legacy data is now difficult to locate, offline or archived. *Id*. ¶ 11. A search for this data will substantially increase the cost to Defendants, as it will require an additional one hundred or more man hours to just collect the additional data. *See Id*. ¶ 12.

The County's proposed 15-year Relevant Period also makes other Requests that are much more expensive and burdensome. For example, the County has requested all board minutes, handouts, and board packages for each Defendant's board of directors since 2000, and communications by or with board members about any violations of fair lending policy and

procedures and other compliance policies. Mot. Ex. A at 19-21, 33-34 (RFPs 19, 20-25, 55, 59). Because of the large amount of potentially privileged information such minutes and communications contain, review of board materials is particularly costly due to the increased number of attorney work hours required to review, tag, and redact or log privileged documents.

Defendants estimate that to comply with this board of directors document request, 1,000-1,500 Countrywide related documents for the 2004-2008 time period would need to be reviewed. Costamagna Decl. ¶¶ 9-10. Pre-2009 Bank of America Defendants and Merrill Lynch Defendants board meeting minutes pose similar concerns. *Id*. For the Bank of America Defendants, the vast majority of board material is in offsite storage, so it would have to be collected and scanned. *Id*. For the Merrill Lynch entities, board materials are all in hard copy and would have to be taken out of storage and scanned before review. *Id*. This process may add hundreds of person-hours just to collect such documents, not including review and production time. *Id*.

The County also has requested legacy policies and procedures for each of the Defendants, and email communications about those policies. *See* Mot. Ex. A at 17-18. The County seeks policies regarding the entirety of the mortgage lending business: marketing, underwriting, origination, sales, appraisals, compensation, servicing, REO, and fair lending. Just considering the email portion of this demand shows how daunting and expensive the collection effort would be. If one estimates there are only two people whose emails will need to be searched as to each topic for each of the three Defendant groups, adding the additional eight years (2000-08) to the search could add 54 custodians, and over 25 million total documents (not pages) to be searched. Defendants estimate that this type of additional email custodian discovery alone, including the review of the documents and the preparation of a privilege log, likely would cost over $12

7

million. Daniel Decl. ¶¶ 18-20.

But the burden is almost certainly going to be multiples – perhaps, many multiples – of that figure. This is true for at least two reasons. First, it is unrealistic to think that only two employees will need to have their emails searched for only nine topics (Daniel Decl. ¶ 10); the County requests policy and procedures for over *forty* topics relating to the mortgage origination business in Request 16, and then requests *all* board and management level communications regarding all of the topics' implementation, enforcement, violations or discontinuation of such policy. *See* Mot. Exh. A at 17-18, 20 (RFPs 16, 20-22). The parties have not discussed email searches yet, but it would be Defendants' expectation that the County would seek emails from well in excess of 54 custodians. Second, the figures above cover partial responses to just 16 of the County's 62 Requests. The attendant cost will be similarly multiplied for other Requests where the collection, review, and production would increase for the pre-2009 time period.

### ***3. Defendants' Agreement to Produce Information and Data From and After January 1, 2009 Is Proportionate To The Needs Of The Case.***

By comparison, Defendants' compromise agreement to produce information and data within a "Relevant Period" of January 1, 2009 forward allows the County substantial discovery to prove its claims, while appropriately limiting the time period to a span reasonably likely to bear fruit. The County has been upfront in its acknowledgement that the bulk of its FHA allegations are based on loans originated and serviced outside the FHA's two-year statute of limitations period. *See, e.g.*, Compl. ¶¶ 74, 368. The County only defeated Defendants' motion to dismiss because the Court found that the County sufficiently alleged that "Defendants *continue* to charge minority borrowers discriminatory fees and costs during the servicing of home loans." *See* MTD Op. at 15 (Dkt. No. 35). While the Court acknowledged the continuing violation doctrine could make some untimely conduct relevant, *id.* at 14-15, the prerequisite to

the County's case is proving that timely conduct was unlawful.[6] Defendants' offer strikes the appropriate balance of allowing the County to develop the evidence necessary to prove its claims without overburdening Defendants. If, after receiving six years' worth of discovery, the County believes any allegedly unlawful policy dates back even further, it will be in a position to appropriately identify that policy and topics that should be subject to further discovery.

