UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BANK OF AMERICA CORPORATION, | ) Case No. 14-cv-2280 |
| BANK OF AMERICA, N.A., | ) |
| COUNTRYWIDE FINANCIAL | ) Judge Elaine E. Bucklo |
| CORPORATION, | ) |
| COUNTRYWIDE HOME LOANS, INC., | ) |
| COUNTRYWIDE BANK, FSB, | ) |
| COUNTRYWIDE WAREHOUSE LENDING, | ) |
| LLC, BAC HOME LOANS SERVICING, LP, | ) |
| MERRILL LYNCH & CO., INC., MERRILL | ) |
| LYNCH MORTGAGE CAPITAL INC., and | ) |
| MERRILL LYNCH MORTGAGE LENDING, | ) |
| INC., | ) |
| | ) |
| Defendants. | ) |

**DECLARATION OF ROBERT DANIEL IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

I, Robert M. Daniel, hereby declare as follows:

1. I am currently employed as a consultant at Huron Legal ("Huron"), which is a discovery vendor to Bank of America, N.A. ("BANA"). I previously worked at BANA for 25 years, most recently as a Manager of Legal Discovery Operations. I submit this Declaration in support of the Defendants' Opposition to Plaintiff's Motion to Compel.

2. I understand the defendants in this matter to be Bank of America Corporation, BANA, BAC Home Loans Servicing, L.P. (which I understand to be part of BANA now), Countrywide Bank, FSB (which I also understand to be part of BANA now), Countrywide Financial Corporation ("CFC"), Countrywide Home Loans, Inc. ("CHL"), Merrill Lynch & Co., Inc., ("Merrill"), Merrill Lynch Mortgage Capital Inc. ("MLMC"), and Merrill Lynch Mortgage

Lending, Inc. ("MLML") (collectively "the Defendants"). I understand that Countrywide Warehouse Lending, LLC ("CWL") was also named as a Defendant, but I understand that CWL no longer exists. Unless otherwise specified, I will refer to BAC and BANA (and the entities referred to that I understand are part of BANA) collectively as Bank of America; I will refer to CFC and its subsidiary CHL collectively as Countywide, and I will refer to Merrill, MLMC and MLML collectively as Merrill Lynch.

3. This Declaration is based upon my personal knowledge, including my personal knowledge of BANA's business records and information and the business records and information of Countrywide and Merrill Lynch, as well as my review of business records and information kept in the regular course of Huron's business as a discovery vendor to BANA, and my review of information provided to me by Huron and BANA employees.

4. From 2004 to 2012, I was a manager of one of multiple groups responsible for discovery management, litigation, and regulatory matters at Bank of America. During my tenure at Bank of America, I was responsible for, among other things, leading and managing teams that collect and process certain electronically stored information, including email, in response to discovery requests in litigation involving Bank of America, Countrywide, and Merrill Lynch. I have led, supervised and/or directly participated in the collection and production of email in hundreds of cases over the last ten-plus years. As a result, I have substantial personal knowledge and experience concerning the time, processes, and expenses associated with the collection and production of email of Bank of America, Countrywide, and Merrill Lynch custodians.

### The Burdens Association With Pre-2009 Discovery

5. I understand from counsel that Plaintiff in this lawsuit has sought discovery from the Defendants for the time period 2000-2015, and that Plaintiff seeks documents from each of the Defendants related to the following broad mortgage lending topics: marketing, underwriting, origination, sales, appraisals, compensation, servicing, REO and fair lending.

6. I understand that as of January 1, 2009, all of the Defendants in this matter were direct or indirect subsidiaries of BAC.

7. In order to find responsive documents for the discovery that I understand Plaintiff seeks for the years 2009-2015, the Defendants would only have to search BANA platforms, and BANA email custodial records.

8. In order to find the same type of responsive material for the years 2000-2008, the situation is more complicated. I believe at least two significant burdens are created by expanding discovery to the years 2000-2008.

9. First, each group of Defendant entities (Bank of America, Countrywide and Merrill Lynch) had its own set of legacy systems and data sources that would have to be researched for the years 2000-2008. I provide a description of the burden of this additional collection below.

10. Second, each group of Defendant entities (Bank of America, Countrywide and Merrill Lynch) had distinct employees and management teams for the years 2000-2008; the only exception to this would have been for the portion of Countrywide operations that were transitioned to Bank of America after the July 1, 2008 effective date of the Countrywide transaction. After January 1, 2009, many of Defendants' legacy employees changed roles and many other employees left to work elsewhere. This means that to the extent Plaintiff seeks email custodians on specific topics, it is likely that expanding discovery to the 2000-2008 time period will significantly expand the number of email custodians for the topics identified by Plaintiff. I provide an estimate of the potential cost for these additional custodians below.

### The Burden Association with Pre-2009 Discovery for Non-Custodial Data

11. Identifying and compiling residential mortgage loan data for Bank of America, Countrywide and Merrill Lynch for the time period 2000-2008 would be an extremely complicated and time intensive process. Depending on what loan origination and servicing data needed to be compiled, the process could require accessing historic technology systems previously used by Bank of America, Countrywide and/or Merrill Lynch. Some of these systems are no longer in use and some are in an archive state or are otherwise offline. Some of the data that was on these systems is in a back-up state.

