**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| COUNTY OF COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BANK OF AMERICA CORPORATION, | ) | Case No. 14-cv-2280 |
| BANK OF AMERICA, N.A., | ) | |
| COUNTRYWIDE FINANCIAL | ) | Honorable Elaine E. Bucklo |
| CORPORATION, | ) | |
| COUNTRYWIDE HOME LOANS, INC., | ) | Magistrate Judge Mary M. Rowland |
| COUNTRYWIDE BANK, FSB, | ) | |
| COUNTRYWIDE WAREHOUSE LENDING, | ) | |
| LLC, BAC HOME LOANS SERVICING, LP, | ) | |
| MERRILL LYNCH & CO., INC., MERRILL | ) | |
| LYNCH MORTGAGE CAPITAL INC., and | ) | |
| MERRILL LYNCH MORTGAGE LENDING, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT REPORT REGARDING OUTSTANDING DISCOVERY DISPUTES

Pursuant to the Court's January 15, 2016 order, County of Cook (the "County") and

Defendants Bank of America Corporation, Bank of America, N.A., Countrywide Financial

Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB, Countrywide Warehouse

Lending, LLC,[1] BAC Home Loans Servicing, LP, Merrill Lynch & Co., Inc., Merrill Lynch

Mortgage Capital Inc., and Merrill Lynch Mortgage Lending, Inc. (collectively, "Defendants"),

hereby submit their joint report regarding outstanding discovery disputes and state as follows:

## I.    NATURE OF THE CASE

On March 31, 2014, the County filed its Complaint against Defendants asserting a claim

---

[1] Countrywide Warehouse Lending, LLC ("CWL") merged into BofA Merrill Lynch Asset
Holdings, Inc. in March 2014 and CWL no longer exists.

under the Fair Housing Act, 42 U.S.C. § 3601, based on Defendants' alleged discriminatory origination, servicing and securitzation practices from 2000 to 2015. Defendants deny these allegations, and timely answered the Complaint on April 24, 2015, after the Court denied Defendants' motion to dismiss (Dkt. #52). The Honorable Judge Elaine E. Bucklo entered a scheduling order in this action on April 16, 2015 (Dkt. #64). Pursuant to that scheduling order, fact discovery in this action is set to close on April 11, 2016. On October 22, 2015, Judge Bucklo denied the County's pending Motion to Compel without prejudice, and referred the case to this Court for discovery supervision. Pursuant to this Court's December 7, 2015 Order, the parties hereby submit this joint discovery status report.

## II.    STATUS OF DISCOVERY

The Parties have each served requests for production of documents, requests for admissions, and interrogatories. To date, Defendants have responded to the County's First Request for Admissions to Bank of America Defendants, the County's First Request for Admissions to Countrywide Defendants, the County's First Request for Admissions to Merrill Lynch Defendants, and the County's First Set of Interrogatories. In response to Defendants' First Request for Production, Defendants have produced 2,549 documents (35,565 pages), and 37 origination data fields on more than 48,000 loans in Cook County, along with over 1.7 million data points. In addition, Defendants have agreed to produce the same origination data fields, plus 48 servicing data fields for all HMDA reportable loans originated in Cook County that were still being serviced as of January 1, 2009, regardless of the origination date for the loan. To further respond to the County's Requests for Production, Defendants have also agreed to produce additional documents from January 1, 2004 forward.

To date, the County has responded to Defendants' First Set of Request for Admission to

Plaintiff, involving 173 separate requests; Bank of America Corporation's First Set of Interrogatories to Plaintiff; and Bank of America N.A.'s First Set of Interrogatories to Plaintiff. The County also has served written responses and objections to Defendants' First Request for Production of Documents, but has not produced any responsive documents to date. The County has advised Defendants that it will begin production of documents and other information responsive to Defendants' requests by February 15, 2016 and will supplement its productions after receiving and analyzing the loan origination, LAR and loan servicing information the County has demanded Defendants produce on order to specifically identify each of the property addresses of discriminatory loans that have been foreclosed upon, are in the foreclosure process or are vacant. In its initial disclosures, the County produced approximately 1180 pages of supporting information, along with the identity of approximately 33,375 properties foreclosed upon by Defendants, and the identities of the County's confidential witnesses referenced in the complaint.

