IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO.: 1:14-cv-02280 |
| BANK OF AMERICA CORPORATION, ET AL., | ) ) **Honorable Elaine E. Bucklo** ) Magistrate Mary Rowland ) ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

Plaintiff, Cook County, and President Toni Preckwinkle, Past President Todd Stroger, and Past President Bobbie Steele, (County Presidents) file this Reply, to Defendants' Response to the County's Motion for Protective Order forbidding the depositions by Defendants Bank of America et al., (Defendants) of all County Presidents.

**Clarification of the County's Initial Motion for Protective Order**

The County requested that this Court enter a protective order forbidding the depositions of the County Presidents citing three main reasons: (1) the depositions sought "non-specific" personal information; (2) the requested depositions are duplicative and repetitive; and (3) the County Presidents, like the County Commissioners, lack any relevant or admissible personal knowledge to impute to the County (outside of official minutes or requested/prepared reports to the County

President and Board of County Commissioners). Defendants' Response actually supports the County's argument for a protective order on many points, and Defendants admit they seek to "explore" the County Presidents' personal knowledge thus failing to meet their burden.

It is important to note the County never named any president or commissioner individually as having personal or actual knowledge. Defendants continue to mischaracterize this fact throughout its Response, but as the County stated in its Motion [Dkt 109-1] at pg.7:

> "… the County identified *the Office of the President*, not the President herself, because the County knew that other high-ranking officials under the Office of the President would be most knowledgeable in the preparation, presentation, and investigation of County claims. The County offered those individual(s) as deponents and Defendants refused." (emphasis added).

Defendants have absolutely no basis for suggesting to this Court that the County agreed that the County Presidents, individually, had knowledge.

The County stated, the Defendants are attempting a "fishing expedition" and the Defendants' offer the term "explore." The ***Defendants have no clue whether there is any "personal knowledge"*** and they ask this court to allow them to explore a broad range of personal knowledge topics of the County Presidents based in Defendants' suspicions of underlying facts related to irrelevant resolutions and ordinances. But, the courts have repeatedly rejected attempts to depose public officials based upon matters on which a party has not shown relevant admissible knowledge regarding the claims at issue. See, e.g*., Olivieri v. Rodriguez,* 122 F.3d 406 at 409 (7th Cir. 1997) (denying plaintiff's request to depose Superintendent of Police).

## REPLY ARGUMENT

Defendants still have not, and cannot point to any specific relevant evidence to make the assertion that (1) the County Presidents had or have any personal knowledge outside of public documents and (2) that their personal knowledge can be imputed to the entire County, including

separately elected officials. Finally, there is no discovery rule in the context of a fair housing claim; therefore, Defendants' reasons are irrelevant and do not overcome the protections provided to high-ranking government officials.

Defendants have not presented a single document to show any County President has, or had specific knowledge or involvement with Defendants' discriminatory equity stripping scheme and its resulting affects. Defendants cite several cases where high-ranking government officials were deposed, but those cases are easily distinguishable to the instant case. The distinguishing facts were that the requesting party presented documents to the court that linked the high-ranking official *individually* to issues within the litigation. Here, there are no documents that link any County President (or Commissioners) to Defendants' discriminatory equity stripping scheme. Moreover, the County did not identify the County Presidents or Commissioners individually, because they delegate duties such as investigating and approving the instant lawsuit. The County offered those person(s) inside the Office of the President whom are most knowledgeable and they are prepared to testify to relevant admissible evidence regarding Defendants. But, officials should not be prevented from attending to their official duties by having to spend their time giving depositions in official capacity cases when that information is readily available through another source or via a less intrusive method of discovery. *Olivieri,* 122 F.3d 406 at 409-10 (7th Cir. 1997).

Even if this Court were inclined to accept ordinances and resolutions as an attenuated connection to the Defendants' discriminatory equity stripping scheme, to impute knowledge to the entire County including separately elected officials creates unique concerns that could result in massive litigation. Just recently, the Cook County Assessor's Office, a separately-elected official, has declined to allow the County to speak for its office and required Defendants to issue

3

separate subpoenas for its witnesses. *See* Cty.'s Response to Motion to Compel [Dkt.128]. The County had previously objected on the grounds that various departments that Defendants included in the definition of Cook County were independently elected offices and outside of the control of the County. *See* Letter from D. Dailey to S. Rose-Smith, March 28, 2016.

