```
 1                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3   COUNTY OF COOK,                   )
                                       )
 4              Plaintiff,             )
                                       )
 5        v.                           )  No. 14 CV 02280
                                       )
 6   BANK OF AMERICA CORPORATION,      )
     et al.,                           )  Chicago, Illinois
 7                                     )  May 26, 2016
                Defendants.            )  2:00 p.m.
 8
                        TRANSCRIPT OF PROCEEDINGS
 9              BEFORE THE HONORABLE MARY M. ROWLAND

10
     APPEARANCES VIA TELEPHONE:
11
     For the Plaintiff:         JAMES D. MONTGOMERY & ASSOCIATES
12                              BY:  MR. DANIEL A. DAILEY
                                     MR. JACK KENNEDY
13                              One North Lasalle Street
                                Suite 2450
14                              Chicago, Illinois 60602
                                (312) 977-0200
15                              ddailey@jdmlaw.com

16   For the Defendants:        GOODWIN PROCTER, LLP
                                BY:  MS. SABRINA M. ROSE-SMITH
17                              901 New York Avenue, N.W.
                                Washington, DC 20001
18                              (202) 346-4000
                                srosesmith@goodwinprocter.com
19

20

21   Court Reporter:           Judith A. Walsh, CSR, RDR, CRC, FCRR
                                Official Court Reporter
22                              219 South Dearborn Street, Room 1944
                                Chicago, Illinois 60604
23                              (312) 702-8865
                                judith_walsh@ilnd.uscourts.gov
24

25
```

1      (Proceedings heard in open court:)

2          THE CLERK:  14 C 2280, County of Cook v Bank of

3   America Corporation.

4          THE COURT:  Good afternoon.

5          MR. DAILEY:  Good afternoon, your Honor.

6          MS. ROSE-SMITH:  Good afternoon, your Honor.

7          THE COURT:  Okay.  So we have Mr. Dailey and

8   Ms. Rose-Smith?

9          MR. DAILEY:  Yes, ma'am.

10          MS. ROSE-SMITH:  Yes, your Honor.

11          THE COURT:  Thanks for appearing, and I'm sorry I

12   wasn't prepared to deal with this when you were last in court,

13   but I thought it would be quicker if I just ruled with you as

14   opposed to trying to issue something.  So this is about the

15   30(b)(6) depositions, and it's defendant's motion to compel,

16   which is Docket No. 116.

17          So let me start with the topic numbers 32 through 35,

18   which I understand have to do with discriminatory lending and

19   do not involve the issue of the assessor's office.  Am I right

20   about those topic numbers?

21          MS. ROSE-SMITH:  Yes, your Honor.

22          THE COURT:  Okay.

23          MR. DAILEY:  Yes.

24          THE COURT:  Is -- Topic No. 26, is that involved in

25   this batch, or does that go to the assessor's office issue?

1        MR. DAILEY:  No.  We actually intend to put someone

2  up for 26.  We sent the defendants a scheduling date for that

3  person, but that does not necessarily go to the assessor.  It

4  goes to a different county, individual office that's willing

5  to put someone up.

6        THE COURT:  Okay.  So Ms. Rose-Smith, as to your

7  motion with respect to Items 26, 32 through 35, what's the

8  status?  Are you done?  Do you still need a motion to compel

9  on those?

10       MS. ROSE-SMITH:  Well, your Honor, we -- yesterday we

11  had the deposition on Topics 32 through 35, and the plaintiff

12  at the top of the deposition asserted that the witness was

13  only able to testify about allegations in the complaint,

14  evidence supporting the allegations and not about the evidence

15  in support of the claims or, for example, the specific -- the

16  specific practices or loans or any of that stuff because they

17  said that that is something that they won't be able to give us

18  until after the evidence is in.

19        But so then we went forward to ask about the

20  allegations, and the witness asserted that all such

21  information about what investigation the County did was

22  obtained pursuant to a privileged investigation.  And then I

23  asked about the facts that were discovered in that

24  investigation, and the witness wouldn't -- and I was trying to

25  get an affirmation that the facts that they had such as they

1    were was just what was in the complaint, and the witness

2    refused to confirm that there were no other allegations or no

3    other evidence.

4        And so my view on that particular deposition is, I'm

5    going to take the plaintiffs at their word that there is --

6    that the better time for that is after the Court's already set

7    a deadline for when the loans have to be identified and

8    practices and all of that stuff that's very specific to those

9    topics, and I think the best thing to do is to just try to

10   have that deposition then.

11       And then on 26, we have not -- we've asked them to

12   keep the week of June 6th open while we try to confirm a date,

13   so I don't think that there is anything else to do for that.

14   That was supposed to go forward on the 25th but on the 17th,

15   they let us know that we would have to reschedule it until

16   June, so we're trying do that now.

17            THE COURT:  Okay.  So --

18            MR. DAILEY:  And that -- I'm sorry.

19            THE COURT:  Go ahead, Mr. Dailey.

20            MR. DAILEY:  That goes for 26, 25, 23, 27, and 31.

21   Even though we did have someone speak on 31, we're going to

22   have someone else come in and talk about 31 as soon as that is

23   finalized with defendant's schedule.

24            THE COURT:  Okay.

25            MR. DAILEY:  We sent them --

1          THE COURT:  Okay.  So Ms. --

2          MS. ROSE-SMITH:  That was yesterday, but those are

3     the -- those are assessor-related topics, 23 through 25 and

4     31, your Honor.

5          THE COURT:  Yes, those are assessor-related topics.

6     So are you telling me --

7          MR. DAILEY:  No, they're not, your Honor.  That's

8     what -- we went back through, and we found that while they do

9     touch on some assessor issues, they still can be talked on --

10    we can still have someone come up that can give some

11    information as to we believe, what we believe will still be

12    what the defendants need but the assessor, yes, can also talk

13    on many of these.

14          For example, 23, we have someone that can still go

15    into some other detail regarding the property tax collection

16    that came out in Justin Kervin's deposition, so we went

17    back -- every time, you know, something new came out in the

18    deposition, we went back and investigated it, so that if there

19    was someone else that can speak more to that topic, we can

20    provide them, and we're just trying to work with the defendant

21    the best we can.

