IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COUNTY OF COOK, | ) | |
| | ) | Case No. 14 c 2280 |
| Plaintiff, | ) | |
| v. | ) | Hon. Elaine E. Bucklo |
| | ) | |
| BANK OF AMERICA CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR CLARIFICATION OR RECONSIDERATION**

Plaintiff County of Cook, by and through its undersigned attorneys, hereby moves the Court for clarification or reconsideration of its Memorandum Opinion and Order, dated March 30, 2018 (Dkt. 204). In support of this Motion, the County states as follows:

1. On March 30, 2018, the Court issued its Memorandum Opinion and Order ("Order"), granting in part and denying in part the motion to dismiss of Defendants Bank of America Corporation, Bank of America N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., Countrywide Bank FSB, Countrywide Warehouse Lending, LLC, BAC Home Loans Servicing, LP, Merrill Lynch & Co., Inc., Merrill Lynch Mortgage Capital, Inc., and Merrill Lynch Mortgage Lending, Inc. (Defendants or "BOA"). Dkt. 204.

2. In the "Conclusion" section of the Order, the Court limited Cook County's potential recovery to "its claims for foreclosure-processing related expenses." Order at 27. In reaching this conclusion, the Court reasoned that "a narrow category of the County's alleged injuries do have a sufficient temporal and practical connection to the challenged foreclosures to bring them plausibly within the 'first step' of causation: the out-of-pocket costs it claims to have incurred in processing the discriminatory foreclosures, such as additional funding for the Cook County Sheriff to serve foreclosure notices and for the Circuit Court of Cook County to process

the deluge of foreclosures." Order at 19-20 (citing Second Amended Complaint ("SAC"), Dkt. 177 ¶¶9, 376, 378). "[T]hese costs bear a sufficiently close connection to the alleged discrimination that the County is entitled to offer evidence to establish defendants' liability for its losses." *Id.* at 20.

3. Other than specifically allowing Cook County to recover "its claims for foreclosure-processing related expenses" (Order at 27), the Court did not address or mention other specific out-of-pocket financial expenditures that Cook County alleged it suffered and could be demonstrated "flow directly" from BOA's equity stripping scheme, particularly the "registration and monitoring of foreclosed properties" and the "inspecting, securing, cleaning, maintaining and/or demolishing abandoned or vacant properties". *See* SAC ¶376, *see also* ¶9. Neither did the Court address, nor Defendants object to, Cook County's right to recover for its non-economic and organizational injuries or Cook County's right to obtain injunctive relief, which are long-standing remedies under the Fair Housing Act.

4. The Court also found that "tax losses and increased costs for county services such as police patrol and support services to evicted borrowers – do not flow directly from the discrimination it alleges," and, therefore, does not satisfy the requirements of proximate cause under the framework the U.S. Supreme Court set forth in *Bank of America Corp. v. City of Miami*, 137 S.Ct. 1296 (2017). Order at 11, 18. But the Court did not address, and Defendants did not raise in their Motion, the recoverability of such damages to the extent that they could be tied to the specific individual foreclosed property addresses or vacancies Defendants are responsible for.

5. Cook County requests clarification or reconsideration of the Court's Order with respect to these matters.

6. This Court has the inherent authority to clarify and reconsider its Order because "any order or other decision . . . that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See LG Elecs. v. Whirlpool Corp.*, 08 C 242, 2009 U.S. Dist. LEXIS 125004 at *3 (N.D. Ill. Nov. 23, 2009).

**Out of Pocket Costs And Lost Revenue Tied to Specific BOA Foreclosed Properties**

7. The Court's Order suggests that Cook County should have an opportunity to prove and recover its increased expenditures that "flow directly from the discrimination [Cook County] alleges." Order at 11. Yet, the Order only mentions Cook County's damages "*such as* additional funding for the Cook County Sheriff to serve foreclosure notices and for the Circuit Court of Cook County to process the deluge of foreclosures." Order at 19-20 (emphasis added). Thus, the Court's Order is unclear as to whether Cook County should have the opportunity to prove its other direct out-of-pocket costs that "flow directly" from BOA's equity stripping scheme as alleged in the SAC and can be tied to the specific foreclosed properties, *e.g.*,: a) "registration and monitoring of foreclosed properties; inspecting, securing, cleaning, maintaining and/or demolishing abandoned or vacant properties". *See* SAC ¶¶9, 376, *see also* ¶¶ 381-382, 384; and b) other "out-of-pocket and lost revenue damages" that can be attributed to "each individual [foreclosed] property secured by a non-prime loan . . . ." *Id.* ¶¶ 382-384; *see also* ¶385. This includes the loss of "intangible property recording and transfer fee income", SAC ¶¶9, 376, 383, 529

