# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **COUNTY OF COOK,** | Case No. 14cv2280 |
| Plaintiff, | Hon. Elaine E. Bucklo |
| v. | |
| **BANK OF AMERICA CORP., et al.,** | |
| Defendants. | |

# PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR CLARIFICATION OR RECONSIDERATION

TABLE OF CONTENTS

I. Introduction ........................................................................................................................... 1

II. Background ........................................................................................................................... 2

III. Legal Standard ...................................................................................................................... 4

IV. Analysis ................................................................................................................................. 5

   A. Cook County's Request for Clarification Regarding Out-of-Pocket Costs from Properties Vacated as a Result of the Foreclosure Process Was Resolved by the Court at the April 19 Hearing ........................................................................................... 5

   B. Cook County Seeks Reconsideration Regarding County Services and Other Organizational Damages ..................................................................................................... 7

   C. Cook County Seeks Reconsideration Regarding Lost Tax Revenue ................................. 9

   D. Cook County's Request for Clarification Regarding Injunctive Relief and Non-Economic Damages Appears to be Resolved ..................................................................................... 9

V. Conclusion ........................................................................................................................... 10

## I. INTRODUCTION

Cook County's Motion for Clarification or Reconsideration ("Motion" or "Mtn."), ECF No. 210, seeks clarity regarding the damages Cook County will be permitted to prove in this action. The Supreme Court, in *Bank of America Corp. v. City of Miami*, --- U.S. ---, 137 S. Ct. 1296, 197 L. Ed. 2d 678 (2017) ("*City of Miami*"), issued a directive requiring that plaintiffs in Fair Housing Act ("FHA") cases go beyond foreseeability, and instead allege—and ultimately prove—"some direct relation" between the alleged wrongdoing and injuries. *Id.* at 684. The parties agree that, under *City of Miami*, Cook County can recover damages that "'flow directly' from a discriminatory foreclosure."[1]

But the Court's MTD Order, if interpreted in the way that Defendants suggest, would hold, *as a matter of law at the pleading stage*, that Cook County should be denied the opportunity to present evidence of this causal connection for a substantial portion of Cook County's damages. In Defendants' view, even if Cook County can prove that it incurred expenses to maintain a property vacated as a result of a wrongful foreclosure by Bank of America, Cook County should not be entitled to recover those damages. Likewise, Defendants contend that Cook County should not be entitled to provide proof that tax revenue lost as a result of declining property value flows directly from Defendants' wrongful conduct.

Cook County is not asking the Court to determine at this early stage that its damages were proximately caused by Defendants' alleged FHA violations. Rather, Cook County believes it is premature to determine that certain injuries are too "remote," as a matter of law, from the alleged wrongdoing. Cook County has alleged that its injuries can and will be tied directly to

---

[1] Defendants' 5/17/18 Opposition to Plaintiff's Motion for [Clarification or] Reconsideration ("Opp."), ECF No. 219, at 2 (citing 3/30/18 Memorandum Opinion and Order ("MTD Order"), ECF No. 204, at 11).

1

Bank of America's wrongful acts, and to specific foreclosed-upon properties such that intervening acts can be excluded from the causal chain. Cook County thus requests that the Court clarify its MTD Order, and reconsider its decision, to ensure that Cook County has the opportunity to present evidence of the direct connection between its injuries and Bank of America's conduct.

## II. BACKGROUND

Cook County's Second Amended Complaint ("Complaint"), ECF No. 177, alleged various injuries stemming from Defendants' alleged FHA violations, including:

> [S]everal categories of out-of-pocket costs, including [1] costs associated with eviction and foreclosure proceedings, as well as [2] costs arising out of the registration, inspection, maintenance, and/or demolition of vacant or abandoned properties. . . . [3] the cost of providing social services to evicted or foreclosed homeowners, as well as [4] police patrol services. The County also claims to have lost [5] "various income relating to abandoned or foreclosed properties," as well as [6] "certain intangible property recording and transfer fee income." In addition to these economic injuries, the County claims [7] "injuries to the fabric of [its] communities and residents arising from the resulting urban blight." . . . . The County also claims [8] non-economic injuries to its neighborhoods and seeks an injunction prohibiting further discriminatory conduct and mandating affirmative steps to remedy the effects of its past discrimination.

MTD Order at 5-6 (internal citations to Complaint omitted).

