IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK,<br>         Plaintiff,<br>v.<br><br>BANK OF AMERICA CORPORATION,<br>BANK OF AMERICA, N.A., COUNTRYWIDE<br>FINANCIAL CORPORATION,<br>COUNTRYWIDE HOME LOANS, INC.,<br>COUNTRYWIDE BANK, FSB,<br>COUNTRYWIDE WAREHOUSE LENDING,<br>LLC, BAC HOME LOANS SERVICING, LP,<br>MERRILL LYNCH & CO., INC., MERRILL<br>LYNCH MORTGAGE CAPITAL INC., AND<br>MERRILL LYNCH MORTGAGE LENDING,<br>INC.,<br>         Defendants. | CASE NO.: 1:14-cv-02280<br><br>HONORABLE MARY M. ROWLAND |

**PLAINTIFF'S MOTION TO COMPEL LOAN DATA AND FOR AN EXTENSION OF TIME TO PRODUCE DAMAGES INFORMATION**

Plaintiff, County of Cook ("County"), respectfully moves this Court for: (1) extensions of time, as set forth below, to produce the Countrywide-related damages information ordered by the Court in its January 23, 2019 Minute entry (ECF No. 264); (2) for an order requiring Defendants to produce missing loan data; and (3) for Defendants to properly certify the unavailability of all missing loan data. In support of this motion the County states:

**Background**

On January 23, 2019, the Court ordered Defendants to "update previously produced data" on loans originated and serviced by Bank of America and Countrywide by March 4, 2019. ECF No. 264. Recognizing the necessity of the County having complete data to identify foreclosures resulting from Defendants' discriminatory housing practices and produce foreclosure related damages information, the Court also ordered Defendants to "certify" whether certain missing data

1

had been searched for and whether it existed. *Id*. The Court further ordered that the County would have until April 12 to produce its foreclosure related damages for those loans originated by Countrywide. *Id.*

Critical to the County's ability to timely produce its damages information is the prerequisite that Defendants' must timely produce complete and understandable data in an appropriate and readily useable manner. Defendants production does not meet this bar. Instead, Defendants selectively produced data and unnecessarily dragged out this process, which have impeded the County's experts' ability to identify the foreclosures on loans that have a discriminatory origination and/or servicing component. Consequently, it has made the County's task of timely identifying the correct foreclosures and producing the corresponding dockets and damages information impossible within the April 12 time frame ordered by the Court.

## Basis for the County's Motion & Requested Relief

Defendants produced updated servicing data on March 4, 2019, via ***six separate spreadsheets***, some of which replaced Defendants' 13 previously produced origination and servicing data spreadsheets, some of which changed data from the data in those older spreadsheets and some of which provided entirely new spreadsheet data fields. In addition to producing this servicing data in this unnecessarily disjointed manner, Defendants:

- failed to timely provide critical default status on any of the loans;

- refused to combine any of the origination data with the servicing data so that it was readily useable and so that both sets of experts (the County's and Defendants') would be working from the same data set;

- failed to provide certain critical loan origination interest rate information;

- refused to provide corresponding foreclosure docket numbers for the vast majority of the loans - as the Court ordered; and

- failed to produce or properly certify the unavailability of critical missing loan origination data -- that the Court ordered Defendants to certify to. [1]

The disjointed manner in which Defendants produced their data, and the missing data itself, have made the process of combining the data on a loan by loan basis incredibly time consuming and has precluded the County's experts from being able to complete, in a timely manner, their regression analysis to identify all the Countrywide originated loans at issue that resulted in foreclosure and damage to the County. Consequently, the County's experts need additional information and additional time to complete their regression analysis on Defendants' loan origination and servicing data. Without this information, the County cannot accurately identify the foreclosures that resulted from Countrywide's discriminatory practices or its foreclosure-related damages.

As the County's experts have been reviewing the updated servicing data they did get - after the various data sets were coordinated and combined so that the data in individual loan files could be assembled into a useable format -- numerous questions arose about missing data, the formatting of some of the produced data, the accurate description and meaning of certain data fields, and the interpretation of massive amounts of coded values within those data fields. While Defendants provided answers to some of the County's questions, this process – which has occurred and continued throughout March and April -- has moved far more slowly than the County and its experts anticipated. Indeed, the County only just received – on April 3 and 9 – Defendants' descriptions and code keys for many servicing data fields at issue.

---

[1] No sworn declaration or affidavit has been provided. Rather, Defendants' counsel merely used the term "certified" in a letter (signed by counsel) representing that had "determined after a reasonable investigation that they do not have the requested data." That is not the kind of robust, sworn, certification that the County understood the Court to have ordered, and it certainly is not the type of certification that the County can test at a 30(b)(6) deposition of Bank of America's IT professionals.

