UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

COUNTY OF COOK,

                Plaintiff,

     v.

BANK OF AMERICA CORPORATION,
*et al.*

                Defendants.

Case No. 14 C 2280

Magistrate Judge Sunil R. Harjani

## MEMORANDUM OPINION AND ORDER

Cook County brings this action under the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, alleging that Defendants discriminated against African-American and Hispanic/Latino borrowers in Cook County in the origination and servicing of residential mortgage loans. On August 22, 2019, this case was reassigned to the undersigned magistrate judge from then-Magistrate Judge Rowland for discovery supervision. In effort to resolve the many pending discovery disputes between the parties that have prolonged this litigation, the Court set a deadline for the parties to meet and confer, and then to file motions to compel on all pending discovery disputes. Five motions to compel are now pending before this Court. In this order, the Court rules on two of those motions: (1) Plaintiff's Motion to Compel the Addition of Custodians [339] and (2) Defendants' Motion to Compel the County to Provide ESI Discovery [343]. For the following reasons, the County's Motion to Compel the Addition of Custodians [339] is denied and Defendants' Motion to Compel the County to Provide ESI Discovery [343] is granted in part and denied in part.

## DISCUSSION

The current motions concern the ESI issues on which the parties remain in dispute. The Court addresses the parties' arguments below.

### A.     County of Cook's Motion to Compel the Addition of Custodians

After more than five years of litigation and nearly 26 months of discovery, Cook County moves to compel Defendants to search the electronically-stored information of 24 additional custodians. The parties began the process of identifying Defendants' potential custodians on November 17, 2015. Doc. 351-3 at 4. The County identified "employees of the Company at the operational management level or higher" relevant to each of the Defendants' operations involving marketing, application process, underwriting, funding, mortgage lending, mortgage loan servicing, default servicing, loan modifications, foreclosures, control and compliance, risk assessment, and safety and soundness oversight. *Id.* At that time, the County identified, among others, all custodians whose ESI it now moves to compel. *Id.* On February 18, 2016, the County served a list of 785 proposed custodians. Doc. 113 at 53:22-23.

During a March 24, 2016 status hearing, the parties discussed the custodian issue with then-Magistrate Judge Rowland. Doc. 113. Counsel for the County asserted that "people like [Andrew] Gissinger, who was at the very top of that chart, those are very important people" because "the way that system was set up over there [at Countrywide], it's the people at the top that knew what was going on and intended it and planned it." *Id.* at 59:9-13. In discussing the custodian issue, Judge Rowland stated: "There are not going to be 700 custodians, and there are not going to be 80 custodians, so you're going to need to pick your fights." *Id.* at 69:17-19; *see also* 67:9 (stating "You're not searching 80 e-mail boxes. You're just not."). With the goal of identifying the "most effective people," Judge Rowland ordered: Defendants to identify the amount of data available for

Countrywide custodians; the parties to meet and confer regarding which custodians will be searched for responsive data; and the parties to file a joint status report identifying any custodians still at issue by April 11, 2016. *Id*. at 57:12-13; doc. 108 at 2.

Thereafter, the parties exchanged custodian lists and met and conferred about potential custodians on April 8 and April 11, 2016. The County proposed a narrowed list of 97 custodians, but the parties were unable to reach an agreement regarding email custodians. The parties briefed their positions with respect to the custodian issue for Judge Rowland in a Joint Report on Outstanding Discovery Disputes filed on April 11, 2016. Doc. 120 at 2-17. The parties included a chart of the custodians in dispute that listed the relevant topic(s) for each custodian and identified the custodian's job title. *Id*. at 3-8. On that chart, the County listed all 24 individuals it now moves to compel Defendants to add as custodians. In the Joint Report, Defendants argued that 31 custodians should be searched.

At a status conference on May 18, 2016, Judge Rowland orally ruled on the parties' ESI custodian dispute. Doc. 143. In addition to the custodians Defendants agreed to provide, Judge Rowland ordered Defendants to collect ESI for three additional categories of custodians: (1) nine confidential sources identified in the Complaint, (2) "three new people that were added" by the County (Brian Robinett, John Berens, and John Boland), and (3) Rebecca Mairone and Tony Meola. *Id*. at 4:5-6-15. However, Judge Rowland ruled: "I am not going to allow the -- what I would call the national whistle-blower[s] the -- Mr. O'Donnell, Miss Foster and Miss Winston, to be included in the custodians. . . . I am sure they have very interesting e-mails that would be interesting to read about, but I don't see the relevance to this case." *Id*. at 2:24-3:4. Judge Rowland also did "not [] allow the custodians to include the major players at CW and Bank of America,

Gissinger, Bielanski, Desoer and Lumsden." *Id*. at 3:5-7. Exercising her broad discretion to limit

discovery based upon relevancy and proportionality, Judge Rowland explained:

> I am trying to give you a fair number of custodians. I think we are into the 40s -- or about 40 custodians. I don't want this to become, you know, a monster so that you get such a data dump that you can't swim out of it. Okay?

