UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK,<br><br>          Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION,<br>*et al.*<br>          Defendants. | Case No. 14 C 2280<br><br>Magistrate Judge Sunil R. Harjani |

## **MEMORANDUM OPINION AND ORDER**

Currently before the Court is Plaintiff's Motion to Compel Production of Documents [335]. For the reasons and to the extent stated below, Plaintiff's Motion to Compel [335] is granted in part, denied in part, denied in part without prejudice, and entered and continued in part. The status hearing set for 12/4/2019 at 9:15 a.m. stands.

## **DISCUSSION**

In this Fair Housing Act case, Plaintiff Cook County moves to compel the production of several categories of documents over Defendants' objections. Under Federal Rule of Civil Procedure 26(b), parties are entitled to discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When determining the appropriate scope of discovery, the Court considers the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. A "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as the party understands

them." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes (2015 Amendment). At the same time, a "party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id*. With these discovery standards in mind, the Court turns to the County's motion to compel.

1. **Fair Lending Compliance Documents, Training Materials, and Board Materials (Request Nos. 68, 71, 98, 99, 107, 115, 130, 138, 145, 155, 167, 201-204)**

These requests seek documents, including compliance reports, board of directors' materials, and training materials, related to Defendants' compliance with fair housing and/or fair lending laws, including the Fair Housing Act (FHA), Equal Credit Opportunity Act (ECOA), Community Reinvestment Act (CRA), and Home Mortgage Disclosure Act (HMDA). Defendants object to these requests on relevance and burden grounds as "to any discovery concerning the coverage, impact, or effect of any laws other than the Fair Housing Act." Doc. 335-2 at 4. With respect to relevance, Defendants argue that because the County's Second Amended Complaint (SAC) does not assert a claim or allegations that Defendants violated the ECOA, CRA or HMDA, those statutes are irrelevant to this action which concerns only alleged violations of the FHA. Defendants maintain that the "County has no reasonable basis to seek documents concerning only the ECOA, CRA, and HMDA, and not the FHA." Doc. 350 at 3. The County maintains that documents evidencing Defendants' violations of the ECOA, CRA, and HMDA are relevant to its claims because they will prove Defendants' liability for violating the FHA, even if such documents do not explicitly reference the FHA.

The Court finds that neither side's relevancy position represents the proper scope of discovery in this matter. The County's perspective is too broad and not limited to the scope of the claims in this case while Defendants' perspective is too narrow, failing to acknowledge that the three other statutes cited by the County share some common ground with the FHA. For example,

the ECOA prohibits discrimination on the basis of race, color, and national origin "with respect to any aspect of a credit transaction." 15 U.S.C. § 1691(a)(1). Under the CRA, "regulated financial institutions have [a] continuing and affirmative obligation to help meet the credit needs of the local communities in which they are chartered." 12 U.S.C. § 2901(a)(3). Thus, in connection with its examination of a financial institution, a federal regulatory agency must "assess the institution's record of meeting the credit needs of its entire community, including low- and moderate-income neighborhoods. . . ." 12 U.S.C. § 2903(a)(1). On the other hand, the scope of discovery requested by the County exceeds the subject matter of this action, which is alleged racially discriminatory residential mortgage lending and servicing activities in Cook County, Illinois.[1]

For discovery purposes, documents relating to fair housing and/or fair lending laws are relevant only if they involve the same or a similar type of conduct as alleged in the SAC, regardless of whether they concern the ECOA, CRA, or HMDA. Thus, documents concerning Defendants' compliance with the ECOA, CRA, or HMDA related to alleged racially discriminatory residential mortgage lending or servicing activity in Cook County during the relevant time period are potentially relevant to the County's FHA claims, even if the documents do not explicitly concern compliance with the FHA. In contrast, compliance reports, board of directors' materials, and training materials as to violations of the ECOA, CRA, or HMDA unrelated to racially discriminatory residential lending or servicing activity in Cook County are not relevant and need not be produced.

