UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| COUNTY OF COOK,<br><br>        Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA CORPORATION,<br>*et al*.<br>        Defendants. | Case No. 14 C 2280<br><br>Magistrate Judge Sunil R. Harjani |

## ORDER

In its Motion to Compel the Production of Documents [419], Plaintiff Cook County seeks production of five categories of information. The relevant document requests at issue that correspond with these five areas are identified in the County's Motion. After reviewing the briefing and considering the relevancy and proportionality requirements of Federal Rule of Civil Procedure 26, the Court grants in part and denies in part the County's Motion to Compel [419] to the extent stated in this Order.

## STATEMENT

*First*, the County seeks documents concerning Defendants' practices and procedures for marketing to potential borrowers in Cook County, including how Defendants identified persons to target for marketing and to send pre-screened marketing solicitations. Defendants represent that they have produced thousands of marketing-related materials and argue that no additional marketing materials should be produced.

As to pre-screening marketing materials, Defendants contend that they possess no responsive documents. Defendants rely on the Declaration of Nathan May, a Bank of America Senior Vice President of Home, Auto, and Small Business Marketing, explaining that neither Bank of America nor Countrywide pre-screened for residential mortgage loan products from 2004-2014 based on potential borrowers' race or ethnicity, or based on census tract, zip code, county, or state. Defendants' interpretation of the County's requests is too narrow. The County's requests are not limited to documents showing that Defendants' prescreening marketing was based directly on race or ethnicity or based solely on race and ethnicity. Nor are the County's requests limited to marketing campaigns "where the target group hoped to be reached was African American or Hispanic." Doc. 453-1. The County's requests also seek information about prescreening marketing criteria which could be a proxy for race. The County's reply brief highlights a FICO Score example. In the context of residential mortgage loan products, race-neutral criteria used for prescreening consumers to target with specific marketing campaigns, other than geographic location, could serve as a proxy for race or ethnicity. In order to assess whether any of Defendants' prescreening marketing criteria was a proxy for race or ethnicity, discovery of Defendants'

practices and procedures for prescreening consumers for specific marketing in Cook County for the relevant time period is highly relevant and proportional to the needs of the case. Therefore, Defendants may not limit their production to only those prescreening marketing documents based directly on race or ethnicity or to criteria they unilaterally believe could be used as a proxy for race or ethnicity. The County's motion to compel is granted to the extent it seeks documents relating to the criteria used for prescreening to identify persons from a particular group that were marketed to within Cook County.

As to other types of marketing material sought by the County, Defendants states that "there is nothing to compel because Defendants have produced or have committed to produce all responsive documents available in their records and in the ESI collected in this case." Doc. 429 at 2. The Court agrees with the County that the current record belies Defendants' assertion that they have produced or committed to produce all responsive documents available. In their production letter dated November 30, 2010, Defendants stated that they produced "a sampling of a variety of marketing documents" that they were able to locate after a reasonably diligent search, including a "screenshot" of a website and a "description" of some marketing material. By email dated November 16, 2019, Defendants similarly offered to produce only a "sample" and "descriptive information" about the marketing materials sought by the County. Defendants have provided no legitimate basis for limiting its production of marketing documents to a "sampling" and "description" of responsive marketing documents. Defendants are therefore directed to produce all responsive marketing documents for the relevant period that they were able to locate after a reasonably diligent search.

Further, the Court rejects Defendants' request to limit the production of any additional marketing materials to Countrywide from the 2004-2008 time period. As the County points out, Countrywide is not the only defendant in this case and the County "does not expressly limit Defendants' origination and marketing practices at issue in this case to only 2004-2008 anywhere in the Complaint." Doc. 447 at 5. However, the Court is not ordering Defendants to restart the ESI process by collecting ESI from new custodians as a result of proportionality concerns given the substantial burden it would place on the Defendants, now more than 5 years into this case and several years into fact discovery, and the substantial time and expenses associated with that process. Defendants shall conduct the above searches in their available records and in the ESI collected in this case.

*Second,* the County seeks to compel production of training materials for two categories of employees: (1) employees responsible for underwriting, including granting underwriting exceptions or overrides and (2) employees responsible for determining whether or not to foreclose on 1-4 family residential mortgage loans. Defendants do not dispute the relevancy of the training materials the County seeks. After carefully considering all the circumstances here, Defendants shall search the universe of already-collected ESI documents, which the Court understands is over 9 million documents, for training materials for underwriting/exceptions/overrides from 2003-2008 and foreclosure from 2006-2012 and produce any responsive training material. If the County believes it needs additional training materials after this production, the parties shall meet and confer to try to reach an agreement as to any additional training materials sought by the County on a narrowed basis. As they offered, Defendants shall also produce training materials for these two categories of employees from their central repository of training materials, which will cover the

2

2012-2014 time period. Accordingly, the motion to compel is denied as to pre-2012 training materials outside the already-collected ESI documents. Once again, the case is now over 5 years old, and document production has been occurring for several years. The burdens of continued document production are significant, and at this time and on this record, not proportional to the needs of the case.