Here, what occurred 15 or even 10 years ago is highly unlikely to have any significance as to the County's ability to prove discrimination during the limitations period, which it must do to get over the limitations bar. It is proportional to the needs of the case to focus on the 6-year period proposed by Defendants, for if no discriminatory lending or servicing conduct occurred during that time – indeed, in the narrower 2012-forward period– then the case will be dismissed.[7]

It also is important to reiterate Defendants' position as to discovery that stretches before 2009. As stated at the September 10th hearing, and repeatedly in meet and confers with the County, Defendants do not take an inflexible position that no discovery prior to 2009 will be discussed and produced. We embrace this Court's observation that the County can seek discovery from the earlier time if, as it moves forward, it finds a real need to do that. But at this time, the parties should concentrate discovery on the "Relevant Period" of 2009 and later.

### B. Though MERS Discovery Is Irrelevant, Defendants Have Nonetheless Offered A Reasonable Compromise.

The County's attempt to seek MERS-related documents is a red-herring that bears no relation to this case. To avoid burdening the Court with this issue, Defendants have offered the

---

[6] Even the cases cited in Plaintiff's Motion acknowledge that "discriminatory acts prior to the statutory period" only become relevant after a showing of "presently" continuing discrimination *See Stewart v. CPC Int'l, Inc.*, 679 F.2d 117, 121 (7th Cir. 1982).

[7] Further, even if the County can develop some evidence a challenged policy began prior to 2009, the County will then be in a position to seek targeted discovery further back in time, rather than its current fishing expedition.

County a reasonable compromise, which the County has rejected. The Court should deny the County's Motion on this issue or deem the relevant Requests satisfied by Defendants' offer.

The County seeks two things concerning MERS – documents "describing" Defendants' "participation in" MERS (Request 8) and documents "describing and/or quantifying" benefits "as a result of any participation" in MERS (Request 9). Mot. at 11-12.[8] The excuse for the inquiry is, to start with, inherently implausible. Although the County speculates, without alleging any factual support for doing so, that MERS may have been used to conceal lending conduct (Mot. at 13-14), this assertion is belied by the decision of the Seventh Circuit that the use of MERS is a legal practice.[9] *See Union County, Illinois v. MERSCORP, Inc. et al.*, 735 F.3d 730, 733-34 (7th Cir. 2013).

Balanced against this fishing expedition, is the fact that the MERS requests are not "very limited" as the County suggests, but incredibly broad and burdensome. Requests 8 and 9 seek documents that describe each Defendants' "participation in the creation, management and/or activities" of MERS over a 15-year period, and documents that "describe and/or quantify all benefits" each Defendant received over the same period. Given that some Defendants used the MERS System extensively, and MERS appears on thousands of mortgages over the 15-year Relevant Period (and even over the narrower period Defendants suggest), documents depicting operational "activities," or the "benefits" derived from the use of MERS, could amount to a substantial production of records – including, potentially, all documents created whenever a

---

[8] The County also seeks (Mot. at 12) the MIN number on loans for which data is produced. Defendants will provide this data element, which was previously thought to be unavailable to the extent reasonably accessible. Rose-Smith Decl. ¶ 14.

[9] Plaintiff abandoned its previous claim that MERS discovery was relevant to its damages because use of MERS resulted in lost recording fee revenue to the County. Rose-Smith Decl. ¶ 11, and rightly so. *See Union County, Ill.*, 735 F.3d at 733-34 ("MERSCORP and the banking industry [are not] required to adopt a system of mortgage protection that generates revenues for a state or local government").

mortgage was registered with or transferred within MERS.

The County's arguments to compel production are unpersuasive. It suggests the information is needed because the County has trouble understanding who owns certain properties. Mot. at 13. Notably, there is no affidavit offered to prove that is true, so the Motion is in this respect utterly unsupported. Nor is it likely true, given all of the resources at the County's (and City of Chicago's) disposal, and other records such as tax records. In any event, the assertion cannot justify the discovery that is actually sought by Requests 8 and 9. The County moves on to say the discovery will show Defendants' concealment was intentional and part of an "equity-stripping scheme" and hidden from view. Again, the argument is divorced from the Requests, which seek broad inquiry into Defendants' "participation" in MERS.

Though the discovery is not relevant, Defendants offered to search for and produce documents responsive to the County's requests from two existing collections of MERS-related documents on the issues Plaintiff identified. Rose-Smith Decl. ¶¶ 11-12. The County responded it could not accept the offer until the documents had been produced and reviewed, and (more disturbingly) refused to withdraw this issue from the Motion to allow that to happen. *Id.* ¶ 13. This position regrettably underscores the central problem with the County's discovery approach here – it will not, or cannot, give any contours to its case, so it is unwilling to compromise on any issue. The Court should deny the Motion because there is no good justification for the discovery.