12. The burden associated with collecting such residential mortgage loan data cannot be determined until a list of relevant data fields is finalized, but I estimate it could take one hundred or more extra man-hours to extend the collection of such data to the 2000-2008 time period. This estimate is based on my understanding that origination, servicing and securitization data were not stored on a single system for any of the three groups of Defendant entities during the 2000-2008 time period. Instead, the process for collecting such data, depending on what data fields are required, could entail collecting the data from multiple different systems for each group of Defendant entities. For example, I understand that for the 2000-2008 time period Bank of America, Countrywide, and Merrill Lynch, had multiple databases storing different types of loan origination data, and multiple databases storing different types of servicing data. I also understand that some of Bank of America's mortgage loan data for loans that paid off or extinguished prior to 2008 are no longer in an active database and collecting this data poses unique challenges.

13. These challenges would be lessened substantially if the relevant time period for data collection was 2009 to the present. I understand that for the time period 2009 to the present, the Defendants could collect all relevant data concerning the Defendants' origination and servicing of residential mortgage loans in Cook County from BANA's current technology systems.

14. Identifying and compiling policies and procedures and Board of Directors materials for Bank of America, Countrywide and Merrill Lynch for the time period 2000-2008 also would be a complicated and time intensive process. The documents are not stored in a single location and they are in different formats. Depending on what materials needed to be compiled, the process could require locating and scanning paper records, particularly for the Bank of America and Merrill Lynch Board of Director materials.

### The Estimated Additional Cost for Custodial Discovery Prior to 2009

15. Defendants' counsel has asked me to try to determine a reasonable estimate for additional discovery costs if the Defendants had to make email productions (referred to as "ESI"

4

for this purpose) for the 2000-2008 period.

16. Each group of Defendant entities (Bank of America, Countrywide and Merrill Lynch) has been involved in various litigation matters concerning, among other topics, residential mortgage lending, servicing or securitization practices. Through my roles at BANA and at Huron, I have been involved in collecting, processing and reviewing ESI data for several of these cases. As a part of the discovery for the cases on which I worked, ESI data was collected for various custodians, and then culled based on responses to negotiated search terms, reviewed by a vendor under outside counsel's supervision, and produced.

17. I believe it is reasonable to use the costs associated with those prior custodial collections to come to an estimate as to what discovery for the period prior to 2009 would cost in this case.

18. For the three groups of Defendant entities at issue in this litigation, I reviewed the historical data available for the custodial collections involving the Defendants, and using that data, I was able to determine an average amount of data associated with a single custodian for an eight year time period. Based on that review, and using the average amount of data across all the cases, I estimate that a typical custodian selected in this matter is reasonably likely to have an average of 472,500 documents requiring collection, if the relevant time period is eight years, *i.e.* 2000-2008. Based on my review of the prior cases on which I worked, I believe it is reasonable to assume that an average of 15% of any collected documents would be responsive to search terms agreed upon by the parties; those documents (using these figures, it would be over 70,000 documents) then would need to be reviewed. I note that without knowing either the actual defined search terms or the actual custodians this could be a conservative estimate as the numbers of documents, and the responsive rate of documents could be twice my estimate, *i.e.* 30%.

19. I understand from counsel that Plaintiff's requests for production identify at least nine categories of topics: marketing, underwriting, origination, sales, appraisals, compensation, servicing, REO and fair lending. If the Plaintiff sought two custodians for each of these topics

for each of the three groups of Defendant entities for the 2000-2008 time period, that would implicate 54 total custodians. If, however, the relevant time period was limited to 2009 to the present, providing two custodians for those same nine topics may only require 18 custodians due to the operational consolidations that occurred and were in effect in that period. Thus, extending discovery prior to 2009 could implicate a significantly-larger number of custodians compared to focusing discovery on 2009 to the present.

      20. I estimate that extending discovery to the period back to 2000-2008 could cost approximately $6,506,325 for just a first pass document review, not including preparation of a privilege log, compared to what the cost would be if discovery were limited to 2009 to the present. This is based on my assumptions that: (i) each custodian has 472,500 total documents for the eight year period; (ii) that 15% of these documents, 70,875, were responsive to search terms negotiated by the parties from the total collection; and (iii) that 54 additional email custodians are required for discovery prior to 2009. In addition, the cost of the privilege log is typically the same as the cost of the first pass review, doubling the cost estimated above to more than $12 million. This estimate does not include outside counsel's time in supervising the review and identifying the documents that should be collected and contains no allowance for unanticipated costs. In addition, if the number of custodians were larger, the costs would be commensurately larger as well.

      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: September 30, 2015

## CERTIFICATE OF SERVICE

      I hereby certify that on October 1, 2015, I caused a true and correct copy of the foregoing DECLARATION OF ROBERT DANIEL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL to be served upon counsel of record as of this date by electronic filing.


Dated: October 1, 2015                                              /s/ J. Erik Connolly
                                                                                     One of the attorneys for Defendants