### A. Status of The County's Discovery Requests to Defendants

#### *(1)* *Interrogatories*

Defendants served their responses and objections to the County's Interrogatories on October 22, 2015. The County has not yet raised any deficiencies regarding these responses, but reserves the right to do so after the Defendants have produced specific documents in the County's requests for production discussed in further detail below. Defendants disagree that the County can or should be permitted to wait an indefinite period before raising ***any*** deficiencies regarding Defendants' responses; simply put, the responses either are sufficient or they are not.

#### *(2)* *Requests for Admission*

Defendants served their responses and objections to the County's Requests for Admission

on October 22, 2015.  The County has not yet raised any deficiencies regarding these responses, but reserves the right to do so after the Defendants have produced specific documents in the County's requests for production discussed in further detail below.  As with interrogatories, Defendants assert that any deficiencies in its responses should be raised promptly.  While it is proper to raise certain issues regarding the responses in the event of improper denials, other issues regarding the responses could and should have been raised at this point.

### (3)  *Requests for Production*

Defendants served their responses and objections to the County's Requests for Production on July 9, 2015.  After the parties met and conferred, the County filed a motion to compel on several overarching issues, particularly the time period over which Defendants agreed to produce documents and which of the named Defendants that Defendants agreed to collect and produce documents from.  As a result of subsequent meet and confers and the Court's order directing the parties to consider the relevant period applicable to each request individually, rather than collectively, Defendants already have and continue to produce responsive documents and data on a rolling basis.  As a result of the parties' meet and confer efforts, the County and Defendants have reached an agreement regarding Defendants' production in response to the following RFPs:  Nos. 1-5, 8-9, 40-42, 44, 51, 56, and 60.

The County and Defendants still disagree on the scope of production, but have agreed to continue to negotiate a compromise as to the following RFPs:  Nos. 7, 10-39, 43, 45, 48-50, 52-55, 57-59, and 61.  Defendants reserve all their objections to additional production in response to these RFPs.  The County reserves its right to seek to compel production in response to these RFPs if the parties are unable to reach a compromise.

The County and Defendants are at an impasse with respect to the following RFP Nos.: 6,

46, and 47, and seek the Court's assistance in resolving the following disputed issues.

- **RFP 6:** Produce each non-duplicative, final, consolidating and consolidated financial statement generated throughout the Relevant Period, including profit and loss statements and statements of cash flow from operations, regarding Your and each BAC entity's Mortgage Loan Origination Operations, Wholesale Mortgage Lending Operations, Community Reinvestment Act Residential Mortgage Lending Operations, Mortgage Loan Securitization Operations and Residential Mortgage Loan Servicing Operations.

  - <u>**The County's Position**</u>: The County has agreed to limit this request to documents sufficient to reflect the annual profits or losses for each named Defendant's mortgage banking operations commencing in 2004 provided such documents include enough detail to distinguish the respective profits or losses: (a) for mortgage originations and wholesale funding operations across each Defendant's residential mortgage loan product lines; (b) for mortgage securitization and sales activities across each Defendant's residential mortgage loan product lines; and (c) for mortgage servicing and foreclosure activities across each Defendant's residential mortgage loan product lines. The information is relevant to show the intentional nature of the alleged equity stripping scheme, how the scheme operated, and is relevant to a measure of punitive damages. The requested information is not privileged, and confidentiality should not be an issue since the parties have an agreed confidentiality order in place (Dkt # 82).

  - <u>**Defendants' Position**</u>: Defendants object to this request on relevance, privilege and confidentiality grounds. The County made clear that it is seeking non-public financial information, and that it intends to use such information to prove that Defendants' motive in allegedly violating the

FHA was profit-driven.  Defendants have repeatedly explained that

financial information would not be relevant because an increase in profits

for any entity or single mortgage lending division could not automatically

be attributed to alleged discriminatory lending, and there are other, less

invasive ways to obtain discovery as to motive, including via documents

and data the County demand in other requests.  Defendants also have

explained that their public filings would contain financial information

sufficient to satisfy the County's request for discovery, and that

production of non-public financial data would be detrimental to

Defendants' competitive business interests.  Though the County alleges

that the agreed confidentiality order would protect Defendants'

confidential information, as a practical matter, Cook County is one of the

largest municipalities in the country, and is subject to a stringent public

records process that gives little time for lengthy post-litigation court

battles over whether to produce documents used in this action when

requested by third parties.  Defendants need not be forced to rely on Cook

County bureaucracy to protect its confidential information when such

information is of marginal relevance to the County's claim and when

other, less invasive means for proving any alleged motive already exist.