Finally, the County acknowledges this Court's prior inclination to refrain from ruling on the definition of Cook County, but the Court should provide some restraints on Defendants wild defense theory because it is not legally sound and has created unique concerns. Numerous courts have stated that there is no discovery rule in the context of a federal Fair Housing Act claim, as discussed below. Therefore, the expedition into County Presidents' personal knowledge will yield *irrelevant* and inadmissible evidence. For these reasons, this Court should enter a protective order forbidding any deposition of a County President or Commissioner.

**I.    Defendants have not demonstrated that the County Presidents and the Commissioners have, or would have some personal knowledge of Defendants' discriminatory equity stripping scheme thus there is no 'real need' for a deposition.**

The County does not bear the burden of proving the County Presidents have some specific admissible evidence. [1] Defendants bear this burden. Defendants have not, and cannot point to any specific topic within the "personal knowledge" of the County Presidents that is relevant and admissible. Thus, there is no real need to depose any County President. *Olivieri* 122 F.3d 406 at 409-10 (7th Cir. 1997). In addition, "depositions of public officials create unique concerns." *Stagman v. Ryan*, 176 F.3d 986, 994-95 (7th Cir. 1999). Indeed, allowing the Defendants to depose the County Presidents and Commissioners creates unique issues for the entire County.

Defendants point to several different County resolutions, ordinances, and reports to claim

---

[1] ("A party seeking the deposition of a high ranking official should first demonstrate that there is some reason to believe that the deposition will produce or lead to admissible evidence.") *Cannon v. Burge,* 2007 WL 2410392 (N.D. Ill. Aug. 20, 2007) citing *Hobley*, 2007 WL 551569, at *2.

that the County Presidents have knowledge regarding the underlying facts of those resolutions or ordinances. Defs.' Response Mtn. [Dkt. 124] pg. 7. The County has already stated that the extent of the County's knowledge is contained in the resolutions, minutes and reports. Cty.'s Mtn. [Dkt. 109-1]. However, this does not mean the Defendants can pull every ordinance that relates to predatory lending and depose every individual whose name appears. There is obviously a most knowledgeable individual behind the ordinances or resolutions, but that is a question to present in an interrogatory for a possible deposition, not combing through the ordinances and resolutions picking out random names. Defendants point to a report from the ***City of Chicago's*** Office of Budget and Management to the Mayor of Chicago. This did not involve the County Presidents and Defendants apparently misread the report. (See Dkt. 29-5). Ordinances and resolutions are passed routinely; the most knowledgeable person behind any specific ordinance or resolution should be requested in a written interrogatory or a 30 (b) 6 topic.[2]

Furthermore, Defendants' cases do not compel a contrary conclusion. Defendants cite *Bagle v. Blagojevich,* in holding that the Governor was forced to give a deposition because he possessed admissible evidence. Defs.' Response [Dkt. 124] pg.12. However, Defendants omit the crucial fact that Plaintiff alleged that the Defendant Governor was personally involved in the decision to eliminate the correctional captain position at issue in that case. *Bagley v. Blagojevich,* 486 F. Supp. 2d 786, 780-790 2007. As support, Plaintiff provided the Court with a June 4, 2003 press release from the Office of the Governor, in which the Governor personally took credit for the conduct at issue. *Id.* Here, Defendants offer absolutely no support besides ordinances and resolutions to demonstrate that the County Presidents had general knowledge of high

---

[2] Officials should not be prevented from attending to their official duties by having to spend their time giving depositions when that information is readily available through a less intrusive method of discovery. *Olivieri,* 122 F.3d 406 at 409-10 (7th Cir. 1997).

foreclosures and subprime lending. There is no evidence to support that any County President had, or should have had knowledge of Defendants' discriminatory equity stripping scheme.

Likewise, in *Hobley*, the Court initially denied the Plaintiff's attempt to depose Defendant Mayor Daley; however, *Hobley* was required to obtain specific and clear evidence to demonstrate that Mayor Daley had knowledge sufficient to sit for a deposition. *Hobley v. Burge*, 2007 U.S. Dist. LEXIS 121596, at 5-6. Here, Defendants omit the crucial fact that *Hobley* presented a letter and alleged that Mayor Daley, personally, was involved in addressing the claims at issue in that case.[3] Here, Defendants have failed to present a single piece of evidence to demonstrate that the County Presidents even knew that Defendants engaged in discriminatory subprime lending prior to this lawsuit.