22          THE COURT:  Okay.  So let me go back to 32 through

23    35.  Ms. Rose-Smith, I'm going to -- based on what you told

24    me, I'm going to deny the motion with respect to 32 through 35

25    without prejudice.  Okay.  If -- I'm not exactly understanding

1    what you're telling me in terms of, you know, you might need

2    to raise it later, but if you need to raise it later, you

3    will.  Is that fair?

4              MS. ROSE-SMITH:  That's fair.

5              THE COURT:  Okay.  Now, you are going to schedule

6    someone to address Topic 26 that's coming out of the County.

7    When I say "out of the County," I mean not the assessor's

8    office.  And I'm going to just set a date.  Would it be

9    helpful for me to set a date by which that has to be

10   completed?  Would that be helpful, or are you guys handling

11   that on your own?

12             MR. DAILEY:  I think we can handle it on our own.

13   It's June -- June 8th is already reserved.  If that's still

14   the date -- that's a different issue that we can probably

15   address right now, but if that date is fine, we're fine with

16   that date.

17             THE COURT:  Okay.

18             MS. ROSE-SMITH:  I am just not sure, your Honor,

19   because we have someone who is going to be coming back from

20   maternity leave, and it's not set in stone.  It would be fine

21   for me, your Honor, if you would just say that the deposition

22   is to occur the week of June 5th.

23             THE COURT:  Okay.  Okay.  I can do that.  I mean, I'm

24   happy to honor the maternity leave.  I can say it has to be

25   completed by, you know, June 26th or something if you want

1  something more -- where kind of your feet are to the fire but

2  you have a little more flexibility, or I can stay out of it.

3  I don't care, but I'm trying to help.  I have a motion

4  pending.  I'm trying to help move it along.

5          So you want me to say, shall be completed by the week

6  of June 6th?

7          MS. ROSE-SMITH:  Yes.

8          THE COURT:  Okay.

9          MS. ROSE-SMITH:  Thank you.

10         THE COURT:  Okay.  Topic 26 is going to be conducted

11 the week of June 6th.  Okay?

12         MR. DAILEY:  Yes.  Okay.

13         THE COURT:  Now, let me say this:  When you say,

14 Mr. Dailey, that you are now revisiting some of these assessor

15 topics and some of these issues about taxation and tax

16 collecting, I think you said Topic 23 through 25, I just want

17 to comment, although nobody has asked me to, I read the

18 deposition excerpts that were given to me, Mr. -- is it

19 Krevin?

20         MR. DAILEY:  Kervin, Justin Kervin.

21         THE COURT:  Mr. Kervin.  Okay.  He was not

22 prepared -- based on what I read, I only read, you know, ten

23 pages that were submitted to me, he was not a prepared

24 30(b)(6) witness.  Okay.  I don't want a witness coming in on

25 a 30(b)(6) saying, "I don't know anything about that, I don't

1    know anything about that, and I don't know anything about

2    that."  Okay.  That's a waste of everybody's time including

3    Mr. Kervin's but, most importantly, all the lawyers who are

4    charging, you know, money per hour.

5            So I'm happy if you are telling defendants that you,

6    in fact, have some witnesses who can speak to this property

7    tax issue, but your treasury department or treasurer office,

8    whatever Mr. Kervin's title is --

9            MR. DAILEY:  Yes.

10           THE COURT:  -- he was not an impressive witness, at

11   least from the pages I read.  So do not waste her time again

12   on another witness, okay --

13           MR. DAILEY:  Okay.

14           THE COURT:  -- for these topics.

15           Now, maybe he got better on the pages I didn't read,

16   but this was unimpressive.  Okay.  I would have been storming

17   around if I was the defendant attorney here.  This is --

18           MS. ROSE-SMITH:  Your Honor?

19           THE COURT:  Yes.

20           MS. ROSE-SMITH:  One thing that I would note is that

21   Mr. Dailey said that they hadn't -- that they had offered a

22   new witness for these topics, but the letter that I received

23   yesterday only offered a witness on 23, 25 through 31.  There

24   was another one, but as relates to the ones that we're

25   discussing right now --

1          THE COURT:  Right.

2          MS. ROSE-SMITH:  -- they didn't offer a witness on

3     Topic 24, and it sounded as if what Mr. Dailey was saying just

4     now is that they have a witness who can talk about collection

5     but 23 and -- 23 and 31 at least specifically also ask about

6     it and so does 24 which they have not offered a substitute

7     witness on.

8          THE COURT:  I --

9          MR. DAILEY:  And, your Honor, again, so first, it's

10    important to understand that the County, there's three

11    different types of individual offices that are involved in

12    County collection.  And so Justin Kervin was in one of the

13    main aspects of County collection, but he doesn't deal with

14    the County assessor.

15         No. 23 touches on -- touches on a piece of how he

16    determines what he's going to collect which came out in the

17    deposition.  So that's why I added 23 into this new -- this

18    new date because I heard -- because they were asking questions

19    about it, and it's a different, completely different office

20    and individual, individually elected office.

21         But for 2- -- anything that's not dealing with the

22    assessor, we're going to try -- we're going to find someone,

23    we have someone speaking to those issues.  If they're not from

24    the treasurer's office, they're going to come from another

25    office that also deals with a piece of collection, but they

1    don't deal with the entire issue.  And what we saw with Justin

2    Kervin was he deals with one issue of collection, and they

3    don't involve themselves in these other elected officers.  So

4    there's just no one person that knows the entire collection

5    process.

6           So it's going to be piecemeal like this, so -- but

7    I'm doing the best I can to provide them with the most

8    comprehensive view but, no, we don't have anybody from the

9    assessor's office, so 24 is not included.