8. The Court did not specifically address these other out-of-pocket damages alleged by Cook County and it is unclear whether Cook County is precluded from proving and ultimately recovering for these financial injuries to the extent that they are directly traceable to the foreclosed or vacated properties that BOA is responsible for. This may be because BOA did not

3

challenge these specific damage items in its motion to dismiss and has, therefore, waived any challenge to such damages. [*See* Dkt. 183.] Nor has there been any oral argument on BOA's renewed motion to dismiss as to these specific damage items. Regardless, the record needs to be clear.

9. With respect to the aforementioned damages, Cook County pled that it could isolate those damages suffered on an individual foreclosed property by using the "property address and mortgage lien and foreclosure data obtained from Defendants in discovery" *Id.* In essence, Cook County will be able to identify its specific out-of-pocket costs and other actual damages directly flowing from a specific foreclosed property that is tied to BOA's equity stripping scheme. For example, if Cook County can prove that BOA discriminatorily originated, serviced, or foreclosed on a loan to Borrower A who lived at Address Y in Cook County; and the property was foreclosed on (or Borrower A vacated Address Y after default in anticipation of foreclosure or as a direct consequence of a foreclosure – provable by BOA's own mortgage servicing records), then Cook County should have the opportunity to prove and recover those out-of-pocket expenditures or other damages to its affected Departments that are ***specifically traceable to the property and which the County*** can show "flow directly from" BOA's equity stripping scheme, e.g., "registration and monitoring of foreclosed properties;" "inspecting, securing, cleaning, maintaining and/or demolishing abandoned or vacant properties;" and other "out-of-pocket and lost revenue damages attributable to each individual property secured by a non-prime loan . . . ." *SAC ¶¶9, 376, 381-382, 384*. It also is possible that, as the Court indicated, Cook County may be able to establish some of these damages in an administratively preferable manner to the Court by using the type of statistical analysis identified by Judge

4

Feinerman, for example. *See Cook v. Wells Fargo*, No. 14-cv-09548 (N.D. Ill., March 26, 2018), at 16.

10. Cook County's ability to recovery these types of costs and damages should not arbitrarily be limited to just the expenditures only by the Cook County Sheriff's Office and the Cook County Circuit Court. Cook County should have an opportunity to prove the direct damages suffered by its other Departments that also directly flow from specific BOA foreclosures and/or home vacancies.

### Shifted Costs of County Services & Other Organizational Damages

11. Cook County has alleged that it suffered economic and non-economic harm (and will continue to suffer harm) as a result of BOA's equity stripping scheme (*see e.g.*, SAC at ¶¶ 8-9, 11-15, 370, 372, 375-77, 381-388, 392, 529) and also has alleged facts establishing that it has organizational standing – with distinct and recoverable injuries (see *e.g.*, SAC at ¶¶ 9, 11, 376, 382-84, 392). Cook County seeks to recover for the costs associated with the shifting of resources to provide services ***relating to the specific properties*** foreclosed upon and/or the specific homeowners evicted (or who vacated) such properties, all as part of BOA's equity stripping scheme. That additional cost is the direct result of the loan default and foreclosure proceedings caused by BOA's equity stripping scheme.

12. The Court concluded that injuries Cook County alleged in its complaint for increased costs for county services at large, such as police patrol and support services to evicted borrowers, do not flow directly from the discrimination Cook County alleges and are instead "downstream" and "too remote in time, and too contingent on later events, to satisfy the 'first step' directness requirement. Order at 11, 18. However, the nature of the County's alleged organizational injuries, as explained here, was never briefed because Defendants never raised it

5

in any motion to dismiss and there has been no oral argument on their renewed motion. Thus, Cook County respectfully requests that the Court reconsider its ruling on this issue.