In its MTD Order, the Court explicitly allowed for damages in category [1], costs associated with eviction and foreclosure proceedings, concluding that "the out-of-pocket costs [Cook County] claims to have incurred in processing the discriminatory foreclosures, such as additional funding for the Cook County Sheriff to serve foreclosure notices and for the Circuit Court of Cook County to process the deluge of foreclosures" were within the "first step" of causation. MTD Order at 19-20.

The Court dismissed that portion of the claims seeking damages regarding [3], social services, [4], policing, and [5], loss of income relating to the properties, concluding "that the

2

County's claimed tax losses, as well as the[] increased costs arising out of the provision of downstream social services such as policing and home-loss counseling, are too remote in time, and too contingent on later events, to satisfy the 'first step' directness requirement that the Court now applies in this context." MTD Order at 18; *id.* at 12 ("the foreclosures remain several steps removed . . . from the tax losses and most of the increased county service costs the County claims as monetary injuries, and . . . neighborhood blight . . . ."). Cook County requests the Court reconsider these categories of harm. Mtn. at 5-7; *infra*, § IV.B and IV.C.

Regarding [7], non-economic injuries arising from urban blight, and [8], non-ecomonic injuries and injunctive relief, the Court did not make an explicit determination, and instead left these avenues for relief open. *See, e.g.,* 4/19/18 Hearing Transcript ("Tr."), ECF No. 219-1, at 15-16, 19-20. Before the Court made this clear at the Hearing, Cook County asked for clarification on this point, Mtn. at 7-10; it appears this issue is now resolved, however. *See* Opp. at 11-12; *infra*, § IV.D.

In explicitly upholding category [1], the Court used open-ended language, allowing Cook County to seek out-of-pocket costs "**such as**" those enumerated in category [1]. MTD Order at 19-20. Thus, like the injunctive relief that was left open by the Court, it appears that categories [2], costs related to properties vacant or abandoned due to foreclosure, and [6], loss of property recording and transfer fee income, were left open and subject to Cook County's ability to prove the existence of such damages and their causal connection to Bank of America's FHA violation. The court in *County of Cook v. HSBC North America Holdings, Inc.*, No. 1:14-c-v2031, 2018 U.S. Dist. LEXIS 89724, at *30 (N.D. Ill. May 30, 2018), concluded that the County "plausibly alleged that its loss of recording, transfer, and intangible tax income were proximately caused by HSBC's allegedly improper use of MERS . . . ."

Indeed, at the Hearing, the Court stated: "I'm not quite sure why you wanted me to clarify some of this . . . I had said 'such as.' . . . Ordinary understanding of 'such as' doesn't mean that it's a limitation." Tr. at 11, *see also id.* at 15-16 ("when you're dealing with a language such as 'such as' and [the Court hasn't] said anything at all about injunctive relief, you just go ahead and save it for another day;" *id.* at 19-20 (injunctive relief "wasn't raised [by Defendants], so we just left it").

In response, Cook County's counsel noted: "what you're going to see next from the defendants is, well, [an argument that the Court's MTD Order] limited [damages] to the sheriff's costs and the Cook County costs." Tr. at 11. As predicted, Bank of America, in disregard of the Court's statements at the Hearing, now argues that all damages—other than those explicitly identified by name in the Court's MTD Order—are not recoverable. Defendants' claim Cook County's Motion is "brazen" and "feign[s] confusion," Opp. at 1, but their own brief, and its contradictions with this Court's statements at the Hearing, highlights the need for clarity and/or reconsideration of the Court's MTD Order.

### III. LEGAL STANDARD

There is no dispute that the MTD Order is an interlocutory order. Accordingly, this Court has the discretion, pursuant to its inherent power, to revise the Order. *See* Mtn. at 3. "The considerations that govern the reconsideration of interlocutory orders are essentially equitable." *Harrisonville Tel. Co. v. Ill. Commerce Comm'n*, 472 F. Supp. 2d 1071, 1074 (S.D. Ill. 2006). Motions to reconsider an interlocutory order "may be entertained and granted as justice requires." *Akzo Coatings, Inc. v. Ainger Corp.*, 909 F. Supp. 1154, 1160 (N.D. Ind. 1995); *see also Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993) (noting that district courts have "practically unbridled discretion" to reconsider an interlocutory order). A motion for reconsideration is valuable when a court "patently misunderstood a party," decided an

issue outside of the issues presented by the parties, "made an error not of reasoning but of apprehension," or there was a "controlling or significant change in the law or facts" since the issue was submitted to the court. *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).[2]

IV. ANALYSIS

    A. **Cook County's Request for Clarification Regarding Out-of-Pocket Costs from Properties Vacated as a Result of the Foreclosure Process Was Resolved by the Court at the April 19 Hearing**