The parties have met and conferred a number of times during this time-period including this afternoon, but are unable to agree to the relief requested herein. Consequently, the County seeks an order from the Court requiring Defendants to produce the information discussed below and granting the County's experts additional time to complete their regression analysis on Defendants' loan origination and servicing data. Without this information, the County cannot accurately identify the foreclosures that resulted from Countrywide's discriminatory practices or its foreclosure-related damages.

The most important missing data goes to the very heart of the discriminatory ***origination*** conduct at issue in this litigation – the relative cost of the loans to minority and non-minority borrowers in terms of the respective loan interest rates, origination fees, and APR (annual percentage rate). For example, the APR field contains no data or "0" for approximately 3,000 Countrywide originated loans and over 80,000 Bank of America loans. There is no data provided for any of the loans on the initial mortgage note rate (i.e., the origination interest rate), the corresponding mortgage note interest rate basis (i.e. the applicable interest rate under Libor, 30yr Treasury Note, 20yr Treasury Note, etc.), the amount of origination fees charged, or borrower debt-to-income ratio.

Incredibly, Defendants previously agreed to produce, were ordered by the Court to produce, and/or already had produced such data to the County (for the loan samples ordered by the Court on December 7, 2015 Order (ECF No. 91). [2] Indeed, in a December 1, 2015 letter

---

[2] In response to this Court's December 7, 2015 Order Defendants produced a sample of 10 loan files so that the County could identify the "fields it wished to have included in the Servicing Platform Data." *Id*. The Court noted that "Defendants have already agreed to produce all the fields included in the Loan Application Registration (LAR) data." Thereafter, the County physically marked up one of the sample loan file printouts to reflect the information the County wanted. The County stands ready and willing to provide a copy of this mark-up to the Court, but because the

Defendants had already agreed to produce to the County the following loan origination data points, among many others: "Rate spread reported pursuant to HMDA"; "Denial Reason"; "Debt-to-income ratio"; "Debt-to-income ratio (total)"; "Loan-to-value ratio"; "APR"; "Initial fixed period"; "Rate of ARM"; "Initial & periodic rate reset caps/floors"; "Margins"; "Index used"; "Rate Reset Frequency"; "Interest Rate Floor"; "Interest Rate Cap"; "Concurrent loan origination"; and "Origination fees." Defendants also offered in their December 1 letter to produce the following loan servicing data fields, among many others, relevant to determining whether there was discriminatory loan pricing in the origination process: "Initial note rate" and "Interest rate history (for ARMs) (Initial Note Rate & Interest Rate Over Time)."

After having combined the various data files, and reviewed the data that was produced so far, along with the recently received data field descriptions and other information, the County's experts have confirmed that the critical foregoing data was not produced. There simply is no reason that the origination data Defendants agreed to produce, have been ordered to produce, and are capable of producing, should not be made fully available to the County prior to requiring the County's experts to even *begin* their regression analysis to identify discriminatory loans and foreclosures so that the County can identify and produce its damages information.

Accordingly, the County respectfully requests that the Court order Defendants to update their origination data, including the production all of the LAR registration data and other missing data, or properly certify – by a knowledgeable Bank of America employee under a sworn declaration – whether any such data is not available and identifying with precision the data fields, time period and bank entity for which such data is not available, and certifying whether this information became unavailable before or after Defendants' had a duty to preserve such

---

document has been stamped "Confidential" by Defendants pursuant to the Protective Order, attaching the document as an exhibit here would require that it be filed under seal.

information. The County further requests that the Court order that the County has 45 days from receipt of such additional information and/or certification to complete its regression analysis on the Countywide loans to identify any foreclosures on such loans with discriminatory origination and/or servicing components, and to then identify and produce corresponding damages information.

## Interim Rolling Production

The County cannot *complete* its identification of foreclosures and damages resulting from discriminatory practices on Countrywide originated loans until the missing data is produced. This is because the missing data is critical to identify discriminatory loan pricing and the inability to identify discriminatory loans may adversely impact the overall regression analysis.

Nevertheless, the County is still working diligently to produce dockets, actual cost information and average cost information related to a large number of Countrywide originated loans with a discriminatory *origination* component (that can be identified from the partial information Defendants have produced so far). The County respectfully requests the Court to permit the County to have **until April 30** to do so in light of the delays relating to the County's receipt of data and related information addressed above.