> And I also don't want the banks having such a - - such a monster to review that we are in 2025 before we are done with discovery in this case. Okay? That doesn't serve anybody.

*Id*. at 7:18-25, 8:1. In total, Judge Rowland ruled that the County was entitled to ESI from 38

specific custodians, including the ESI for Countrywide CEO Angelo Mozilo. Judge Rowland

stated that she was "done with custodians. So let that work begin." *Id*. at 6:22-23. The County

did not seek reconsideration of Judge Rowland's ruling on the custodian issue nor did it file

objections with the district court concerning Judge Rowland's order.

Subsequently, Defendants collected the data from the 38 Court-ordered custodians and

transmitted it to an e-discovery vendor.[1] Defendants began reviewing ESI documents in February

2019 and say they "dramatically accelerated their review in July 2019." Doc. 348 at 9. As of

September 16, 2019, Defendants had produced over 35,000 ESI documents consisting of over

137,000 pages, which were produced through four separate productions beginning on April 12,

2019. Plaintiffs' reply brief confirms that Defendants have produced 45,973 documents as of

October 1, 2019. Doc. 357 at 10, n.13.

Although styled as a Motion to Compel, the County actually seeks reconsideration of Judge

Rowland's May 18, 2016 ruling. A district court has "discretion to reconsider its interlocutory

---

[1]     On July 27, 2016, Judge Rowland stayed the case pending the Supreme Court's decision in *Bank of America Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296 (2017). Doc. 156. After the *Miami* decision, Judge Bucklo issued a motion to dismiss decision on March 30, 2018 (Doc. 204) and clarified, but denied reconsideration of, that decision on August 17, 2018. Doc. 228. On October 3, 2018, Judge Bucklo re-referred the case to Judge Rowland for discovery supervision and discovery has been proceeding since then. Doc. 239.

rulings, subject to the law-of-the-case doctrine." *Phillips v. Baxter*, 768 Fed.Appx. 555, 558 (7th Cir. 2019); Fed. R. Civ. P. 54(b) (non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). "[T]he law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chicago*, 486 F.3d 294, 301 (7th Cir. 2007). The purpose of the doctrine is to "further consistency, to avoid constantly revisiting rulings, and to conserve judicial resources." *Sharp Electronics Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009). The presumption against reconsideration of earlier rulings "holds when the case is reassigned from one judge to another." *Minch*, 486 F.3d at 301. "In situations where a different member of the same court re-examines a prior ruling, 'the law of the case doctrine . . . reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one." *Id.* (internal citations and quotations omitted); *but see Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997) (a second judge who inherits a case from a member of the same court "may alter previous rulings if he is convinced that they are incorrect."). Nevertheless, the law of the case doctrine applies with less force when the prior ruling was interlocutory, as in this case. *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).

Against this backdrop, the Court finds that the County has not presented a compelling reason to disturb Judge Rowland's custodian ruling. The County argues that Judge Rowland's order excluding these custodians was "premised on a *prior* complaint, *before* discovery was earnestly underway, *before* Plaintiff learned of the critical importance of these Custodian witnesses, and seemingly based on Defendants' *bare* assertion that the Custodians are 'irrelevant.'" Doc. 339 at 3. On the record presented, the Court finds the County's arguments