---

[1] The County's Requests seek documents from January 1, 2003 through the date of Defendants' responses. Defendants objected to this time frame as overly broad and unduly burdensome and limited their responses to the time period from January 1, 2004 to December 31, 2014. Because the parties have raised no issue about this in the briefing, the Court assumes there is no dispute about the relevant time period for the County's Requests.

Defendants have not established that the burden of producing this limited, but highly relevant, discovery outweighs its usefulness. Defendants state that producing these documents will "require a manual, time-intensive process that entails review of thousands of historic records of Countywide and BOA." Doc. 350 at 3. However, Defendants do not explain what specific burdens production would impose, nor have they submitted a declaration providing information regarding the time or expense involved in producing these documents. Thus, Defendants have not met their burden of showing that producing the narrowed set of documents is unduly burdensome. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 598 (7th Cir. 2011) ("A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery.").

Accordingly, as it relates to documents, including compliance reports, board of directors' materials, and training materials, concerning compliance with fair housing and/or fair lending laws related to potentially racially discriminatory residential mortgage lending or servicing activity in Cook County, the County's motion is granted. The motion is denied in all other respects. Finally, Defendants must produce a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5) if they intend to assert a privilege as a basis for withholding responsive documents.

**2.     Pooling and Servicing Agreements (Request Nos. 41, 42, and 182)**

The County's Request Nos. 41, 42 and 182 seek loan securitization Pooling and Servicing Agreements (PSAs) entered into by Defendants. "The PSA governs the relationship between the various parties in the securitization process, and will typically describe things like how the trust is created, how bundled loans are transferred to the trust, how securities are issued, and other duties, rights, and obligations of each party." Doc. 350-1 at ¶ 4  Defendants contend that the County's

request should be denied "because PSAs are equally available to the County, have no relevance, and the County should incur the burden of collecting them." Doc. 350 at 4.

Defendants do not convincingly dispute the relevance of the PSAs. Defendants state that "PSAs are lengthy, technical documents that spend hundreds of pages governing the relationship between the various parties in the securitization process" and that "[n]one of this has anything to do with discrimination against minority borrowers." Doc. 350 at 6 n.4. The County responds that "Defendants' pooling and servicing agreements, which prescribe the manner in which loans are conveyed, serviced, and controlled by the seller and purchaser of the loan, are relevant because they will help enable [the County] to identify which loans Defendants bought, sold, securitized, and/or transferred." Doc. 356 at 4. The County further explains that these agreements reflect the originator or seller of the loan and whether or not the servicing and transfer of the loan meets all compliance and regulatory requirements, including fair housing and fair lending laws. Finally, the County indicates that these agreements require the loan servicer to prepare and maintain a "Mortgage Loan Schedule," which contains pertinent loan and borrower data, including among other things, identifying information about the seller, borrower, and the property and its appraised value, as well as financial data, such as interest rate, and the principal amount and balance of the loan, and the loan-to-value ratio. The County asserts that this information is particularly relevant given the significant loan and borrower data that Defendants have not produced in discovery to date. Based on this explanation by the County, the Court finds that the PSAs meet the minimal relevance threshold for purposes of discovery.

Defendants next argue that they should not be required to bear the burden of producing the PSAs which must be filed with the Securities and Exchange Commission and are publicly available on the SEC's website using only a single field: the deal (or "trust") name. In fact, the County

initially agreed in 2015 to conduct its own search for the PSAs for Defendants' loans to the extent they could reasonably be located through publicly available means. Doc. 335 at 6. The County agreed to pull the PSAs from the SEC website, if Defendants would agree not to challenge their authenticity. *Id*. at 7. Defendants refused to accept the County's proposal. *Id*.