*Third*, the County seeks information reflecting whether any third-parties reimbursed any of the fees Defendants paid to the County in order to rebut Defendants' affirmative defense of set-off. Defendants oppose this portion of the County's motion on relevance, burden, and proportionality grounds. As to relevance, Defendants argue that the reimbursement data sought by the County is irrelevant because for compensatory damages it only matters whether the County was paid the fee. According to Defendants, whether they or a third-party was the ultimate source of fee payments to the County is legally irrelevant. The County responds that Defendants are not entitled to claim as offsets the amount of those offsets that they recouped, or were reimbursed, from third-parties under the collateral source rule.

In a similar FHA case brought by the County against Wells Fargo, Judge Feinerman recently held that reimbursements from borrowers for fees Defendants paid to Cook County are "irrelevant" because "the compensatory damages inquiry focuses on the plaintiff's ledger, not the defendant's." Case No. 14 C 9548, Doc. 320 at 5. This Court agrees with Judge Feinerman's reasoning that fees Defendants recouped from borrowers or other third-parties are irrelevant to the determination of the County's claim for compensatory damages because the purpose of compensatory damages is to make the plaintiff whole. The County also argues that if "Defendants passed the fees onto borrowers but Defendants still get to use those fee amounts to reduce their liability, it would result in an inequitable windfall to Defendants." Doc. 447 at 14. But, the County cites no authority indicating that Defendants' alleged windfall from recoupment is relevant to a determination of the County's compensatory damages. As Judge Feinerman similarly found regarding the County's equitable concerns, the fact that Wells Fargo "may have been a bad actor in violating the FHA, is irrelevant for present purposes because the compensatory damages inquiry focuses on the financial consequences to the plaintiff of the defendant's bad acts." Case No. 14 C 9548, Doc. 320 at 5.

Judge Feinerman also rejected the County's attempt to "characterize the consideration of its foreclosure-related revenues as a 'set-off' or as coming from a collateral source" as "groundless because those revenues do not arise from a separate or collateral transaction, but instead are inextricably intertwined with the allegedly wrongful foreclosure practices at the heart of its FHA claims against Wells Fargo." *Id*. at 5-6. In the context of its current motion, the County characterizes the offsets Defendants recouped from third-parties as coming from a collateral source. The collateral source law cited by the County does not support its argument that fees Defendants recouped from third-parties is relevant to the FHA compensatory damages calculation. Under the collateral source rule, "payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability," *Wills v. Foster*, 892 N.E.2d 1018, 1022 (Ill. S.Ct. 2008). But that is not the situation here. The County did not receive a payment or benefit from a third party independent of Defendants and any compensatory damages award in this case will not be reduced by any reimbursements for fees that Defendants received from the borrowers or other third-parties. In other words, the fact that some of the fees paid to the County

3

may ultimately have been paid by third-parties and not Defendants will not itself reduce any compensatory damages otherwise recoverable from Defendants. For all these reasons, the Court sustains Defendants' relevancy objection to production of the reimbursement information the County seeks.

*Fourth*, as narrowed by the County, the County seeks post-funding quality reviews related to: (1) fair housing and fair lending laws and (2) non-performing loans in pools of loans that include loans in Cook County. As to the first category, Defendants do not dispute the relevancy of the quality reviews related to compliance with fair housing and fair lending laws. These documents are highly relevant because they are probative of Defendants' fair housing and fair lending compliance, which goes to the heart of this case alleging violations of those same laws. However, Defendants claim that production of responsive documents would be disproportionate to the needs of the case. Defendants argue that identifying the quality review files for loans originated in Cook County from the 2004-2014 time period "could take up to 340 hours" followed by some "additional time to manually pull the results" of the process. Defs' Opp. at 11. In weighing the proportionality factors, the Court finds that the burden of producing quality reviews related to fair housing and fair lending laws is not insubstantial but does not outweigh the likely benefit and is not disproportionate, given the high relevance of quality reviews related specifically to fair housing and fair lending laws, the importance of the issues at stake in this case, the significant amount of damages in controversy, the County's lack of access to the materials through any other source than Defendants, and Defendants' substantial resources as compared to the County. *See* Fed. R. Civ. P. 26(b)(1).