### C. The County's Demand For a Blanket Privilege Ruling Is Premature And Improper.

Finally, the Court cannot, and need not, decide the parties' dispute regarding Requests 37-39 because it does not have a privilege log or specific challenged documents before it. If it considers this issue at all, Defendants' privilege objections are proper and should be sustained.

### *1.     The Court Should Not Issue A Blanket Ruling On Privilege.*

Courts do not decide privilege issues in the abstract. *CBS Broad., Inc.*, No. 08 C 6241, 2011 WL 111615, at *13 (N.D. Ill. Jan. 13, 2011) (finding the court could not rule on privilege assertions without specific document challenges). They examine document-specific challenges. *See Mader v. Motorola Inc.*, No. 92 C 8089, 1994 WL 535125, at *10 (N.D. Ill. Sept. 30, 1994) (denying motion to compel as premature where the documents had neither been reviewed nor logged as privileged). Yet here the County brought its privilege challenge *before* Defendants asserted privilege as to specific documents in a privilege log, so the Motion is premature.

Defendants tried to resolve this issue with the County before Court intervention. While Defendants' written response to Requests 37-39 initially cited the "self-analysis privilege and/or the Equal Credit Opportunity Act self-testing privilege" in refusing to produce documents, Defendants offered to accelerate a search for responsive documents in the files of the division that conducted the monitoring called for by the Requests and produce a log so that the County could concretely understand the objections. Rose-Smith Decl. ¶ 8. Specifically, Defendants' September 4, 2015 letter explained details regarding Bank of America's Enterprise Fair Lending Division (identifying it by name and function), and stated:

> Defendants offer to make an appropriate search for any regularly-prepared reports by the Enterprise Fair Lending Division … that analyze and identify, for loan originations in the Cook County: (i) borrower credit characteristic data, such as credit score, (ii) ethnicity or race of the borrower(s), and (iii) the loan product or a loan feature, such as a prepayment penalty, obtained by the borrower. To be covered by this Response, any such reports must identify Cook County as at least one of the geographic areas being examined and must include data specifically differentiated as to loans originated in Cook County.

Mot. Ex. E at 10. The County refused the offer and would not articulate any alternative search parameters. *Id.* It preferred instead to file the Motion.

The County's refusal is contrary to common sense and established law. "Privileges must

12

be addressed on a document-by-document and question-by-question basis." *U.S. v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983). Accordingly, this privilege "dispute" is not yet ripe and the Court should decline the County's premature request for an abstract privilege ruling on hypothetical documents. At most, the Court should allow the Defendants to conduct their already-offered search, produce non-privilege documents, and provide a privilege log for any withheld documents – after which the parties would meet and confer over any disagreements before presenting any to this Court.

### 2. *Defendants' Privilege Objections Are Valid And Should Be Upheld.*

In the Motion, and Requests 38 and 39, Plaintiff principally seeks "all documents… in connection with each…Self-Evaluation that has been performed….regarding compliance with the provisions of the Fair Housing Act and/or the Equal Credit Opportunity Act." There is no ground for holding such documents can *never* be privileged and in fact the law in the Seventh Circuit recognizes that the self-critical analysis privilege is valid.

Initially, it bears noting that even if the County could resolve the self-critical analysis privilege in its favor, it would have no effect on the fact that the to-be-identified documents are also almost certainly subject to attorney/client and work product privilege objections, each of which have been also cited. Defendants have made clear during the parties' meet and confer that any responsive self-evaluations like those called for in Requests 38 and 39 would have been conducted under supervision of counsel. The Motion (correctly) makes no attempt to strike these privilege objections in advance so, at best, the Motion seeks to resolve only a portion of the privilege claims concerning any documents that may be responsive.

In any event, the Motion must also be denied on the merits because, as the County itself acknowledges (Mot. at 15), the Northern District of Illinois has recognized the self-critical

analysis privilege so this Court cannot issue a broad ruling that the privilege could never apply.[10] The privilege "is grounded on the premise that disclosure of documents reflecting candid self-examination will deter or suppress socially useful investigations and evaluations or compliance with the law." *Spina v. Forest Pres. of Cook Cnty.*, No. 98 C 1393, 2001 WL 1491524, at *12 (N.D. Ill. Nov. 23, 2001) (internal citations omitted). Illinois federal courts have "identified four elements that the party seeking to assert the privilege must establish: 1) the materials were prepared for mandatory government reports; 2) the privilege is being asserted only to protect subjective, evaluative materials; 3) the privilege is not being asserted to protect objective data in the same report; and 4) the policy favoring exclusion clearly outweighs the County's need for the information." *Id*.