- **RFP 46:**  Produce documents sufficient to identify each representation made by BAC and/or each BAC entity to each and/or federal regulatory agency regarding any alleged and/or actual predatory and/or discriminatory mortgage lending and/or servicing practices by BAC and/or each BAC entity.

    o **The County's Position**: The requested information may reflect either an

    admission of liability, a statement against interest, or other discoverable

information relating to the matters alleged in the complaint, including the complaint's affirmative allegations that Defendants have settled a number of federal and state civil and regulatory proceedings relating to the conduct at issue.

- o **Defendants' Position**:  Defendants objected to this request as overly burdensome to collect all such representations for the time period set forth by the County, and on the grounds that any responsive documents would be protected by applicable privileges for settlement negotiations and/or bank examinations, and not relevant to the County's notice arguments (because statements made to federal regulatory agencies, or other state regulators, but not made public, would not have been available to Cook County, such that neither party to this case can argue that such statement did or did not put Cook County on notice of specific claims), and so that the burden of collecting and producing any such statements also is not justified.

- **RFP 47:**  Produce each statement made by a representative or BAC and/or each BAC entity to Plaintiff regarding any alleged and/or actual predatory or discriminatory mortgage lending or servicing practices by BAC and/or each BAC entity in Plaintiff's communities.

  - o **The County's Position**: Evidence of the requested statements – or the lack of any such statements – is directly relevant to the Defendants' improper statute of limitations defense, which is premised on the incorrect assumption that the County was on notice of its claims.  Defendants seek to conflate their statute of limitations defense with the County's ability to rely on an equitable tolling theory, such as the common law "continuing

violations doctrine" should the Court determine that the statute of limitations has run.  Thus, the County would seek to introduce any:

- ▪ (1) affirmative statements made by Defendants to Cook County that Defendants did not engage in predatory or discriminatory mortgage lending, servicing, or foreclosure activity, or

- ▪ (2) the lack of any public or private admissions or statements by Defendants that they in fact did engage in predatory or discriminatory mortgage lending, servicing, or foreclosure activity,

in order to rebut any showing by Defendants' that Cook County's actions were somehow unreasonable or that Cook County "sat on its hands" in asserting its rights under the Fair Housing Act's statute of limitations provision.  This is all notwithstanding that the plain language of the FHA's limitations provision does not impose any discovery rule on the County, which Defendants are attempting to do in order to use the common law "continuing violations doctrine" as a sword against the County's claims.

- o **Defendants' Position**:  Defendants' object to this RFP because it is overly broad and unduly burdensome for the reasons noted above, and because any documents responsive to this Request would already be in the County's possession, custody, or control.  Particularly if the County intends to claim that any Defendant made or failed to make statements that on which the County relied in determining whether or not to bring a claim, it should already be aware of such statements – otherwise it cannot now claim that it relied on such statements in waiting to bring its claims.

Further, the request is overly broad because "BAC Entity" encompasses any business entity affiliated with any of the defendants in this action, and the request calls for statements made by any representative, when the Defendants collectively have thousands of employees.  Defendants also offered to produce any such statements if it became aware of them and intended to rely on them in support of its defenses, which should be sufficient for the County's purposes.

**B.      Status of Defendants' Discovery Requests to the County**

*(1)      Interrogatories*

Defendants served Bank of America Corporation's First Set of Interrogatories and Bank of America N.A.'s First Set of Interrogatories on the County on July 23, 2015 and the County responded on September 8, 2015.   After the parties met and conferred on September 21, 2015 and October 8, 2015 to discuss the County's responses, the County amended its responses on November 11, 2015.  Defendants identified its ongoing concerns with the County's amended responses in a letter on December 31, 2015.  By letter dated January 21, 2015, the County responded, and has offered to further amend its responses.  Below the parties set forth their positions on the remaining interrogatory responses.

*a.       Bank of America Corp. Interrogatories*

The County and Defendants have reached an agreement regarding the County's response to interrogatories 1, 3, 6, 7, 8, 9, 10, and 13.