Defendants argue that it intends to ask the County Presidents questions regarding discriminatory claims in the complaint, and that any response supports Defendants' defenses. Defs.' Response [Dkt. 124] pg 6. This is simply illogical. First, broad questions about a complaint that alleges complex civil rights violations are not specific. Second, the County Presidents simply do not have specific, admissible, information regarding the Defendants' discriminatory equity-stripping scheme. Thus the common responses will be "I don't know" or recitation of information contained in the public minutes (as the County already explained to Defendants). It makes absolutely no sense that the lack of knowledge on a particular subject by a County President is evidence that the County has no evidence to support its claim. The County President is not the sole (if at all) source of evidence, and the County President can, and did

---

[3] Mr. Daley was the State's Attorney during the time when Hobley, an African-American, alleges he was subjected to constitutional violations by Chicago police, including defendant Jon Burge. There was evidence that in February 1982, the State's Attorney's office, and perhaps Mr. Daley personally, was put on notice of allegations of physical abuse of suspects by Chicago police through a letter to Mr. Daley from the then-Superintendent of Police Richard Brzeczek. *Hobley v. Burge,* 2007 U.S. Dist. LEXIS 12159, 2007 WL 551569 (N.D. Ill. Feb. 22, 2007).

simply delegate duties (as is the case here). In fact, the County Presidents did not know of the Defendants' equity-stripping scheme until receipt of a draft complaint on January 4, 2014. *See* Cty.'s Second Amended Rogg. Response to BAC Corp, Nos.6-10. The County offered to produce a high-ranking government official whom is most knowledgeable on bringing lawsuits through the County President's office. Defendants rejected this offer, thus demonstrating Defendants have no real need for the information it claims in its Response motion.

> *a. The County Presidents or Commissioners individually are not the most knowledgeable.*

Defendants next contend they seek to depose the County Presidents based on several topics in the County's Amended Responses to Defendants' Requests for Admissions, which stated, the County initiates litigation through the Board of Commissioners and the Office of the President. Defs.' Response [Dkt. 124] pg. 7, Fn 2. As stated above, the County never identified the President or Commissioners individually. Most disturbingly, Defendants omit the crucial fact that the Request for Admissions were signed by the Special Legal Counsel to the Office of the President. The Special Legal Counsel is the proper deponent, not the County Presidents. Obviously if there was a discussion regarding a claim to file a lawsuit, it would have come through the legal department.

The Defendants have not met its burden of demonstrating that the County Presidents have some specific admissible information and this Court should not be satisfied that ordinances and resolutions demonstrate any possible personal knowledge of a County President. Should this Court allow the Defendants' proposition to stand, high ranking government officials would be flooded with litigation for personal knowledge on any legislation that even mentions the official's name.

**II. Assuming the County Presidents or Commissioners did have personal knowledge, imputing that knowledge to the entire County, as defined by Defendants, would create a unique concern**.

Defendants, not the County, have the burden of demonstrating that the County Presidents have specific admissible knowledge of the Defendants' claims. *See Hobley v. Burge*, 2007 U.S. Dist. LEXIS 121596, at 5-6. Defendants cite *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.,* for the proposition that the CEO and Presidents' personal knowledge was imputed to the company because he had specific knowledge. Defs.' Response [Dkt. 124] pg. 10. Defendants omitted the distinguishable fact that the requested deponent in that case specifically drafted a comprehensive letter to the board of directors addressing facts at issue in the litigation.[4] But here, no such document exist, and Defendants have not even alleged that there are facts outside of resolutions and ordinances that would demonstrate the County Presidents even have personal knowledge. Defendants are asking this Court to *assume* that personal knowledge could be discovered through an exploratory deposition. Seventh Circuit precedent reject this style of deposition for high-ranking government officials, especially when there are alternative discovery methods. Cty.'s Mtn for Protective Order [Dkt 109-1] pg.5.

Even if the Defendants could overcome this clear deficiency, the personal knowledge of a high-ranking government official cannot be imputed to an entire County of separately elected officials. And, to entertain such a notion is a slippery slope for Cook County.[5] Defendants offer

---

[4] "The district judge did not decide whether a claim's accrual is postponed until the victim knows about the defendant's fault, because Nakornthai had actual knowledge on that front no later than September 1998, when its own president wrote the board of directors a detailed letter disagreeing with Steel Dynamics and concluding that the mill should be restarted as is." *Prime Eagle Group Ltd. v. Steel Dynamics, Inc.*, 614 F.3d 375, 2010 U.S. App. LEXIS 15337 (7th Cir. Ind. 2010).
[5] The County has already been placed on notice that it is unauthorized to speak for the Cook County Assessor's Office. *See* Cty.'s Response to Motion to Compel [Dkt.128]. Defendants' wild defense theory that individually elected officials are considered "Cook County" is legally unsound and has presented a host of conflicts for this litigation.

no legal support for its position, but continue to point to Cook County's statement that the Board of Commissioners and Office of the President have the authority to institute to litigation. Defendants correctly note that the Court decided to defer a ruling on the issue of which departments' and employees' knowledge should be imputed, however, forcing a County President to sit for a deposition and impute her knowledge to every separately elected official identified by Defendants creates those unique concerns discussed in *Stagman*. Hr'g Tr., 35:13-15 (Jan. 29, 2016).