10          THE COURT:  So here's -- here's my feeling about the

11   assessor's office.  And Ms. Rose-Smith, I will appreciate your

12   frustration.  Okay.  I've looked at some of the law, and I

13   particularly have looked at -- let's see.  There's some recent

14   stuff out of our state courts here.  There's --

15          MS. ROSE-SMITH:  Blanchard.

16          THE COURT:  There's Blanchard, yes.  I've read

17   Blanchard.  There's Chicago Bar Association versus Cook County

18   which is at 102 Il.2d 438.  That's also at 467 N.E.2d 580.

19   And there's another one which is Berrios.  The County actually

20   sues Berrios.  So the Cook County Board of Ethics sues

21   Mr. Berrios.  It's a slip opinion.  And I could actually email

22   it to you guys if you want to see it.  It's No. 14 CH 4951.

23          And in both of those cases, the state court, you

24   know, is talking about, okay, the assessor's office is created

25   by the Illinois Constitution.  Okay.  It can only be

1    eliminated by a state statute.  The assessor has exclusive

2    authority over his staff and over his office and over his

3    procedures.  Okay.  The Cook County Board doesn't have the

4    authority to alter the structure of the assessor's office.

5    Okay.  But the Cook County is home rule, so it has some powers

6    of a sovereign unless the general assembly limits those

7    powers.

8             But what's happening in these cases is -- and in

9    Blanchard, as I'm sure you know, Ms. Rose-Smith, the inspector

10   general that we have here issued a subpoena to the assessor,

11   and in the Blanchard court, they enforced that subpoena

12   although the assessor fought it.

13            And in Berrios where the ethics board sued Berrios

14   because after Mr. Berrios was elected, he had promptly hired

15   like his sister and his wife and his daughter, you know.  And

16   the board of ethics did some investigation, and they entered a

17   notice of violation and they fined him $5,000 for these

18   relatives that he hired, and he refused to comply, and the

19   Board had to file a lawsuit.

20            And the holdings in these cases -- but in order to

21   file that lawsuit, they had to enact an ordinance.  Is it in

22   order to file the lawsuit they had to enact an ordinance or

23   just in order to do the ethics investigation?

24            LAW CLERK:  To do the ethics investigation.

25            THE COURT:  To do the investigation, they had to

1   file -- they had to enact this ordinance.  And so what I'm --

2   without spending, you know, hours and hours and hours digging

3   into the state statutory scheme of the assessor's office, and

4   I think that there's probably some -- let's say some bad blood

5   over there between the County Board's office, the county

6   president's office and the assessor's office, not that that

7   should matter, but I think that there is a reality over there

8   that it does matter, I would prefer, and I'm going to ask you

9   and I'm going to, in fact, order you to serve a subpoena on

10  the assessor's office.

11          I will tell you that these items, these topics you

12  want to talk about are completely relevant.  I'm going to

13  enforce the subpoena.  Okay.  And you're going to get to do

14  these depositions but -- and it might be that it would be

15  completely appropriate for me to tell the County, yes, you

16  have to produce somebody from the assessor's office.  I'm not

17  exactly clear.

18          I don't want to have 100 pages of briefing on this.

19  I just don't think it's that important to this case for us to

20  figure this out, and I would rather just cut through it, get a

21  subpoena out to the assessor's office.  They may comply with

22  the subpoena.

23          MS. ROSE-SMITH:  And so your Honor, I think you're

24  absolutely right, we have spent a fair amount of time looking

25  into it, and I will say that it is as complicated as you were

1  able to discern in the time that you spent on it, and we

2  don't -- it's not that I want to try and change the ruling or

3  affect the direction that that law is heading.

4          THE COURT:  Right.

5          MS. ROSE-SMITH:  My concern, the only reason that we

6  had pushed back on the idea of serving subpoenas, it's not

7  because I have any trouble doing it, it's because the data

8  from the assessor's office and what they're claiming their

9  damages are is a significant portion of what their damages

10 are --

11         THE COURT:  Of course, of course.

12         MS. ROSE-SMITH:  -- the property value.

13         And if I serve a subpoena, because the latest counsel

14 references a 30(b)(6) subpoena in his -- in their reply, but

15 there really isn't a 30(b)(6) subpoena, and so if I serve a

16 subpoena because they -- because they are recognizing that

17 they are separate, it won't be binding on the County.

18         And that's the concern that I have, is that I'll take

19 this deposition and whatever I get or don't get won't

20 ultimately be binding on the County because it's a 30(b)(6)

21 deposition.  That's my perspective on it.

22         And so if the County is willing to agree that

23 whatever the assessor says will be binding on the County or if

24 the Court orders that, then I'm happy to not make the Court

25 have a ruling on this issue of whether or not this can happen

1  or how it has to and take the testimony that we need in order

2  to go forward with the case.  So that's all I really care

3  about.

4         THE COURT:  No, that's fair.  Mr. Dailey --

5         MR. DAILEY:  And your Honor, one, we haven't even

6  agreed that any office is binding on the office of the County

7  Board and the office of the president.  That's something that

8  we're going to argue later on down the road.  So saying it now

9  certainly would be an end-around the entire argument that Cook

10 County makes up all these separately elected officials.

11        And, two, what the County assessor says is basically

12 how they assess value, but there's more that goes into

13 depreciated value than that comes from -- in the assessor's

14 office.  We have experts that are going to go in and do some

15 of this work.

16        So to try to bind the County or force the County to

17 now, unlike every other office, say, oh, well, the assessor's

18 office is going to be automatically binding on the County is

19 dangerous for all the same reasons that forcing a -- the

20 treasurer to speak is binding now on the Cook County Board.

21        THE COURT:  Yes, but you produced -- but you produced

22 somebody from the treasurer's office on a 30(b)(6), and

23 whatever that person said is binding on you as a party because

24 you produced that person, Mr. Kervin, as a 30(b)(6) witness.

25 I mean, that's the whole point of 30(b)(6).

1       MR. DAILEY:  We were complying with the Court's order

2   to expand the definition of "Cook County," but we also knew

3   that the Court said that that would be an issue we would fight

4   later down the road.  So --

5       THE COURT:  I mean, you were complying with a

6   30(b)(6) deposition notice.