13. To be clear Cook County specifically seeks only those organizational damages that ***can be directly traced to an identifiable foreclosed property address and/or homeowner vacancy*** resulting from the discriminatory equity stripping scheme alleged by the County. Cook County does not seek to recover generally for the overall increase in its costs for services as a whole, but, rather, those costs it incurred that can be shown directly relate to specific BOA foreclosed properties and displaced homeowners. *See* SAC at ¶¶ 9, 11. It is clear that such identifiable damages to the County result not from intervening events, but are the first step of damages from Defendants' discriminatory housing practices.

14. These organizational injuries Cook County claims are not "downstream," but, rather, are the precise type of damages the Supreme Court has recognized under the FHA in a long line of case law which was not overturned by *City of Miami*. Nothing in the Supreme Court's *City of Miami* decision suggests that it was abandoning its prior Fair Housing Act precedent securing the rights of organizations to seek redress for their organizational injuries caused by discriminatory housing practices.

15. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982), the Supreme Court held that it was error to dismiss a complaint when, "as broadly alleged, petitioner's steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers . . . . Such concrete and demonstrable injury to the organizations' activities -- with the consequent drain on the organization's resources -- constitutes far more than simply a setback to the organization's abstract social interests." (internal citation omitted). The Court's analysis of *Lexmark* and *Trafficante* ignores Cook

County's allegations here of direct organizational harm that, as the Court acknowledges, is not "derivative" of another's harm. *See* Order at 18-19. *City of Miami* did not overturn *Havens*. As discussed above, district courts are "not to anticipate the overruling of a Supreme Court decision, but are to consider themselves bound by it until and unless *the Court* overrules it . . . ." *Saban*, 509 F.3d at 378.

16.     Cook County has alleged distinct injuries flowing directly from BOA's discriminatory lending, servicing and foreclosure practices and it should be permitted to recover, economically or non-economically, for the harms to its primary missions and purposes, as well as the destabilization of its communities. This recovery is expressly permitted by the Seventh Circuit. *See City of Chicago v. Matchmaker Real Estate Ctr., Inc.,* 982 F.2d 1086, 1095 (7th Cir. 1993) (holding that "a destabilization of the community and a corresponding increased burden on the City in the form of increased crime and an erosion of the tax base" along with diversion of scarce resources and a frustration of the City's ability to perform services satisfied the injury in fact requirement); *Bellwood*, 895 F.2d at 1526 (the "only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination."); *see also Reeves v. Carrollsburg Condo. Unit Owners Ass'n*, No. 96-2495(RMU), 1997 U.S. Dist. LEXIS 21762, *9-10 (D.D.C. Dec. 18, 1991) (an organization establishes injury under the FHA by alleging that the "purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action" or that its "interest in promoting equal housing opportunities" was harmed).

### Non-economic Damages and Injunctive Relief

17.     BOA did not dispute in its motion to dismiss that Cook County has standing to seek relief for its organizational harms and did not dispute Cook County's ability to recover non-economic damages or seek injunctive relief related to these types of harm, focusing instead only

7

on Cook County's ability to recover tax losses and government services costs [Dkt. 183.] Indeed, in BOA's reply in support of its motion to dismiss, it acknowledges that a fair housing violation "simultaneously injures both the minority housing applicant and a current resident, whose right to an integrated neighborhood is impaired at the very moment of the unlawful housing denial. In such an instance, ***the direct relation is clear and the causal chain does not go beyond the first step***. [Dkt. 188 at 4 (emphasis added) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376-77 (1982); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209-10 (1972))]. BOA ignores that Cook County alleges such harm. *See* SAC ¶¶9 (harm to "the fabric of Plaintiff's communities and residents."), 392 ("frustration of the various purposes and missions" including to "foster equality and opportunity").