The MTD Order upheld "the out-of-pocket costs [Cook County] claims to have incurred in processing the discriminatory foreclosures, "such as" sheriff and court costs, and the Court stated at the April 19, 2018 hearing that the "ordinary understanding of 'such as' doesn't mean that it's a limitation." Tr. at 11, *see also id.* at 15-16. The Court also appeared to agree with Cook County's request for the right to be able to prove out-of-pocket costs, not limited to sheriff and court costs, that flow directly from Bank of America's bad acts. *Id.* at 14 ("Right."). Accordingly, it is Cook County's understanding that it may prove as damages all of its out-of-pocket costs, not limited to sheriff and court costs, that flow directly from Bank of America's

---

[2] Some cases suggest that a motion for reconsideration of an interlocutory order is only appropriate to correct a manifest error of law or fact, or present newly discovered evidence. *See e.g.*, *Velsicol Chem., LLC v. Westchester Fire Ins. Co.*, No. 15-cv-2534, 2017 U.S. Dist. LEXIS 212908, at *4-5 (N.D. Ill. Dec. 29, 2017). This standard is incorrect for two reasons. First, it ignores the fact that a court may grant reconsideration based on equitable considerations or when justice so requires. *See Harrisonville Tel. Co.*, 472 F. Supp. 2d at 1074; and *Akzo Coatings*, 909 F. Supp. at 1159-60. Second, it appears to be premised on the standard set forth by Federal Rule of Civil Procedure ("Rule") 59 for motions seeking a new trial or amending a judgment. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000), *cert. denied, Beverley v. Oto*, 531 U.S. 1152 (2001) (on a motion for reconsideration under Rule 59, the movant must present newly discovered evidence or establish a manifest error of law or fact); and *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (stating that a motion for reconsideration was limited to correcting manifest errors of law or fact or presenting newly discovered evidence in context of reviewing a motion for reconsideration after an order granting summary judgment). Cook County is not moving for reconsideration under Rule 59.

bad acts.[3] Consequently, further clarification is unnecessary unless the Court finds that Cook County's understanding is erroneous.

Notwithstanding the Court's clarification at the Hearing, Defendants argue that the MTD Order prevents Cook County from presenting evidence of the causal connection between Cook County's other out-of-pocket costs—such as "inspecting, securing, cleaning, maintaining, and/or demolishing abandoned or vacant properties"—and Bank of America's alleged FHA violations. Opp. at 3. Defendants focus on language in the MTD Order that they claim distinguishes between injuries that "arise not out of the foreclosure process, but out [of] some unspecified effects of that process." Opp. at 4 (citing MTD Order at 13). But this cited portion of the MTD Order did not address the enumerated out-of-pocket costs at issue here. *See* MTD Order at 13-14 (addressing "a catch-all claim for 'various other injuries resulting from the deterioration and blight,'" separate from the out-of-pocket costs and lost revenues at issue here.).

If Cook County offers proof that its out-of-pocket costs flow directly from Bank of America's discriminatory foreclosures (or foreclosures of discriminatory loans), it should be entitled to recover those damages. Just as Cook County incurs costs associated with the administrative aspects of foreclosure, it incurs costs associated with the physical aspects of the vacant and/or foreclosed property. Cook County intends to offer evidence of the out-of-pocket costs it incurred that were associated with maintaining specific properties that became vacant when they went into default and/or were wrongfully foreclosed-upon by Bank of America. To the extent Bank of America argues that there could be intervening causes of such costs, that

---

[3] These out-of-pocket damages include, but are not limited to, the loss of property recording and transfer fee income. As noted above, the court in *HSBC North America Holdings,* 2018 U.S. Dist. LEXIS 89724 at *30, found the County alleged a "squarely direct relationship" between HSBC's conduct and those damages.

6

should be an issue reserved for proof.[4]

### B. Cook County Seeks Reconsideration Regarding County Services and Other Organizational Damages

The MTD Order concluded, without briefing, that Cook County's organizational harms and injuries relating to county services are "too remote in time, and too contingent on later events, to satisfy the 'first step' directness requirement." *See* Mtn. at 5-7 (citations to MTD Order omitted). But, Cook County does not seek remedies for harms "too remote," "too contingent on later events" or beyond the "first step;" it seeks the opportunity to provide evidence that certain of its injuries are tied to specific vacant or foreclosed-upon properties and have a direct relation to the alleged FHA violation.