Similarly, the County also is diligently working to identify Countrywide loans that have a discriminatory *servicing* component (that can be identified from the partial information Defendants have produced so far). However, the process of conducting the regression analysis on the servicing data is far more complicated than the process regarding loan originations because there is a tremendously greater amount of servicing data and many more factors to analyze. Moreover, the County only just received Defendants' descriptions and code keys for many servicing data fields at issue. Accordingly, the County respectfully requests the Court permit the

County to have **until May 14** to identify the Countrywide originated loans and foreclosures with a discriminatory servicing component, and to produce the related damages information.

Finally, the County notes that with respect to any partial rolling productions, it must reserve the right to add or remove loans identified to be discriminatory, and adjust its foreclosure-related damages information accordingly, once Defendants produce the missing loan origination data.

## Specific Relief Requested

Based on the foregoing, the County respectfully requests an Order from the Court requiring the following:

1. On or before April 15, 2019, Defendants shall produce in a single CSV (or Excel) file, for all Cook County loans after January 1, 2005, all data in all LAR data fields, particularly including the following LAR data fields (and ***all data in those fields***): "Rate spread reported pursuant to HMDA"; "Denial Reason"; "Debt-to-income ratio"; "Debt-to-income ratio (total)"; "Loan-to-value ratio"; "APR"; "Initial fixed period"; "Rate of ARM"; "Initial & periodic rate reset caps/floors"; "Margins"; "Index used"; "Rate Reset Frequency"; "Interest Rate Floor"; "Interest Rate Cap"; "Concurrent loan origination"; and "Origination fees." Defendants also shall produce in that same CSV (or Excel) file, for all loans, all data in the following servicing fields: "Initial note rate" and "Interest rate history (for ARMs) (Initial Note Rate & Interest Rate Over Time)." Defendants shall further provide in that same CSV (or Excel) file the corresponding loan and/or customer numbers associated with each loan file and which Defendants have produced in their updated servicing files so that this data can be combined with the data previously produced by the Defendants.

2. On or before April 15, 2019, the County will identify any other data and data fields that the County believes Defendants were required to produce and that were not produced, or were not produced correctly, based on the County's ability to discern such errors from the data provided.

3. To the extent Defendants believe that any data does not exist or cannot be produced in items 1 and 2 above, by April 21, 2019, Defendants shall certify, via a sworn declaration from a current and the most knowledgeable Bank of America employee, whether any such data is not available; shall identify with precision, and certify, the data fields, time period and bank entity for which such data is not available; and shall certify whether such information became unavailable before or after Defendants had a duty to preserve such information.

4. To the extent the data in items 1 and 2 above exist, Defendants shall have until April 21, 2019, to produce such data or to identify the specific updated servicing and/or initial loan

origination files already produced where Defendants believe that such data has been provided for the loans, institutions and time period, all as previously ordered by the Court.

5. The County shall have 45 days to complete its regression analyses, and produce responsive damages information, from the latter of the date that: (a) Defendants complete their additional production of all data identified in items 1 and 2 above, (b) the County can confirm the existence and completeness of such data in the productions already made by Defendants which Defendants shall identify by April 21, or (c) the Court rules on any disputes between the parties arising from the matters set forth herein.

6. The County will identify the loans and produce its damages information on those Countrywide originated loans with a discriminatory origination component (that can be identified from the data Defendants have produced so far) on or before April 30, 2019.

7. The County will identify the loans and produce its damages information on those Countrywide originated loans with a discriminatory servicing component (that can be identified from the data Defendants have produced so far) on or before May 14, 2019.

8. The County may add or remove any Countrywide loans, and shall produce the associated damages information, to the extent any supplemental data production by Defendants or other matters set forth herein impacts the County's regression analysis identified in item 5 above.

Dated: April 11, 2019

By: /s/ *James M. Evangelista*

**KIMBERLY M. FOXX,
STATE'S ATTORNEY FOR COOK COUNTY**

James M. Evangelista
*jim@ewlawllc.com*
David J. Worley
*david@ewlawllc.com*
Kristi Stahnke McGregor
*kristi@ewlawllc.com*
Evangelista Worley, LLC
8100A Roswell Road
Suite 100
Atlanta, GA 30350
(404) 205-8400

*Special Assistant State's Attorneys*

Sanford P. Dumain

*sdumain@milberg.com*
Peggy J. Wedgworth
*pwedgworth@milberg.com*
Melissa Ryan Clark
*mclark@milberg.com*
Jennifer Sara Czeisler
*jczeisler@milberg.com*
J. Birt Reynolds
*breynolds@milberg.com*
Milberg Tadler Phillips Grossman LLP
One Pennsylvania Plaza, Suite 1920
New York, NY 10119
(212) 594-5300

***Additional Counsel***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of April, 2019, I electronically filed the foregoing with the Clerk of Court for the United States District Court of the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 11, 2019                                        /s/ *James M. Evangelista*
                                                                          James M. Evangelista