unpersuasive. First, the County has not provided a sufficient explanation as to how the new allegations of the SAC change Judge Rowland's relevancy and proportionality custodian analysis. Rather, the County merely states that its "SAC added a stand-alone claim under the Fair Housing Act for discriminatory mortgage servicing and foreclosure practices," "[n]ine of the additional custodians [Anne Cardozo, Tammy Spriggs, Sylvia Kawakami, George Ellison, Jennifer Eisenberg, Laura France, Patrick Carey, Kelly Kent, Rene Giacalone] are relevant to those allegations," and the County's "need for those custodians is *greater* now due to these additional allegations." Doc. 357 at 4. The general assertion, without any further elaboration, that the County's need for these nine custodians is greater because of the SAC's new mortgage servicing and foreclosure practices claim does not satisfy the compelling reason standard. Moreover, the County's statement does not explain why these nine additional custodians will have different information than current custodians who had similar loan modification roles, including John Murray (Default Servicing, Loan Modification), Eric Wrobel (Senior Vice President, Loss Mitigation & Foreclosure), and Laura Bartolomea (Credit Loss Mitigation Strategies, Policy & Governance), or similar responsibilities for servicing of legacy Countrywide loans, including Larry Washington (Legacy Asset Servicing, Servicing Portfolio Strategy), Rebecca Mairone (Legacy Asset Servicing, Default Servicing), Helen Eggers (Servicing Initiatives, Legacy Asset Servicing), Bill Senhauser (Legacy Assert Servicing, Compliance), and David Doyle (Legacy Assert Servicing, Foreclosure Review). Further, the County does not attempt to link any of the remaining additional proposed custodians to its added stand-alone claim for discriminatory mortgage servicing and foreclosure practices in the SAC. Based on the limited explanation by the County, the Court is unable to find that the SAC impacts Judge Rowland's relevancy and proportionality analysis.

The County also says that it has learned through recent meet and confers that Defendants are using "technology assisted review" ("TAR") to aid them in their ESI collection. It argues that Defendants' use of TAR affects Judge Rowland's assessment, which was based on the ESI burdens and the volume of data that would be generated from such searches. The Court disagrees that TAR eliminates Judge Rowland's expressed concerns about the burden of ESI discovery in this case. Despite using TAR to target likely responsive documents, Defendants have reviewed 400,000 ESI documents to date for the 38 Court-ordered custodians. According to Defendants, "[si]nce mid-July 2019, some 36 attorneys have been reviewing documents collected from the Court-ordered custodians full time." Doc. 348-9. Moreover, the charges by Defendants' ESI vendor for document processing, review, and production are projected to exceed $1,300,000 and this figure does not include Defendants' own personnel costs in collecting the documents or outside counsel's costs and privilege review work. These numbers undermine any suggestion that Defendants' use of TAR to aid in their ESI production affects Judge Rowland's proportionality basis for denying the County's request for ESI from the custodians at issue here.

There is one new development related to the SAC which cuts against expanding the number of custodians ordered by Judge Rowland and increasing the total cost of ESI production in this case. In her ruling on Defendants' Motion to Dismiss the SAC, Judge Bucklo limited the County's case to a "narrow category" of foreclosure-related injuries that flow directly from the alleged "discriminatory foreclosures." Doc. 204 at 19-20. Judge Bucklo noted that while the SAC does not quantify "this discrete subset of losses, they presumably represent only a small portion of the damages the County seeks." *Id*. at 20. She was "skeptical that this narrow category of foreclosure processing costs is worth fighting over in a suit of this magnitude." *Id*. This narrowed amount in

controversy weighs against modifying Judge Rowland's May 18, 2016 order to add additional custodians to Defendants' ESI searches.[2]

Second, the advanced discovery posture of this case contributes to the Court's conclusion that the County has not met its burden of providing a compelling reason to reconsider Judge Rowland's custodian ruling. The County suggests that revelations in discovery have caused it to seek these additional custodians, asserting that "through a review of the documents produced by Defendants to date and through its extensive investigation efforts, [the County] has identified a very strong basis for demanding documents from each of the Custodians." Doc. 339 at 9. However, despite the substantial amount of discovery that has already been produced by Defendants, the County has identified no specific documents or information it has come into possession of since Judge Rowland's May 18, 2016 ruling which prompted it to seek additional custodians and the date when it received that discovery.

Next, the County's claim that it learned of the "critical importance" of these custodians only *after* Judge Rowland's ruling is seriously undermined by the fact that the list it presented to Judge Rowland included all 24 of the custodians it now seeks to compel. For example, the County claims that it needs ESI from Andrew Gissinger, Andy Bielanksi, Barbara Desoer, and Greg Lumsden, four "senior level Countrywide employees," because it has learned that they "met on a monthly basis, with Countrywide's CEO Anthony Mozilo, to strategize and implement Countrywide's predatory and discriminatory mortgage lending practices." Doc. 339 at 7. This is not a new argument. The County similarly argued in the parties' April 11, 2016 Joint Report to

---

[2]     The Court recognizes that the County has moved Judge Bucklo for reconsideration of her March 30, 2018 Memorandum Opinion and Order, arguing that she should adopt the reasoning of the Eleventh Circuit on remand from the Supreme Court in *Miami* and "find that the County has adequately alleged proximate cause for its damages of lost property value, lost tax revenue, and any increased county services that are alleged to have a direct and logical bond to Defendants' discriminatory equity stripping scheme." Doc. 297 at 2.