Defendants have demonstrated a substantial burden to producing the PSAs associated with the approximately 49,000 loans at issue. Defendants represent that: they have no automated means of systemically collecting or producing the PSAs, they would have to undertake a manual process to identify, manually locate, and produce them one by one, and they would have to search multiple locations to find them. Doc. 350-1 at ¶¶ 9-15. Indeed, Defendants state that some Bank of America associates find it easier to locate and pull PSAs through the SEC's web portal rather than undertake the more cumbersome and time-consuming manual search of Defendants' business records. *Id*. at ¶ 14. Given the logistics of locating and collecting PSAs from Defendants' records, Defendants estimate that it would take 200 hours to collect 1,200 PSAs, which they believe is likely a low estimate of the number of PSAs implicated by the 49,000 at-issue loans. *Id*. at ¶ 15. This estimate does not include review and production time. *Id.*

Considering the parties' equal access to the PSAs and the relative burdens of locating and collecting the PSAs, the Court finds it unduly burdensome and not proportional to the needs of the case to require Defendants to produce PSAs that are publicly available. The County argues, and the Court recognizes, that the fact that requested documents are publicly available is not necessarily a valid reason in and of itself for a party not to produce discoverable documents. Rather, issues of burden and proportionality must be considered in each particular case. In this case, Defendants' objection is accompanied by a specific factual showing of undue burden. Thus, under the circumstances presented here, the Court finds that the PSAs "can be obtained from some

other source that is more convenient, less burdensome, or less expensive" because the County can access the PSAs on the SEC's website. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). In addition, the County fails to offer an adequate explanation as to why its initial offer to conduct its own search for these agreements should not govern. While Defendants have not identified any reason to doubt the authenticity of PSAs pulled from the SEC website, the parties can resolve any authenticity issues prior to any dispositive motion or trial or seek the assistance of the district judge through a motion *in limine*. Finally, as they offered, Defendants will provide the County with the data it needs for the at-issue loans so it can identify and pull the PSAs from the SEC's website. Doc. 350 at 5-6. The County's motion is denied with regard to the PSAs.

**3.     Consumer Fraud Reporting Documents  (Request Nos. 185 and 186)**

The County next moves to compel the production of Defendants' policies, practices, and procedures for their fraud investigation and reporting, and copies of such reports, relating to residential mortgage loan, home equity loan, and/or home equity line of credit. The County claims that these documents are relevant to any defense by Defendants that their loan origination or servicing activities cannot be considered to have been predatory or discriminatory because minority borrowers defrauded Defendants by engaging in credit or mortgage fraud. Defendants' Opposition confirms, however, that none of their defenses "assert that Defendants should not be liable because borrowers committed credit fraud or mortgage fraud." Doc. 350 at 6. In reply, the County states only that the fraud investigation and reporting information it seeks is "relevant to Defendants' loan origination and servicing activities." Doc. 356 at 6. The County argues that the fact this information is not explicitly referenced in the SAC is not a sufficient basis alone for finding them improper.

7

Given Defendants' confirmation that their defenses do not relate to credit fraud or mortgage fraud by borrowers, the relevancy of the County's requests is not readily apparent. Moreover, a blanket statement that the information sought is relevant to Defendants' loan origination and servicing activities, without further explanation, is insufficient to establish relevancy. The County has failed to articulate what possible relevance the consumer fraud information it seeks may have to the Defendants' loan origination and servicing activities at issue in this case in light of Defendants' representation about their defenses. Without a more particularized showing, the County's conclusory statements are insufficient to meet its initial burden of showing relevance. *See* Rule 26(b)(1) Advisory Committee Notes (2015 Amendment). For this reason, the County's motion is denied with regard to consumer fraud reporting documents.

4. **Self-Test and Self-Evaluation Materials (Request Nos. 205-207)**

The County seeks production of fair lending self-tests and self-examinations Defendants conducted and sent to federal regulators. Defendants object to production of these documents for multiple reasons. As explained below, the Court overrules their objections to the County's more limited requests.