As to the second category, Defendants' relevancy objection to post-funding quality reviews related to defaulted loans for the 2013-2014 time period is sustained. Defendants presumably performed internal quality reviews for non-performing loans for a variety of reasons wholly unrelated to fair housing and fair lending law compliance, and the County does not explain why Defendants' post-funding quality reviews which are not limited to or focused on compliance with fair housing and fair lending laws are relevant to its case. Defendants state that determining which loan review project from 2013-2014 included reviews of defaulted loans would take at least 300 hours to complete. Because of the minimal, if any, potential relevance of the quality reviews related to defaulted loans, the Court concludes this request is not proportional to the needs of the case.

*Fifth*, the County seeks Defendants' policies with respect to document and data retention and litigation holds imposed as a result of governmental investigations and Defendants' knowledge and understanding of the legal and/or regulatory requirements regarding accessing current and historical loan origination and servicing data. Defendants object on relevancy and burden grounds and argue that litigation hold documents are protected from disclosure by the attorney-client and work product protections.

On this record, there is no evidence of destroyed loan data. On December 6, 2019, Justin Dahl filed a declaration explaining that after an extensive search involving over 150 hours of investigation, he concluded that any remaining missing "data fields do not exist and have never existed in Bank of America's data records." Doc. 407-1 at ¶ 21. Mr. Dahl also confirmed that a cross-department search team of "over 15 Bank of America employees with collective experience

in … all relevant aspects of Bank of America's data systems and databases" did not uncover "any instances in which data that remains missing had been collected, but was later destroyed." *Id.* at ¶¶ 8, 22.

Putting aside the borrower and loan data, the County argues that Defendants' relevancy objection is undermined by the declaration of Marty Bridges concerning quality reviews on defaults outside of the two-year period of 2013-2014 and the declaration of Nathan Mays regarding certain marketing material. As to Mr. Bridges, the Court has denied the County's motion to compel post-funding quality reviews on defaults because the County failed to show that its requests seek information relevant to its fair housing and fair lending claims. Therefore, the unavailability of quality reviews on defaults from 2004-2012 does not justify production of Defendants' data retention policies and litigation holds.

As to targeted marketing materials, citing to Mays' declaration, Defendants' brief confirms that the "lists of borrowers to whom targeted marketing materials (*i.e.*, mailers) were sent from 2004-2011 no longer exist, and neither do the lists of borrowers who responded to such campaigns." Doc. 429 at 4. Mr. Mays states that the reason this information is no longer available is either because it was never initially retained or because the databases or systems that stored that information have been decommissioned and the information was deleted, and there is no other central repository of such materials. Doc. 429-9 at ¶ 26. At this stage, the factual record is not sufficiently developed to enable the Court to determine whether the County has made a sufficient preliminary showing of spoliation such that non-privileged information in Defendants' litigation hold notices should be produced. The County can explore Defendants' ESI preservation and collection efforts during its Rule 30(b)(6) deposition topic on this issue. Spoliation is a serious allegation, and discovery on spoliation has the potential to completely sidetrack a litigation to the point where more resources are spent on investigating spoliation issues than on the merits. Moreover, in large and complex litigations, parties often bring spoliation claims in order to obtain leverage and the much-coveted adverse jury instruction. Before this Court will permit the County to delve into significant discovery on spoliation, a preliminary showing must be made that documents that are relevant and proportional to the needs of the case once existed and no longer exist, there was a duty to preserve those documents for this litigation, and that duty was breached. That preliminary showing has not been met. The County's motion in this regard is denied without prejudice.

After the 2015 amendments to the Federal Rules of Civil Procedure, no longer is mere relevancy enough to order production. This is because relevancy at the discovery stage is much broader than at the admissibility stage, and sweeping production decisions have the potential to exponentially increase the costs of litigation. The proportionality concerns in this case are significant — after more than 5 years of litigation, millions of documents exchanged, and countless discovery disputes, the concerns with spending additional time and expense associated with restarting certain discovery searches, conducting additional custodian searches, and delaying the discovery schedule are substantial. Courts have broad discretion to exercise in weighing relevancy and proportionality concerns, *Washtenaw County Employees' Retirement System v. Walgreen Co.*, 2019 WL 6108220, at *6 (N.D. Ill Nov. 15, 2019), and the magistrate judge's discretion to control the discovery process is substantial. *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013). Those proportionality concerns have been weighed here and lead the Court to conclude

that Plaintiff's Motion to Compel [419] is granted in part and denied in part to the extent stated in this Order. All documents ordered produced shall be completed by March 16, 2020 along with a declaration from Defendants stating that a search has been conducted in compliance with this Order and that all documents within their possession, custody and control have been produced.

**SO ORDERED.**

Dated: February 10, 2020

Sunil R. Harjani
United States Magistrate Judge