The Defendants can and will satisfy all four elements of this test, but at this stage the test cannot even be administered by this Court without having specific documents in dispute.[11] Despite this practical deficiency, the County argues the privilege can never apply in this case because Defendants allegedly were required to maintain such self-evaluations and publicly report the underlying data "specifically so that [FHA violations] could be identified by regulators and the public." Mot. at 15. How the County presumes to know such details regarding hypothetical documents is a mystery, but in any event whether "reports" at issue were required to be

---

[10] The County argues state law should govern, but this is incorrect. "On matters governed by federal substantive law, the federal courts are to apply a federal law of privilege, either as prescribed by statute or as fashioned from 'the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" § 4512 The Erie Doctrine and the Federal Rules of Evidence, 19 Fed. Prac. & Proc. Juris. § 4512 (2d ed.), citing Fed. R. Evid. 501.

[11] Although the elements cannot be weighed without actual documents at issue, Defendants will be able to show these Requests seek materials: (1) required for government fair lending reports, (2) & (3) where the underlying data has already been produced to the County so that only subjective evaluations are being withheld on the basis of the privilege, and (4) that the County has no specific need for the subjective analyses that weighs in favor of "deter[ring] or suppress[ing] socially useful investigations and evaluations or compliance with the law." *Spina*, 2001 WL 1491524, at *12.

maintained or reported is not a reason to deny the privilege, it is only one of the considerations as to whether the privilege applies. The County further argues that "[a]ny self-critical analysis would have been subject to public disclosure, provided federal regulators, or the public, identified patterns of discriminatory conduct or other irregularities." Mot. at 15. Once again, the County has no factual basis for this statement; while it is true that regulators require that *HMDA data* be publicly reported, the County offers no support for the proposition that all self-critical analysis documents are necessarily done for the benefit of, or produced to, the government or the public. In fact, they are not. Importantly, the County cannot even claim a valid need for any such documents because Defendants already have produced all the underlying HMDA data for 2009 to the present.

Finally, although the Motion does not directly address the issue, Requests 37 and 38 also specifically demand any "Self-Test" performed in connection with FHA and the Equal Credit Opportunity Act ("ECOA") compliance, and "any documents, workpapers or information" associated with such Self-Tests. But this ignores that "Self-Test" documents are specifically privileged from production under federal law. *See* ECOA, 12 CFR §202.15(a)(1) ("[t]he report or results of a self-test that a creditor voluntarily conducts (or authorizes) are privileged as provided in this section."); § 202.15(b)(1) ("[t]he privilege under this section applies to the report or results of the self-test, data or factual information created by the self-test, and any analysis, opinions, and conclusions pertaining to the self-test report or results. The privilege covers workpapers or draft documents as well as final documents." ); 24 C.F.R. § 100.142 (FHA regulation providing similar privilege). The Motion does not seek to overrule "self-test" privileges, but even if it had, any challenge to this privilege is also premature.

## IV. CONCLUSION

For the reasons above, Defendants respectfully request that the Court deny the Motion.

15

Dated: October 1, 2015            Respectfully Submitted,

                         By:     */s/ Ryan M. Dunigan*

                                 Ryan M. Dunigan
*rdunigan@winston.com*
J. Erik Connolly
*EConnolly@winston.com*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel.: (312) 558-5600
Fax: (312) 558-5700

Sabrina Rose-Smith
*SRoseSmith@goodwinprocter.com*
Thomas M. Hefferon
*THefferon@goodwinprocter.com*
James W. McGarry
*JMcGarry@goodwinprocter.com*
Matthew S. Sheldon
*MSheldon@goodwinprocter.com*
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel.: (202) 346-4000
Fax: (202) 346-4444

*Attorneys for Defendants Bank of America Corporation, Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB, Countrywide Warehouse Lending, LLC, BAC Home Loans Servicing, LP, Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital Inc., and Merrill Lynch Mortgage Lending, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2015, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.

                                                             */s/ J. Erik Connolly*
                                                             One of the attorneys for Defendants