The County and Defendants continue to disagree regarding the sufficiency of the County's response to interrogatories 4, 5 and 11, but Defendants have accepted the County's offer to further amend these responses, provided, however, that Defendants may move to compel

proper responses if the second amendment does not resolve the deficiencies that Defendants have raised. The County reserves its objections to these interrogatories.

The County and Defendants are at an impasse with respect to the following:

- **<u>The County's Objection to the Definition of Cook County</u>**: The County objects to the Defendants' definition of "Cook County" because it includes any of Cook County's "present or former…employees or agents, and any person or entity controlled by or acting or purporting to action in its behalf" as overbroad. Accordingly, the County limited the definition of "Cook County" to include only an "elected Office of the President and Board of Commissioners". The County further objects to the extent Defendants' definition of the County includes "any other board, authority, or elected official established pursuant to the Illinois Constitution or any other Illinois law."

  - **<u>Defendants' Position</u>**: The County cannot unilaterally limit the definition of Cook County (and as a result, the County representatives whose knowledge of its claims for statute of limitations purposes) to the President and the Board of Commissioners. During meet and confer, Defendants invited Cook County to offer a definition that was reasonable, but also covered key officials and County decision-makers, but the County is unwilling to do so. In the definition offered by the County, it is not even clear whether the responses include only current individuals serving in the Office of the President and on the Board of Commissioners, or all current and former such individuals during the Relevant Time Period the County has defined. Defendants assert that the County must bear

responsibility for all management level employees, and its agents for purposes of determining when the County had knowledge of its claims.

- o **The County's Position**: The County's objection to Defendants' definition of Cook County is grounded in the nature of the County's Board of Commissioners, and the Office of its President, as the policymaking body for the County – including the decision to initiate litigation against Defendants. It is only the knowledge of the Commissioners and Office of the Board President, in their official capacity as the County's policymakers to initiate litigation, which is relevant to any determination of the County's knowledge for purposes of Defendants' attempt to impose a discovery rule on the County. Defendants assert this issue in the context of their misplaced statute of limitations defense under the common law "continuing violations doctrine," since there is no discovery rule under the plain language of the FHA.

- **Interrogatory No. 2**: Identify all banking relationships that the County has had with any of the Defendants, including but not limited [to] all bank accounts, loans (of any nature), lines of credit, or financing of any kind provided by any Defendant in the County.

  - o **Defendants' Position**: The County refused to answer this interrogatory because it was "overbroad, irrelevant and harassing in seeking information that has no bearing on the claims of defenses of any of the parties and is not likely to lead to admissible evidence." Defendants request that the Court order the County to respond to this interrogatory. Defendants are seeking relevant information – whether the County did business with any of the Defendant entities would be relevant as to what diligence the

11

County undertook in establishing and maintaining such business relationships during the period the County claims Defendants made allegedly detrimental and discriminatory loans is undeniably relevant to Defendants' statute of limitations claims. The response to this interrogatory is particularly important in light of the County's inexplicable denials in Defendants' requests for admission. For example, the County denies knowing that either Defendant Countrywide Home Loans Inc. or Defendant Bank of America, N.A. made any mortgage loans in Cook County after 2004. Given the County's response, it is both reasonable and relevant to explore the existence of the County's banking relationships with Defendants, and the information it had regarding the banks with which it did business. Nor is it sufficient to say that information regarding the County's knowledge is irrelevant, or only will become relevant at some distant point. The County has already alleged in its Complaint that Defendants actively concealed their conduct from the County so that the County was unable to determine that it made allegedly discriminatory loans during the Relevant Period.

o **<u>The County's Position</u>**: The requested information is plainly irrelevant to the litigation and is harassing. Defendants are attempting to impose a discovery rule on the County in the context of Defendants' misplaced statute of limitations defense under a common law "continuing violations doctrine" theory. There is no discovery rule under the plain language of the FHA. At most Defendants' inquiry is premature as it only becomes

relevant if: (1) Defendants can first establish a statute of limitations defense under the plain language of the FHA – which it cannot because it continues to foreclosure on minority borrowers at issue and foreclosure in a discriminatory manner – and; (2) the County seeks to assert an equitable tolling doctrine, such as the common law continuing violations doctrine, to extend an otherwise expired limitations period.

- **Interrogatory No. 12**:  State all facts regarding the steps You took after receiving the Communication identified in response to Interrogatory No. 11 to investigate the conduct the forms the basis of the claims that.