> III. **Defendants cannot overcome the protections provided to high-ranking government officials because there is no discovery rule in the context of a Federal Fair Housing violation; therefore, any statements regarding the County's notice of claims are irrelevant.**

The County notes that Defendants' entire discovery into what and when the County knew about its potential FHA claim is irrelevant to Defendants' statute of limitations defense. The FHA's statute of limitations plainly provides that "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years ***after*** the occurrence or the ***termination*** of an alleged discriminatory housing practice . . . ***whichever occurs last.***" 42 U.S.C. §3613(a)(1)(A) (emphasis added). There is no language whatsoever in the provision even suggesting that a discovery rule applies. 42 U.S.C. §3613(a)(1)(A). Indeed, it would be contrary to the statute. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982). As Magistrate Judge Keys held long ago, citing *Havens Realty*, the FHA's statute of limitations does not begin to run when plaintiff first becomes aware of a potential violation of the act, but on the date of the last asserted occurrence of the discriminatory act. *Simovits v. Chanticleer Cond. Ass'n*, 933 F. Supp. 1394, 1404 (N.D. Ill. 1996) (finding defendant's argument that FHA's limitations period began to run when plaintiffs learned of their claims "ignores the reasoning in *Havens,* where the Supreme Court held that the limitations period, for claims brought under

9

the FHA, begins on the date of "the last asserted occurrence of [the discriminatory] practice.");
*see also County of Cook v. HSBC, et al,* No. 14-cv-2031 at 20-21 (N.D. Ill., Sept. 30, 2015) (Lee, J) (relying on *Havens Realty* in finding Cook County's allegations -- that "Defendants are still engaged in their discriminatory mortgage lending practices and continue to service the loans in a discriminatory manner" – "do not run afoul of the statute of limitations.").[6]

## **CONCLUSION**

Based on the foregoing reasons, the County requests this honorable court to enter a Protective Order against any deposition of a County President or Commissioner.

Dated: April 27, 2016

        ANITA ALVAREZ,
        STATE'S ATTORNEY FOR COOK COUNTY

        By:   /s/ Daniel A. Dailey
               Special Assistant State's Attorney

        James D. Montgomery, Sr.
        jmontgomery@jdmlaw.com
        John K. Kennedy
        jkennedy@jdmlaw.com
        Daniel A. Dailey
        ddailey@jdmlaw.com
        JAMES D. MONTGOMERY AND
        ASSOCIATES, LTD.
        One North LaSalle Street
        Suite 2450

---

[6] *See also, e.g.,Garcia v. Brockway,* F.3d 456 (9th Cir. 2008) (finding discovery rule in FHA case would "contradict[]the text of the FHA"); *Walton v. Wells Fargo Bank, N.A.*, CIV.A. AW-13-428, 2013 WL 3177888 (D. Md. June 21, 2013) ("The discovery rule . . . does not apply to the unambiguous language of the FHA's statute of limitations provision"); *Thompson v. Mountain Peak Assoc., LLC*, No. 2:05-CV-145-BES-GWF, 2006 WL 158216 at **2-3 (D. Nev. June 5, 2006) (application of a discovery rule "would be inconsistent with the plain language of 42 U.S.C. § 3613(a)(1)(A)); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 501 (E.D. Va. 2002) ("discovery rule is inapplicable" to FHA continuing violation claims).

        Chicago, Illinois 60602
        Phone: (312)977-0200
        Fax: (312)977-0209

        James M. Evangelista (admitted *pro hac vice*)
        jim@hpllegal.com
        Jeffrey R. Harris (admitted *pro hac vice*)
        jeff@hpllegal.com
        Darren W. Penn (admitted *pro hac vice*)
        darren@hpllegal.com
        David J. Worley (admitted *pro hac vice*)
        david@hpllegal.com
        HARRIS PENN LOWRY LLP
        400 Colony Square, Suite 900
        1201 Peachtree Street, NE
        Atlanta, GA 30361
        Phone: (404)961-7650
        Fax: (404)961-7651

        *Special Assistant State's Attorneys*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the above and foregoing REPLY TO DEFENDANTS' RESPONSE TO MOTION FOR PROTECTIVE ORDER on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.

Dated: April 27, 2016        /s/ Daniel A. Dailey
                                            Daniel A. Dailey