7       MS. ROSE-SMITH:  And this is --

8       MR. DAILEY:  Right.  But your Honor, you told us we

9   had to include separate offices, so that office was then

10  included.  If it wasn't included, then it wasn't a different

11  person like we speak and probably more of an expert speaking

12  as to that issue than it would be someone from that office.

13  It was because that office was added in the 30(b)(6) per your

14  court order that --

15      THE COURT:  Well, I don't remember -- did I rule on

16  the treasurer's office?  I know I ruled on one office.

17      MS. ROSE-SMITH:  No, I think it was the secretary to

18  the Board.

19      THE COURT:  Yes.

20      MS. ROSE-SMITH:  And what you said was that the

21  parties needed to go back and figure out a definition that was

22  broader than the definition that was currently being proposed

23  for the purposes of discovery.

24      THE COURT:  Yes.

25      MS. ROSE-SMITH:  And I thought we had done that.  We

1  settled on a number of offices and the Board and the

2  president.  So now the position that the plaintiffs have taken

3  thus far including in the depositions that happened over the

4  last two days is that notwithstanding that the Court has

5  ordered that Cook County, that the definition of "Cook County"

6  needs to be broader and the parties had agreed on what that

7  definition would be for the purposes of discovery, they still

8  reserve the right to argue that "Cook County" does not include

9  any of those elected offices, and so you see the difficulty

10  that I'm in.

11       So we've just taken the deposition of someone who we

12  thought was there to testify as to the County's knowledge on

13  particular topics, and then today I have just learned that, in

14  fact, they may argue later that that person is not speaking on

15  behalf of the County and it's binding, I mean, in the way of a

16  30(b)(6) deposition, not in any other way.

17       So this is an issue, and it's not just this case.

18  The letter that I got yesterday, they previously said that the

19  County Clerk was going to be part of that definition and

20  yet -- so we sent a -- we sent a notice of deposition

21  specifically for the County Clerk employee who was listed in

22  their initial disclosures as the person that they would likely

23  rely on for trial, and they sent me a letter back yesterday

24  that said that they don't have any power over that person and

25  won't be producing them.

1    And I just -- I'm not sure what the answer is to all

2    of these things, but there has to be an answer because

3    otherwise, I am severely unable to defend my client --

4         THE COURT:  Yes.

5         MS. ROSE-SMITH:  -- if I don't get any testimony on

6    what the County -- you know, what their damages are and have

7    an opportunity to test that knowledge in deposition.

8         THE COURT:  Yes.  Mr. --

9         MR. DAILEY:  And your Honor, this is -- again, again,

10   these different offices are ministerial in nature.  They have

11   been cooperating for the most part with this litigation except

12   for the assessor's office.  And so to the extent they

13   cooperated, we didn't have a problem, but we always told

14   defendants they were not included in the definition of "Cook

15   County" as the Board and the office of the president because

16   we know that each one of these offices will make clear, "We

17   speak for our office."  So it was the job of counsel to go out

18   and make sure that we found the most knowledgeable person.

19        I understand what defendants are saying in terms of

20   what their position is, at least I understand it.

21   Unfortunately, that's not the way Cook County government

22   works.  Cook County government is that each one of these

23   elected officers only perform ministerial functions.

24        So the assessor, for example, doesn't have an

25   interest in his job.  They don't get benefits based on how

1    they assess property value.  All of that revenue goes to the

2    County Board.  So the County Board is the real party in

3    interest to any of the ministerial outcomes of these elected

4    offices.  So, you know, we have that potential issue.

5         And I want to make clear for the record that the

6    Court understood, in fact, we have even briefed this, that

7    this issue would be litigated later down the road in summary

8    judgment whether or not knowledge extends from, let's say, the

9    treasurer's office on the County Board.  That just can't

10   happen.

11        THE COURT:  Well, you cannot -- you cannot conduct

12   discovery in this way.  Okay.  I mean, she has got to be able

13   to take discovery about your damages.  We're not going to

14   trial and you're going to pop up an expert that says, here's

15   their damages.  Okay.  She's allowed to discover for herself

16   the factual basis of your damages so that her expert can be

17   running his or her own numbers.

18        So you cannot say to her, "Oh, none of these people

19   that you're deposing are binding on my entity."  That's just

20   not acceptable.  I mean, it can't work that way.  So we can --

21        MS. ROSE-SMITH:  Your Honor --

22        THE COURT:  -- I mean, if you want me to do some kind

23   of legal briefing, if you need me to find something as a

24   matter of law or you need to go back to Judge Bucklo and have

25   findings as a matter of law as to who can speak for the County

1   and who can't, we can go that route.  I'm -- you can work out

2   some kind of agreement.

3          I think that -- I mean, there's no doubt that the

4   assessor has to come in here because that is the person who

5   assesses property value, and that is part of your damage

6   calculation.  I'm not saying that's all your expert is going

7   to look at.  We all know that.

8          But she has a right to depose whoever is appropriate

9   or two or three people in the assessor's office who know what

10  happened during the pertinent time period.  And those answers

11  have to be binding on the plaintiff.  You can't just take that

12  dep and then say, well, it has no meaning.

13         MR. DAILEY:  Well, your Honor, could we use -- the

14  County's suggestion is then that the same argument and the

15  objection that we have for every other deponent that's been

16  up, and that's an argument that we can battle out later at

17  summary judgment with Bucklo later on, to the extent that that

18  will still apply, we can allow him to speak on behalf of the

19  County Board assessors for assessed value and just argue out

20  later whether or not that's binding on the County as a matter

21  of law in the summary judgment motion as we were doing with

22  every other department that's been speaking.

23         MS. ROSE-SMITH:  Well --

24         THE COURT:  So if we do depositions of all the

25  different departments and you don't like their testimony and

1    then you go to summary judgment and you say, "Well, none of

2    that -- none of that" -- it's like none of that deposition

3    testimony happened, and then we've been through a year and a

4    half of discovery and it's as if none of it happened and

5    you're just going to say to Judge Bucklo, "Well, we didn't

6    take any discovery because we're not counting any of the

7    depositions that the bank took of County employees"?