18.  Cook County is seeking both injunctive and monetary relief for its incurred injuries, and to prevent its future harm, and the FHA grants the Court wide-discretion in awarding such relief:

> In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages, and subject to subsection (d), may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)

42 U.S.C. § 3613(a) and (c)(1). Even if Cook County cannot recover economic damages for the shifting of resources resulting from BOA's FHA violations, Cook County can still seek injunctive relief and punitive damages under 42 U.S.C. § 3613(a) and (c)(1).

19.  It is undoubtedly and undisputedly the case that Cook County may seek redress for non-economic harms and seek injunctive relief under the Fair Housing Act ("FHA"), 42

8

U.S.C. § 3613(a) and (c)(1), and a long line of Supreme Court and Seventh Circuit precedent recognizes such organizational standing and harm.

20. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982), the Supreme Court held that it was error to dismiss the complaint of two individuals who alleged that the petitioner's steering practices deprived them of "important social, professional, business and economic, political and aesthetic benefits of interracial associations that arise from living in integrated communities free from discriminatory housing practices." *Id.* at 376 (internal quotations and citation omitted). Although the Supreme Court noted that these individuals were not harmed like testers, the court stated that "[t]his distinction is . . . of little significance" because they only needed to allege "distinct and palpable injuries that are 'fairly traceable' to petitioners' actions . . . ." *Id.* at 375. Although the individuals did not allege what neighborhoods they lived in or the proximity of their homes to the site of the petitioners' alleged steering practices, the Supreme Court stated that absent "further factual development, we cannot say as a matter of law that no injury could be proved." *Id.* at 377.

21. More recently, the court in *City of Philadelphia v. Wells Fargo & Co.*, No. 17-2203, 2018 U.S. Dist. LEXIS 6443 at *11 (E.D. Pa. Jan. 16, 2018), concluded that the City of Philadelphia sufficiently alleged "plausible proximate cause by alleging a connection between Wells Fargo's lending practices and the non-economic injuries to the City based on its goal of promoting fair housing as part of an integrated community." The court stated that "[n]on-economic injuries are especially cognizable when, as here, resources are allegedly spent by a plaintiff to combat the non-economic harm." *Id.* The non-economic injuries alleged by the City of Philadelphia were plausibly connected to Wells Fargo's discriminatory practices because discriminatory "lending causes injury to the goal of integrated communities by negatively

9

impacting the ability of minorities to purchase homes" and harms "integrated communities by reducing overall minority homeownership, because if a minority borrower is provided a high-risk or high-cost loan, then the loan is more likely to end in an inability to purchase property or, once property is purchased, to avoid foreclosure." *Id.* at *12-13.

22. In light of *Havens*, 455 U.S. at 378-79; *Bellwood*, 895 F.2d at 1526; and *Reeves*, No. 96-2495(RMU), 1997 U.S. Dist. LEXIS 21762, *9-10, there is no doubt that Cook County should be able to recover for these injuries to the extent they flow inexorably from Defendants' equity stripping scheme. Here, Cook County should have the opportunity to offer such proof where the injury flows directly from BOA's actions.

23. BOA has conceded and waived any challenge to Cook County's ability to recover for noneconomic harm and/or seek injunctive relief. Presumably, this is why the Court did not address this issue in its Order. Nonetheless, Cook County seeks clarification from the Court in order to avoid any confusion that it may seek to recover non-economic damages and seek injunctive relief for BOA's fair housing violations.

**Lost Tax Revenue**

24. The Court ruled that Cook County could not generally recover for tax digest related losses, Order at 11, *accord* Order at 18 reasoning that "the foreclosures remain several steps removed -both temporarily and causally from the tax losses…" Order at 12. Cook County respectfully requests that the Court reconsider its ruling but, again, only as it relates to the injury from lost property value – property tax revenue or tax lien sale revenue -- on specific BOA foreclosed properties that are tied to BOA's equity stripping scheme. *See* SAC ¶¶376 ("lost property tax revenue on vacant, abandoned or foreclosed properties that have not been recovered via tax lien sales"); 384 ("Plaintiff can isolate out-of-pocket and lost revenue damages attributable to each individual property…").