Defendants dispute Cook County's right to recover these injuries by attempting to distinguish longstanding precedent, allowing for the recovery of organizational harms in FHA cases, and claiming those cases apply only in the standing context. Opp. at 6-8; see Mtn. at 6-7 (citing authority supporting recovery of harms relating to "a destabilization of the community and a corresponding increased burden on the City in the form of increased crime and an erosion of the tax base;" the diversion of scarce resources and a frustration of the County's ability to perform services; "deflection of the agency's time and money from counseling to legal efforts directed against discrimination;" and "interest in promoting equal housing opportunities." (citations omitted)).

These courts did not create a *limitation* by holding that the alleged injuries confer standing, they set forth the *foundation* for potential claims for damages. Their focus on standing

---

[4] Bank of America, as the servicer of defaulted loans and/or owner of foreclosed properties, is responsible for the maintenance and repair of those properties. *See, e.g.,* Compl. ¶337. Accordingly, there can be no intervening third party cause for the lack of maintenance or repair of those properties where it is Bank of America's responsibility in the first place.

7

does not preclude a finding of proximate cause under the same reasoning. Indeed, they provide support for the conclusion that harms resulting from "indirect" discrimination (e.g., to a secondary victim of FHA discrimination like a municipality) may "directly" flow from that discrimination. In *Havens Realty Corp. v. Coleman*, for example, the Supreme Court compared "direct" versus "indirect" harms not in the context contemplated by the Supreme Court in *City of Miami*, but to make a distinction between third-party and first-party standing. 455 U.S. 363, 375-76 (1982); *But cf.* MTD Order at 15-16. The Supreme Court found this distinction of "little significance" for FHA standing; both direct and indirect victims can demonstrate damages "fairly traceable" to defendants' actions. *Havens,* 455 U.S. at 375-76. (And likewise, in the proximate cause context, both direct and indirect victims can demonstrate damages that "directly flow" from defendants' actions).

In *Havens*, the Supreme Court recognized that factual development was crucial to the determination of whether plaintiffs themselves were actually injured by the alleged wrongdoing:

> It is indeed implausible to argue that petitioners' alleged acts of discrimination could have palpable effects throughout the *entire* Richmond metropolitan area . . . . Nonetheless, in the absence of further factual development, we cannot say as a matter of law that no injury could be proved. Respondents have not identified the particular neighborhoods in which they lived, nor established the proximity of their homes to the site of petitioners' alleged steering practices. Further pleading and proof might establish that they lived in areas where petitioners' practices had an appreciable effect. Under the liberal federal pleading standards, we therefore agree with the Court of Appeals that dismissal on the pleadings is inappropriate at this stage of the litigation.

*Id.* at 377-78.

These cases open the door for a broad range of injuries by both direct and indirect victims of FHA violations. Rather than prematurely draw a line as to which of Cook County's damages are provable, Cook County should have the opportunity to provide evidence that the costs it incurred in shifting resources (to provide services relating to specific foreclosed-upon properties)

8

"directly flow" from Bank of America's conduct; i.e., they are within the "first step" of an FHA violation and are not so "downstream" that intervening factors break the causal chain.

### C. Cook County Seeks Reconsideration Regarding Lost Tax Revenue

Defendants' arguments regarding Cook County's claim for lost tax revenue further illustrate the need for reconsideration of the Court's decision; they are entirely fact-based and can be disproven by evidence. Defendants argue that, even if Cook County connects its tax losses to specific, wrongful foreclosures, that link is insufficiently direct. Opp. at 10. But Defendants' do not contend that, as a matter of law, a municipality's lost tax revenue can never bear "some direct relation" to an FHA violation (though the MTD Order could have that effect). Rather, Defendants list a number of hypothetical intervening factors, each of which is a red herring, and each of which is subject to proof. *Id.*

Whether a foreclosure resulted in a vacancy, for example (Opp. at 10), can be established by evidence. Likewise, Defendants' claim that declining property values may have been caused by any number of factors (*id*.) can be determined by evidence. While Cook County may not be able to show that "disrepair by . . . a subsequent occupant," *see id.*, "directly flows" from Bank of America's wrongful foreclosures, if disrepair was the result of the vacancy of a property improperly foreclosed upon by Bank of America, such damages may indeed have "some direct relation" to that foreclosure. Cook County should be allowed to prove this connection.