Judge Rowland that these four individuals who held high level positions at Countrywide "are highly critical as they are primarily responsible for much of the discriminatory equity stripping scheme at the heart of the Complaint." Doc. 120 at 10. Judge Rowland considered and rejected the County's request for ESI from "major players" like Gissinger, Bielanski, Desoer, and Lumsden. Doc. 143 at 3:5-8. Moreover, the County fails to note that Judge Rowland ordered Defendants to collect the available ESI from Countrywide CEO Anthony Mozilo. Thus, the County will have these four custodians' communications with Mr. Mozilo.

Another example that contradicts the County's assertion that it has learned of the importance of the requested additional custodians after Judge Rowland's ruling involves the three Countrywide whistleblowers (Edward O'Donnell, Michael Winston, and Eileen Foster). In the Joint Report to Judge Rowland, the County argued that "three of Cook County's requested custodians are high level employee-whistleblowers previously involved in direct litigation against Countrywide and/or Bank of America, particularly including mortgage lending and servicing issues that the County believes are directly relevant to this case." Doc. 120 at 10. Judge Rowland specifically denied the County ESI documents from these custodians by holding they are not "relevan[t] to this case." Doc. 143 at 2:23-3:4. Given that the County has been aware of these custodians' identities and roles for some time and Judge Rowland was fully aware of and considered them in her relevancy and proportionality assessment, the County's argument that it learned of their significance after Judge Rowland's ruling is not convincing.

Finally, the County's assertion that Judge Rowland's custodian ruling was based on "Defendants' *bare* assertion that the Custodians are irrelevant" is belied by the actual record showing that the parties briefed the custodian issue and Judge Rowland carefully considered the relevance, burden, and proportionality of the discovery sought by the County. Moreover, if the

County believed Judge Rowland's custodian ruling was in error, it should have sought reconsideration or should have objected.

For these reasons, the County has not convinced the Court that Judge Rowland's relevancy and proportionality analysis of the appropriate custodians and the resulting burden on Defendants is incorrect. As a result and on the present record, the Court denies the County's Motion to Compel the Addition of Custodians to Defendants' ESI searches.

**B.     Defendants' Motion to Compel the County to Provide ESI Discovery**

Defendants' Motion presents four issues for the Court's resolution regarding the search terms and custodians the County will run. Following the meet and confer process, Defendants have narrowed their request from 38 custodians to 28 custodians and 75 sets of search terms to 46 sets of search terms related to Defendants' statute of limitations defense and claim that the County has overstated its damages.

First, the parties dispute the appropriate ESI custodians from whom the County should be required to collect ESI. The County maintains that its notice and knowledge are not relevant to the commencement of the FHA's two-year limitations period under the express language of the FHA. Nevertheless, the County states that as a matter of compromise, it has agreed to run certain notice-related terms on the County's custodians. According to the County, the separate Offices of the Sheriff, the Clerk, and the Chief Judge, who are not parties to this litigation, have agreed to run the *damages* search terms on their agreed-to custodians as a reasonable compromise. This makes sense as the County alleges that it has been injured because the Sheriff's Office, the Office of the Chief Judge, and the Clerk of the Circuit Court, Chancery Division incurred foreclosure related costs caused by Defendants' allegedly discriminatory mortgage origination and servicing activities.

The parties dispute whether the separately-elected offices of the Sheriff's Office, Clerk's Office, or Chief Judge's Office should also be required to run the *notice* search terms. The County argues that the notice search terms are not relevant or proportional for the Sheriff's Office, Clerk's Office and Chief Judge's Office. The Court overrules the County's objection. First, the County's claim that the knowledge of these "separately elected offices" cannot be imputed to the County is premature. Although Judge Rowland was not asked to rule on whether the knowledge of these separately-elected offices could be relevant, Judge Rowland denied a motion for a protective order by the County which argued that only the knowledge of the President and the Board of Commissioners can be imputed to the County. She determined that the issue of whether the knowledge of certain officials can be imputed onto the County should be raised at a later date and will ultimately be decided by the district judge "after evidentiary submission (and under the summary judgment analysis)." Doc. 289 at 3-4.