First, the County's requests do not violate Judge Rowland's May 19, 2016 order. Judge Rowland found that "compliance documents are relevant," but denied the County's request as "overly burdensome" and without prejudice to the County "requesting specific compliance reports or reports on specific topics." Doc. 142 at 2. The County's prior requests for production sought "all internal control and compliance function reports regarding steering and discrimination practice." *Id*. The County sufficiently narrowed its request for fair lending self-tests and self-examinations to specifically cover "the origination, purchasing, underwriting, and/or servicing of first and/or second lien 1-4 family residential mortgage loans in Cook County concerning

8

compliance with the provisions of the Fair Housing Act and/or Equal Credit Opportunity Act." Second, the Court rejects Defendants' suggestion that they need not produce compliance documents because they have produced "*other* materials that will allow [the County] to try and prove [its] claims." Doc. 350 at 7. Defendants state that they have already produced policies and documents that address Defendants' compliance with the Fair Housing Act; complaints of discrimination; Board of Directors' minutes that discuss lending and/or discrimination in Cook County; documents about marketing loans to diverse borrowers; and materials used to train employees. While a court must limit discovery that "is unreasonably cumulative or duplicative," Defendants have not convincingly shown that to be the case here. Fed. R. Civ. P. 26(b)(2)(C)(i). On the present record, the Court finds that it does not appear that the discovery already produced by Defendants would be unreasonably cumulative or duplicative of Defendants' fair lending self-tests and self-examinations and the documents relied upon in connection with their creation.

Third, Defendants assert that the documents the County seeks are protected from disclosure by the bank examination privilege. "Although neither the Seventh Circuit nor the Supreme Court has explicitly recognized the bank examination privilege, the bank examination privilege is really a subset of the deliberative process privilege." *Federal Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP*, 2018 WL 3105987, at *5 n.9 (N.D. Ill. June 25, 2018); *see also United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (generally recognizing the deliberative process privilege). "The bank examination privilege exists to protect open communication between banks and their regulators." *Syron v. Federal Housing Finance Agency*, 2014 WL 12623047, at *4 (D. D.C. Dec. 31, 2014). Its protection "extends both to bank examiner's recommendations, opinions, and inquires, and a bank's response thereto." *Id*. "Only those bank documents that are in response to the regulator's conclusions, opinions, or inquiries are protected by the privilege." *Id*. The bank

9

examination privilege "does not protect factual materials." *Id*; *In re Bank One Sec. Litig., First Chicago S'holder Claims*, 209 F.R.D. 418, 426 (N.D. Ill. 2002) ("Any materials pertaining to purely factual matters fall outside the scope of the privilege and if proven to be relevant, must be produced.").

The County agreed to narrow its requests to exclude opinions, recommendations, and analyses of the Office of the Comptroller of the Currency (OCC) and the Consumer Financial Protection Bureau (CFPB). Instead, the County states that it seeks factual materials created by Defendants, including self-test and self-evaluation results, documents relied on by Defendants in creating those tests, and internally disseminated communications not sent to the OCC or CFPB. The County asserts that these documents do not fall within the bank examination privilege. The Court agrees. Defendants' objection to production based on the bank examination privilege is overruled to the extent the County seeks factual materials created and disseminated internally by Defendants. Furthermore, if Defendants withhold an otherwise discoverable document or portion of a document based on the bank examination privilege, they must (1) expressly claim the privilege and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *U.S. v. White*, 950 F.3d 426, 430 (7th Cir. 1991) ("The claim of privilege cannot be a blanket claim; it 'must be made and sustained on a question-by-question or document-by-document basis.'"). Accordingly, the County's motion is granted in part as to factual materials created and disseminated internally by Defendants, including self-test and self-evaluation results and documents relied on by Defendants in creating those tests and evaluations.