  - **Defendants' Position**:  The County's response to this interrogatory claims that it first received a written communication regarding the possibility that it might have a Fair Housing Act claim against Defendants on June 15, 2012.  The County also states that it retained counsel on August 27, 2013, and that counsel "conducted an investigation" that led to the filing of the Complaint.  Defendants' interrogatory asks that the County articulate all steps the County took to investigate the claims in the Complaint after June 15, 2012.  The County claims that it will produce a privilege log for attorney client privileged communications in response to this interrogatory, but nothing else.  However, neither a privilege log, nor the County's vague assertion that it spent a year considering and evaluating its ability and resources to conduct its own investigation in its claims accounts for the steps to took between June 15, 2012 and August 27, 2013 when it retained counsel.  Defendants are entitled to a detailed explanation of steps taken by the County, particularly when such steps (and inquiry

13

into whether such steps could or should have been taken earlier in response to other information the County had) are undeniably relevant to Defendants' statute of limitations defense. Finally, Defendants did not define the term "aware" and have informed the County that "aware" is a plain language word with a plain language definition. Defendants expressly declined to offer any special definition of the word.

- o **The County's Position**: The requested information is irrelevant, harassing and it inappropriately seeks inquiry into the County's attorney client relationship and attorney work product. Defendants are attempting to impose a discovery rule on the County in the context of Defendants' misplaced statute of limitations defense under a common law "continuing violations doctrine" theory. There is no discovery rule under the plain language of the FHA. At most Defendants' inquiry is premature as it only becomes relevant if: (1) Defendants can first establish a statute of limitations defense under the plain language of the FHA – which it cannot because it continues to foreclosure on minority borrowers at issue and foreclosure in a discriminatory manner – and; (2) the County seeks to assert an equitable tolling doctrine, such as the common law continuing violations doctrine, to extend an otherwise expired limitations period, and must then show that it did not "sit on its hands." Moreover, the Defendants' defense is rooted in the date the County was "aware" (as defined by Defendants) of its claim. The County specifically provided the date of its first communication regarding an FHA lawsuit, June 15, 2012,

although the County was still not "aware" as defined by Defendants. The County filed its civil action on April 9, 2014, less than two years after the June 2012 communication. Any further discovery between this period is simply irrelevant because, under the Defendants own misplaced defense, the Complaint was still timely.

- **Interrogatory No. 14**: Identify all meetings or Communications in which You considered bringing this Lawsuit, considered bringing any other suit against any Financial Institution concerning discriminatory mortgage lending conduct, or discussed or addressed in any way any suit brought by any other municipality concerning predatory or discriminatory lending or servicing conduct against any Financial Institution.

  - **Defendants' Position**:  Defendants seek this information for the same reasons and on the same basis for which it seeks the information in Interrogatory 12.  The County's amended response states that the County "did not have meetings responsive to this interrogatory until on or about August 7, 2012, and did not have communications responsive to this interrogatory prior to June 15, 2012" without providing the information regarding responsive communications on or following August 7, 2012 or June 15, 2012.  Again, given that the County did not retain counsel until August 27, 2013, information regarding the dates, times and substance of meetings held between June 15, 2012 and August 27, 2013 would seem to be non-privileged (and even if privileged, should be logged).  As noted above, Defendants intended the term "aware" in its ordinary and common usage.  Any attempted word-smithing or semantic games are those of the County, not the Defendants.

  - **The County's Position**:  The requested information is irrelevant,

harassing and it inappropriately seeks inquiry into the County's attorney client relationship and attorney work product. Defendants are attempting to impose a discovery rule on the County in the context of Defendants' misplaced statute of limitations defense under a common law "continuing violations doctrine" theory. There is no discovery rule under the plain language of the FHA.  At most Defendants' inquiry is premature as it only becomes relevant if: (1) Defendants can first establish a statute of limitations defense under the plain language of the FHA – which it cannot because it continues to foreclosure on minority borrowers at issue and foreclosure in a discriminatory manner – and; (2) the County seeks to assert an equitable tolling doctrine, such as the common law continuing violations doctrine, to extend an otherwise expired limitations period, and must then show that it did not "sit on its hands."  Moreover, the Defendants' defense is rooted in the date the County was "aware" (as defined by Defendants) of its claim. The County specifically provided the date of its first communication regarding an FHA lawsuit, June 15, 2012, although the County was still not "aware" as defined by Defendants. The County filed its civil action on April 9, 2014, less than two years after the June 2012 communication. Any further discovery between this period is simply irrelevant because, under the Defendants own misplaced defense, the Complaint was still timely.

b.      *Bank of America NA.'s First Set of Interrogatories*

The County and Defendants have reached an agreement regarding the County's response

to interrogatories 10, 23 and 24.