8          I mean, I can't even imagine. She'll wring my neck.

9    I mean, what is the bank supposed to do under your scenario?

10          MR. KENNEDY: Judge, this is Jack Kennedy along with

11    my colleague Mr. Dailey on behalf of the County. Our position

12    is simply that the structure of County government is such that

13    we do not control the separately elected officials or their

14    employees and so, you know, when we get a 30(b)(6) notice for

15    the County, we are complying with the rule in that we are

16    trying to work with the separate independent legal entities

17    and persons to provide the bank with the relevant discoverable

18    information.

19          Frankly, there is no -- you know, the plaintiff,

20    County of Cook, does not have anyone to present who is super

21    knowledgeable regarding assessed value. That really is better

22    directed to the assessor's office. I understand counsel's

23    concern which is she wants to, you know, be able to have

24    testimony from a party. You know, our position is simply that

25    these are separately elected officials. They have separate

1    offices.  We don't control them.  They are not, you know, as a
2    matter of law binding upon us.

3        We're not trying to be obstreperous or
4    obstructionist.  We're trying to comply with our discovery
5    obligations, but I don't think we're in a position where we
6    can agree on behalf of our client that information that is
7    received from the assessor's office, for example, the
8    testimony of an assessor, 30(b)(6) deponent, that that would
9    be binding and that we could not contest that with any other
10   evidence that may be out there.

11        I don't know that there would be any such evidence
12   because I would assume that the Cook County assessor's office
13   will be totally the most knowledgeable person regarding how
14   County government assesses taxes.  I'm not sure it will be an
15   issue in the long run.

16        But the difficulty today is that we're not in a
17   position to be able to, for example, agree that whatever
18   discovery is obtained from separately elected officials, that
19   we cannot confront that with any contrary evidence that may be
20   adduced in discovery.  As I say, I don't know that there would
21   be any.

22        THE COURT:  Well, maybe your problem -- maybe your
23   problem is that you don't have any evidence of your damages
24   then.

25        MS. ROSE-SMITH:  That's our position, your Honor.

1          MR. KENNEDY:  Well, we're entitled to present that

2    through -- I mean, we can serve a subpoena on the Cook County

3    assessor's office and obtain documents.

4          THE COURT:  Right, but what you're basically saying

5    is, you know, it depends what the assessor says.  If you like

6    what the assessor says, you're going to be bound by it.  If

7    you don't like what the assessor says, you're going to say

8    you're not bound by it.

9          MR. KENNEDY:  I think our position that we're not

10   bound -- with respect is without regard to what is said.  I

11   think our point is today, we're not in a position to agree on

12   behalf of our client.  We certainly don't have authority from

13   our client to agree that whatever is adduced from a separate

14   independent legal entity forecloses -- you know, must

15   necessarily be the end of the matter.  We're just not in a

16   position to agree to that today.

17         THE COURT:  How long do you need to figure that out

18   because I'd like to close out this loop on the 30(b)(6) issue.

19         MR. DAILEY:  Well, I would like to --

20         THE COURT:  I mean, if I'm going to make her -- you

21   know, if I'm going to make counsel serve a subpoena, you know,

22   I want to know what the ramifications of that are.

23         MR. DAILEY:  Well, we can definitely take that to our

24   client and confer with counsel and ask our client whether or

25   not they would be -- I'm sorry.  This is Dan Dailey speaking.

1          THE COURT:  Yes.

2          MR. DAILEY:  We can ask the client whether or not

3    they would be agreeable to saying that the methodology and the

4    topic discussed here in terms of how the County assesses tax

5    revenue -- excuse me, property value will -- they will accept

6    to be bound by during the 30(b)(6).  And we can take it back

7    and ask but again, I think that it comes back down to really,

8    what is the methodology of assessing value, but the other, it

9    comes back down to notice.

10         And if we can have at least a strict, a strict ruling

11   or a partition for saying that these County, the separately

12   elected officials do not apply or do not bind the County on

13   notice, and that's something we can argue later --

14         THE COURT:  On notice?

15         MR. DAILEY:  Right, on --

16         THE COURT:  What's the notice issue?

17         MS. ROSE-SMITH:  Well, your Honor, this is something

18   that we talked a little bit about before, and that is that,

19   you know, one of -- the defendant's position is that the

20   County had notice of the issues that are alleged in the

21   complaint and so --

22         THE COURT:  Statute of limitations?

23         MS. ROSE-SMITH:  So what they're concerned about now

24   is, if we depose the assessor and somehow the assessor has

25   information about the property values or did any sort of

1    report on what might be called into the client property values

2    and all of that was before the limitations period had run,

3    then they -- they're afraid that that will then prejudice the

4    case.  And so what he's proposing now is that maybe they'll

5    agree to be bound to the assessor's office's testimony for

6    purposes of damages but not for purposes of whether or not the

7    County had notice of its claims.

8         And my position on that is sort of, I understand our

9    notice issue, and we previously said that that was something

10   that likely Judge Bucklo was going to have to rule on

11   ultimately, but it seemed as if that it is creating such a

12   problem that either the solution is that the issue needs to be

13   resolved now or where the County can't produce evidence of its

14   damages or evidence of other things either because the

15   evidence is not just related to this particular assessment

16   issue.

17        Other office -- there's at least one other office

18   that also has refused to cooperate.  And so it just has to

19   either be decided now or they can't rely on the evidence that

20   would have come from those offices to support their case

21   because otherwise, you know, this is just a simple due process

22   issue.  And I would also just say that it needs to not just be

23   a ruling that is specific to the assessor.

24        So if the Court's solution is, go back and get the

25   assessor's permission, I think that also should include the

1   other -- the other separately elected officials.  So we set

2   that deposition -- we set a deposition with Margaret Cusack

3   who is in the County Clerk's office because the County

4   previously told us that they would accept service, and they

5   previously listed Ms. Cusack in their initial disclosures as

6   someone who they intend to rely on at trial, and yesterday

7   they said actually they have no power to produce her even

8   though she's in their initial disclosures, so it's not just

9   one department.