25. The Supreme Court in *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 110-11 (1979), stated that one of the adverse consequences from the defendant's alleged steering practice was a "significant reduction in property values ***directly*** injures a municipality . . . ." (emphasis added.) The Seventh Circuit in *Bellwood v. Dwivedi*, 895 F.2d 1521, 1525 (7th Cir. 1990), likewise acknowledged that *Gladstone* "detailed the various types of injury that tipping, brought about by racial steering can inflict...." The Court indicates in its opinion that *City of Miami* limits *Gladstone*. Order at 19-20. However, the Supreme Court, in *City of Miami*, not only endorsed *Gladstone* but also spoke about principles of *stare decisis* that rendered *Gladstone* unimpeachable. *City of Miami*, 137 S. Ct. at 1304-05. Justice Thomas's concurrence, cited by the Court, is not controlling and has no precedential value. *See* Order at 18 (citing *City of Miami*, 137 S. Ct. at 1311 (Thomas J. concurring in part)). Accordingly, *Gladstone* is still the last word by the Supreme Court on this issue. District courts are "not to anticipate the overruling of a Supreme Court decision, but are to consider themselves bound by it until and unless *the Court* overrules it . . . ." *Saban v. United States DOL*, 509 F.3d 376, 378 (7th Cir. 2007) (emphasis in original).

26. The County's alleged tax base related injuries are exactly the kind of harms that the drafters of the FHA sought to prevent -- "the ruin brought on by absentee ownership of property" as well as "further deterioration" of "municipal tax bases." Kerner Commission Report 10; 114 Cong. Rec. at 2993 (1968). Where, as here, the FHA constitutes a "broad legislative plan to eliminate all traces of discrimination within the housing field," *Marr v. Rife*, 503 F.2d 735, 740 (6th Cir. 1974), and its language "is broad and inclusive," *Trafficante v. Metro Life Insurance Co.*, 409 U.S. 205, 209 (1972), a more liberal proximate cause standard is appropriate. *See, e.g., CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011) (Federal Employers' Liability

11

Act, 45 U.S.C. § 51 *et seq.*, uses a relaxed proximate cause standard in recognition of the importance the statute places on the safety of railroad workers.).

27. Regardless, the first step test is met here because the County is not seeking recovery for its tax base related injuries *at large*, but only as to those specific properties foreclosed on by BOA. This eliminates any proximate cause issue because a foreclosure on a specific property directly results in a reduced value on that property and reduced tax revenues from it and property taxes are unpaid when the property is abandoned. The unpaid property taxes and decrease in assessed value for purposes of determining property taxes *on a particular property* directly result from the foreclosure. These are not downstream injuries, but, rather are the *direct* result of the foreclosure which is the last step in BOA's improper equity stripping scheme. Accordingly, this direct result of a foreclosure is a first step damage and is not remote in the same way as revenue decreases of local merchants and the like, and would not risk massive damages litigation. Order at 13-14.

28. Moreover, simply because the County's overall property tax receipts remain relatively constant -- through the adjustment of millage rates as property values fall -- does not mean that the County (which is the embodiment of its residents and communities) is not injured on an individual property basis. This is because when taxes are not paid (or less taxes are paid) on specific properties affected by Defendants' discriminatory housing practice, that tax burden necessarily shifts to other taxpayers within the County. A recovery of such damages by the County effectively returns those monies (dollar for dollar) to the community by funding the County's operations and/or reducing the need to collect such monies from taxpayers going forward.

29. That there may be multiple factors generally affecting Cook County's property tax base and resulting tax revenue at large does not foreclose recovery of lost property value or lost tax revenue on a specific foreclosed property tied to Defendants' equity stripping scheme because proximate cause ***does not mean sole cause***. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 704 (2004) (proximate cause must only be "substantial enough and close enough to the harm to be recognized by law, [and] a given proximate cause need not be, and frequently is not, the exclusive proximate cause of harm."); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1399 (11th Cir. 1994) ("A proximate cause is not [] the same thing as a sole cause. Instead, a factor is a proximate cause if it is a substantial factor in the sequence of responsible causation."); *W. Page Keeton et al., Prosser and Keeton on the Law of Torts* § 41, at 268 (5th ed. 1984) ("If the defendant's conduct was a substantial factor in causing the plaintiff's injury, it follows that he will not be absolved from liability merely because other causes have contributed to the result, since such causes, innumerable, are always present.").