### D. Cook County's Request for Clarification Regarding Injunctive Relief and Non-Economic Damages Appears to be Resolved

Defendants' motion to dismiss briefing did not expressly address injunctive relief or non-economic damages; the Court's MTD Order did not address (let alone dismiss) such claims; Defendants argue any discussion of related relief is "premature," Opp at 11-12; and, at the Hearing, the Court suggested that these types of relief are open and an available avenue for

9

recourse for Cook County. *See e.g.,* Tr. at 15-16 ("when you're dealing with a language such as 'such as' and [the Court hasn't] said anything at all about injunctive relief you just go ahead and save it for another day."); *id.* at 19-20 (injunctive relief "wasn't raised [by Defendants], so we just left it").

Accordingly, it is Cook County's understanding that its request for relief for non-economic harms and injunctive relief were not dismissed and are still viable. Consequently, Cook County does not seek clarification or reconsideration of these issues unless Cook County's understanding is incorrect.

## V.     CONCLUSION

*City of Miami* neither required plaintiffs to set forth evidence at the pleading stage, nor created a heightened pleading standard beyond that required by Federal Rule of Civil Procedure 8. Cook County's plausible allegations that its injuries flow directly from Bank of America's wrongful foreclosures should have been accepted as true, and should not have been disregarded in favor of Bank of America's suggestion of hypothetical intervening factors, the legitimacy of which is a question of fact.

With neither party having had the opportunity to offer evidence regarding the causal link between the wrongdoing and the injuries, a determination that the requisite link can never be made (i.e., that the damages alleged here can never "flow directly" from discriminatory foreclosures) is not only premature, but has far-reaching implications for future FHA claims. Indeed, the FHA was created in part to prevent the exact type of damages Cook County alleges here, e.g., "the ruin brought on by absentee ownership of property," "further deterioration" of "municipal tax bases," "deteriorating facilities and services," and other harms to "the whole community." National Advisory Commission on Civil Disorders ("Kerner Commission") Report 1011; 114 Cong. Rec. at 2993 (1968); *Trafficante v. Metro Life Ins. Co.*, 409 U.S. 205, 211

(1972) (quoting 114 Cong. Rec. at 2706 (statement of Sen. Javits)); see 114 Cong. Rec. at 9559 (statement of Rep. Geller).

Defendants downplay the significance of the purpose and intent of the FHA. Opp. at 10. However, the Supreme Court has made clear that "[w]hat falls within that 'first step' depends in part on the 'nature of the statutory cause of action.'" *City of Miami*, 137 S. Ct. 1296, 197 L. Ed. 2d at 691 (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U. S. ___, 134 S. Ct. 1377, 1390 (2014)).

For the reasons explained herein, and in Cook County's opening Motion, Cook County respectfully requests that its motion be granted, and the Court permit Cook County the opportunity to prove that its damages, which it has alleged flow directly from Defendants' discriminatory foreclosures, have "some direct relation" with the alleged FHA violations.

Dated: June 21, 2018                    Respectfully Submitted,

**KIMBERLY M. FOXX,**
**STATE'S ATTORNEY FOR COOK COUNTY**

By:   */s/ James M. Evangelista*
James M. Evangelista (pro hac vice)         John K. Kennedy
jim@ewlawllc.com                             jkennedy@jdmlaw.com
David J. Worley (pro hac vice)               James D. Montgomery, Sr.
david@ewlawllc.com                           james@jdmlaw.com
Kristi Stahnke McGregor (pro hac             **JAMES D. MONTGOMERY &**
vice)                                        **ASSOCIATES, LTD.**
kristi@ewlawllc.com                          One North LaSalle Street, Suite 2450
**EVANGELISTA WORLEY, LLC**                  Chicago, IL 60602
8100A Roswell Road, Suite 100                Telephone:  (312) 977-0200
Atlanta, GA 30350                            Facsimile:   (312) 977-0209
Telephone:  (404) 205-8400

*Special Assistant State's Attorneys*

Sanford P. Dumain (*pro hac vice*)
Peggy J. Wedgworth (*pro hac vice*)
Melissa R. Clark (*pro hac vice*)
Jennifer S. Czeisler (*pro hac vice*)
J. Birt Reynolds (*pro hac vice*)
**MILBERG TADLER PHILLIPS GROSSMAN LLP**
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
Telephone: (212) 594-5300

*Additional Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the above and foregoing **PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR CLARIFICATION OR RECONSIDERATION** on all parties by causing a true and correct copy to be filed with the court's electronic filing system, which should automatically send a copy to all counsel of record.

Dated: June 21, 2018      */s/ James M. Evangelista*
                 James M. Evangelista