For the reasons articulated by Defendants and for purposes of discovery, the Court finds that the ESI from custodians from the Sheriff's Office, Clerk's Office, and Chief Judge's Office may yield relevant evidence bearing on Defendants' notice and knowledge defenses. Even if the knowledge of these officials is not imputable, the County may have become aware of information within these offices if the custodians were communicating with the Cook County President or Commissioners. The County argues that communications with the Cook County President or Commissioners would be captured by the agreed-to searches of ESI from the County custodians from the Board of Commissioner and/or President's Office, but as the Court understands it, the County is not collecting ESI from all Commissioners during the relevant period. Of course, the County remains free to argue to the district judge after discovery that notice and knowledge are not relevant because there is no discovery rule under the FHA and that the ESI from officials other

than the President and Board of Cook County cannot be imputed to the County. However, in the context of discovery proceedings, information need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1).

Further, the County has not established that the burden of searching for ESI from these custodians exceeds the benefit from their production. As the party resisting discovery, the County bears the burden of showing that Defendants' proposed custodians are not proportional to the needs of the case. *Young v. City of Chicago*, 2017 WL 25170, at *9 (N.D. Ill. Jan. 3, 2017) ("The party opposing discovery has the burden of showing that the discovery is overly broad, unduly burdensome, or not relevant."). The County has not provided the Court with facts from which it can assess whether the requested custodians place an undue burden on the responding offices in light of the proportionality factors. For example, in support of its argument, the County did not run any test searches across the ESI of any of the disputed custodians to assess whether Defendants' proposed custodians would have any material effect on the overall ESI identified. Lacking such information, the Court has no basis to conclude that inclusion of custodians from the Sheriff's Office, Clerk's Office, or Chief Judge's Office is too burdensome or that the burden exceeds the likely benefit of those searches.[3] Therefore, the County shall run the notice search terms for these "damages" custodians.

---

[3] The remaining proportionality factors weigh in favor of including the ESI custodians Defendants seek. First, the County's broad complaint accuses ten separate corporate entities of intentionally discriminating against minority borrowers over a ten-plus year period, alleges injuries starting in 2004 and continuing to the present, and seeks declaratory relief, a permanent injunction, and compensatory and punitive damages. Next, the County's damages disclosures included over 18,000 at-issue loans for which the County seeks about $18 million in alleged damages. Additionally, Defendants have no access to these custodians' ESI and the County has produced a total of only 1,266 documents to Defendants in discovery, the majority of which are publicly-accessible documents that are available on the County's website. Further, given that the time period in question is more than seven years ago (prior to March 31, 2014), many County witnesses will likely have trouble recalling facts with precision and ESI will allow the parties to obtain documents reflecting contemporaneous facts concerning Defendants' statute of limitations and damages defenses.

Second, the County requests that the "AND" connector be replaced with "w/15" in the searches proposed by Defendants to avoid undue burden. The sole reason for the County's request is that its ESI incudes Board of Commissioners meeting packages and resolutions, which are comprised of multiple documents in a single "document" and are hundreds of pages long. The County thus argues that if the term "AND" is used, the search will likely return "documents" that are actually multiple documents comprising hundreds of pages where the connected terms are actually referenced in different documents. For example, the County claims that if the first search string on the proposed list is run with "AND," it will return board packages in which "CW" is mentioned in one document and the word "hous*" is mentioned in a completely unrelated document hundreds of pages later. The County maintains that changing the connector from "AND" to "w/15" will ensure that the terms actually appear in a single document making it much more likely that the document may be relevant. In response, Defendants argue that the County has not provided any details or evidence to support its burden claim and that the County's proposed proximity limiter would exclude documents helpful to Defendants' defenses, including whole categories of documents like PowerPoint Presentations.