**5.      Training Materials (Request Nos. 68, 71, 98, 99, 107, 115, 130, 138, 145, 155, 167)**

The County's requests seek training materials regarding the specific loan-related programs at issue in this case and their compliance with fair housing and fair lending laws. Defendants object to these requests on the grounds of relevance and undue burden. As to relevance, Defendants claim that these training materials are not relevant to any intentional discrimination claim because they would not have training materials "saying to discriminate against minorities." Doc. 350 at 8. With regard to the County's disparate impact claim, Defendants argue that the County does not need training materials because Defendants have already produced "thousands of pages of loan origination, underwriting, servicing, and foreclosure policies." *Id*. Defendants' objections are overruled. Defendants' training materials for the specific loan-related programs at issue and their compliance with fair housing and fair lending laws are clearly relevant to the County's fair housing and fair lending claims in this case. The training materials may shed light on the specific policies and practices on which the loan programs were originated, which could help prove the disparate impact claims. Defendants have also not established that the training materials are unreasonably cumulative or duplicative.

In response to Defendants' undue burden objection, the County offered to limit its requests to training materials for employees responsible for: (1) processing loans, (2) underwriting loans, (3) granting exceptions and overrides, and (4) making determinations whether and when to foreclose and/or when to record foreclosure-related transactions. *See* Doc. 335 at 11. Defendants seek to further restrict their production of training materials to "loan account executives" and "loan consultants for mortgage loan origination." In support of their burden objection, Defendants attach the declaration of Karen Humphries, Senior Vice President and Learning Executive at Bank of America, N.A., who explains "the tremendous burdens that would be posed in identifying and

collecting" the four categories of training materials requested by the County. Doc. 350-2 at ¶ 6. Specifically, Ms. Humphries represents that with regard to the three different defendant corporate families, there is no single location that has all of the requested training materials. *Id*. at ¶¶ 7-11. For example, with respect to Countrywide, current Bank of America employees would have to determine what kinds of training were done at Countrywide that concern the County's requested training materials and then identify individuals who were involved with that training at Countrywide because legacy training materials are retained or archived in connection with specific individuals who were the custodians of the documents. *Id*. at ¶ 8. A similar investigation would have to be undertaken as to Merrill Lynch training materials and Bank of America training materials prior to 2013. *Id*. at ¶¶ 9, 10. For 2013 forward, there is a centralized location for Bank of America training materials, but "they are not maintained in a manner that allows them to be easily searched and identified without a significant amount of additional, manual review." *Id*. at ¶¶ 10, 11. Ms. Humphries states that "[a]s a result, to identify all of the [r]equested [t]raining [m]aterials for all three corporate families since 2004 would be a massive undertaking." *Id*. at ¶ 12. She estimates that it would take over 180 days for her team to collect any responsive training materials. *Id*. at ¶ 13.

Based on the foregoing, the record before the Court is not adequate to evaluate Defendants' burden objection, including the proportionality of Defendants' proposed limitation of providing the County with training documents for account executives and personal loan consultants. Ms. Humphries' declaration does not address the specific burden that would be involved in identifying and collecting training materials for account executives and personal loan consultants from Defendants' records in light of the logistics she describes. In order to develop a more complete record for weighing proportionality, by December 5, 2019, Defendants shall file a supplemental

declaration explaining and quantifying the additional burden associated with locating and collecting training materials for the four categories of training materials sought by the County beyond the burden of producing training materials for account executives and personal loan consultants. Once Defendants' supplemental affidavit is filed, the parties shall meet and confer in an attempt to reach a reasonable compromise regarding the four categories of training materials the County seeks without judicial intervention. By December 11, 2019, the parties shall file a joint status report setting forth the details and results of the meet and confer efforts about the training materials. The County's motion is therefore granted in part as to training documents for account executives and personal loan consultants and entered and continued as to the remainder of the training materials.

### 6. Appraisal and Valuation Policies Documents (Request No. 162)

The County's Request No. 162 seeks "each report reflecting any violation of any of Your polices and/or practices to assure that Your appraisal and valuation policies and procedures complied with residential mortgage loan investor guidelines." In its reply brief, the County states that during meet and confer discussions, it narrowed this request to "violations of appraisal and valuation policies relating to fair housing or fair lending laws, including the FHA, ECOA, CRA, and HMDA restricted to Cook County." Doc. 356 at 10. Given the County's narrowed request, the Court overrules Defendants' objections that the request is overbroad and does not describe the documents sought with reasonable particularity. Moreover, Defendants' objection based on their production to date of Countywide and Bank of America appraisal policies and underwriting policies and procedures that address appraisals is overruled. Defendants have not persuasively shown that the County's narrowed request seeks information that is unreasonably cumulative or duplicative of Defendants' production to date. *See* Fed. R. Civ. P. 26(b)(2)(C)(i). The County's

failure to request appraisal-related ESI search terms is also not a valid basis for withholding responsive documents.