The County and Defendants continue to disagree regarding the sufficiency of the County's response to interrogatories 1-3, 5-6, 11-13, 15-16 and 18-20 but Defendants have accepted the County's offer to further amend these responses, provided, however, that Defendants intend to move to compel proper responses if the second amendment does not resolve the deficiencies that Defendants have raised. The County reserves its objections to these interrogatories.

Defendants also disagree regarding the sufficiency of the County's response to interrogatories 4, 7, 9, 17, 21-22 and 24, but are willing to wait for additional discovery to be produced (primarily, documents from the County and data from Defendants) before raising deficiencies regarding these interrogatories with the Court.

The County and Defendants are at an impasse with respect to the following interrogatories:

- **Interrogatory No. 8**: Identify the specific racial and ethnic groups that You believe were discriminated against by any of the Defendants, including any groups which You refer to as "minorities" throughout Your Complaint, such as paragraphs 3, 7, and 45.

  o **Defendants' Position**: The County's amended response to this interrogatory specifically references only African-American and Hispanic/Latino minority borrowers, but inexplicably continues to reserve the right to add additional minority populations. In Defendants' view, the County must have had some basis for believing specific populations were subject to discrimination in order to make the allegations in the Complaint. The County's failure to identify all such populations in its response is inexcusable. This is particularly important because it already appears that

17

the specific populations at issue are a moving target. The parties already met and conferred previously regarding counsel's allegation that women "might" be included, and the amended response does not state definitively whether women, or other racial and ethnic groups, are at issue. When Defendants raised this issue again by letter, and asked the County to specifically confirm whether or not women (other than minority women, who would necessarily be included in the defined minority populations) were considered a part of this lawsuit, the County pointed back to the same response it had already given. Hours before this status report was to be filed however, the County now again refers below to "women, particularly minority women" – which neither confirms nor denies whether the County is alleging that women of other racial and ethnic populations are a part of its lawsuit. Nor can the County shift blame to Defendants, and say that it will identify all populations once it has loan data, because either the County had some basis for believing specific populations were at issue when drafting the Complaint or it did not, and the County cannot – nearly two years after alleging Defendants discriminated against minorities in Cook County – claim not to know what minority populations it meant in drafting the Complaint. This dispute is indicative of Defendants' overall concern that the County has taken a kitchen sink approach to the allegations in its Complaint, and is seeking to put Defendants through extensive discovery using such broad claims before specifically articulating (not proving, just stating with sufficient

particularity) the basic components of their FHA claim: (1) the specific populations affected, (2) the specific practices at issue and the basis for the County's belief that such practices are discriminatory, and (3) the specific damages allegedly incurred.

- **The County's 'Position**: The County has made crystal clear in its response that Defendants' lending practices to African American and Latino/Hispanic borrowers are the focus of this litigation. However, because a significant number of African America mortgage borrowers also tend to either be single women, the heads of the household or the primary borrower, the County maintains its response that women, particularly African American women, have been discriminated against.

- **Interrogatory No. 14**: Identify every filing, case, foreclosure proceeding or bankruptcy proceeding of which You are aware that is referenced in the top two bullet points on page 116 of the Complaint.

  - **Defendants' position**: In its Complaint, the County makes sweeping allegations about Defendants "predatory and discriminatory mortgage servicing and foreclosure…policies and practices" and this interrogatory seeks to explore the basis for just one such allegation. Specifically, the County claimed that one of Defendants' allegedly discriminatory practices was "filing or causing to be filed" various documents that were not properly executed. The County's amended response points to two cases, only by way of example. Neither case is responsive to Interrogatory 14, because both cases resulted in consent decrees, such that no facts were adjudicated that would make the case responsive to Interrogatory 14. In

addition, Defendants do not accept the County's objection that responsive information is equally available to both parties, because Interrogatory No. 14 seeks the names of cases on which the County relied to make the allegations on Page 116 of the Complaint. Defendants are not in possession of that information. Finally, the County continues to assert that the two cases it pointed to are merely examples, and reserving the right to identify others, without having done so. As noted above, it cannot be the case that the County was aware of specific cases (thus enabling it to make the allegation in the Complaint without sanction), but cannot articulate them in response to an interrogatory. Accordingly, the County's answer is non-responsive, and Defendants request that the County either: (1) identify the specific bankruptcy and foreclosure proceedings that support its allegations on Pages 115-116 of the Corrected Complaint or (2) state that it is not aware of any such cases.