10          And I would ask that the Court, if we're going to

11  make a ruling on this specific issue or they're going to have

12  to go back and figure out what their position is, that they

13  determine that position as to all of the separately elected

14  officials that are relevant here.

15          THE COURT:  Well --

16          MR. DAILEY:  I mean --

17          THE COURT:  -- what I was proposing was, you know,

18  that you find out -- I mean, Mr. Dailey, you said, well, we

19  could find out about the 30(b)(6), but as I -- you know,

20  whether you would be bound by it or not, but as I

21  understand the -- first of all, you're bound by 30(b)(6)

22  testimony.  That's the law.  So you don't need to go find that

23  out.

24          I don't understand what you think -- I don't really

25  understand your argument that you're not going to be bound by

1   30(b)(6) testimony, but maybe I'm missing something.

2          MR. DAILEY:  It --

3          THE COURT:  But whenever a party produces a 30(b)(6)

4   testimony -- a 30(b)(6) witness, the whole point is you're

5   bound by that witness's testimony.  But let me move on before

6   I forget my point, which is, as I understand it, the

7   assessor's office is not cooperating in the 30(b)(6) testimony

8   issue, and the only way that you can get any -- that anybody

9   can get any testimony out of the assessor's office is going to

10  be to file a separate -- to serve a separate subpoena.  And I

11  thought the workaround, the workaround the assessor's lack of

12  cooperation in this lawsuit was going to be to serve a

13  subpoena and have the bank do that.

14         And so what I was suggesting was that the County

15  agree to be bound by the subpoenaed testimony as if it were

16  30(b)(6) testimony.  So that's what I'm proposing.

17         MR. KENNEDY:  Judge?

18         THE COURT:  Yes.

19         MR. KENNEDY:  We see it as -- we see it as being no

20  different than any other case where there's a plaintiff and a

21  defendant and there is a third party that possesses

22  information that is relevant to the litigant's claims and

23  defenses.  And either side can serve a subpoena on that party

24  to obtain information.  It doesn't bind either the plaintiff

25  or the defendant.  Plaintiff or defendant can challenge it

1    with any contrary information that may also be adduced in

2    discovery.

3         If there's nothing contrary then, you know,

4    ultimately that will be the evidence in the case, but from our

5    standpoint, we don't believe that -- we maintain that the

6    structure of County government as a matter of Illinois law is

7    that the separately elected officials are indeed separate,

8    independent legal entities and that certainly either side may

9    issue subpoenas to those entities, but we're not in a position

10   to agree, Judge, that what a third party subpoena recipient

11   produces is the end of the matter and that we cannot, you

12   know, ever controvert that if contrary evidence comes to

13   light.  It may well not.

14        But I don't know how as plaintiff's counsel we could

15   agree that whatever a subpoena response is from a third party

16   that is separate and independent constitutes, you know, an

17   admission on the part of our client where they're separate and

18   independent.

19        THE COURT:  So --

20        MS. ROSE-SMITH:  Your Honor, they produced -- they

21   have -- I believe they have produced in this case numbers and

22   figures, already evidence from the assessor's office about

23   assessed value.  And so what he is saying, although it sounds

24   suggestive because it's a metaphor that makes sense in the

25   context of litigation generally will not work here because, in

1   fact, it is incredibly one-sided.  He's saying, "I will --
2   I've gotten documents and other information from the
3   assessor's office that they were willing to give me that I
4   intend to rely on to prove how much you owe, but you may not
5   rely on anything that you get from them without me being able
6   to contest it if what you're getting somehow might reduce or
7   impugn the evidence that we have of what you owe."  And that's
8   not how litigation works.
9        I mean, I don't mean to be -- I don't mean to be flip
10  about it, your Honor, but I'm sort of stunned about what they
11  want to do here.  If they don't -- if they don't want to be
12  bound by the assessor's office, then they should not be
13  allowed to use assessed value, information from the assessor's
14  office in proving their case.
15       MR. KENNEDY:  We can use information from a third
16  party subpoena recipient or a third party that voluntarily
17  supplies information to us in support of our claims just as
18  the defense can do in support of their defenses.  The whole
19  point is that they're separate, independent legal entities
20  and, you know, they're third parties to this case.  They are
21  not parties.
22       So I don't know how -- it would be no different than
23  saying whatever the County assessor's office produces in
24  response to a subpoena should be -- if it's binding on
25  plaintiff, it should be binding on defendant as well.  You

1   know, we try and work with separately-elected officials as

2   best we can.  That's just the nature of attempting to

3   cooperate.  And we've been cooperative in trying to produce

4   whatever information we can obtain and provide to defense what

5   is reasonably available to our client.

6           We've not taken a hard line position on it, but we're

7   not in a position to agree that what a third party subpoena

8   respondent produces is -- you know, constitutes an admission

9   of our party, no more than I would think the bank would agree

10  that whatever the County assessor office says binds the bank.

11          THE COURT:  No, but the bank would agree that when it

12  produces 30(b)(6) witnesses, those 30(b)(6) witnesses bind the

13  bank.  And you seem to believe --

14          MR. KENNEDY:  That --

15          THE COURT:  -- that -- excuse me, counsel.  You seem

16  to believe that when you produce 30(b)(6) witnesses, they

17  don't bind your client, and that's just not how it goes.

18          MR. KENNEDY:  I apologize if I spoke over you.  It

19  wasn't my intention.

20          THE COURT:  Don't worry about it.  But you know, the

21  30(b)(6) witnesses that you have produced to date and that you

22  are going to produce bind your client.  I'm not understanding

23  your argument that they're not binding.

24          MR. KENNEDY:  I agree -- I agree with that, Judge,

25  that if we produce a 30(b)(6) witness, that is binding on our

1    client.

2            THE COURT:  Okay.  So then you do need me to rule on

3    whether or not you -- she can force you to produce someone

4    from the assessor's office as a 30(b)(6).  I mean, I was

5    trying to do a workaround here, and it appears that that's not

6    going to be possible.  And so I'll just have to look more

7    closely at it.