30. Cook County should be given the opportunity to prove its tax receipt damages from lost property values and collections caused by BOA's equity stripping scheme ***on specific foreclosed properties***, irrespective of their effect on the County's tax collections at large. Again, it also is possible that Cook County may be able to establish some of these damages in an administratively preferable manner to the Court by using the type of statistical analysis identified by Judge Feinerman, for example. *See Cook v. Wells Fargo*, No. 14-cv-09548 (N.D. Ill., March 26, 2018) at 16.

**Conclusion**

31. Allowing Cook County to recover for all of the above injuries, in addition to those already permitted by the Court, does not "risk massive and complex damages litigation," *Bank*

13

*of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1306 (2017), because Cook County can "isolate out-of-pocket and lost revenue damages attributable to each individual property" by using "foreclosure property addresses, and Defendants' loan application registry, loan servicing and loan default and foreclosure information obtained from Defendants in discovery." SAC ¶385.

32. In light of the foregoing, Cook County requests the Court reconsider and/or clarify its Order to permit Cook County to recover for all of the economic and non-economic harms that it can prove directly flow from BOA's equity stripping scheme, and that are permitted by binding precedent. *See Havens*, 455 U.S. at 378-79; and *Gladstone*, 441 U.S. at 110-11.

WHEREFORE, Cook County requests the Court amend the Order to permit Cook County the opportunity to prove and, if proven, recover for its economic and non-economic harms directly flowing from BOA's FHA violations, including: (a) the out-of-pocket costs Cook County incurred in processing foreclosures tied to Defendants' equity stripping scheme; (b) costs of registration and monitoring of foreclosed properties tied to Defendants' equity stripping scheme; (c) costs of inspecting, securing, cleaning, maintaining and/or demolishing abandoned or vacant properties tied to Defendants' equity stripping scheme; (d) organizational damages from the costs associated with the shifting of resources to provide services – such as policing and housing support services to evicted borrowers - relating to the specific properties foreclosed upon as part of BOA's equity stripping scheme; (e) non-economic organizational damages to the County from Defendants' equity stripping scheme and injunctive relief to prevent future harm; and lost property tax lien sale receipts; and (f) lost tax revenue on foreclosed or vacant properties tied to Defendants' equity stripping scheme.

Dated: April 11, 2018                                    Respectfully Submitted,

                                                    **KIMBERLY M. FOXX,**
                                                    **STATE'S ATTORNEY FOR COOK COUNTY**

| | |
|---|---|
| By: /s/ James M. Evangelista | |
| James M. Evangelista *(pro hac vice)* | James D. Montgomery, Sr. |
| jim@ewlawllc.com | james@jdmlaw.com |
| David J. Worley *(pro hac vice)* | Michelle M. Montgomery |
| david@ewlawllc.com | mmm@jdmlaw.com |
| **EVANGELISTA WORLEY, LLC** | John K. Kennedy |
| 8100 A Roswell Road, Suite 100 | jkennedy@jdmlaw.com |
| Atlanta, GA 30350 | **JAMES D. MONTGOMERY &** |
| Phone: (404) 205-8400 | **ASSOCIATES, LTD.** |
| | One North LaSalle Street, Suite 2450 |
| | Chicago, IL 60602 |
| | Phone: (312) 977-0200 |
| | Fax: (312) 977-0209 |

*Special Assistant State's Attorneys*

Sanford P. Dumain *(pro hac vice)*
Peggy J. Wedgworth *(pro hac vice)*
Jennifer S. Czeisler *(pro hac vice)*
J. Birt Reynolds *(pro hac vice)*
Melissa R. Clark *(pro hac vice)*
**Milberg Tadler Phillips Grossman LLP**
One Pennsylvania Plaza, 50th Floor
New York, NY 10119
Phone: (212) 594-5300

*Additional Counsel*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 11th day of April, 2018, I electronically filed the foregoing motion with the Clerk of Court for the United States District Court of the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                                         /s/ John K. Kennedy
                                                         John K. Kennedy, Attorney