Again, the burden position taken by the County is without any factual support. The Court does not doubt that the use of the connector "AND" will produce more hits than the connector "w/15," but the County has not given the Court any information from which it can perform the balancing of benefits and burdens. The County did no representative sampling and comparison of any of the proposed searches to determine the extent to which the burden of reviewing the collected documents that hit on Defendants' search terms is disproportionate. Nevertheless, the Court finds that the "AND" connector is overbroad in light of the County's concern regarding Board of Commissioners board packages and the "w/15" connector is excessively narrow given that many

of the sets of search terms already contain one or more proximity limiters. The Court concludes that a "w/60" connector is an appropriate connector to be used for the ESI searches here because it will likely produce documents where the set of search terms are within a single document. The selected connector has the potential to capture a broader range of documents where the search terms will appear, but will not limit them to appearing within the same paragraph, which would likely be the result if the Court selected "w/15." Ensuring the search terms appear on the same page or the same document will have a high probability of capturing relevant information. At the same time, the use of the connector "w/60" has a better chance of excluding voluminous documents that have nothing to do with the facts of this case than the "AND" connector. Ultimately, that is the Court's goal – to ensure discovery produces the most amount of relevant information and the least amount of irrelevant documents, while keeping in mind the time and costs associated with that production. Absolute perfection is not an objective of any discovery process. Thus, the selection of an appropriate connector is a call that must be made by this Court within its broad and substantial authority to manage the discovery process to effectuate the principles of Rules 1 and 26(b)(1) of the Federal Rules of Civil Procedure. Accordingly, the Court orders the parties to use the "w/60" connector.

Third, Defendants move to compel ESI from Anita Alvarez, the State's Attorney for Cook County from 2008 to 2016, and Patrick Driscoll, Alvarez's Chief of the Civil Actions Bureau at the State's Attorney's Office. Defendants argue that Judge Rowland's April 30, 2019 Order requiring the County to respond to requests for admission directed to Alvarez concerning whether she was aware of a similar lawsuit filed by the State of Illinois against certain Countrywide entities in 2010 dictates the outcome of Defendants' current motion.

On February 20, 2019, the County moved for a protective order seeking, among other things, to strike six requests for admission served on Alvarez. Docs. 270, 270-1. In that motion, the County argued that Defendants' requests sought "knowledge and notice which is irrelevant to Defendants' statute of limitations defense" because the "knowledge and notice" of Alvarez "cannot be imputed to the County." Doc. 289 at 1. Judge Rowland declined to "rule on whether the knowledge of [Alvarez] can be imputed onto the County [as] those arguments are to be raised at a later date." *Id*. at 4. She held, however, that "for purposes of discovery, . . . Defendants have established relevance for the knowledge of Cook County officials including the President of the County Board of Commissioners, the Chiefs of Staff to the President, the States Attorney, Special Legal Counsel, and Assistant Special Legal Counsel." *Id*. In her ruling, Judge Rowland emphasized that the "district court judge has already determined that knowledge and notice are relevant to Defendants' statute of limitations defense." *Id*. at 3. Judge Bucklo previously found at the motion to dismiss stage that it was premature to determine whether the County's claims are barred under the FHA's two-year statute of limitations, stating that "the date on which the County discovered the basis of its FHA claims is an issue that 'should be decided after evidentiary submission (and under a summary judgment analysis)." Doc. 52 at 15. Judge Rowland concluded: "Consistent with this finding and without making any ruling on the merits of Defendants' statute of limitations defense, the Court finds that knowledge and notice are relevant for purposes of discovery." Doc. 289 at 3. The County did not move for reconsideration or file an objection with the district court in response to Judge Rowland's order.

The County offers several reasons for why the ESI of Alvarez and her civil deputy Driscoll is not relevant and would be unduly burdensome to produce: (1) Alvarez "focused on prosecution of criminal matters;" (2) Judge Rowland found that Alvarez's knowledge was relevant because

Alvarez was counsel for the County, not because Alvarez was an employee or official of the County; (3) Judge Rowland's finding that Alvarez's knowledge is relevant to Defendants' statute of limitations defense is "problematic;" (4) through the County's response to requests for admission, Alvarez stated that she has "no personal recollection" of the State of Illinois' lawsuit against Countrywide; (5) the Illinois Attorney General's Office did not produce emails with Alvarez or Driscoll in response to a subpoena served by Defendants; (6) some of the types of communications Defendants identify would be privileged and/or captured in the ESI collection from Cook County employees; and (7) Defendants' need for ESI from Alvarez and Driscoll is outweighed by the "immense burden" associated with its production.