On the current record, the Court cannot determine whether complying with the County's narrowed request would impose an undue burden on Defendants under the totality of the circumstances. For their burden objection, Defendants submit a declaration by Mehul Jariwala, a Senior Vice President, Consumer & Small Business Credit Risk at Bank of America, N.A., based on his understanding that the County is requesting: "Reports showing that appraisals and valuations of properties in Cook County were being artificially inflated." Doc. 305-3 at ¶ 5. It is unclear, however, what the production burden would be based on the County's narrowed request for reports reflecting any "violations of appraisal and valuation policies relating to fair housing or fair lending laws, including the FHA, ECOA, CRA, and HMDA restricted to Cook County." Doc. 356 at 10. More importantly, the County states in its motion that Defendants stated during a meet and confer session that they would search for documents concerning "'fair lending reports' on the subjects of race and ethnicity with respect to properties located in Cook County." Doc. 335 at 12. In light of this representation, it is not clear that any discovery dispute actually exists between the parties and if so, what the scope of that dispute may be. Accordingly, the County's motion to compel is denied without prejudice as to its narrowed request for reports reflecting violations of appraisal and valuation policies relating to fair housing or fair lending laws, including the FHA, ECOA, CRA, and HMDA restricted to Cook County. By December 5, 2019, the parties shall meet and confer in an attempt to resolve any remaining dispute as to appraisal and valuation policies without judicial intervention.

**7.     Management and Board Communications (Request Nos. 166 and 169)**

As narrowed, the County's Request Nos. 166 and 169 seek management and board-level communications regarding underwriting override policies and mortgage origination and servicing compensation policies. The County requested responsive documents from all Defendants, and Defendants agreed to produce responsive documents for four Defendants: Bank of America, N.A., Countrywide Financial Corporation, Countrywide Home Loans, Inc., and Bank of America Corporation. The County moves to compel production for two other Defendants: BAC Home Loans Servicing LP (BACHLS) and Countrywide Bank FSB (CW Bank).

There is no dispute that the discovery sought is relevant to the County's claims in this action. Rather, Defendants maintain that the burden imposed by production as to BACHLS and CW Bank is "too great, requiring a manual review of hardcopy material stored across several offsite locations." Doc. 350 at 13. Relying on the declaration of Christine Costamagna, a Senior Vice-President and Assistant Secretary at Bank of America, N.A., Defendants estimate that approximately 125-150 hours would be involved in collecting and producing responsive documents as to BACHLS and CW Bank. Doc. 350-4 at ¶ 14. The Court is not convinced that 125-150 hours is unduly burdensome or disproportionate to the needs of this case in light of: the relevance of the materials the County seeks, the important issues at stake in this matter, the claimed amount in controversy of tens of millions of dollars, the County's inability to access to this information, and the sufficient resources Defendants have to produce the information. Weighing all of the foregoing with respect to relevance and proportionality, the Court finds that the benefits of the discovery to the County outweigh the production burden on Defendants. The County's motion is granted as to Request Nos. 166 and 169.

**8.     Compliance Documents and Bulletins (Request Nos. 175 and 178)**

The County requests the following compliance information from internal communications made to employees, including but not limited to bulletins, memoranda, guides, and/or notices:

> Request No. 175:  Produce all documents relating to Your Compliance Bulletins relating to all 1-4 family residential mortgage loan, home equity loan, and/or home equity line of credit products you offered.
>
> Request No. 178:  Produce all documents relating to Your compliance, or lack thereof, with the fair housing and fair lending laws, including the FHA and ECOA in marketing, originating, and/or servicing 1-4 family residential home equity loan and/or home equity line of credit products.