- o **The County's Position**: The County plainly alleged in the complaint that the bankruptcy cases at issue were encompassed in the Consent Decree which Defendants entered into with the U.S. Government relating to the "robosigning" scandal. The County identified those cases in its Amended Responses. In the County's own Request for Production of Documents, it requested all documents Defendants produced to the government in connection with these cases and advised Defendants that it would supplement its response after it receives the requested document.

*(2)* ***Requests for Admission***

Defendants served their First Set of Requests for Admission on September 11, 2015.

The County served its "Responses and Objections to Defendant Bank of America's 173

Requests to Admit" on December 3, 2015, in accordance with the parties' agreement to extend

the time for the County to respond. Defendants sent a deficiency letter to the County on

December 30, 2015, and the County served Amended Responses and Objections to Defendant

Bank of America's 173 Requests to Admit on January 15, 2016. Defendants maintain that many

of the County's denials are improper, and reserve the right to seek all remedies available to it

FRCP 36 and 37 after the County provides further discovery. The County denies that any of its

responses and objections are improper, particularly on the basis of the County's objection to

Defendants' definition of the County.

### (3) *Requests for Production*

Defendants served their First RFPs on July 23, 2015 and the County responded on

September 8, 2015, in accordance with the parties' agreement to extend the time for the County

to respond. After the parties met and conferred on September 21, 2015 and October 8, 2015 to

discuss the County's responses, the County amended its responses on November 11, 2015.

Defendants again identified various concerns with the County's responses on December 31,

2015, and sought a response no later than January 13, 2016 in order to give Defendants ample

time to raise ongoing issues with the Court. The County did not respond by January 13. The

parties conferred via telephone and in person on January 13 and January 19 to discuss

outstanding discovery issues. After the parties' January 13 and January 19, 2016 meet and

confers, the County responded in writing on January 21, 2015. The County has stated that it will

begin making document productions no later than February 15, and will produce a privilege log

of documents withheld as subject to the attorney client privilege related to the matters involving

the County's knowledge of its claims against Defendants no later than February 28. Given the representations set forth in the County's January 21 letter, Defendants elect to defer raising any deficiencies in the County's production until after review of the promised productions and privilege logs, but do not waive their rights to move to compel additional production.

Dated:  January 22, 2016

Respectfully submitted,

/s/ Dan A. Dailey

/s/ Sabrina Rose-Smith

Daniel A. Dailey
*ddailey@jdmlaw.com*
James D. Montgomery and Associates, Ltd.
One North LaSalle Street
Suite 2450
Chicago, IL 60602
(312) 977-0200

J. Erik Connolly
*EConnolly@winston.com*
Ryan Dunigan
*RDunigan@winston.com*
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Tel.:  (312) 558-5600
Fax:  (312) 558-5700

James M. Evangelista
*jim@hpllegal.com*
Harris Penn Lowry LLP
400 Colony Square, Suite 900
1201 Peachtree St., NE
Atlanta, GA 30361
(404) 961-7650

*Attorneys for Plaintiff, County of Cook, Illinois*

Thomas M. Hefferon
*THefferon@goodwinprocter.com*
James W. McGarry
*JMcGarry@goodwinprocter.com*
Sabrina Rose-Smith
*SRoseSmith@goodwinprocter.com*
Matthew S. Sheldon
*MSheldon@goodwinprocter.com*
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel.:  (202) 346-4000
Fax:  (202) 346-4444

*Attorneys for Defendants Bank of America Corporation, Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank, FSB, Countrywide Warehouse Lending, LLC, BAC Home Loans Servicing, LP, Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital Inc., and Merrill Lynch Mortgage Lending, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2016, I caused a true and correct copy of the foregoing to be served upon counsel of record as of this date by electronic filing.


Dated:  January 22, 2016                    */s/ Sabrina Rose-Smith*

*One of the attorneys for Defendants*