8            And if I decide that you can be ordered to produce

9    somebody from the -- from Berrios's office as a 30(b)(6)

10   witness, then that will be the ruling, and if I decide you

11   can't, then she can subpoena it and you'll do what you will

12   with the discovery that you get.

13           I don't know what else to do.  I was trying to

14   shortcut what I thought was a lot of work on -- you know, on

15   something that's not really relevant to the case, but I don't

16   know how else to do it.

17           Anything else?

18           MR. DAILEY:  No, I don't think so, your Honor.

19           THE COURT:  Ms. Rose-Smith?

20           MS. ROSE-SMITH:  No, your Honor.  I just want to make

21   sure that we're clear that you're ruling on all of the topics:

22   28, 29, 23 through 25, and 31.

23           THE COURT:  Well, they're all -- they're all assessor

24   topics, right?

25           MS. ROSE-SMITH:  Yes.  I mean, they -- we talked

 1    earlier about how they want to provide an additional person to

 2    talk about the collection portion of that, but I just wanted

 3    to make sure that it was clear to the Court that that doesn't

 4    mean that those topics are fully covered.  So it's going to be

 5    23 through 25, 31, and 28 and 29.

 6             THE COURT:  Yes, the --

 7             MR. DAILEY:  Not 25 --

 8             THE COURT:  As I understand Mr. Dailey, he's got

 9    other people who are going to testify about those topics, but

10    no matter who else testifies about those topics, you're still

11    going to need assessor office personnel to testify about those

12    topics as well.

13             Is that fair, Mr. Dailey?

14             MR. DAILEY:  Essentially, yes, but No. 25 is not an

15    assessor issue, in my view.  That's something that --

16             MS. ROSE-SMITH:  I agree with that, your Honor.  So

17    it's actually 23, 24, 31, 28, and 29.

18             THE COURT:  Okay.  And then when you raised

19    something, Ms. Rose-Smith, you said something about the City

20    Clerk.  I mean, that's not a 30(b)(6) issue, is it?

21             MS. ROSE-SMITH:  No, your Honor, but when we were

22    talking about the broader issue of whether or not they were

23    going to go back and try to voluntarily get cooperation, what

24    I was suggesting is that that not be limited to the assessor

25    because we are about to have to -- there's probably going to

1  be some motion practice about that given that they listed this

2  person in their initial disclosures and now won't produce

3  them, but it doesn't have anything to do with the assessor

4  issue since the solution, the workaround is not going to work.

5          THE COURT:  Yes.

6          MS. ROSE-SMITH:  And so I would just -- the Court

7  will just rule on the topics that relate to that and then

8  we'll -- and then the defendants will have to determine what

9  they will do if the Court determines that they don't have to

10  produce the witness.

11          THE COURT:  Right.  I mean, I assume that the -- I

12  assume that the plaintiffs have exhausted the efforts of

13  getting cooperation from the assessor's office.

14          MR. DAILEY:  We certainly have, your Honor.

15          THE COURT:  Yes.

16          MR. DAILEY:  And originally, we were able to get

17  documents, you know, and we produced what we -- anything we

18  could get our hands on, we produced it to the defendant.

19          THE COURT:  Yes, I believe that.  I believe that.

20          MR. DAILEY:  I ran into like a wall.

21          THE COURT:  Yeah, I don't doubt you.  And is there --

22  so and then the treasurer, it seems like the treasurer is

23  cooperating and then your -- and you're now at the City Clerk

24  and there might -- I mean, the County Clerk, sorry, and there

25  might be -- you might have cooperation and you might not.

1           MR. DAILEY:  Well, not necessarily.  We will have

2     cooperation, but the notice they served wasn't a 30(b)(6), so

3     that's a different issue.  I think we're just not -- we don't

4     control Margaret Cusack, I'm not sure if that's her name, but

5     the deponent in that case.  It was just a regular deposition,

6     not a 30(b)(6), so it should not be included.

7           To our understanding, we can still work with the

8     Clerk's office.  That's a different issue.

9           THE COURT:  I see.  Okay.  All right.  Well, I was

10    hoping to get this done today, but I guess we're not going to.

11    Anything else?

12          MR. KENNEDY:  I would just state for the record,

13    Judge, that, you know, the plaintiff being the County of Cook

14    and not including the separately elected officials, we could

15    produce someone, our most knowledgeable person on assessed

16    property values.  It's just that they probably would not know

17    a lot about that topic given how county government is

18    compartmentalized.

19          So, you know, I think that's really where the rubber

20    meets the road in terms of these third party subpoena

21    respondents, these separately elected, independent, separate

22    legal entities.  They are not the plaintiff.

23          MR. DAILEY:  And for example, Justin Kervin had the

24    most knowledge I could find for assessed value, and I

25    specifically asked him that, and he knew, so it looks like he

1   was unprepared, but relating to those questions, he just

2   didn't have it.  But he was the most -- he was the most

3   knowledgeable I could find in the County that was not out of

4   the assessor's office, and that's what I tried to explain to

5   defendant.

6         MS. ROSE-SMITH:  And your Honor, we understand that,

7   but that gets back to the point that you made earlier, which

8   it would be equally fine for the defendant if the Court were

9   to simply order that, notwithstanding whether or not the

10  County has the assessor's office cooperation or not, they are

11  required to produce their most knowledgeable witness on those

12  topics, and then we will take that deposition, and if they

13  cannot answer, per the documents from the assessor's office

14  that they cannot answer questions about those parts of their

15  damages, then we will just simply argue to Judge Bucklo that

16  they don't have evidence to support those damages, and that

17  would be fine, too.

18        THE COURT:  Well, but they can get evidence from --

19        MR. KENNEDY:  Judge --

20        THE COURT:  But they can get evidence from the

21  assessor's office.  I mean, they can subpoena that.