Defendants' ESI request is a natural extension of Judge Rowland's ruling, and none of the County's arguments persuades the Court that Defendants' request for certain ESI from Alvarez and Driscoll should be denied. First, Judge Rowland knew that Alvarez focused on criminal matters, but nevertheless ruled that Alvarez's knowledge and notice of a similar lawsuit filed by the State of Illinois against certain Countrywide entities was relevant for purposes of discovery. The County has not presented any new facts or caselaw which would warrant reconsideration of Judge Rowland's ruling. Moreover, the State's Attorney's duties also include "commenc[ing] and prosecut[ing] civil actions." Doc. 276 at 10 n.12 (County's Reply in Support of Motion for Protective Order). Second, the import of the County's second argument, as stated above is difficult to ascertain, but Judge Rowland's order did not make such a finding and thus the argument has no merit. Doc. 289 at 3-4. Third, if the County objects to Judge Rowland's ruling that Alvarez's knowledge is relevant to Defendants' statute of limitations defense, it should have timely challenged the ruling by filing an objection with the district court – it did not do so. Fourth, the fact that Alvarez currently has "no personal recollection" of the State of Illinois' 2010 lawsuit does

not undermine Defendants' need for ESI from Alvarez because ESI will provide contemporaneous evidence of her actual knowledge. The County also does not claim that Driscoll, whose ESI is also a subject of the motion, was unaware of the 2010 lawsuit. Fifth, the search terms the Defendants are seeking the State's Attorney's Office to run are different and broader than the ones which the Illinois AG's Office agreed to run. Also, Defendants are seeking all relevant communications by Alvarez and Driscoll not just communications with the AG's Office. Sixth, there are types of emails which Alvarez and Driscoll could have sent or received that would not contain advice to the client or work product, such as the email regarding the *People v. Countrywide* lawsuit that was sent from the Illinois AG's Office to Thomas Bilyk within the State's Attorney's Office. In addition, relevant ESI from Alvarez and Driscoll would not necessarily be duplicative of ESI collection from other Cook County officials because the County is not collecting ESI from all Cook County employees and there may be emails sent by the State's Attorney's Office to third parties.[4]

The Court agrees with Defendants that the County's claim of burden is unsubstantiated. The County does not claim any specific burden other than the ESI privilege review. While the Court is sympathetic to the County's privilege review concern, the County does not provide an estimate of the time and expense involved in reviewing the ESI of Alvarez and Driscoll. Thus, the County has provided no evidence on which to determine that applying the relevant search terms to Alvarez's and Driscoll's EIS would impose an undue burden of privilege review. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery."). In the absence of a specific estimate from the County, the Court cannot conclude that producing the

---

[4] For example, Defendants state there were 21 Board of Commissioners during relevant period and Defendants agreed to eliminate 13 Commissioners at the County's request.

requested ESI for Alvarez and Driscoll will be unduly burdensome in light of the proportionality factors. The Court also agrees with Defendants that the County should search ESI from Alvarez or Driscoll using the damages search terms, which seek information relating to increases in costs due to increased number of foreclosures, because a possible aspect of the notice inquiry could be a belief that damages have been suffered. Nevertheless, those search terms are sufficiently narrowed that it will likely exclude irrelevant information (such as criminal matters) and also limit the number of potentially privileged documents that would need to be reviewed prior to production.

Fourth, as for Sandra Lewis and Shirley Williams, Defendants explain that information regarding the 2010 Countrywide lawsuit was emailed to them more than two years before the County filed this lawsuit. The County's only objection to producing Lewis's and Williams's ESI is that it had been unable to identify those individuals as of the time of filing its Opposition on September 24, 2019. On September 26, 2019, Defendants emailed the County, advising that Lewis's LinkedIn page shows that she was Director of Community Affairs in the Cook County State's Attorney's Office from 2003-2017 and that Williams's LinkedIn page identifies her as the Chief Deputy Clerk of the Circuit Court of Cook County since 1987. Defendants state that the County had not responded to their email as of the time Defendants filed their reply brief. As there is no other objection to the inclusion of Lewis and Williams in the custodians for the County's ESI searches, Defendants' motion is granted in this regard.

## CONCLUSION

For these reasons, the Court denies the County's Motion to Compel the Addition of Custodians [339] and grants in part and denies in part Defendants' Motion to Compel the County to Provide ESI Discovery [343]. The case remains set for further status hearing on November 13, 2019 at 9:15 a.m.

**SO ORDERED.**

Dated:  October 22, 2019

Sunil R. Harjani
United States Magistrate Judge