Defendants object that these requests are unreasonably overbroad and burdensome because they are not limited in any meaningful way by subject matter, sender, recipient, time period, particular department or division, or Defendant.  As before, Defendants rely on Ms. Costamagna's declaration.  Defendants maintain that the only way the County's requests could be investigated is through a search of already collected ESI to locate responsive documents.

At the outset, the Court notes that the County's reply brief indicates that it narrowed its requests to Defendants' compliance departments/divisions. Doc. 356 at 13. Defendants' overbreadth objection is also sustained in part as the requests seek certain information not relevant to the claims or defenses in this matter.  For the reasons given previously regarding the County's request for compliance reports, training materials, and board materials related to Defendants' compliance with fair housing and/or fair lending laws, the County's requests shall be limited to documents relating to Defendants' compliance, or lack of compliance, with the fair housing and/or fair lending law's prohibitions against racial discrimination pertaining to residential mortgage loan, home equity loan and/or home equity line of credit origination, servicing and/or foreclosure operations. Defendants' compliance with fair housing and/or fair lending laws' prohibition against racial discrimination related to the specific loan-related programs at issue is clearly relevant to this

case. Moreover, Defendants have not met their burden to show that the requests, especially as narrowed, are unduly burdensome. Defendants have not stated the estimated time or expense involved in responding to these document requests, only that the requests "implicate[] three separate corporate families with different records and storage locations." Doc. 350 at 14. This cursory objection fails to provide the requisite specificity. *Heraeus Kulzer, GmbH*, 633 F.3d at 598. Accordingly, as narrowed by subject matter and to Defendants' compliance departments/divisions, the burden of responding to Request Nos. 175 and 178 does not outweigh the likely benefit and is not disproportionate to the needs of the case. The County's motion is granted on this narrower basis.

9. **Loan Servicing and Origination Data Documents (Request No. 188) and Litigation Hold Documents (Request No. 189)**

The County's Request No. 188 seeks "documents relating to the legal and/or regulatory requirements regarding Your ability to access current and historical loan origination and servicing data." As limited by the County, Request No. 189 asks for litigation holds imposed as a result of each governmental investigation of Defendants' residential mortgage loan, home equity loan and/or home equity line of credit origination, servicing and/or foreclosure operations relating to fair housing or fair lending laws, including the FHA, ECOA, CRA, and HMDA. Defendants object to both requests on relevance grounds. They further object to Request No. 188 on vagueness and overbreadth grounds and to Request No. 189 as seeking privileged documents.

In support of relevance, the County states that "Defendants are unable to locate and produce a significant amount of loan data vital to Plaintiff's claims." Doc. 335 at 15. The Court addressed the availability of the at-issue loan data in its October 31, 2019 order regarding Plaintiff's Motion to Compel Production of Loan Data. That ruling directed Defendants to reevaluate all missing loan data in light of the specific concerns raised by the County in its briefing and produce any

further responsive loan data. If some or all of the loan data cannot be produced because it does not exist or is inaccessible, Defendants will file affidavit(s) explaining their position by December 2, 2019. *See* Doc. 363 at 4, 5. Because the record regarding the availability of the at-issue loan data is incomplete, the Court denies the County's motion as to these requests as premature and without prejudice. In the event disputes remain as to these topics after Defendants comply with the Court's October 31, 2019 order, the Court directs the parties to meet and confer in good faith to try to resolve or narrow their disagreements about these requests.

## CONCLUSION

For these reasons, Plaintiff's Motion to Compel [335] is granted in part, denied in part, denied in part without prejudice, and entered and continued in part. The status hearing set for 12/4/2019 at 9:15 a.m. stands.

**SO ORDERED.**

Dated: November 25, 2019

_____
Sunil R. Harjani
United States Magistrate Judge