22        MS. ROSE-SMITH:  Right.

23        MR. KENNEDY:  That's exactly our point.  We agree

24  with that approach.  I think we -- I feel like almost by

25  trying to reach outside of plaintiff and obtain cooperation

1   from these separately elected officials where we have been

2   able to and making that available by the -- to the defendants,

3   I feel like we're almost putting ourselves in a position now

4   where we're being penalized when we're unable to obtain the

5   cooperation of a third party separately elected.

6           So I think what counsel just said is totally

7   acceptable, that we can produce a 30(b)(6) witness from County

8   of Cook plaintiff to testify regarding the plaintiff's

9   knowledge as to assessed value.

10          Our point in responding to the motion to compel was

11  simply that if the goal is to actually, you know, seek

12  discovery that's going to bear on the claims and defenses, the

13  defendants would be better off just serving a subpoena, a

14  30(b)(6) subpoena on the assessor, and 30(b)(6) specifically

15  provides it can be a notice or it can be a subpoena.

16          So I think that what counsel said is, if that's

17  equally fine to the defendants, then I don't know that we need

18  the Court to get into the minutiae of the structure of county

19  government under the Illinois Constitution.

20          MS. ROSE-SMITH:  Well, but that goes back to the

21  point that we were talking about, your Honor, which is, what

22  it appears that he just said is that I can serve a 30(b)(6)

23  subpoena on the assessor's office which, of course, then would

24  make the County bound by whatever the assessor's office

25  testifies to.

1          THE COURT:  That's the question.  I mean --

2          MR. KENNEDY:  That is a third party subpoena --

3          THE COURT:  Right.  The third party subpoena would

4   then not be binding on the plaintiff.  That's the rub.  She --

5   anybody can subpoena the assessor, and he may fight it and he

6   may not but in the end, you know, I'll enforce it, but the

7   question is, would it be binding like a 30(b)(6) would be.

8          MS. ROSE-SMITH:  And that's the only concern, your

9   Honor, is that I know that they're going to rely on this

10  evidence for their damages and, you know, they said at the top

11  of the call that the assessor performs some ministerial

12  functions for the County, so I think your Honor takes the

13  point and the concern.

14         And I wish I had a better solution to offer for it,

15  but in this particular case, that testimony is important and

16  it needs to be binding.  And we will -- you know, we will make

17  every effort to make that happen once the Court rules on the

18  deposition -- or the motion to compel.

19         THE COURT:  Yeah.  All right.

20         MR. KENNEDY:  I mean, I think if we're agreed that

21  they are third parties and they can be subpoenaed, I don't see

22  why it would be binding on either plaintiff or defendant.

23         MR. DAILEY:  And we also agree with the County -- I

24  mean, the defendant's last position in that we can produce our

25  most knowledgeable to speak and if you feel, if defendants

1   feel they cannot -- we cannot prove our damages on who we

2   presented the most knowledgeable --

3            MR. KENNEDY:  They can file that motion for summary

4   judgment at the close of discovery but, you know --

5            MR. DAILEY:  I think that's perfectly --

6            MS. ROSE-SMITH:  Your Honor, what they're offering as

7   a compromised position is what is already required by

8   30(b)(6).

9            MR. DAILEY:  And that's what we said earlier.  We

10  went out of our way to tell you, hey, we have the most most

11  knowledge, this guy actually knows a lot more, he will give

12  you what you want.  And we feel like we're getting penalized

13  for that when I could have easily not even said anything and

14  presented someone that knew as much as they could know without

15  even telling you to come in from the assessor's office or not.

16           MS. ROSE-SMITH:  But you did, and the person said

17  they didn't know anything.  I mean, I don't want to get into

18  the back and forth with you because I don't think that that's

19  a good use of the judge's time but --

20           MR. DAILEY:  But I think --

21           MS. ROSE-SMITH:  -- and I think the Court should rule

22  on whether or not the -- whether or not the assessor's office

23  is going to have to sit for testimony, particularly as to 24

24  for which you offered no compromise.  And we should just go

25  from there because I don't see that this is -- aids the Court

1    in its decision.

2         THE COURT:  Right.  Well, they're going to have to

3    sit.  The question is, are they going to sit pursuant to a

4    subpoena or are they going to sit pursuant to 30(b)(6), right?

5         MS. ROSE-SMITH:  Right.

6         MR. KENNEDY:  Whether they're going to sit pursuant

7    to a 30(b)(6) notice to us --

8         THE COURT:  Yes.

9         MR. KENNEDY:  -- plaintiff, or a 30(b)(6)subpoena to

10   the assessor.

11        THE COURT:  Yeah, exactly.

12        MR. KENNEDY:  Our point, just so I think -- I think

13   we've kind of exhausted this, and I think the Court

14   understands the parties' respective positions.  Our point is

15   that the separately elected officials as a matter of Illinois

16   law are separate, independent legal entities, and just like

17   any other separate legal entity that has information that's

18   relevant to a party's claims or defenses in a lawsuit, either

19   side may serve a subpoena and obtain information, and that's

20   not binding on either side.  That's just what the evidence is.

21        THE COURT:  I understand.  I understand your point

22   and that the defendant feels differently.  That's why you're

23   here.

24        MR. KENNEDY:  Correct.

25        THE COURT:  Okay.  Thanks, guys.  Have a good day.

1                MS. ROSE-SMITH:  Thank you, your Honor.

2                MR. KENNEDY:  All right.  Have a good weekend.

3                MR. DAILEY:  Bye-bye.

4            (Proceedings adjourned at 2:51 p.m.)

5                        *  *  *  *  *  *  *

6                  C E R T I F I C A T E

7            I, Judith A. Walsh, do hereby certify that the

8      foregoing is a complete, true, and accurate transcript of the

9      proceedings had in the above-entitled case before the

10     Honorable MARY M. ROWLAND, one of the judges of said Court, at

11     Chicago, Illinois, on May 26, 2016.

12

13     /s/ *Judith A. Walsh, CSR, RDR, CRC, FCRR*        June 24, 2016

14     Official Court Reporter

15     United States District Court

16     Northern District of Illinois

17     Eastern Division

18

19

20

21

22

23

24

25